**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No.: 1:25-CV-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

      Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE
WALL STREET JOURNAL, a Delaware
corporation, NEWS CORPORATION, a Delaware
corporation, KEITH RUPERT MURDOCH, an
individual, ROBERT THOMSON, an individual,
KHADEEJA SAFDAR, an individual, and JOSEPH
PALAZZOLO, an individual,

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND INCORPORATED**
**MEMORANDUM OF LAW**

George S. LeMieux (Florida Bar No. 16403)
Eric C. Edison (Florida Bar No. 010379)
Timothy J. McGinn (Florida Bar No. 1000377)
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

Katherine M. Bolger (pro hac vice)
Amanda B. Levine (pro hac vice)
Meenakshi Krishnan (pro hac vice)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

Andrew J. Levander (pro hac vice pending)
Steven A. Engel (pro hac vice pending)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com

Defendants Dow Jones & Co. ("Dow Jones"), News Corporation ("News Corp."), Keith Rupert Murdoch, Robert Thomson, Khadeeja Safdar, and Joseph Palazzolo (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint with prejudice and to seek recovery of reasonable attorneys' fees and costs under the anti-SLAPP statute, *see* Fla. Stat. § 768.295; N.Y. Civil Rights Law §§ 70-a, 76-a.

## **INTRODUCTION**

Plaintiff, President of the United States Donald J. Trump ("Plaintiff" or "President Trump"), brings this lawsuit to recover damages for the publication of truthful information. While this case's threat to the First Amendment is serious, the claims asserted by President Trump are meritless and should be promptly dismissed with prejudice.

On July 17, 2025, *The Wall Street Journal* reported that a letter bearing President Trump's name appeared in a birthday book (the "Birthday Book") containing letters from Jeffrey Epstein's family and friends (the "Article"). The Article reports that the letter contained a typewritten note, a sketch of a naked woman, and Plaintiff's signature. The Article quotes Plaintiff's denial that he wrote the letter and his warning that he would "sue The Wall Street Journal just like [he] sued everyone else." The next day, Plaintiff followed through on his threat, bringing this lawsuit in which he claims the letter was "fake and nonexistent." Compl. ¶ 27. Two weeks ago, in response to a congressional subpoena, Epstein's estate produced the Birthday Book, which contains the letter bearing the bawdy drawing and Plaintiff's signature, *exactly* as *The Wall Street Journal* reported. The Court should dismiss the Complaint with prejudice for three independent reasons.

*First*, the Article is true. The Birthday Book as produced by the Epstein estate and later publicly released by the House Oversight Committee contains a letter identical to the one described in the Article.

*Second*, the Article is not defamatory. Even if it had reported that President Trump personally crafted the letter—and it does not—there is nothing defamatory about a person sending a bawdy note to a friend, and the Article cannot damage Plaintiff's reputation as a matter of law. Plaintiff acknowledged his friendship with Epstein. As the Article reports, *three months* before the Birthday Book was gifted to Epstein, a *New York* magazine article quoted Plaintiff as saying that he had known Epstein for "15 years" and that Epstein was a "terrific guy," "a lot of fun to be with," and "likes beautiful women as much as I do." President Trump has also publicly admitted to "locker room" talk and has made numerous bawdy public statements. The Article is therefore consistent with President Trump's self-described reputation.

*Finally*, Plaintiff has not pled, and cannot plead, that Defendants published the Article with "actual malice"—*i.e.*, a subjective awareness of probable falsity. The Complaint clumps together all six Defendants and does not include a single plausible allegation that any of them, much less all of them, caused *The Wall Street Journal* to publish knowingly false statements. The Article includes Plaintiff's denial and is consistent both with his general reputation and the actual letter released by the House Oversight Committee. Plaintiff thus can never plead actual malice.

The First Amendment's protections for truthful speech are the backbone of the Constitution. And, "[a]t the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988). The Complaint should be dismissed with prejudice, and the Court should award Defendants their reasonable attorneys' fees and costs.

## STATEMENT OF FACTS

### I.     THE PARTIES

Plaintiff Donald J. Trump is the President of the United States. Compl. ¶ 1.

Defendant Dow Jones publishes *The Wall Street Journal*. *Id.* ¶ 2. Defendants Khadeeja Safdar and Joseph Palazzolo are reporters for *The Wall Street Journal*. *Id.* ¶¶ 6-7. Defendant News Corp., of which Defendant Keith Rupert Murdoch is the Chairman Emeritus and Defendant Robert Thomson is Chief Executive Officer, owns Dow Jones. *Id.* ¶¶ 3-5.

## II.     THE ARTICLE

On July 17, 2025, *The Wall Street Journal* published the Article written by Safdar and Palazzolo, titled: "Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump." *See* Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 1.[1] The sub-headline of the Article notes, "[t]he president says the letter 'is a fake thing.'" *Id.* at 1.

The Article reports on the Birthday Book, gifted to Epstein in 2003, which contained letters from his family and friends, including one letter described as "bearing Trump's name," that was "bawdy—like others in the album." *Id.* at 3. The Article states that the letter contains "several lines of typewritten text framed by the outline of a naked woman, which appears to be hand-drawn with a heavy marker. A pair of small arcs denotes the woman's breasts[.]" *Id.* The letter's text reflects a fictitious conversation between Plaintiff and Epstein, and the signature of a "squiggly 'Donald'" appears below the text "mimicking pubic hair." *Id.*

*The Wall Street Journal* sought comment from President Trump two days before publication, *see* Compl. ¶ 12, and devoted three paragraphs to his response. The Article quotes President Trump as saying, "This is not me. This is a fake thing. It's a fake Wall Street Journal story. . . . I never wrote a picture in my life. I don't draw pictures of women. . . . It's not my language. It's not my words." Article at 3. The Article reports that President Trump threatened to file a lawsuit if the Article were published, stating, "I'm gonna sue The Wall Street Journal just

---

[1] On a motion to dismiss, the Court may consider the Article because it is incorporated by reference into the Complaint. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 830 n.1 (11th Cir. 2020).

like I sued everyone else." *Id.*

The Article also provides further details about the Birthday Book and President Trump's relationship with Epstein: the Book was presented to Epstein in 2003, three years "before [he] was first arrested in 2006," and it contains letters from "dozens of Epstein's other associates," including Alan Dershowitz, Leslie Wexner, and a Harvard economist. *Id.* at 3-4. At the time the Book was compiled, Epstein was "socializing with Trump," and they were "photographed at social events" in the 1990s and early 2000s. *Id.* at 6. In 2002, Plaintiff told *New York* magazine that he had known Epstein for "15 years," Epstein was a "terrific guy," and "[i]t is even said that he likes beautiful women as much as I do, and many of them are on the younger side." *Id.* The Article also reports that President Trump had stated that he had a falling out with Epstein, he "banned Epstein from his Mar-a-Lago club" before Epstein's 2008 guilty plea, and that in 2019, President Trump said he had not spoken with Epstein in 15 years. *Id.*

### III.    THE COMPLAINT

On July 18, 2025, President Trump filed this lawsuit, bringing one count of defamation *per se* based on statements describing the alleged contents of the letter, *see* Compl. ¶¶ 24, 46, and one count of defamation *per quod* seemingly based on the Article's suggestion that he and Epstein were friends, *see id.* ¶¶ 25, 58.

### IV.    CONGRESS RELEASES THE BIRTHDAY BOOK

On August 25, 2025, the Oversight Committee of the U.S. House of Representatives subpoenaed the Epstein estate for documents, including the Birthday Book. *See* Bolger Decl. Ex. 2. On September 8, 2025, after the Epstein estate responded to the subpoena, the Committee released the documents on its official webpage. Bolger Decl. Ex. 3. Among those documents was a copy of the Birthday Book—a 238-page book entitled, "The First Fifty Years," which contains

letters to Epstein. Bolger Decl. Ex. 4.[2] The Book's table of contents lists "Donald J. Trump" in the

"Friends" category, *see id.* at HOUSE_OVERSIGHT_000003, and the Book contains this page:



*Id.* at HOUSE_OVERSIGHT_000165; *see also* Bolger Decl. Ex. 5.

## **ARGUMENT**

This case should be dismissed for three clear, compelling, and independent reasons: (1) the

Article is true; (2) the Article is not defamatory; and (3) there is not a whiff of a plausible allegation

---

[2] Because the Birthday Book is central to the Complaint and therefore incorporated by reference, *see, e.g.*, Compl. ¶ 27 (claiming the letter with Plaintiff's signature that appears in the Birthday Book was "fake and nonexistent"), this Court may consider it on a motion to dismiss, *see Parekh*, 820 F. App'x at 830 n.1. Pursuant to Federal Rule of Evidence 201, Defendants also request that the Court take judicial notice of the Birthday Book and other related materials (Bolger Decl. Exs. 2-5) obtained from the House Oversight Committee's website. *Patagonia, Inc. v. Worn Out, LLC*, 2023 WL 3172530, at *6 (S.D. Fla. May 1, 2023) (collecting cases and taking judicial notice of the "contents of government publications and website materials").

of actual malice. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a 12(b)(6) motion, the Court accepts all factual allegations in the Complaint as true but need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* To state a defamation claim, Plaintiff must plead: (1) a publication; (2) a false and defamatory statement of fact; (3) fault amounting to knowledge of falsity or reckless disregard for the truth (i.e., actual malice); and (4) damages. *See Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1105-06 (Fla. 2008); *see also Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1999).[3] Because defamation lawsuits necessarily have a chilling effect on First Amendment rights, early dismissal is favored. *See Michel v. NYP Holdings*, 816 F.3d 686, 702, 704 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation."). Courts in this District routinely dismiss defamation claims on the pleadings. *See, e.g.*, *Trump v. Cable News Network*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023), *appeal docketed*, Case No. 23-14044 (11th Cir. 2023); *Bongino v. The Daily Beast*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1380 (S.D. Fla. 2016) (Gayles, J.), *aff'd*, 879 F.3d 1254 (11th Cir. 2018).

## I.     THE ARTICLE IS TRUE

This Court should dismiss the Complaint because the Article is true. "[F]alsity is an

---

[3] Because Florida and New York defamation law is similar for the points raised in this Motion and because both States have an anti-SLAPP statute that awards fees to prevailing defendants, the Court need not make a conclusive determination about the law applicable to this action at this time, and Defendants cite the law of both States. In general, "a federal court sitting in diversity must apply the choice of law rules of the forum state." *Trumpet Vine Investments, N.V. v. Union Cap. Partners I*, 92 F.3d 1110, 1115 (11th Cir. 1996). In tort cases, Florida courts apply the law of the State with the "most significant relationship to the occurrence and the parties." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Here, Plaintiff alleges that he is a Florida resident. Compl. ¶ 1. But New York law should apply because Defendants are in New York and the conduct in this case and the relationship between the parties is centered in New York. *See Wood v. Netflix, Inc.*, 2025 WL 918078, at *23 (M.D Fla. Mar. 26, 2025) ("[I]n multistate defamation cases, the state of the plaintiff's domicile is not necessarily the state of the most significant relationship if one of the other states [in which the defamatory statement was published] has a more significant relationship to the occurrence and the parties."); *Rashid v. Barr Labs*, 2008 WL 5341135, at *2 (M.D. Fla. Dec. 19, 2008) (applying New Jersey law to action even though plaintiff alleged he was Florida resident).

element of a defamation claim." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). A statement need not be literally true for the defendant to prevail. Instead, to survive a motion to dismiss, a plaintiff must allege facts that, if proven, "would establish that the defendant's statements were not substantially true." *Id.* A "statement is substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed." *Jews for Jesus*, 997 So. 2d at 1107-08; *Tannerite*, 864 F.3d at 242 ("[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."). When a plaintiff cannot establish that an article is false, including because it is contradicted by government records, it is proper for the court to grant a motion to dismiss. *See Markle v. Markle*, 2024 WL 1075339, at *12 (M.D. Fla. Mar. 12, 2024) ("Based on the materials that have been judicially noticed in this case, this claim must be dismissed based on the substantial truth doctrine."), *appeal docketed*, Case No. 24-11091 (11th Cir. 2024); *Marder v. TEGNA Inc.*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (granting motion to dismiss as to certain statements because plaintiff "cannot seek damages for something that was ultimately true"); *Cabello-Rondón v. Dow Jones & Co.*, 2017 WL 3531551, at *4-5 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018) (granting Rule 12(b)(6) motion).

Here, Plaintiff cannot show that any statement in the Article is not substantially true. The Article reports that a letter "bearing Trump's name" was contained in a volume of letters gifted to Epstein for his 50th birthday. Article at 3. The Article describes the letter as containing "several lines of typewritten text framed by the outline of a naked woman, which appears to be hand-drawn with a heavy marker. A pair of small arcs denotes the woman's breasts, and the future president's signature is a squiggly 'Donald' below her waist, mimicking pubic hair. The letter concludes: 'Happy Birthday — and may every day be another wonderful secret.'" *Id*. That is an entirely

accurate description of the letter as it appears in the Birthday Book produced by the Epstein estate and released by the House Oversight Committee. *See* Bolger Decl. Exs. 4-5. The Court need go no further to dismiss the Complaint with prejudice.

## II.  THE ARTICLE IS NOT DEFAMATORY

The Court should also dismiss the Complaint on the independent ground that Plaintiff does not and cannot plead the Article is defamatory *per se* or *per quod*. A statement is defamatory when it "tends to harm the reputation of another by lowering him or her in the estimation of the community or more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews for Jesus*, 997 So. 2d at 1108-09. "Whether the statement . . . is susceptible to defamatory interpretation is a question of law left to the Court." *Turner*, 198 F. Supp. 3d at 1365. "This inquiry turns on the 'gist' of the alleged defamatory statement and the context in which that statement was made," *Bongino*, 477 F. Supp. 3d at 1317, including "the temper of the times" and "the current of contemporary public opinion," *Yonaty v. Mincolla*, 97 A.D.3d 141, 143 (N.Y. App. Div. 2012). Where a plaintiff fails to plead the existence of a defamatory meaning, dismissal is appropriate. *See Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) ("Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.") (internal quotations omitted).

### A.  The Article Is Not Defamatory *Per Se*

First, the Article is not defamatory *per se.* Statements are defamatory *per se* when, "considered alone without innuendo," they do not require any "additional explanation in order to prove the defamatory nature of the statement." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258-59 (S.D. Fla. 2021). In assessing defamatory meaning, the Court looks to the words of the allegedly defamatory statements rather than the plaintiff's characterization. *See, e.g.*, *Martinez v.*

*Netflix, Inc.*, 2023 WL 2630337, at \*4 (S.D. Fla. Feb. 23, 2023) (dismissing complaint that "significantly mischaracterize[s]" the challenged film).

Here, Plaintiff's claim for defamation *per se* is based on the allegation that the Article "falsely pass[es] off ***as fact*** that President Trump, in 2003, wrote, drew, and signed this letter," *see* Compl. at 2 (emphasis in original). This mischaracterizes the Article, which never makes this allegedly defamatory assertion. Rather, the Article says the letter "bear[s] Trump's name" *and* that "[i]t isn't clear how the letter with Trump's signature was prepared." Article at 3-4. It does not assert as a matter of fact that he personally signed the letter or drew the image. And the Article fully airs Plaintiff's denial. It does not have either the defamatory meaning or factual assertion that Plaintiff ascribes to it.

Moreover, even if it did, the Article still would not be defamatory *per se*. There is nothing defamatory about a man sending a bawdy letter to his friend. *See, e.g.*, *Oleniak v. Slaton*, 2014 WL 2151944, at \*12-13 (N.Y. Sup. Ct. May 21, 2014) (not defamatory to describe plaintiff as a "player" with "an old shoe box . . . full of pictures . . . of various women"); *Morrow v. Wiley*, 73 A.D.2d 859, 859 (N.Y. App. Div. 1980) (not defamatory to state plaintiff "often had men visitors to her apartment when her parents weren't home"); *Cassini v. Advance Publ'ns*, 41 Misc. 3d 1202(A), at \*3 (N.Y. Sup. Ct. Mar. 14, 2013) (not defamatory to state plaintiff threw parties for wealthy older men who were "looking for action"), *aff'd*, 125 A.D.3d 467 (N.Y. App. Div. 2015); *Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 487 (S.D.N.Y. 2021) (statements that plaintiff purchased alcohol for his date were not defamatory because "the purchase of alcohol is a legal and ordinary act"). Courts regularly recognize that statements linking individuals to prurient matters, without more, are not defamatory. *See, e.g.*, *Ava v. NYP Holdings*, 64 A.D.3d 407, 414 (N.Y. App. Div. 2009) (article stating that plaintiff had a "masturbatory fantasy" of "being with multiple men

and then multiple women" was not defamatory *per se*); *Herman v. CBS Corp.*, 2001 BL 1477, at *2-3, 30 Media L. Rep. 1029 (N.Y. Sup. Ct. May 23, 2001) (statement about using Viagra was not defamatory *per se*); *Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 227 (E.D. Va. 1990) (statement that unmarried plaintiffs were "live-in lovers" was not defamatory because "in the context of today's social mores, [it] cannot be said to [suggest] behavior involving moral depravity or deviation"). The content of the letter here falls well short of the non-defamatory statements in those cases.

Indeed, there is nothing in the letter's fictitious conversation that supports any discernible meaning, much less a defamatory one. To the extent Plaintiff believes that this conversation or the drawing make it appear as though he "lacks good taste," this "would not be defamatory." *Douglass v. Hustler Mag.*, 769 F.2d 1128, 1135 (7th Cir. 1985). For these reasons, even if the Article had asserted that President Trump authored the letter or drew the picture, it still would not be defamatory *per se.*

## B.    The Article Is Not Defamatory *Per Quod*

Plaintiff next attempts to assert a defamation *per quod* claim based on various statements suggesting that he was Epstein's friend. *See* Compl. ¶¶ 25, 58.[4] Statements are defamatory *per quod* when they "require[] an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[.]" *Mac Isaac*, 557 F. Supp. 3d at 1259; *see also Ava*, 64 A.D.3d at 412. To make out

---

[4] Plaintiff cites the statement, "When he turned 50, Epstein was already wealthy from managing Wexner's fortune and was ***socializing with Trump***, Clinton, and other powerful people. ***He often entertained at his Manhattan townhouse, Palm Beach, Fla., home, and private Caribbean island***." Compl. ¶ 25 (emphasis in original). The second sentence is clearly about Epstein and therefore cannot support Plaintiff's defamation claim. *See Parekh*, 820 F. App'x at 833 ("[A] defamatory statement must be 'of and concerning' the plaintiff to be actionable."); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 355 (S.D.N.Y. 1998) ("Hornbook libel law requires that an allegedly defamatory statement must be 'of and concerning' a particular individual.").

such a claim, "the plaintiff must specifically allege the facts and innuendo which make the words defamatory." *See Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996).

Plaintiff fails to plead defamation *per quod* for two reasons. First, Plaintiff does not plead any extrinsic facts that would make the statements in the Article defamatory.[5] Nor could he. The Complaint implies that the statements about Plaintiff's friendship with Epstein are defamatory because Epstein was convicted of sex crimes *years after* the Birthday Book was gifted to him. It is not defamatory as a matter of law to state that an individual was friends with someone who was later convicted of a crime. *Parekh*, 820 F. App'x at 830 (stating plaintiff's ex-girlfriend orchestrated a scam not defamatory of plaintiff). Thus, in *Holleran v. Plymouth Board of Education*, 2023 WL 8062131 (Conn. Sup. Ct. Nov. 17, 2023), the court rejected a school principal's claim that she was defamed by a social media post that discussed her friendship with a teacher accused of sexual misconduct. The court explained that "[b]eing friends with someone who may be guilty of criminal activity is not, of and in itself, defamatory." *Id.* at *6; *see also Jones v. Taibbi*, 400 Mass. 786, 793 (1987) ("The description of someone as a friend (or even relative) of a criminal ordinarily is not in itself defamatory.").

The Article itself emphasizes that the Birthday Book was created *before* Epstein was first arrested. *See* Article at 3 ("Pages from the leather-bound album – assembled before Epstein was first arrested in 2006 – are among the documents examined by Justice Department officials[.]"). And the Article includes Plaintiff's statement that his friendship with Epstein ended before Epstein

---

[5] The Complaint alleges that these statements are "implicitly defamatory." *See* Compl. ¶ 25. To the extent that Plaintiff is attempting to allege defamation by implication, his efforts fail. Defamation by implication requires pleading the existence of "literally true statements that create a false impression." *Jews for Jesus*, 997 So. 2d at 1106; *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021). Here, Plaintiff alleges that these challenged statements are "false and defamatory," and Defendants "knew or should have known that they were false and defamatory." Compl. ¶¶ 58-59. Plaintiff does not allege any false impression.

pled guilty to the charges. *See id.* at 6. Accordingly, statements that Plaintiff and Epstein were, at one time, friends cannot be defamatory *per quod*.

Second, Plaintiff's defamation *per quod* claim also fails because it does not plead special damages—*i.e.*, "actual economic damage," *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013), including a "realized or liquidated loss," *Daniels v. HSN*, 2020 WL 533927, at *6 (M.D. Fla. Feb. 3, 2020); *see also Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) ("Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount[.]"). A plaintiff cannot pursue a claim for defamation *per quod* without such allegations. *See Daniels*, 2020 WL 533927, at *5; *Anderson v. Smith*, 2020 WL 10058207, at *3-4 (M.D. Fla. Mar. 24, 2020) (plaintiff failed to plead special damages where complaint "does not allege an actual loss of employment, or a realized loss attributable to her diminished stature in the community"); *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022) ("New York law is unambiguous that [pleading special damages] is an unbending requirement of defamation *per quod* claims."). Here, Plaintiff makes *no* allegations of special damages; he just offers the conclusory allegation that he "has been damaged." *See* Compl. ¶ 65. Such skeletal pleading is insufficient as a matter of law.

### C.   The Article Is Consistent With Plaintiff's Reputation

Plaintiff also cannot state a defamation claim based upon an allegation that he sent a bawdy birthday letter to his former friend because, long before the Article was published, Plaintiff was publicly known to be friendly with Epstein and admitted to instances of using bawdy language when discussing women. Plaintiff thus cannot allege that the Article damaged his reputation.

A plaintiff may not pursue a defamation claim where "no further harm could have occurred" to his reputation as a result of the challenged statements. *Davis v. McKenzie*, 2017 WL 8809359, at *14 (S.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, 2018 WL 1813897

(S.D. Fla. Jan. 9, 2018); *see also Dykstra v. St. Martin's Press, LLC*, 2020 WL 2789913, at \*13 (N.Y. Sup. Ct. May 29, 2020) (the "litany of stories concerning Dykstra's poor and mean-spirited behavior" preclude the challenged statements from "induc[ing] an evil opinion of [Dykstra] in the minds of right-thinking persons" as that "evil opinion has long existed"); *Wynberg v. Nat'l Enquirer*, 564 F. Supp. 924, 928-29 (C.D. Cal. 1982) (plaintiff's reputation for taking advantage of Elizabeth Taylor, in addition to convictions related to his treatment of other women, meant that his reputation could not be further damaged by challenged statements).

In making that assessment, even at the motion to dismiss stage, the Court may take judicial notice of both the extensive public reporting of Plaintiff's past comments and the fact that Plaintiff never sued about it, as well as Plaintiff's own campaign statements.[6] *See Dykstra*, 2020 WL 2789913, at \*7 (taking judicial notice on motion to dismiss because, "in defamation actions, courts may consider the documentary evidence for their context"); *Cerasani*, 991 F. Supp. at 354 n.3 (taking judicial notice of "widespread newspaper coverage" of trial when determining plaintiff's reputation could not be further damaged "as a matter of law"). Indeed, as the Eleventh Circuit has held, "courts may take judicial notice of . . . [] newspaper articles . . . for the limited purpose of determining which statements the documents contain." *U.S. ex rel Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *see also Hargon v. Homeward Residential, Inc.*, 2013 WL 12200654, at \*3 (N.D. Ga. July 16, 2013) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.") (citation omitted). That is particularly true here because Plaintiff's conceded friendship with Epstein and his admitted use of bawdy language to describe women is common knowledge. *See Korwek v. Hunt*, 646 F. Supp. 953, 959 (S.D.N.Y. 1986) ("[T]here was such

---

[6] Pursuant to Federal Rule of Evidence 201, Defendants request that the Court take judicial notice of Bolger Declaration Exhibits 6-12.

substantial media coverage of the events which form the basis for plaintiffs' claims that in a related litigation we took judicial notice that '[r]egular newspaper readers know what this case is about.'") (citations omitted).

As the Article explains, President Trump publicly acknowledged his relationship with Epstein before Epstein's arrest. The Article notes that President Trump described Epstein, who he had known for "15 years," as a "terrific guy," and "a lot of fun to be with" to *New York* magazine in an article published in October 2002— just three months before the Birthday Book was gifted to Epstein. Article at 4; *see also* Bolger Decl. Ex. 6 at 3. Because Plaintiff has publicly admitted that he was Epstein's friend in the early 2000s, his reputation cannot be harmed by the suggestion that he was friends with Epstein in 2003. Indeed, he was listed in the Birthday Book as a "friend" of Epstein. Bolger Decl. Ex. 4 at HOUSE_OVERSIGHT_000003. The fact that his relationship with Epstein may *now* be a political liability—over 20 years after the Birthday Book was presented to Epstein—does not change this conclusion.

In addition, Plaintiff cannot allege harm to his reputation based upon the letter's bawdy nature because he has a well-documented reputation for bawdiness based on his past statements about women. During the 2016 election, there was widespread media coverage of a 2005 "Access Hollywood" recording, in which Plaintiff described how he approaches women: "I don't even wait. And when you're a star, they let you do it. You can do anything. . . . Grab them by the pussy. You can do anything." *See* Bolger Decl. Ex. 7 at 2. In campaign statements, which were widely reported, Plaintiff admitted to making this comment—"I said it"—but dismissed it as "locker room banter." *See id.* at 5; Ex. 8; Ex. 9 at 1. President Trump also has a well-documented history (over which he has never sued) of making bawdy comments in venues like *The Howard Stern Show* and elsewhere. *See, e.g.*, *id.*, Ex. 10 at 3. In 1991, Plaintiff gave an interview with *Esquire*, in which

he stated, "[I]t really doesn't matter what [the media] write[s] as long as you've got a young and beautiful piece of ass." *See id.* Ex. 11 at 27. In 2006, on *Larry King Live*, Plaintiff referred to actress Angelina Jolie as having "been with so many guys she makes me look like a baby[.]" *See id.* Ex. 12 at 6. Any allegation that President Trump wrote a bawdy birthday note is thus consistent with his public reputation—which he has himself acknowledged—for using "locker room" talk and does not plausibly state any harm.

## III.    PLAINTIFF FAILS TO PLEAD ACTUAL MALICE

President Trump's claims also fail because, as a "public official" and "public figure," he has not plausibly alleged actual malice. To do so, he must establish by "convincing clarity" that Defendants published the challenged statements with "knowledge that [they] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (affirming *Sullivan*). A showing of actual malice thus requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" or that he "acted with a high degree of awareness of probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Masson v. New Yorker Mag.*, 501 U.S. 496, 510 (1991). "Florida has since implemented that same standard as a matter of state law," *Dershowitz v. Cable News Network*, 2025 WL 2585986, at *2-3 (11th Cir. Aug. 29, 2025), as has New York in cases stemming from matters of public interest, *see* N.Y. Civ. Rights Law § 76-a(2).

Here, despite pleading that he is a "private citizen," Compl. ¶ 1, Plaintiff is the current President of the United States. As the U.S. Supreme Court noted in *Sullivan*, this country recognizes a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." 376 U.S. at 270. And, indeed, the right to speak freely about our government, including our President, who has an unequaled ability to make his

viewpoints heard, falls squarely within the core of publications to be protected by the stringent actual malice requirement. *Id*. at 304-05 (Goldberg, J., concurring). There can be little doubt that these principles are implicated here: President Trump has spoken loudly and often from his bully pulpit and denied his authorship of the letter. He has made his case in the marketplace of ideas. But he cannot make a case before this Court because he pleads no allegations that Defendants knowingly made false statements in the Article.

First, Plaintiff offers only boilerplate allegations that Defendants acted with actual malice. *See, e.g.*, Compl. ¶¶ 51, 56, 63, 66. The Eleventh Circuit has repeatedly rejected such conclusory allegations on motions to dismiss. *See Turner*, 879 F.3d at 1273. In fact, the Court did so just recently in *Reed v. Chamblee*. 2025 WL 1874638, at *3 (11th Cir. July 8, 2025) (complaint "include[s] a litany of conclusory allegations that are merely formulaic recitations of the 'actual malice' element which, alone, are insufficient"); *see also Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *5 (11th Cir. 2021) (declining to "credit" "conclusory allegations" of actual malice); *Michel*, 816 F.3d at 704 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279-80 (S.D.N.Y. 2013) ("Pleading 'actual malice buzz-words' is simply not enough to nudge a case into discovery."), *aff'd*, 807 F.3d 541 (2d Cir. 2015).[7]

The Court should do the same here because the Complaint's allegations of actual malice are entirely conclusory. For example, while the Complaint alleges that Defendants "possessed

---

[7] Plaintiff should know well this requirement because two defamation cases brought by his presidential campaign were dismissed for failing to meet this standard. *See Donald J. Trump for President, Inc. v. WP Co.*, 2023 WL 1765193, at *5 (D.D.C. Feb. 3, 2023) (dismissing claim where "the Trump Campaign failed to plead sufficient factual allegations supporting an inference of actual malice"); *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 (N.D. Ga. 2020) (dismissing complaint because "most of the allegations . . . regarding actual malice are conclusory," amounting to "little more than [t]hreadbare recitals of the elements"). And, when Plaintiff was sued for defamation, he argued for dismissal based on failure to plead actual malice. *See Clifford v. Trump*, Case No. 18-56351, Dkt. 23 at 42-46 (9th Cir. Mar. 25, 2019).

information . . . that showed their statements were false," Compl. ¶ 52, it does not state what this purported "information" was. To the extent Plaintiff relies upon his *own* conclusory denial, it is well-established that "the press 'need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Harte-Hanks Comm's, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (quoting *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)); *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 780 (S.D. Fla. 1986) ("A reporter is not 'required to accept denials of wrongdoing as conclusive.'"), *aff'd*, 839 F.2d 1491 (11th Cir. 1988). This is especially true where President Trump simply issued a "blanket denial of wrongdoing" without pointing to any controverting evidence (either prior to publication or in the Complaint). *Fradkoff v. Winston*, 2025 WL 1735476, at *8 (S.D.N.Y. June 23, 2025) (dismissing case for failure to plead actual malice); *see also Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) ("[I]t is well settled that denials without more do not support a plausible claim of actual malice.").

Second, a plaintiff must "plead, and then prove, actual malice as to *each* defendant." *Biro*, 963 F. Supp. 2d at 276; *see also Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977) ("It is also clear that actual malice must be proven with regard to each defendant."), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978). When a defendant is a large news organization, like Dow Jones or News Corp., this state of mind must be "brought home to the persons . . . in the news organization having responsibility for the publication." *Sullivan*, 376 U.S. at 287. Here, the Complaint conflates all Defendants, alleging collectively that they knew they had published false information without identifying a basis for finding that any particular individual knew of any particular falsehood. *See* Compl. ¶¶ 51-53. For this additional reason, Plaintiff has failed to meet his pleading burden.

Third, while Plaintiff makes the unsupported allegation that Defendants published the Article out of "disdain" and "ill-will," this would not support actual malice as a matter of law. *See Cecil v. Moore*, 109 F.4th 1352, 1366 (11th Cir. 2024) ("[I]ll-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice.").

Finally, Plaintiff will never establish that Defendants acted with actual malice. Courts have recognized that where a journalist "reached out" for comment and then "published [plaintiff's] denial," it "undercut[s] any inference of actual malice." *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018); *see also Portnoy v. Insider, Inc.*, 2022 WL 16748583, at *8 (D. Mass. Nov. 7, 2022) (no actual malice where defendant "sought [plaintiff's] comment before publication" and "included his denials"). Similarly, when a publisher "includes information that gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, this showing tends to undermine claims of actual malice." *Jacoby*, 2021 WL 5858569, at *5; *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) (quoting plaintiff "is evidence of the absence of actual malice, not the opposite"). Here, Plaintiff alleges that Defendants contacted him two days before publication, *see* Compl. ¶ 12, and the Article devotes significant space to his denial, *see* Article at 3. This careful reporting precludes any conceivable inference of actual malice.

Indeed, there would be no reason for Defendants to doubt the Article's accuracy because it was entirely consistent with President Trump's reputation. *See Church of Scientology Int'l. v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (it would be "impossible to conclude that [defendant] entertained serious doubts as to the truth of his statement or spoke with a high degree of probable falsity" given the "volume of published commentary" that aligned with challenged statements); *Biden v. Byrne*, 2025 WL 1122398, at *2 (C.D. Cal. Mar. 18, 2025) ("But whether Plaintiff truly engaged in corrupt dealings or other demeaning activities is irrelevant; what matters is Plaintiff's

*reputation* for taking such actions. His reputation depends on what the public *believes* about him, not on what Plaintiff in reality has or has not done. To establish Plaintiff's reputation, Defendant should rely on evidence such as news articles or media clips[.]") (emphasis in original). As discussed in Section II.C, *supra*, President Trump has a reputation both for being friendly with Epstein in 2003 and for making bawdy statements about women. Plaintiff will, therefore, never be able to establish the Defendants acted with knowing falsity in publishing the Article.

In the end, of course, it turns out the Article was not false at all, as confirmed by the House Oversight Committee's release of the Birthday Book. Plaintiff has not and cannot plausibly allege actual malice. The Complaint should be dismissed with prejudice.

## IV.    DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

Defendants are entitled to recover their attorneys' fees and costs under either Florida or New York's anti-SLAPP law. Florida's statute authorizes such a remedy where, as here, a person has filed a lawsuit (a) that is "without merit" and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). The statute defines "free speech in connection with a public issue" to include "any written or oral statement that is protected under applicable law" and "is made in or in connection with a . . . news report, or other similar work." Fla. Stat. § 768.295(2)(a). New York's anti-SLAPP law likewise provides that "[a] defendant in an action involving public petition and participation" may "recover damages, including costs and attorneys' fees from any person who commenced or continued such action" if the case "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law §70-a. An action "involving public petition and participation" is a claim based upon "any communication in . . . a public forum in connection with an issue of public interest." N.Y. Civil Rights Law § 76-a(1)(a)(1). And "public interest" is

"construed broadly" to mean "any subject other than a purely private matter." *Id.* §76-a(1)(d).

For all the reasons stated above, this lawsuit is "without merit" under Florida's anti-SLAPP law, *see Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit" under anti-SLAPP law), and "lacks a substantial basis in law" under New York's law, *see Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 185 (S.D.N.Y. 2024) ("Logically, a complaint [failing] to state a claim is, a fortiori, 'without a substantial basis in fact and law.'"). In addition, the Article unquestionably involves a matter of public interest—*i.e.*, President Trump's past ties to Epstein—and was made in connection with a "news report" or in a "public forum," *see Reeves v. Assoc. Newspapers, Ltd.*, 232 A.D.3d 10, 19 (N.Y. App. Div. 2024) ("news media website" is "quintessential public forum"). Defendants are entitled to recover the attorneys' fees and costs incurred in defending this litigation.

## CONCLUSION

This case calls out for dismissal. In an affront to the First Amendment, the President of the United States brought this lawsuit to silence a newspaper for publishing speech that was subsequently proven true by documents released by Congress to the American public. By its very nature, this meritless lawsuit threatens to chill the speech of those who dare to publish content that the President does not like. This lawsuit should not be permitted to proceed because "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings . . . would constrict" the "breathing space" that the First Amendment demands. *Michel*, 816 F.3d at 702. The Court should dismiss the Complaint with prejudice and grant Defendants their fees and costs.

Dated: September 22, 2025

By: */s/ George S. LeMieux*

**GUNSTER, YOAKLEY & STEWART, P.A.**
George S. LeMieux

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger (pro hac vice)
Amanda B. Levine (pro hac vice)
Meenakshi Krishnan (pro hac vice)

(Florida Bar No. 16403)
Eric C. Edison
(Florida Bar No. 010379)
Timothy J. McGinn
(Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

**DECHERT LLP**
Andrew J. Levander (pro hac vice pending)
Steven A. Engel (pro hac vice pending)
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com

*Counsel for Defendants*