**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>DOW JONES & COMPANY, INC. d/b/a THE WALL STREET JOURNAL, a Delaware corporation, NEWS CORPORATION, a Delaware corporation, KEITH RUPERT MURDOCH, an individual, ROBERT THOMSON, an individual, KHADEEJA SAFDAR, an individual, and JOSEPH PALAZZOLO, an individual,<br><br>        Defendants. | Case No.: 1:25-cv-23232-DPG |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................... 2

    I.    Legal Standard ................................................................................................ 2

    II.   Exhibits 2 Through 12 To Defendants' Motion To Dismiss Should Be Excluded. ......... 3

    III.  Florida Law of Defamation. ............................................................................ 3

    IV.  Defendants' Substantial Truth Defense Does Not Bar Plaintiff's Claims. ..................... 5

    V.   Plaintiff Has Plausibly Alleged That The Article Is Defamatory *Per Se*...................... 8

    VI.  Plaintiff Has Plainly Alleged That The Article Is Defamatory *Per Quod*. ................... 11

    VII.  The Complaint Sufficiently And Plausibly Alleges Actual Malice. ............................. 13

    VIII.  Defendants' Request For Attorneys' Fees Uder Either Florida or New York's Anti-SLAPP Laws Is Misplaced. .................................................................................. 17

    IX.   Request For Leave To Amend. ...................................................................... 18

    X.   Request for Oral Argument. .......................................................................... 19

CONCLUSION ............................................................................................................... 20

CERTIFICATE OF SERVICE ....................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aflalo v. Weiner*,
   2018 WL 3235529 (S.D. Fla. July 2, 2018) ............................................................................. 19

*Am. United Life Ins. Co. v. Martinez*,
   480 F.3d 1043 (11th Cir. 2007) .............................................................................................. 2

*Ava v. NYP Holdings*,
   64 A.D.3d 407 (N.Y. App. Div. 2009) .................................................................................. 9

*Cassini v. Advance Publ'ns*,
   41 Misc. 3d 1202(A), *3 (N.Y. Sup. Ct. Mar. 14, 2013), *aff'd,* 125 A.D.3d 467 (N.Y. App.
   Div. 2015) ................................................................................................................................ 9

*Clark v. Clark*
   1993 WL 528464, at *3 (Fla. 4th DCA June 22, 1993) ......................................................... 6

*Connaughton v. Harte Hanks Commc'ns*,
   42 F.2d 825 (6th Cir. 1988), aff'd 491 U.S. 657 (1989) ...................................................... 16

*Croce v. New York Times Co.*,
   930 F.3d 787 (6th Cir. 2019) ................................................................................................ 16

*Davis v. McKenzie*,
   2017 WL 8809359 (S.D. Fla. Nov. 3, 2017) ........................................................................ 13

*Davis v. Miami-Dade County*,
   2024 WL 4051215 (11th Cir. Sept. 5, 2024) ......................................................................... 2

*Dempsey v. Time Inc.*,
   252 N.Y.S.2d 186 (N.Y. Sup. Ct. 1964) .............................................................................. 16

*Dershowitz v. Cable News Network, Inc.*,
   541 F. Supp. 3d 1354 (S.D. Fla. 2021) .................................................................... 2, 3, 13, 17

*Don King Prods., Inc. v. Walt Disney Co.*,
   40 So. 3d 40 (Fla. 4th DCA 2010) ........................................................................................ 14

*Dykstra v. St. Martin's Press, LLC*,
   2020 WL 2789913 (N.Y. Sup. Ct. May 29, 2020) ............................................................... 13

*Embrey v. First Franklin Fin. Corp.*,
   2013 WL 1289401 (S.D. Mar, 12, 2013) .............................................................................. 17

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

*Freedlander v. Edens Broad, Inc.*,
   734 F. Supp. 221 (E.D. Va. 1990) ........................................................................... 9

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ..................................................................... 18, 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ............................................................................................. 14

*Hay v. Indep. Newspapers, Inc.*,
   450 So. 2d 293 (Fla. 2d DCA 1984) ................................................................... 5, 8

*Herman v. CBS Corp.*,
   2001 BL 1477, *2-3, 30 Media L. Rep. 1029 (N.Y. Sup. Ct. May 23, 2001) ............ 9

*Hoch v. Rissman, Weisberg, Barrett*,
   742 So. 2d 451 (Fla. 5th DCA 1999) ....................................................................... 5

*Holleran v. Plymouth Board of Education*,
   2023 WL 8062131 (Conn. Sup. Ct. Nov. 17, 2023) ...............................................11

*Hunt v. Liberty Lobby*,
   720 F.2d 631 (11th Cir. 1983) ............................................................................. 14

*Jetaire Aerospace, LLC v. AerSale, Inc.*,
   2024 WL 193518 (S.D. Fla. Apr. 17, 2024) ......................................................... 19

*Jews For Jesus, Inc. v. Rapp*,
   997 So. 2d 1098 (Fla. 2008) ................................................................................... 4

*Kieffer v. Atheists of Florida, Inc.*,
   269 So.3d 656 (Fla. 2d DCA 2019) ........................................................................ 8

*Klayman v. Judicial Watch, Inc.*
   *22 F. Supp. 3d 1240* (S.D. Fla. 2014) .............................................................. 6, 17

*Lawnwood Medical Center, Inc. v. Sadow*,
   43 So. 3d 710 (Fla. 4th DCA 2010) ........................................................................ 4

*Lindell v. Mail Media, Inc.*,
   575 F. Supp. 3d 479 (S.D.N.Y. 2021) ..................................................................... 9

*Log Creek, LLC v. Kessler*,
   717 F. Supp. 2d 1239 (N.D. Fla. 2010) ................................................................ 19

*Markle v. Markle*,

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

2024 WL 1075339 (M.D. Fla. Mar. 12, 2024) .......................................................................... 7

*Mas Isaac v. Twitter, Inc.,*
  557 F. Supp. 3d 1251 (S.D. Fla. 2021) ................................................................................ 4

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) .......................................................................................... 19

*Morgan v. Bulletin Co.,*
  85 A.2d 869 (Penn. 1952) ................................................................................................ 16

*Morrow v. Wiley,*
  73 A.D.2d 859 (N.Y. App. Div. 1980) .............................................................................. 9

*Nunes v. NBCUniversal Media, LLC,*
  643 F. Supp. 3d 403 (S.D.N.Y. 2022) ......................................................................... 13, 14

*Oleniak v. Slaton,*
  2014 WL 2151944 (N.Y. Sup. Ct. May 21, 2014) ............................................................ 9

*Ortega Trujillo Banco Cent. Del Ecuador,*
  17 F. Supp. 2d 1334 (S.D. Fla. 1998) .............................................................................. 4

*Parekh v. City of Miami,*
  820 F. App'x 830 (11th Cir. 2020) ..................................................................................11

*Pep Boys v. New World Communications of Tampa, Inc.*,
  711 So.2d 1325 (Fla. 2d DCA 1998)................................................................................ 8

*Richard v. Gray,*
  62 So. 2d 597 (Fla. 1953) ................................................................................................ 4

*Scobie v. Taylor,*
  2013 WL 3776270 (S.D. Fla. July 17, 2013) .................................................................. 5

*Show Plus Promotions, LLC v. Valley Nat'l Bancorp.,*
  2024 WL 3745213 (S.D. Fla. May 13, 2024) .................................................................. 12

*Show Plus Promotions, LLC v. Valley Nat'l Bancorp.,*
  2024 WL 3791896 (S.D. Fla. Aug. 13, 2024) ................................................................ 12

*Smith v. Cuban Am. Nat. Found.,*
  731 So. 2d 702 (Fla. 3d DCA 1999) ................................................................................ 6

*Thomas v. Town of Davie,*
  847 F.2d 771 (11th Cir. 1988) ........................................................................................ 18

*Trump v. American Broadcasting Companies, Inc.*,
  742 F. Supp. 3d 1168 (S.D. Fla. 2024) .......................................................... 5, 6, 7, 8

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ..................................................................... 5

*Veritas v. Cable News Network, Inc.*,
  121 F.4th 1267 (11th Cir. 2024) .................................................................... 14

*Wallis v. Cueto*,
  2017 WL 6388914 (S.D. Fla. Aug. 9, 2017) ................................................. 19

*Wood v. Netflix, Inc.*,
  2025 WL 918078 (M.D. Fla. Mar. 26, 2025) ................................................ 3

*XTec, Inc. v. Hembree Consulting Services, Inc.*,
  2014 WL 12729173 (S.D. Fla. Aug. 1, 2014) ............................................... 19

*Yergey v. Brinker Florida, Inc.*,
  2020 WL 10817751 (M.D. Fla. 2020) ........................................................... 12

## RULES & STATUTES

Fla. Stat. § 768.295 ........................................................................................... 17

N.Y. Civ. Rights Law § 70-a .............................................................................. 18

S.D. Fla. L. R. 7.1(b)(2) .................................................................................... 19

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump"), by and through his undersigned counsel, files this Response In Opposition to Defendants'[1] Motion to Dismiss With Incorporated Memorandum of Law ("Motion to Dismiss") [D.E. 35]. In support, Plaintiff states as follows:

## INTRODUCTION

This lawsuit stems from Defendants' deliberate and malicious publication of numerous false and defamatory statements in an article published on July 17, 2025 in the Wall Street Journal (the "Article") centered around a supposed letter in which Defendants falsely claimed President Trump wished the late Jeffrey Epstein ("Epstein") a happy fiftieth birthday. This was an attempt by Defendants to wrongly and inextricably link President Trump to the disgraced Epstein. As further detailed in Plaintiff's Complaint, the Article clearly was absolutely not "[g]rounded in facts," "shaped by experience," or subject to unwavering "editorial standards" as Defendants proclaim across the banner of their website. Nor were Defendants' actions consistent with the traits of being the honest and forthcoming brokers of newsworthy material that they hold themselves out to be. Rather, the Article was fully driven by Defendants' salacious and scandal-driven narratives that prioritize gossip, clicks, and profit over truth.

Now, in their disjointed Motion to Dismiss (D.E. 35), Defendants attempt to evade Plaintiff's damning factual assertions by downplaying Defendants' malicious and defamatory statements as somehow substantially true, which they are not, trying to characterize the fake, salacious letter as correspondence among ordinary friends, downplaying their own actual malice, as well as falsely asserting that their malicious and defamatory remarks about Plaintiff are

---

[1] The term "Defendants" refers collectively to Defendants Dow Jones & Company, Inc. d/b/a The Wall Street Journal, News Corporation, Keith Rupert Murdoch, Robert Thomson, Khadeeja Safdar, and Joseph Palazzolo.

somehow consistent with Plaintiff's reputation, *i.e.,* that Plaintiff is libel-proof. That is wrong. Even worse, in a brazen attempt to improperly sway this Court, Defendants wholly ignore the standard on a motion to dismiss, by improperly inviting the Court to consider matters outside the four corners of the Complaint and to weigh its one-sided version of the facts and evidence, which should be flatly rejected by the Court.

Ultimately, as demonstrated herein, Plaintiff has plausibly alleged claims for defamation *per se* (Count I) and defamation *per quod* (Count II), and Defendants' Motion to Dismiss should be denied in its entirety.

## MEMORANDUM OF LAW

### I.    Legal Standard

When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1066 (11th Cir. 2007). To survive a motion to dismiss, "a complaint must allege sufficient facts to state a claim that is plausible on its face." *Davis v. Miami-Dade County,* 2024 WL 4051215, * 2 (11th Cir. Sept. 5, 2024) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citation omitted). "The [plausibility] standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element.'" *Rivell v. Private Health Care Sys., Inc.,* 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Additionally, when considering a motion to dismiss, the court's review is "limited to the four corners of the complaint." *Dershowitz v. Cable News Network, Inc.,* 541 F. Supp. 3d 1354,

1360-61 (S.D. Fla. 2021) (citing *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009). Generally, only items that are attached to or incorporated by reference in the complaint are properly considered at the motion to dismiss stage. *Id.* at 1362 (citing *Lozman v. City of Riviera Beach,* 713 F.3d 1066, 1075 n.9 (11th Cir. 2013)). The Eleventh Circuit has made clear that "considerations of material falling outside the pleading converts a motion to dismiss into one for summary judgment." *Id.*   In the present case, consideration of outside material is simply not warranted or appropriate.

II.     **Exhibits 2 Through 12 To Defendants' Motion To Dismiss Should Be Excluded.**

       As an initial matter, as further set forth in Plaintiff's Response In Opposition to Defendants' Request for Judicial Notice filed concurrently with this Response, all of the extraneous materials attached as Exhibits 2 through 12 to Defendants' Motion to Dismiss**,** and relied on by Defendants throughout, should not be considered by the Court at this stage of the proceedings, should instead be wholly excluded, and any argument based on, or incorporating such**,** extraneous materials should be wholly rejected.

III.    **Florida Law[2] of Defamation.**

       Under Florida law and assuming the defamation in the subject action is a matter of public concern, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must

---

[2] In their Motion to Dismiss, Defendants repeatedly cite to both New York and Florida defamation cases and argue that, although the Court need not make a conclusive determination about the applicable law to this action at this time, New York law should nonetheless apply. Plaintiff, however, maintains that Florida law should apply. *See Wood v. Netflix, Inc.,* 2025 WL 918078, * 23 (M.D. Fla. Mar. 26, 2025) (stating that Restatement (Second) of Conflicts § 150(2) creates a presumption that the law of the state where a plaintiff resides applies unless there are 'significantly sufficient considerations' under Restatement §§ 6 and 145 to overcome this presumption."). Further, the Article was published and accessible in print and online throughout Florida, the matters claimed and referenced in the Article arguably occurred in Florida (without conceding that they occurred, which Plaintiff absolutely denies), and Defendants' actions have caused harm to Plaintiff's reputation in Florida.

act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008). "Defamation claims can be proven in either of the following ways: (1) defamation *per quod,* which 'requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is subject of the statement[.]' or (2) defamation *per se,* which 'does not require any additional explanation in order to prove the defamatory nature of the statement.'" *Mas Isaac v. Twitter, Inc.,* 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021).

In defamation *per se* actions, "a publication is libelous [sic] *per se,* or actionable *per se,* if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Richard v. Gray,* 62 So. 2d 597, 598 (Fla. 1953). "When determining whether a published statement constitutes libel *per se,* an arbiter of fact may consider only the four corners of the publication." *Ortega Trujillo Banco Cent. Del Ecuador,* 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (citation omitted). "[T]he language of the document should not be interpreted in the extreme, but construed as the 'common mind' would naturally understand it." *Id.* In cases of defamation *per se,* "liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to consider punitive damages." *Lawnwood Med. Ctr. v. Sadow,* 43 So. 3d 710, 727 (Fla. 4th DCA 2010).

"In *per quod* actions," by contrast, "the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic

facts, such as innuendo." *Scobie v. Taylor,* 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013). In other words, if a statement "requires an explanation of, or an interpretation of innuendo suggested by, the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement," it may qualify as defamation *per quod,* even if it is not defamation *per se. Id.* Because "defamation *per quod* 'requires additional explanation of the words used to show that they have a defamatory meaning, . . . the plaintiff must allege and prove special damages.'" *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451, 457 (Fla. 5th DCA 1999).

"Whether the defendant's statements constitute defamation . . . is a question of law for the court to determine." *Turner v. Wells,* 879 F.3d 1254, 1269 (11th Cir. 2018). When making this determination, the Court "must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication." *Hay v. Indep. Newspapers, Inc.,* 450 So. 2d 293, 295 (Fla. 2d DCA 1984). "When a publication is 'susceptible of two reasonable interpretations,' one of which is defamatory, . . . the issue become[s] one of fact for the jury." *Turner,* 879 F.3d at 1269.

## IV.    Defendants' Substantial Truth Defense Fails As A Matter of Law.

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Trump v. American Broadcasting Companies, Inc.,* 742 F. Supp. 3d 1168, 1179 (S.D. Fla. 2024) (internal quotations omitted) (citing *Klayman v. Judicial Watch, Inc.,* 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014)). "The initial inquiry under the doctrine is '[w]hether particular statements may have a defamatory meaning'; this raises 'an issue of law for the court.'" *Id.* (quoting *Clark v. Clark*, 1993 WL 528464, at *3 (Fla. 4th DCA June 22, 1993). "In determining whether a statement may have a defamatory meaning, 'the court must examine it in the context in which it was published.'" *Id.* at 1179-80 (quoting *Fidelity Warranty*

*Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 74 So. 3d 506, 515 (Fla. 4th DCA 2011)). Similarly, "the court should consider all of the circumstances surrounding the statement[.]" *Id.* A statement is considered false if it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Smith v. Cuban Am. Nat. Found.,* 731 So. 2d 702, 706 (Fla. 3d DCA 1999). Further, if the statement is revealed to be "confusing or ambiguous, raising the question of whether readers might have read it in a defamatory way[,]" a jury question is presented. *Clark*, 1993 WL 528464, at *3 (alteration added; citation omitted); *see also Klayman,* 22 F. Supp. 3d at 1254 (holding that whether a statement was substantially true was a question for the jury); *Trump,* 742 F. Supp. 3d at 1180 ("where the publication is susceptible of two reasonable interpretations, one of which is defamatory," it is for the jury to determine whether the publication is defamatory).

Defendants' *entire* argument as to the claimed truth or substantial truth of the defamatory statements that are the subject of this action is based solely on matters outside the "four corners" of the Complaint—namely, the contents of the Birthday Book purportedly produced by the Epstein estate in response to a subpoena by the House Oversight Committee, which, for the reasons set forth in Plaintiff's Response to Defendants' Request for Judicial Notice, should be summarily disregarded by the Court.

But even in the face of these "outside" matters, the Complaint more than sufficiently explains why the statements are false and does not compel a finding that the statements are somehow true or substantially true. As Defendants readily admit, Plaintiff has—at all times— adamantly maintained that the purported letter is *fake*. The fact that a letter as described by Defendants in the Article was purportedly among the documents produced by the Epstein estate to

the House Oversight Committee[3] does not establish that the letter is real and does not otherwise authenticate the letter, when there is no evidence that Plaintiff actually wrote and signed the letter or sent it. On the contrary, the Defendants' reliance on a purported letter released over a month **after** the Complaint was filed proves that Defendants did not actually possess, or even review, any purported letter before publishing the false and defamatory Article.

While Defendants attempt to hide behind *three words* buried in the Article where Defendants make reference to the letter as "bearing Trump's name"—Defendants cannot ignore their other calculated statements deliberately passing off *as fact* the false claims that Plaintiff wrote the letter, signed it letter**,** and sent it to Epstein in 2003. Indeed, the very title of the Article states:

> Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. **One Was From Donald Trump.**

*See* D.E. 1 at ¶ 25.

Then, the very *first* sentence of the Article states:

> It was Jeffrey Epstein's 50th birthday, and Ghislaine Maxwell was preparing a special gift to mark the occasion. She turned to Epstein's family and friends. **One of them was Donald Trump.**

*See id.*

The Court cannot ignore these statements in the Article, which clearly show that Defendants were not merely describing the alleged letter as they would have this Court believe.

---

[3] Although Plaintiff is addressing these extraneous documents in this Response, Plaintiff is not waiving his argument that such documents should not be considered by the Court. Plaintiff, however, cannot allow the proverbial bell that has been improperly rung by Defendants to go unaddressed and is left with no alternative but to negate the improper and incorrect arguments raised by Defendants. Importantly, while Defendants cite to *Markle v. Markle* to support their argument that the Court can dismiss a defamation claim under the substantial truth doctrine based on materials judicially noticed, Defendants fail to mention that in *Markle, unlike here*, the plaintiff actually agreed to the request for judicial notice. 2024 WL 1075339, * 12 (M.D. Fla. Mar. 12, 2024).

*See Trump,* 742 F. Supp. 3d at 1180 (stating that the court must examine the context in which a statement is published and all of the circumstances surrounding the statement) (citations omitted); *see also Hay,* 450 So. 2d at 295 (The Court "must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication.").

Ultimately, a key factor is whether, as Plaintiff maintains, the letter is fake, as then the Article's statements would certainly have a different effect on the mind of the reader and would be susceptible to a defamatory interpretation. As such, Defendants' Motion to Dismiss on this basis should be denied. *See Trump,* 742 F. Supp. 3d at 1180 (denying motion to dismiss; finding that a reasonably jury could interpret Stephanopoulos' statements about Plaintiff as being susceptible to a defamatory interpretation and thus, were not substantially true); *Pep Boys v. New World Communications of Tampa, Inc.*, 711 So.2d 1325, 1328 (Fla. 2d DCA 1998 ("The questions of whether the broadcast contained false statements and/or statements that could be interpreted as false are questions of fact which should be left for the jury to determine where the communication is ambiguous and is reasonably susceptible of a defamatory meaning"); *Kieffer v. Atheists of Florida, Inc.*, 269 So.3d 656, 660 (Fla. 2d DCA 2019) (citations omitted) (finding that the gist of the defamatory statements regarding a president's alleged misappropriation of company funds does not convey the same meaning as a failure to remit a small amount of donations or the tort of conversion because misappropriation is usually associated with wrongful intent).

## V.   Plaintiff Has Plausibly Alleged That The Article Is Defamatory *Per Se.*

The Complaint clearly demonstrates that the Article's false accusations that President Trump authored, drew, and signed the letter were clearly calculated to subject President Trump to hatred, disgust, ridicule, contempt or disgrace and, thus, are defamatory *per se*. Defendants, nonetheless, attempt to obscure the issues by falsely arguing that Plaintiff *mischaracterized* the

Article and that there is nothing defamatory about a man sending a bawdy letter to a friend. Both arguments are wholly without merit.

*First,* Defendants' argument that Plaintiff mischaracterized the Article rests entirely on Defendants' own distortion of the Article's contents. Defendants suggest that they were merely describing the alleged letter, but this selective reading clearly ignores the broader context and key statements within the Article. Defendants cannot hide behind a few words buried within the text— words that refer to the letter "bearing Trump's name"—while simultaneously ignoring their deliberate portrayal of the letter as being authored and sent by President Trump to Epstein in 2003. *See* D.E. 1 at ¶ 25 (stating affirmatively that one of the letters in the purported Birthday Book was "from Donald Trump").

*Second,* Defendants attempt to minimize the letter's significance by recasting it as a harmless, bawdy letter between ordinary friends, hoping to rely on several New York cases that have dismissed defamation claims based on far less serious statements. However, these cases are neither binding on this Court nor applicable here, as they involve far more inconsequential comments.[4] The Article goes beyond the kind of "harmless" remarks that Defendants seek to

---

[4] *See, e.g., Oleniak v. Slaton,* 2014 WL 2151944, *12-13 (N.Y. Sup. Ct. May 21, 2014) (not defamatory to describe plaintiff as a "player" with "an old shoe box . . . full of pictures . . . of various women"); *Morrow v. Wiley,* 73 A.D.2d 859, 859 (N.Y. App. Div. 1980) (not defamatory to state plaintiff "often had men visitors to her apartment when her parents weren't home"); *Cassini v. Advance Publ'ns,* 41 Misc. 3d 1202(A), *3 (N.Y. Sup. Ct. Mar. 14, 2013) (not defamatory to state plaintiff threw parties for wealthy older men who were "looking for action"), *aff'd,* 125 A.D.3d 467 (N.Y. App. Div. 2015); *Lindell v. Mail Media, Inc.* 575 F. Supp. 3d 479, 487 (S.D.N.Y. 2021) (statements that plaintiff purchased alcohol for his date were not defamatory because "the purchase of alcohol is a legal and ordinary act"); *Ava v. NYP Holdings,* 64 A.D.3d 407, 414 (N.Y. App. Div. 2009) (article stating plaintiff had a "masturbatory fantasy" of "being with multiple men and then multiple women" was not defamatory *per se*); *Herman v. CBS Corp.,* 2001 BL 1477, *2-3, 30 Media L. Rep. 1029 (N.Y. Sup. Ct. May 23, 2001) (statement about using Viagra was not defamatory per se); *see also Freedlander v. Edens Broad, Inc.,* 734 F. Supp. 221, 227 (E.D. Va. 1990) (statement that unmarried plaintiffs were "live-in lovers" was not defamatory).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

compare it to. Several critical statements within the Article clearly differentiate this case from those trivial examples, including:

- The letter—which Plaintiff maintains is fake—is claimed by Defendants to be written by the President of the United States to a well-known disgraced socialite who had been charged with sex trafficking of minors before committing suicide while in jail.

- The letters, including the supposed letter from President Trump, were collected by Ghislaine Maxwell, a British socialite, who was convicted in 2021 of participating in Epstein's sex trafficking and sentenced to 20 years in prison.

- The Article states that Epstein and President Trump spent time together in the 1990s and early 2000s and were photographed at social events, including with Maxwell.

- The Article states that Epstein's associations with President Trump and many powerful people have been well documented.

- In June 2024, President Trump was asked in a Fox News interview whether he would release the Epstein case files. The then - Republican presidential candidate initially responded, "Yeah I would" But he also expressed some reservations. "You don't want to affect people's lives if it's phony stuff in there, because it's a lot of phony stuff with that whole world."

When considering the Article in its totality, which weaves together these false and misleading statements with the invented narrative of a salacious letter containing an imaginary conversation between President Trump and Epstein—purportedly written by President Trump—about a "common secret," it is clear that the Article intended to subject President Trump to public hatred and ridicule. Defendants did not publish the Article on the front page of The Wall Street Journal based on a mere harmless joke between friends. Indeed, such an assertion strains credulity beyond repair. The Article, and the surrounding media around it, were all a deliberate smear campaign designed to damage President Trump's reputation.

As demonstrated above, Plaintiff has more than adequately pled a claim for defamation *per se*. As such, Defendants' Motion to Dismiss this claim should be denied.

## VI.    Plaintiff Has Plainly Alleged That The Article Is Defamatory *Per Quod*.

Contrary to Defendants' argument, Plaintiff has sufficiently pled defamation *per quod* by providing the necessary extrinsic facts that show the defamatory nature of the statements made in the Article. At the core of Plaintiff's defamation *per quod* claim is the Article's mischaracterization of Plaintiff's relationship with Epstein. The Article insinuates that President Trump's association with Epstein is damaging because Epstein was later charged with sex trafficking of minors. This statement, when viewed in context, clearly implies that President Trump's reputation is tainted by the association, which is defamatory.

While it is true that, in *certain* cases, merely being associated with a criminal is not defamatory, the cases cited by Defendants are clearly distinguishable,[5] because here, President Trump's relationship with Epstein is far more consequential because of Epstein's notorious and highly publicized criminal activities. The fact that the Article states that President Trump's relationship with Epstein ended before Epstein pled guilty to criminal charges is irrelevant to the defamatory nature of the statements in the Article because the harm from the mere alleged association with Epstein during the time when Epstein was engaged in salacious criminal activities before getting caught happens irrespective of when that relationship ended.

Defendants' second argument—that Plaintiff's defamation *per quod* claim fails because special damages have not been pled—is equally without merit. Although Plaintiff's allegations

---

[5] *See Parekh v. City of Miami,* 820 F. App'x 830, 830 (11th Cir. 2020) (stating plaintiff's ex-girlfriend orchestrated a scam was not defamatory of plaintiff); H*olleran v. Plymouth Board of Education*, 2023 WL 8062131 (Conn. Sup. Ct. Nov. 17, 2023) (rejecting school principal's claim that she was defamed by a social media post that discussed her friendship with a teacher accused of sexual misconduct).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

may not be as detailed as Defendants' desire, Plaintiff has made clear that he has suffered actual damage to his reputation, including to his public image and professional standing. *See* D.E. 1 at ¶¶ 42, 64-65. Florida courts do not require the exact dollar amount of loss at the pleading stage, but rather sufficient allegations of actual economic damage. *See Show Plus Promotions, LLC v. Valley Nat'l Bancorp.,* 2024 WL 3745213, *9 (S.D. Fla. May 13, 2024) (finding allegations of lost profits and loss of reputation sufficient to survive dismissal), *report and recommendation adopted,* 2024 WL 3791896 (S.D. Fla. Aug. 13, 2024); *see also Yergey v. Brinker Florida, Inc.,* 2020 WL 10817751, *2 (M.D. Fla. 2020) (stating that plaintiff need only allege the types of special damages he or she seeks, such as "lost support and services," in order to put the defendant on notice of the claim). Plaintiff's claim that he has suffered overwhelming financial and reputation damages (*see* D.E. 1 at ¶ 42) is more than sufficient to support a claim for defamation *per quod*, even at the motion to dismiss stage.

Defendants' last argument that Plaintiff's reputation could not have been harmed by the Article because he was already publicly known to be friends with Epstein and to have used bawdy language in the past is equally meritless. Defendants, once again, seek to inject matters from outside the "four corners" of the Complaint to somehow support their argument that the Article is consistent with Plaintiff's reputation. For the reasons set forth in the Response to the Request for Judicial Notice, this is wholly improper at this stage of the proceedings, and Defendants' request should be summarily rejected.

Regardless, even if the Court were to take judicial notice of the allegation that such publications exist, those random instances do not render Plaintiff impervious to any harm from Defendants' defamatory statements or the malicious association of President Trump with the disgraced Epstein. As the cases Defendants rely on make clear, the libel-proof plaintiff is one

whose "reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements *on that subject*." *Dykstra v. St. Martin's Press, LLC,* 2020 WL 2789913, *8 (N.Y. Sup. Ct. May 29, 2020) (internal quotations and citation omitted) (emphasis added); *see also Davis v. McKenzie,* 2017 WL 8809359, *16 (S.D. Fla. Nov. 3, 2017) (noting that the Florida Supreme Court has not adopted or considered the libel-proof plaintiff, but, nonetheless finding that plaintiff's "documented history of violence and of physical and sexual abuse, coupled with the widespread media accounts of his alleged abuse of several adult and minor females, have so thoroughly damaged his reputation that as a matter of law he cannot recover more than nominal damages as a result of the . . . broadcast."). Here, the Article amplifies the negative light cast upon Plaintiff's past relationship with Epstein by adding new, false, damaging context— the fake letter referring to a "common secret" the two of them shared—purportedly "discovered" after Epstein had been charged with sex trafficking of minors, which has nothing to do with the other publications Defendants seek to inject. Further, if the purported letter was not newsworthy, why did Defendants, who are in the news business, publish the Article on the front page, and devote significant resources and coverage to it? This argument by Defendants is fatally flawed.

As demonstrated above, Plaintiff has more than adequately pled a claim for defamation *per quod*. As such, Defendants' Motion to Dismiss this claim should be denied.

## VII.   The Complaint Sufficiently And Plausibly Alleges Actual Malice.

Under Florida law, actual malice is demonstrated when the plaintiff pleads "facts giving rise to a reasonable inference that the defendant published the story knowing that it was false or with reckless disregard for whether it was false or not." *Dershowitz v. Cable News Network, Inc.,* 541 F. Supp. 3d 1354, 1367 (S.D. Fla. 2021) (internal quotation omitted). To survive a motion to dismiss, "'malice must be alleged plausibly in accordance with Rule 8.'" *Nunes v. NBCUniversal*

*Media, LLC,* 643 F. Supp. 3d 403, 418-19 (S.D.N.Y. 2022) (quoting *Biro v. Conde Nast,* 807 F.3d 541, 545 (2d Cir. 2015); *Veritas v. Cable News Network, Inc.,* 121 F.4th 1267, 1283 (11th Cir. 2024) ("[A]t the pleadings stage, [plaintiff] need only allege sufficient facts to permit the inference that [defendant] published [the] statements with actual malice.").

"'The hurdles to plausibly pleading actual malice, though significant given the First Amendment interests at stake, are by no means insurmountable.'" *Nunes,* 643 F. Supp. 3d at 419 (quoting *Biro,* 807 F.3d at 545). "'[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of each case' and 'a court typically will infer actual malice from objective facts . . .'" *Id.* "A failure to investigate is not alone sufficient to establish actual malice, *but* 'reliance on anonymous or unreliable sources without further investigation may support an inference of actual malice.'" *Nunes,* 643 F. Supp. 3d at 419 (*Brio,* 807 F.3d at 546). "The actual malice analysis also may weigh whether the speaker knew and ignored 'the journalistic consensus' about a disputed statement, any revisions made during the editorial process and whether the speaker 'had a personal connection . . . that animated his [or her] hostility . . . .'" *Nunes,* 643 F. Supp. 3d at 419 (*citing Palin v. New York Times Co.,* 940 F.3d 804, 814-15 (2d Cir. 2019)).

The Supreme Court has even found that a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence, which is often the only way to prove malice in libel cases. *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 668, 681-82, 683-84 (1989). Actual malice exists based on the "sum total of the inferences of actual malice" that may be properly drawn. *Hunt v. Liberty Lobby,* 720 F.2d 631, 645-46 (11th Cir. 1983). Although "a showing of ill will, alone, cannot establish actual malice . . . ill will or motive, when combined with other evidence, may amount to actual malice." *Don King Prods., Inc. v. Walt Disney Co.,* 40 So. 3d 40, 44 (Fla. 4th DCA 2010).

Defendants wrongly contend that Plaintiff's Complaint fails to allege that Defendants' statements were made with actual malice, which they were. Such a contention is wrong and entirely premature given that overwhelming questions are outstanding as to the legitimacy and authenticity of the letter and its creation. Defendants acted with a reckless disregard for whether the letter, and the subsequent statements made by Defendants about its creation, were false or not. In addition, Defendants' contention is further belied given that Plaintiff's Complaint includes detailed allegations beyond mere boilerplate assertions of malice. Specifically, Plaintiff has alleged that Defendants:

- Had knowledge of the falsity of the statements they published or acted with reckless disregard for the truth. The Complaint outlines how Defendants were aware of contradictory evidence, including Plaintiff's repeated denials, yet proceeded with publication, as well as each Defendant's respective role in the smear campaign. These are not mere general allegations of malice, but a claim grounded in factual details that suggest Defendants acted with serious doubts about the truth of their reporting. *See* D.E. 1 at ¶¶ 12-14, 26-27, 30, 37-39, 63-66.

- Failed to conduct an adequate investigation before publishing the statements, despite the availability of alternate sources that could have verified Plaintiff's denials. This failure to verify or investigate the truth of their claims supports an inference of actual malice, as Defendants' actions suggest a reckless disregard for the truth. *See id.* at ¶¶ 22-23, 26-27. This aligns with the case law recognizing that "failure to investigate" does support a finding of actual malice. *See Harte-Hanks,* 491 U.S. at 692.

- Published with personal animus and ill-will, which courts have recognized as a possible factor contributing to actual malice. Plaintiff specifically alleges that Defendants were motivated by a hostile animus toward him,[6] which manifested in the tone and content of the Article. *See* D.E. 1 at ¶¶ 17-27, 30-31, 37-38, 63-66. While improper motive alone is not dispositive, it may contribute to the broader pattern of conduct that can support an inference of actual malice.

---

[6] In their Motion to Dismiss, Defendants do not contest the allegations in the Complaint that support a determination that Defendants possess serious animus toward the Plaintiff, nor can a genuine argument be made to that effect.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Further, the fact that Defendants contacted Plaintiff, by unprofessionally giving Plaintiff a very short time to respond, and published his denial does not, as a matter of law, automatically preclude an inference of actual malice. Inclusion of a denial does not negate the possibility of actual malice, particularly when there is evidence suggesting that the defendant acted with reckless disregard for the truth. *See Connaughton v. Harte Hanks Commc'ns,* 842 F.2d 825, 827 (6th Cir. 1988), *aff'd* 491 U.S. 657 (1989) ("However, it is clear that 'mere publication of a denial by the defamed subject does not absolve a defendant from liability for publishing knowing or reckless falsehoods.' The fact that defendant published plaintiff's denial of inferences contained in its articles is not dispositive of whether defendant printed the falsehoods with actual malice.  . . . Furthermore, printing a denial of accusations made in an article does not necessarily insulate a newspaper from liability since it fails to correct the damage already done by the dissemination of the falsehood.") (citation omitted); *Croce v. New York Times Co.,* 930 F.3d 787, 795 (6th Cir. 2019) (same); *see also Dempsey v. Time Inc.,* 252 N.Y.S.2d 186, 189 (N.Y. Sup. Ct. 1964) ("[T]he suggestion that a libel be excused because a denial made by the subject thereof is also published . . . is patently absurd."); *Morgan v. Bulletin Co.,* 85 A.2d 869, 872 (Penn. 1952) ("A denial often lends piquancy to the story, and printing one would be an easy escape from liability if that were all there was to it."). Here, Plaintiff stated that Defendants relied on unreliable sources and failed to undertake a reasonable investigation into the facts, even after Plaintiff denied the existence of any letter, and then published the Article nevertheless. *See* D.E. 1 at ¶¶ 22, 26-27. Although Defendants included Plaintiff's denial, they did so in a way that made it seem as if Plaintiff's denial was false. This kind of reckless disregard for the truth by Defendants provides a sufficient basis for an inference of actual malice.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Plaintiff's allegations, taken together, go well beyond boilerplate language and sufficiently allege actual malice. *See Dershowitz,* 541 F. Supp. 3d at 1367-68 (finding allegations of actual malice sufficient to withstand motion to dismiss); *Embrey v. First Franklin Fin. Corp.,* 2013 WL 1289401, at *5 (S.D. Mar, 12, 2013) (denying motion to dismiss defamation claim where allegation the defendants "exhibited a knowing disregard for the truth" was "enough"); *Klayman,* 22 F. Supp. 3d at 1252 (finding jury issue where defendant who allegedly said plaintiff was convicted conducted "her own independent research" about court proceedings, "the trier of fact find [she] gained sufficient knowledge from her research either to know the terminology 'convicted' was false, or to harbor serious doubts as to its veracity").

As such, Defendants' Motion to Dismiss on this basis should be denied.

## VIII.   Defendants' Request For Attorneys' Fees Under Either Florida or New York's Anti-SLAPP Laws Is Misplaced.

As a threshold matter, as previously set forth herein, this lawsuit was filed in Florida and Florida law should govern this case, and, thus, only Florida's anti-SLAPP statute could apply. But even if the Court considers Defendants' request for attorneys' fees under both Florida and New York's anti-SLAPP laws, Defendants' request should be denied.

Under Florida's anti-SLAPP statute—Fla. Stat. § 768.295—a defendant can recover attorneys' fees only if the lawsuit is shown to be meritless and related to the defendant's exercise of its constitutional right to free speech in connection with a public issue. Here, Plaintiff has sufficiently pled a viable defamation claim based on the publication of allegedly false statements. The allegations are not conclusory or meritless, and they satisfy the pleading requirements for defamation claims under Florida law. Therefore, the Florida anti-SLAPP statute does not apply because the lawsuit is not "without merit."

Further, even if the New York law applied, Defendants would still not be entitled to attorneys' fees under New York's anti-SLAPP statute. Under New York's anti-SLAPP law—N.Y. Civ. Rights Law § 70-a—the Court would still need to assess whether Plaintiff's lawsuit is "without substantial basis in fact and law." As previously set forth, Plaintiff's defamation claim is not without merit, and therefore, this case does not meet the standards for the dismissal of claims under New York's anti-SLAPP statute.

Given the merit of Plaintiff's claims and the lack of applicability of either Florida or New York's anti-SLAPP statutes in this case, Defendants are not entitled to recover their attorneys' fees or costs. Accordingly, there is no basis for applying the anti-SLAPP statutes to dismiss the case or to award Defendants their attorneys' fees.

## IX.    Request For Leave To Amend.

While Plaintiff maintains his position that Defendants' Motion to Dismiss should be denied, in the event the Court is inclined to consider the Complaint to be somehow deficient, Plaintiff, in the alternative, respectfully requests that the Court grant him leave to amend his Complaint to cure any such deficiencies.

"[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988). "In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Garfield v. NDC Health Corp.,*

466 F.3d 1255, 1270 (11th Cir. 2006) (internal quotation and citations omitted). None of these reasons are apparent here.

Plaintiff submits that the substance of his amendment, should the Court be inclined to grant Defendants' Motion to Dismiss, would include additional facts to demonstrate why the statements are not substantially true, along with additional facts and innuendo by Defendants to show why the statements are defamatory, and additional evidence of actual malice for each Defendant. Accordingly, Plaintiff's request should be granted. *See, e.g., Wallis v. Cueto*, 2017 WL 6388914, at \*7 (S.D. Fla. Aug. 9, 2017) (granting Plaintiff's request for leave to amend defamation claim following dismissal of claim); *Jetaire Aerospace, LLC v. AerSale, Inc.,* 2024 WL 193518, \*3 (S.D. Fla. Apr. 17, 2024); *Log Creek, LLC v. Kessler,* 717 F. Supp. 2d 1239, 1251 (N.D. Fla. 2010); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (granting plaintiff's motion for leave to amend in a defamation action); *Aflalo v. Weiner*, 2018 WL 3235529, at \*5 (S.D. Fla. July 2, 2018) (granting leave to amend in a defamation action); *XTec, Inc. v. Hembree Consulting Services, Inc.*, 2014 WL 12729173, at \*4 (S.D. Fla. Aug. 1, 2014) (dismissing defamation counterclaim with leave to amend).

## X.      Request for Oral Argument.

Pursuant to S.D. Fla. L. R. 7.1(b)(2), Plaintiff hereby respectfully requests oral argument on the Motion to Dismiss due to the complex legal issues raised in the Motion, as well as Defendants' Request for Judicial Notice.  Specifically, Plaintiff believes Defendants' reliance on extraneous exhibits in support of their Motion to Dismiss may require further explanation as to the context of those exhibits and why they are not admissible or relevant at this stage of the proceedings. Further, the determination of the issues raised in the Motion to Dismiss relating to Defendants' reliance on the substantial truth doctrine may warrant further argument. Plaintiff also

believes that the Court would benefit from an oral argument in order for the parties to flesh out the issues in greater detail and provide the Court with further context should the Court require it. Plaintiff believes that the oral argument will last approximately one hour.

**<u>CONCLUSION</u>**

**WHEREFORE,** Plaintiff President Donald J. Trump respectfully requests that the Court enter an Order: (a) denying Defendants' Motion to Dismiss, and (b) granting Plaintiff any additional relief that this Court deems just and proper.  Alternatively, in the event that the Court grants any portion of Defendants' Motion to Dismiss, Plaintiff respectfully request that the Court grant Plaintiff leave to amend his Complaint in order to cure any pleading deficiencies.

Dated October 20, 2025

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office:  305-614-4071
Fax:  305-440-4385

By: /s/ *Alejandro Brito*
      **ALEJANDRO BRITO**
      Florida Bar No. 098442
      Primary: abrito@britopllc.com
      Secondary: apiriou@britopllc.com
      **IAN MICHAEL CORP**
      Florida Bar No. 1010943
      Primary: icorp@britopllc.com

      *Counsel for Plaintiff*
      *President Donald J. Trump*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on October

20, 2025, through the United States District Court for the Southern District of Florida's CM/ECF

electronic filing system upon:

George S. Lemieux, Esq.
Timothy J. McGinn, Esq.
Eric C. Edison, Esq.
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
glemieux@gunster.com
tmcginn@gunster.com
eedison@gunster.com
dpeterson@gunster.com
pholness@gunster.com
mzayas@gunster.com
eservice@gunster.com

Katherine M. Bolger, Esq.
Davis Wright Tremaine, LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020- 1104
katebolger@dwt.com
nycdocket@dwt.com

*Counsel for Defendants Dow Jones & Company, Inc.,*
*d/b/a The Wall Street Journal, News Corporation,*
*Keith Rupert Murdoch, Robert Thomson,*
*Khadeeja Safdar, and Joseph Palazzolo*

By: /s/ *Alejandro Brito*

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071