**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No.: 1:25-CV-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

    Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE WALL STREET JOURNAL, a Delaware corporation, NEWS CORPORATION, a Delaware corporation, KEITH RUPERT MURDOCH, an individual, ROBERT THOMSON, an individual, KHADEEJA SAFDAR, an individual, and JOSEPH PALAZZOLO, an individual,

    Defendants.
_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT**

George S. LeMieux (Florida Bar No. 16403)
Eric C. Edison (Florida Bar No. 010379)
Timothy J. McGinn (Florida Bar No. 1000377)
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

Katherine M. Bolger*
Amanda B. Levine*
Meenakshi Krishnan*
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

Andrew J. Levander*
Steven A. Engel*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com
*pro hac vice

President Trump's Opposition to the Motion to Dismiss (the "Motion")[1] confirms that his claims are meritless. Rather than engage with the House Oversight Committee's public release of the Epstein Birthday Book, which confirms the accuracy of the Article, President Trump demands that the Court ignore it. Rather than address Defendants' argument that the Article is not defamatory, President Trump asks the Court to rewrite it. Rather than grapple with case law requiring a plaintiff to plead more than boilerplate allegations of actual malice, President Trump asks the Court to disregard it. If all of these efforts fail, President Trump requests a do-over. But the Complaint should be dismissed with prejudice because the Article is true, it is not defamatory, and President Trump did not plausibly allege and cannot prove that Defendants published the Article with actual malice.

## ARGUMENT

### I. PRESIDENT TRUMP HAS FAILED TO STATE A DEFAMATION CLAIM

#### A. President Trump Cannot Establish That the Article Is Materially False

As Defendants' Motion explained, President Trump will never be able to establish that the Article is materially false because Congress has released the Birthday Book, which contains a letter bearing President Trump's name, identical in appearance and content to the Article's description. *See* Mot. at 6-8. In response, President Trump implores the Court to pay no attention to the Committee's publication of the Birthday Book because it is "outside the 'four corners' of the Complaint" (which pleads it is "fake" and "nonexistent"). Opp. at 6. This argument is meritless. The Court may consider the Birthday Book because it was incorporated by reference into the Complaint. *See* Mot. at 5 n.2; *see also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). In addition, as recognized in the very case President Trump cites, the Court may take

---

[1] This Reply uses the same abbreviations and capitalized terms as those set forth in the Motion.

judicial notice of the Birthday Book because it is a "government publication." *Dershowitz v. Cable News Network*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021) (citation omitted).[2]

President Trump next argues that even if the Court considers the Birthday Book and letter, the Motion's reliance on the Committee's documents amounts to a concession that Defendants did not have a copy of the letter before the Article's publication, which somehow renders the Article false. *See* Opp. at 7. But "[t]he truth, whenever discovered, serves as a complete defense." *See Marder v. TEGNA Inc.*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020); *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011) ("So long as what [the defendant] says turns out to be true, he is free from liability[.]"). The Article states that the reporters "reviewed" the letter before publication, Article at 3, and the Committee's publication of the letter confirms the reporting's accuracy. *Compare* Article at 4-5, *with* Ex. 5. President Trump's contrary argument is both implausible and irrelevant.

Next, President Trump argues that he pled falsity because he alleged: (1) the Article says the letter is "[f]rom" him; and (2) the letter is "fake." Opp. at 7-8. But President Trump ignores his own Opposition, which makes clear that "the Court 'must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication.'" Opp. at 8 (quoting *Hay v. Indep. Newspapers, Inc.,* 450 So. 2d 293, 295 (Fla. 2d DCA 1984)). The headline and first sentence, therefore, must be read with the Article's statements not just that there is a letter "bearing Trump's name" (as President Trump now admits[3]), but also that "[i]t isn't clear how the letter with Trump's signature was prepared." Article at 4. The Article also recounts at

---

[2] Without identifying a legal conflict, President Trump argues that Florida law should apply. Opp. at 3 n.2. The Court need not reach this question because there is no relevant conflict between New York and Florida law. Mot. at 6 n.3. But if there is a conflict, New York law should apply. *Id.* Defendants are located in New York and the Birthday Book—the document at the center of the Complaint—was compiled in New York. *Id.*

[3] *See* Opp. at 6-7 ("[A] letter as described by Defendants in the Article was purportedly among the documents produced by the Epstein estate to the House Oversight Committee …").

2

length President Trump's denial of the letter's authenticity, including in the sub-headline, in the three-paragraph statement from President Trump, and elsewhere. *Id.* at 1, 3. In short, the Article does not, as President Trump insists, state that he wrote the letter. Instead, it reports that a book of letters was compiled for Epstein's birthday, one letter bore President Trump's name and signature, and President Trump denies he was the author. The Birthday Book proves the Article true.

Finally, President Trump suggests that truth cannot be determined on a motion to dismiss. *See* Opp. at 8. But the Eleventh Circuit (like other courts) has repeatedly affirmed dismissals on this ground. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018); *Koly v. Enney*, 269 F. App'x 861, 865 (11th Cir. 2008). That is particularly so where, as here, the challenged statements characterize records incorporated by reference or subject to judicial notice. *See, e.g.*, *Marder*, 2020 WL 349644, at *3 (dismissing complaint because "[t]he publications say what they say and the documents submitted by Defendants say what they say"). Because the Article is substantially true, the Motion should be granted.

### B. President Trump Cannot Establish That The Article Is Defamatory

#### 1. The Article Is Not Defamatory *Per Se*

The Article is not defamatory *per se* because *even accepting* the President's argument that the Article falsely asserts he wrote the letter bearing his name, there is nothing defamatory about sending a bawdy letter to a friend. *See* Mot. at 8-10. In response, President Trump first argues that the cases Defendants cite, which discuss allegations of masturbatory fantasies, drunkenness, and extramarital relationships, involve conduct somehow less "serious" for defamation purposes than simply writing a bawdy note to a friend. *See* Opp. at 9. President Trump cites no case to support this baseless argument.

President Trump next argues that the Article is defamatory based on a bullet-point list of "critical statements" he claims are in the Article. Opp at 10. Initially, the "statements," as

3

enumerated by President Trump, are not in the Article. In any event, his *per se* claim is based on the allegation that the Article "falsely pass[es] off ***as fact*** that President Trump, in 2003, wrote, drew, and signed this letter." Compl. at 2 (emphasis in original); *see also id.* ¶¶ 24, 46. The list of "statements" focuses on President Trump's relationship with Epstein, not the contents of the letter.

Finally, President Trump simply misquotes the Article, asserting that it describes a letter about a "common secret" that he had with Epstein. Opp. at 10, 13 (quotation marks in original). But the Article *never* says this. It reports on a letter bearing the President's signature that includes the line, "Happy Birthday — and may every day be another wonderful secret." Article at 3. This vague phrase has no readily discernible meaning, and it certainly does *not* say that the President and Epstein share a "common secret." Because the Article's words do not carry a defamatory meaning, President Trump's defamation *per se* claim must be dismissed.

### 2. The Article Is Not Defamatory *Per Quod*

In the Motion, Defendants argued that President Trump failed to state a claim for defamation *per quod* because he cited no extrinsic facts that make the challenged statements defamatory and because he failed to plead special damages. Mot. at 10-13.

In response to the first argument, the President insists connecting "President Trump[] . . . with Epstein is damaging because Epstein was later charged with sex trafficking of minors." Opp. at 11. But, as discussed below, President Trump had admitted to his friendship prior to Epstein's arrest. And President Trump cannot avoid the case law cited in the Motion, which makes clear that even if the friendship were in dispute, calling someone friends with a criminal, including a sex offender, is not defamatory as a matter of law. *See* Mot. at 9. President Trump's only response is that those cases do not involve Epstein. *See* Opp. at 11. But there is no "Jeffrey Epstein exception" written into defamation law.

Further, while President Trump emphasizes Epstein's "notorious and highly publicized

4

criminal activities," *id*., the Article repeatedly makes clear that the Birthday Book was compiled long *before* Epstein was arrested and that President Trump's friendship with Epstein ended before Epstein's first arrest. Article at 3, 6. Acknowledging this is true, President Trump nonetheless claims this fact should be irrelevant because "the harm from the mere alleged association with Epstein during the time when Epstein was engaged in salacious criminal activities before getting caught happens irrespective of when that relationship ended." Opp. at 11. President Trump again cites no case law for his conclusory proposition. And accepting President Trump's argument would lead to the absurd result that any alleged association with someone who is arrested, even years later, would be defamatory. There is no legal support for such an outcome.

In response to the second argument, President Trump insists that he alleged special damages because he pled "damage to his reputation." Opp. at 12. But reputational damage is an archetypal "general damage," *not* a "special damage." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) ("Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount[.]").[4] The allegations in the Complaint are insufficient as a matter of law. Mot. at 12.

### iii. The Article Cannot Damage President Trump's Reputation

Even if suggesting that President Trump and Epstein were friends in 2003 could be defamatory, President Trump's reputation cannot be damaged by the challenged statements because President Trump long acknowledged his friendship with Epstein. Mot. at 12-15. In response, President Trump makes two ineffective arguments. *First*, he claims that the Court should not take judicial notice of the published articles attached to Defendants' Motion. Opp. at 12. But,

---

[4] *Show Plus Promotions, LLC v. Valley Nat'l Bancorp.*, 2024 WL 3745213 (S.D. Fla. May 13, 2024), the only case cited by President Trump that speaks to reputational damage, is not to the contrary. There, the plaintiff alleged not only reputational damage but also the loss of a specific client, *id.* at *9.

5

as to President Trump's friendship with Epstein, the Court need not consider anything other than the unchallenged portions of the Article itself,[5] which sets forth that history, including President Trump's on-the-record quote to *New York* magazine, three months before Epstein's 50th birthday, that he had known Epstein "for 15 years" and that Epstein was a "terrific guy." Article at 6.[6]

*Second*, President Trump argues that the Article can still damage his reputation because it adds new information about his "past relationship with Epstein." Opp. at 13. This misses the point. The relevant question is whether the "gist" of the challenged statements can cause further reputational damage. *See Dykstra v. St. Martin's Press, LLC*, 2020 WL 2789913, at *13 (N.Y Sup. Ct. May 29, 2020). Here, while the Article's reporting on the Birthday Book may be novel, the "gist" of the challenged statements—*i.e.*, that President Trump was friends with Epstein in 2003— is a matter of common, indisputable knowledge. The Article cannot cause any further harm.[7]

### C. President Trump Fails To—And Cannot—Plead Actual Malice

In his Opposition, President Trump attempts to convince this Court that his Complaint offers more than just insufficient conclusory allegations of actual malice. Opp. at 14-17. But the "list" of allegations that President Trump provides only highlights the Complaint's deficiencies.

*First*, President Trump claims that the Complaint "outlines" that Defendants knew of "contradictory evidence, including [his] repeated denials[.]" Opp. at 15. But, in fact, his denial is the only "evidence" the Complaint "outlines." Such "denials without more do not support a plausible claim of actual malice." *Brimelow v. N.Y. Times*, 21-66-cv, 2021 WL 4901969, at *3 (2d

---

[5] In addition, as a mountain of precedent suggests, the Court may take judicial notice of the articles, which are offered not for their truth, but for the fact that they constituted part of the public reporting bearing upon President Trump's reputation. *See* RJN Reply at 5-6.

[6] President Trump notably does not challenge any of these specific statements about his friendship with Epstein or the photograph showing him with his arm around Epstein in 1997. Article at 2, 6.

[7] In addition, as Defendants' Motion explained, to the extent allegations that someone sent a bawdy letter to a friend could be defamatory (and they are not), President Trump's own public statements and numerous published articles establish that he has a self-acknowledged reputation for "locker room banter." Mot. at 14-15.

Cir. Oct. 21, 2021). Otherwise, any published statement would be "by virtue of that denial, published with actual malice," which would "empower public figures to silence opposing speech." *McInnes v. S. Poverty L. Ctr.*, 2025 WL 2942241, at *9 (M.D. Ala. Oct. 16, 2025).

Further, far from ignoring President Trump's denial, the Article quotes it extensively. *See* Article at 3. According to President Trump, this is still insufficient because (1) he was given a "very short time to respond," and (2) the Article "made it seem as if [his] denial was false." Opp. at 16. As to the former, the Complaint alleges that President Trump was asked to comment two days before the Article's publication. *See* Compl. ¶ 12. Courts have found that shorter comment windows—or the failure to seek comment at all—do not establish actual malice. *See, e.g.*, *Penaherrera v. N.Y. Times Co.*, 2013 WL 4013487, at *10-11 (Sup. Ct. N.Y. Cty. Aug. 8, 2013) ("that the three publications failed to contact her, does not as a matter of law, establish actual malice"); *Coliniatis v. Dimas*, 965 F. Supp. 511, 518 (S.D.N.Y. 1997) (no actual malice where newspaper contacted plaintiff one day before publication). As to the latter, President Trump admits that he responded, s*ee* Compl. ¶ 13, and the Article quoted his denial.[8] It is implausible to allege that fully and accurately quoting President Trump makes his denial seem false.

*Second*, President Trump claims that Defendants failed to "conduct an adequate investigation" because there were "alternate sources that could have verified [his] denials." Opp. at 15. Neither the Complaint nor the Opposition identifies those "alternate sources." And failing to follow a plaintiff's "preferred" course of investigation is not evidence of actual malice. *Levan*

---

[8] President Trump claims that "printing a denial of accusations made in an article does not necessarily insulate a newspaper from liability." Opp. at 16. He cites to various cases in support of this proposition, including a 1952 Pennsylvania state court case that pre-dates the constitutionalization of actual malice in *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Regardless, Defendants never argue that printing President Trump's denial, alone, precludes a finding of actual malice. Rather, as Defendants' Motion explains, this is one factor that undercuts a showing of actual malice, along with the fact that the Article devotes significant space to President Trump's position, and the Article is entirely consistent with his reputation. Mot. at 18.

7

*v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1243 (11th Cir. 1999) (news organization is "not required to continue its investigation until it found *somebody* who would stand up for [the plaintiff]"). In fact, the Eleventh Circuit recently held that even "intentionally choosing not to speak with any witnesses who could have refuted the allegedly defamatory statements" does not support a finding of actual malice. *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025).

This case thus differs from the cases relied upon by President Trump, including *Dershowitz* and *Klayman v. Judicial Watch*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014). In both of those cases, the plaintiff pointed to specific pieces of contradictory information in defendants' custody that they allegedly ignored. President Trump does not and cannot do any such thing here.

*Third*, President Trump inaccurately claims that Defendants acted with "personal animus and ill-will," which he alleges is "manifested in the tone and content of the Article." Opp. at 15. But his Complaint points to nothing in the Article that manifests this purported "animus" and, in any event, "[i]ll-will, improper motive or personal animosity plays no role in determining" actual malice. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999).

*Finally*, President Trump argues the "sum total of the inferences" pleads actual malice. Opp. at 14. The court rejected an identical argument in *Brimelow*. There, the plaintiff alleged that the defendant acted with actual malice based on several factors, including that the defendant ignored the plaintiff's denials, acted with ill-will, and failed to investigate further. 2021 WL 4901969, at *2-3. Yet the Court held there was "no combination of allegations from which one could plausibly infer that [the defendant] was purposely avoiding the truth in its reporting." *Id.* at *3. The same is true here. Zero plus zero still equals zero, and President Trump has failed to plead

actual malice.[9]

## II.     THE ANTI-SLAPP LAW APPLIES HERE

In his Opposition, President Trump does not dispute that the prerequisites of the anti-SLAPP law are met; he argues only that his lawsuit has merit. Opp. at 17-18. Thus, even under his logic, if the Court grants Defendants' Motion, they are entitled to their fees.

## III.     LEAVE TO AMEND WOULD BE FUTILE

Finally, President Trump argues that if the Court dismisses his Complaint, he should be given leave to amend. Opp. at 18-19. That request is procedurally defective. A request for leave to amend is properly raised in a motion for leave to amend, not a Rule 12(b)(6) opposition. *See Newton v. Duke Energy Fla.*, 895 F.3d 1270, 1277-78 (11th Cir. 2018); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018).

In any event, a plaintiff "should not be allowed to amend [his] complaint without showing how the complaint could be amended to save the meritless claim." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006) (denying leave to amend where plaintiff made no specific argument as to how an amended complaint would cure deficiencies). President Trump has made no such showing, claiming only that he would add unidentified "additional facts." Opp. at 19.

In fact, because President Trump will never be able to make such a showing, amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *see also Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1127 (S.D. Fla. 2021) (denying leave to amend in defamation action); *Pierce v. Warner Bros Ent.*, 237 F. Supp. 3d 1375, 1383 (M.D. Ga. 2017) (amendment futile where challenged statements are "nondefamatory" and "protected by the First

---

[9] Other than vaguely claiming that he outlines each "Defendant's respective role in the smear campaign," Opp. at 15, President Trump does not contest that he fails to "bring home" the actual malice standard as to each named defendant. *See* Mot. at 17.

Amendment"). No "additional facts" that President Trump adds to his Complaint can turn the non-defamatory, truthful Article into a defamatory, false one published with actual malice. *See Parekh v. CBS*, 820 F. App'x 827, 834 (11th Cir. 2020) (holding "no amendment could correct the deficiency that the statements in the news report are not defamatory as a matter of law"); *IME Watchdog v. Gelardi*, 2024 WL 4350498, at *19 (E.D.N.Y. Sept. 30, 2024) (amendment is futile where dismissed statements were true); *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1278 (S.D. Fla. 2020) (amendment futile as the non-defamatory statements "will not change with an amended complaint"); *Sloan v. Shatner*, 2018 WL 3769968, at *7 (M.D. Fla. June 22, 2018) ("Amending would be futile because a viable defamation action does not exist" based on the challenged statements.). President Trump cannot state a claim for defamation.

## CONCLUSION

This case should be dismissed. "Believing in the power of reason as applied through public discussion, [our Founders] eschewed silence coerced by law—the argument of force in its worst form." *Sullivan*, 376 U.S. at 270 (quoting *Whitney v. California*, 274 U.S. 356, 375-76 (1927)). For these reasons, as well as those set forth in Defendants' Motion, the Court should dismiss the Complaint with prejudice and grant Defendants their fees and costs.

Dated: November 5, 2025

By: */s/ George S. LeMieux*

**GUNSTER, YOAKLEY & STEWART, P.A.**
George S. LeMieux
(Florida Bar No. 16403)
Eric C. Edison
(Florida Bar No. 010379)
Timothy J. McGinn
(Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger*
Amanda B. Levine*
Meenakshi Krishnan*
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

**DECHERT LLP**
Andrew J. Levander*

| | |
|---|---|
| eedison@gunster.com<br>tmcginn@gunster.com | Steven A. Engel*<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 698-3500<br>andrew.levander@dechert.com<br>steven.engel@dechert.com<br>*pro hac vice*<br>*Counsel for Defendants* |