UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:25-CV-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

    Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE WALL STREET JOURNAL, a Delaware corporation, NEWS CORPORATION, a Delaware corporation, KEITH RUPERT MURDOCH, an individual, ROBERT THOMSON, an individual, KHADEEJA SAFDAR, an individual, and JOSEPH PALAZZOLO, an individual,

    Defendants.
_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**REQUEST FOR JUDICIAL NOTICE**

President Trump's Opposition to Defendants' Request for Judicial Notice (the "RJN Opposition") is largely based on a straw man argument: He claims that Defendants ask this Court to take judicial notice of each document annexed to the Bolger Declaration and accept each of these documents as "established truth."[1] But that is *not* what Defendants ask of this Court. As an initial matter, as explained in Defendants' Motion to Dismiss (the "Motion") and Request for Judicial Notice (the "RJN"), the Court need not even take judicial notice of Exhibits 4 and 5—the Birthday Book and letter bearing President Trump's name—in order to consider them at this juncture because they are incorporated by reference. In any event, the Court can take judicial

---

[1] This Reply in further support of Defendants' RJN uses the same abbreviations as Defendants' Motion to Dismiss.

notice of these and the remaining Exhibits to the Bolger Declaration because they are either government documents or they are news reports that are being introduced not for the truth of the documents' contents but merely for their existence in the public record. This Court should grant Defendants' Request for Judicial Notice.

## ARGUMENT

### I. Exhibits 4 and 5 Are Incorporated By Reference

First, the Court need not even reach the question of whether to take judicial notice of the Birthday Book and letter (Exs. 4 and 5) because they are incorporated by reference into the Complaint. *See* Mot. at 5 n.2. A document is incorporated by reference if it is: "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted). This is true regardless of whether the plaintiff physically attaches the document to—or even references it in—the pleading. *See Johnson v. City of Atlanta*, 107 F. 4th 1292, 1300 (11th Cir. 2024). If a complaint is contradicted by documents incorporated by reference, the documents—not the allegations in the complaint—control. *See Vallina v. Mansiana Ocean Residences LLC*, 2011 WL 11674441, at *9 (S.D. Fla. June 17, 2011), *citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint or matters properly subject to judicial notice.").

Here, Exhibits 4 and 5 are central to President Trump's claim. Indeed, his entire Complaint centers around the Birthday Book and the letter bearing his name. *See, e.g.*, Compl. ¶ 27. President Trump's baseless claim that the letter is "nonexistent" does not change this conclusion.

In addition, President Trump does not dispute that the Birthday Book and letter were produced by the Epstein estate in response to a subpoena from the House Oversight Committee,

2

which subsequently published the documents on the Committee's website. *Johnson*, 107 F.4th at 1300 (documents are "undisputed" when "the *authenticity* [of the document] is not challenged.") (emphasis added). Instead, he speculates that there remains "reasonable dispute" that the letter bearing his name and signature that appeared in the Birthday Book "is the same drawing allegedly heard about, seen, imagined[,] or otherwise conjured up by a [*Wall Street Journal*] reporter." RJN Opp. at 7. This is a red herring. Defendants ask the Court to consider these documents to establish that there was, in fact, a book of letters compiled for Jeffrey Epstein's 50th birthday, one of those letters bore President Trump's name and signature, and that letter contained a fictional conversation between President Trump and Epstein as well as a doodle of a naked woman. They are not asking this Court to determine what was or was not seen by *Wall Street Journal* reporters.[2]

At bottom, because President Trump does not and cannot dispute that these documents are central to his Complaint and authentic—*i.e.* actual documents from the Epstein estate produced to Congress and subsequently released by Congress to the public—they are incorporated by reference into the Complaint, and the Court should consider them when deciding the Motion.

## II. The Court Should Consider Exhibits 2 Through 5 In Deciding Defendants' Motion

In addition to being incorporated by reference into the Complaint, Exhibits 4 and 5, as well as Exhibits 2 and 3, are proper subjects of judicial notice because they are documents published by a government agency. *See* Mot. at 5 n.2; RJN at 3-4. In his Opposition, President Trump does not dispute that courts regularly take judicial notice of documents available on government websites, but he claims the Court should nonetheless ignore these documents for two reasons.

---

[2] In President Trump's Opposition to Defendants' Motion, he also argues that there is no evidence that he "actually wrote and signed the letter or sent it." MTD Opp. at 7. President Trump does not make this argument in his RJN Opposition, presumably because the sole issue is whether the document reflects what the House Oversight Committee received from the Epstein estate—a fact not in dispute.

*First*, President Trump argues that these documents are not the *type* of government document of which courts take judicial notice. *See* RJN Opp. at 7 n.1; *but see Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). He seeks to distinguish the cases cited in the RJN involving filings from the U.S. Patent and Trade Office, which are supposedly "neutral" filings, submitted "under regulatory compulsion" to an agency charged with "record integrity." RJN Opp. at 7 n.1. But the Birthday Book and letter (Exs. 4-5) *were* submitted to the House Oversight Committee under government "compulsion" because they were produced in response to a subpoena (Ex. 2). President Trump also does not provide any legal authority in support of his proposition that judicial notice is limited only to certain kinds of government records. To the contrary, courts regularly take judicial notice of all kinds of documents that appear on government websites, including but not limited to information about: the COVID-19 pandemic published on a congressional website, *Wandel v. Gao*, 590 F. Supp. 3d 630, 636 n.4 (S.D.N.Y. 2022); a credit card servicer posted by the Federal Deposit Insurance Corporation, *Cavero v. L. Offs. of Erskine & Fleisher*, 2012 WL 13134213, at *2 (S.D. Fla. Aug. 28, 2012); demographics published by the Department of Education, *Christa McAuliffe Intermediate Sch. PTO v. de Blasio*, 364 F. Supp. 3d 253, 262 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019); details about the President published on the White House's website, *Harris v. U.S. Secret Serv.*, 605 F. Supp. 3d 410, 413 (N.D.N.Y. 2022); and language options offered to Florida voters, *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1123 (11th Cir. 2022). Here, where the House Oversight Committee published the subpoena, issued a press release about that subpoena, and published the documents produced pursuant to that subpoena, those records are subject to judicial notice.

*Second*, as noted in Section I, *supra*, President Trump argues that the letter produced by the Epstein estate may not be the exact letter that Defendants reviewed. But as Defendants explain in their concurrently filed reply in support of their Motion, "[t]he truth, whenever discovered, serves as a complete defense" to defamation. *Marder v. TEGNA Inc.*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020). In other words, even if the letter that Defendants reviewed is not the same letter produced by the Epstein estate and released by the House Oversight Committee—a proposition that utterly defies reality given that the Article directly quotes the letter released by the Oversight Committee—the Article is nonetheless true because it accurately describes the letter. This Court can take judicial notice of Exhibits 2 through 5.

### III. The Court Should Also Consider Exhibits 6 through 12 Because They Are Not Being Introduced For The Truth Of The Matter Asserted

Exhibits 6 through 12 are news articles, transcripts of interviews with President Trump, and President Trump's public campaign statements. The Court may properly take judicial notice of them under well-established law. *See* RJN at 4-5. As President Trump himself recognizes, courts regularly take judicial notice of media reports not for the truth of the matters asserted therein but for purposes of establishing what has been published. *See* RJN Opp. at 2; *see also Hesse v. Godiva Chocolatier*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020); *Wood v. Netflix*, 2025 WL 918078, at *8 (M.D. Fla. Mar. 26, 2025) (taking judicial notice of the "*existence* of the news articles," not the truth of their contents) (emphasis added); *Prince v. Intercept*, 634 F. Supp. 3d 114, 136 n.24 (S.D.N.Y. 2022) (proper to take judicial notice of "the existence of articles written by and about [p]laintiff for purposes of establishing when the articles were published and what was reported"). It is for this reason that Defendants ask the Court to take judicial notice of Exhibits 6 through 12. *See* Mot. at 14-15.

Ignoring the basis for which Defendants offer these Exhibits, President Trump argues that Defendants want the Court to "assume as verifiable fact the contents of the document[s]," and then attacks the veracity of one statement contained within one of the exhibits.[3]  RJN Opp. at 8-9.  But President Trump is incorrect.  Whether the information (including from his own campaign website) contained in the documents is true or false is irrelevant; what is relevant is that these published documents bear upon President Trump's public reputation.  *See Cerasani v. Sony Corp.*, 991 F. Supp. 343, 346 (S.D.N.Y. 1998) (determining that plaintiff's reputation could not be further damaged by allegedly defamatory publication based on documents of which the court took judicial notice).

At bottom, because Defendants only ask this Court to consider Exhibits 6 through 12 for the fact that they were published and for what statements they contain—not for the truth of those statements—the Court should take judicial notice of these Exhibits.

## IV.     Defendants Satisfied Rule 201's Standard

Finally, President Trump argues that the Court should decline to take judicial notice of the Exhibits to the Bolger Declaration because Defendants did not "pinpoint the exact facts [they] claim[] are subject to the strict requirements of Rule 201."  RJN Opp. at 4.  President Trump cites to no authority for the purported "strict requirements" of Rule 201, which provides that a court "may judicially notice a fact that is not subject to reasonable dispute" either because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot

---

[3] President Trump notably does not dispute *any* of the specific statements actually referenced in Defendants' Motion. Instead, takes issue with *one* quotation in Exhibit 10 (a *Politico* article listing past statements attributed to President Trump).  *See* RJN Opp. at 9-10.  This quotation—about President Trump's business dealings with Chinese individuals—is entirely irrelevant to (and not mentioned in) Defendants' Motion. And the fact that a false quote is included in an article that purports to describe "The 199 Most Donald Trump Things Donald Trump Has Ever Said," *see* Ex. 10, only further supports Defendants' point—that President Trump has a well-established public reputation for speaking in a specific manner.

6

reasonably be questioned." Fed. R. Evid. 201. And this case is nothing like those cited in President Trump's RJN Opposition. *Id.* at 4-5. In *Lozman v. City of Riviera Beach*, for example, the Court declined to take judicial notice of several documents where the party "ma[de] no effort to specify or clarify" what it wanted the Court to judicially notice, or for what purpose. 2022 WL 19919679, at *7 (S.D. Fla. Sept. 29, 2022). Likewise, in *L.R. v. Cigna Health & Life Insurance Co.*, the party merely provided a "summary statement" that an article was "relevant" but included "literally no analysis of the facts" to the claims at issue. 2023 WL 3479064, at *1 (M.D. Fla. May 16, 2023). Here, by contrast, Defendants are asking the Court to judicially notice: (1) the *general existence* of governmental records, campaign statements, and news coverage of President Trump; and (2) *the existence of specific statements* within those documents, which speak to President Trump's reputation for having been friends with Epstein and engaging in "locker room banter." *See* RJN at 3; Mot. at 8, 12-15, 19.

Because the Court is not "left to guess" the documents subject to Defendants' request for judicial notice or the reasons for Defendants' request, RJN Opp. at 6, the Court may take judicial notice of Exhibits 2 through 12, consistent with Rule 201.

## **CONCLUSION**

For the foregoing reasons and those set forth in their RJN, Defendants respectfully request that the Court take judicial notice of Exhibits 2 through 12 to the Bolger Declaration.

| | |
|---|---|
| Dated: November 5, 2025 | Respectfully submitted, |
| By: */s/ George S. LeMieux* | **DAVIS WRIGHT TREMAINE LLP** |
| | Katherine M. Bolger* |
| **GUNSTER, YOAKLEY & STEWART, P.A.** | Amanda B. Levine* |
| George S. LeMieux | Meenakshi Krishnan* |
| (Florida Bar No. 16403) | 1251 Avenue of the Americas, 21st Floor |
| Eric C. Edison | New York, NY 10020 |
| (Florida Bar No. 010379) | Telephone: (212) 489-8230 |
| Timothy J. McGinn | katebolger@dwt.com |

7

(Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

amandalevine@dwt.com
meenakshikrishnan@dwt.com

**DECHERT LLP**
Andrew J. Levander*
Steven A. Engel*
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com
*pro hac vice*

*Counsel for Defendants*