UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25-CV-23232-DPG

PRESIDENT DONALD J. TRUMP,
an individual,                          Miami, Florida

        Plaintiff,                      December 9, 2025

            vs.                         10:00 a.m. to 11:55 a.m.

DOW JONES & COMPANY, INC.,
d/b/a THE WALL STREET JOURNAL,
a Delaware corporation, NEWS            Pages 1 to 87
CORPORATION, a Delaware corporation,
KEITH RUPERT MURDOCH, an individual,
ROBERT THOMSON, an individual,
KHADEEJA SAFDAR, an individual, and
JOSEPH PALAZZOLO, an individual.

        Defendants.
_____


                        MOTION HEARING
        BEFORE THE HONORABLE DARRIN P. GAYLES
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFF:          ALEJANDRO BRITO, ESQ.
                            JALAINE GARCIA, ESQ.
                            IAN M. CORP, ESQ.
                            BRITO, PLLC
                            2121 Ponce de Leon Boulevard
                            Suite 650
                            Coral Gables, Florida 33134


FOR THE DEFENDANTS:         GEORGE S. LeMIEUX, ESQ.
                            ERIC EDISON, ESQ.
                            GUNSTER YOAKLEY & STEWART, P.A.
                            450 East Las Olas Boulevard
                            Suite 1400
                            Fort Lauderdale, Florida 33301
                                    -and-

```
ALSO FOR DEFENDANTS:        KATHERINE M. BOLGER, ESQ.
                            DAVIS WRIGHT TREMAINE, LLP
                            1251 Avenue of the Americas
                            21st Floor
                            New York, New York 10020
                                      -and-
                            ANDREW J. LEVANDER, ESQ.
                            STEVEN A. ENGEL, ESQ.
                            DECHERT, LLP
                            1095 Avenue of the Americas
                            New York, New York 10036


STENOGRAPHICALLY REPORTED BY:

                            PATRICIA DIAZ, FCRR, RPR, FPR
                            Official Court Reporter
                            United States District Court
                            400 North Miami Avenue
                            11th Floor
                            Miami, Florida 33128
                            (305) 523-5178
```

(Call to the Order of the Court.)

THE COURT:  Please be seated.

COURTROOM DEPUTY:  Calling case 25-CV-23232, Trump versus Murdoch.

Counsel, please state your appearances, starting with the plaintiffs.

MR. BRITO:  Good morning, Your Honor.  Alejandro Brito, along with my colleagues, Jalaine Garcia, and Ian Corp on behalf of the plaintiff.  Good morning.

THE COURT:  All right.  Good morning.

MR. LEMIEUX:  Good morning, Your Honor.  George LeMieux, and Eric Edison, from the Gunster law firm, along with my colleagues, Andrew Levander, Steven Engel from Dechert, and Kate Bolger from Davis Wright.

We also have our client here, Jason Conti from Dow Jones.

THE COURT:  Okay.  Good morning.

All right.  We are here for a hearing on the pending motions, the motion to dismiss, as well as defendants' request to take judicial notice.

I think perhaps we should take up the motion to take judicial notice first because that kind of dictates what I'm considering.

Do you agree?

Who's going to argue?

MR. LEVANDER:  I am, Your Honor, Andrew Levander.

THE COURT:  Okay.  Are you fine with proceeding with that motion first?

MR. LEVANDER:  Sure.

THE COURT:  Okay.

MR. LEVANDER:  Good morning, Your Honor, and may it please the Court.

As the Court is aware, this case concerns the July 17th, 2025, Wall Street Journal article regarding the Epstein Birthday Book.

The article describes the book and various letters from famous people, including a detailed and accurate description of both the content and format of the letter bearing the signature of Donald Trump.

President Trump brings this defamation lawsuit to recover alleged damages for the publication of such truthful information.  So, as we will discuss this morning, these claims are meritless for numerous reasons, but first today we are going to address the motion for taking judicial notice.

So -- and with the Court's leave, two things.

One is that I would ask that I share the argument on the motion to dismiss with my colleague, Kate Bolger.  She will argue point three, and I will argue points one and two.  And I'd also like, with the Court's leave, to reserve 6 of our 30 minutes for rebuttal.

THE COURT:  Okay.

MR. LEVANDER:  With regard to the motion for judicial notice, the complaint alleges that the letter in the Epstein Birthday Book reported by the Wall Street Journal was nonexistent and a fake.  That's in paragraph 22 and 27 of the complaint.  Subsequently, of course, the House Oversight Committee released a copy of the Epstein Birthday Book that it had subpoenaed from the Epstein estate.

The defendants have asked the Court to consider the Epstein Birthday Book, and more specifically, the letter bearing President Trump's signature, which is page 165 of the Birthday Book.  The Birthday Book is Exhibit 4.  The page for the Court's ease has been reprinted as Exhibit 5.

The Court may consider both exhibits since they are both incorporated by reference in the complaint and since they are official government records posted to the House Oversight Committee website.

As to the first point, Your Honor, the complaint references the letter and the Birthday Book in more than 20 paragraphs, starting with the opening paragraph entitled Nature of the Action.

Initially, President Trump asserted that the letter and the book did not exist.  That claim fell by the wayside when the House Oversight Committee published it, and whatever President Trump's claims are now, the incorporation by

reference principle is controlling in this case.

As this Court held in Vallina versus Mansiana Ocean Residences, 2011, WL 11674441, at pages nine, and footnote six, quote, "a Court is not required to accept as true conclusory allegations which are contradicted by documents referenced in the complaint."

More recently, in Johnson versus City of Atlanta, 107 F.4th 1292, last year the Eleventh Circuit held that the district court properly considered a police officer's body cam footage of plaintiffs' arrest on a motion to dismiss even though the recording had not been mentioned in the complaint. The Eleventh Circuit explained that, nonetheless, by making the arrest central to his claims the plaintiff had incorporated the arrest recording by reference and, therefore, the district court properly considered it.

THE COURT:  I'm sorry, which case did you just cite?

MR. LEVANDER:  Johnson versus City of Atlanta 107 F.4th 1292, Eleventh Circuit 2024.

THE COURT:  So, I mean, I think it's the heart of, I guess, to some degree of my concern about the incorporation by reference doctrine as applied here.

You know, in a typical case, the parties might have a contract.  It's not attached to the complaint.  The complaint cites passages of the contract.  So, ultimately the Court can consider it under the theory of incorporation by reference.

Here, the plaintiff is saying it didn't exist.  So, it seems to make that -- the application here a little more murky.

MR. LEVANDER:  That's the point of the Johnson case in a way, Your Honor, because there the defendant, you know, made a claim about the arrest and the Court said even though the complaint didn't reference the tape by alleging certain things about the arrest, it was incorporating by reference the tape, and the Court was permitted to consider it.

Here, it's even, in ways, stronger because while the plaintiff has answered that the letter didn't exist, we now have the situation that the -- and I'm going to get to the second point on judicial notice, which is that it's an official government record, but it is undisputed that the house committee subpoenaed the Epstein estate.  There is no dispute anywhere in plaintiffs' papers about that.

It's undisputed that in response to that subpoena the committee posted documents to its website, including the Birthday Book that the Epstein estate had produced to the committee.  There are debates in their papers about whether the letter on page 165 is the letter that the reporters considered, and I'll address that in a second, but there is no dispute here that the House Committee has posted on its website documents produced pursuant to an official subpoena, and the Court may take judicial notice of those as well as, I think, incorporate it by reference.

THE COURT:  Okay.

Before moving from the incorporation by reference issue, in the Johnson versus City of Atlanta, even though that body-worn camera wasn't mentioned in the complaint, I don't have it here in front of me, but I am assuming that the plaintiff or the petitioner didn't dispute the authenticity of the body-worn camera, that it was what it was, even though the plaintiff didn't make reference to that.

MR. LEVANDER:  That's fair, Your Honor.

THE COURT:  Again, I kind of go back to what I said in the beginning, but here President Trump is saying --

MR. LEVANDER:  But he doesn't dispute that the committee issued a subpoena to the Epstein estate.

He doesn't dispute that the Epstein estate produced the documents, and he doesn't dispute and cannot dispute that the documents were posted to the official website of the House Committee, including page 165.

THE COURT:  But to paraphrase the pleadings, he seems to be arguing, yeah, but the words match what's in the article, but how do I know that it's the same, right, that that document that was produced is what the defendants reviewed in writing the article?

MR. LEVANDER:  Let me get to that point.

THE COURT:  Okay.

MR. LEVANDER:  So, judicial notice, which ties into the

incorporation by reference, is also totally appropriate here. Exhibits 2 through 5, specifically, the House subpoena, the press release, the products of the book, and the page from the book are all documents published by a government agency on its official website.

Despite legions of cases taking judicial notice of these kinds of documents on government websites, including Congressional websites, the White House website, the SEC website, the FDIC website, state and local government websites, going on and on, President Trump claims that these documents are somehow different, but they are documents produced to the government by the estate under subpoena and officially published on the House website.  And that is sufficient for the Court to take judicial notice, as the Eleventh Circuit repeatedly held in cases like Universal Express versus SEC, and Georgia Association of Latino voters.

Indeed, in Worndale v Gal, 590 F.Supp.3d, at 636, note 4, the Court took judicial notice of government websites, Congressional reports, and numerous articles regarding Covid.

Now, in the notable shift from the complaint 's original denials that the Birthday Book existed -- that's what the complaint says, it doesn't exist, the letter doesn't exist -- President Trump currently argues that the Court should not take judicial notice of the Birthday Book and letter not because what's on the official website is what, in fact, was

produced to the committee and which the committee put on the website.  Rather, he argues that there is no proof that the published letter is the one reviewed by the Wall Street Journal reporters who wrote the article.  That argument is both legally irrelevant and factually untenable.

As to the legal issue, it is well settled that the truth defeats a defamation claim whenever the truth emerges.  For example, in Bustos versus A&E Television Networks, 646 F.3d 762, the Tenth Circuit explained, quote, "Neither does it matter if the defendant doesn't know the truth of the matter when he makes the defamatory statement, so long as what he says turns out to be true, he is free from liability.  The truth, whenever discovered, is a complete defense."

Indeed, in Martyr versus Techna, Inc., a 2020 opinion in this court, Judge Smith held publishing an article that said the plaintiff, a doctor, had been criminally charged for fraud while an error went published was not defamatory because the doctor was later charged and convicted of fraud.  The Court emphasized that the truth whenever discovered is a complete defense and the news report was substantially true even if imperfect at the time of reporting.

A fortiori, that holding is applicable here and underscores why the Court properly can take judicial notice of the book and the page.  And as to the fact wall issue, Your Honor --

THE COURT:  Well, hold on for a second.

So, I mean, obviously, truth is a factor, but, again, I'm trying to consider, okay, well, what am I considering in making that determination, obviously, the four corners of the complaint and anything incorporated by reference.  You want me to take judicial notice about a bunch of other things at the motion to dismiss stage.

You know, I mean, I get the proposition.  Certain things are inherently reliable, right, like government documents.  But aren't there some limits to that, though?

I mean, in this case documents produced -- it's one thing to take judicial notice of a house subpoena.  It's another thing to take judicial notice of everything that was produced pursuant to the House subpoena, and to what extent.

Am I to take notice of the fact that something may exist?

But the substance of it, then that becomes more problematic.

MR. LEVANDER:  But we don't have -- there is no dispute here that we're offering this letter that's part of the book to prove that President Trump was friendly with Jeffrey Epstein at a certain period of time.  We're not offering it for the substance of that they had a secret or didn't have a secret.

What we're offering it for is to rebut the allegation in the complaint, in multiple paragraphs, that the letter

doesn't exist.  And we say Your Honor can take notice because they don't even dispute that there was a subpoena from the House.  They don't dispute that the House published the book and the letter on its official website, and for purposes of considering the motion to dismiss, that is satisfactory.

We're not offering it for the proof of whatever, you know, might be alleged in that letter.  That's not the issue here.

And as to the factual issue, frankly, Your Honor, the issue they do argue that we don't know that that's the letter that was seen by the reporters, I've just explained why as a matter of law that's completely irrelevant, but as a matter of fact, you can't argue with a straight face that the letter described in detail, both as to the format and content in the Wall Street Journal article is not page 165 of the published Birthday Book.

To the contrary, the detailed description of the content, including verbatim quotes, and physical layout of the unique letter is thorough, accurate, and precisely on point.

And is plaintiff really suggesting that there is a second letter in the world, in the shape of a woman with the exact same wording and the squiggly signature of Donald Trump mimicking pubic hair?  I don't think so.

THE COURT:  Well, that's the question I am going to ask them.

MR. LEVANDER:  Okay.  Thank you, Your Honor.

Defendants also request that the Court take judicial notice of Exhibit 6 through 12.  Each of these is a previously published article about President Trump's prior relationship with Jeffrey Epstein and/or the president's bawdy conduct.  President Trump, nonetheless, argues that the Court should not consider these materials because we cannot prove the content of those publications is true on a motion to dismiss.

On page two of his opposition brief, however, the President concedes, as he must, that courts routinely take judicial notice of the fact, quote, that a newspaper published an article.  And that is exactly what we ask the Court to do here.

In considering the issues of defamation and actual malice, the Court may unquestionably take judicial notice that these statements have been published.  We are not offering those articles for the truth of the matter asserted, even though the president does not and cannot dispute the bona fides of any of these exhibits, including pictures, tape recordings and statements of President Trump on his official campaign website.

Unless Your Honor has any other question for me on the motion for judicial notice, I'll step down -- or do you want me to continue onto the motion to dismiss?

THE COURT:  Why don't we continue onto the motion to

dismiss.

MR. LEVANDER:  Thank you, Your Honor.

As it relates to President Trump, the July 17th, 2025, Wall Street Journal article describes both the unique content and format of the letter bearing Donald Trump's signature in accurate detail, as I have said.  Moreover, the sub headline quotes President Trump as saying that the letter is a quote, fake thing, end quote.

Three other paragraphs the article expressly quote the President's denial that he wrote the letter.

Several more paragraphs provide President Trump's contextual defense to the controversy regarding his relationship with Epstein, including that the Birthday Book was created years before Epstein was first charged and that President Trump had a falling-out with Epstein before any charges were filed.

The article further states that, quote, it isn't clear how the letter bearing Trump's signature was prepared, end quote.

These voluntary detailed cautionary statements are disclosures that the Wall Street Journal was not required to include in its article.

Now, as Your Honor emphasized in Turner v Wells, citing controlling Supreme Court and Eleventh Circuit precedent, a Court must consider a defamation claim in the context of the

entire article, not just a few phrases taken out of context. Indeed, President Trump concedes that this is the law on page five of his opposition brief.

Notably, in Turner v Wells, which was affirmed by the Eleventh Circuit, Your Honor explained that, quote, "A Court must construe the statement in its totality, examining not merely a particular phrase or sentence but all of the words used in the publication and must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement."  That's 198 F.Supp.3d, at 1367.

Application of those well-settled principles to this case mandates its dismissal.

Your Honor, there is nothing false about the article. Falsity in the defamation context, as Your Honor explained in Turner v Wells does not require perfection or exact truth.  In order to pursue a defamation claim, President Trump must establish that the article is not substantially true.

The Court further held in Turner v Wells that falsity exists only if, quote, "the publication is substantially and materially false, not just if it is technically false."

That's page 1365.

If the gist of the allegedly defamatory statement taken as a whole is substantially accurate, the case must be dismissed.  And here, of course, there is no question that one

of the letters in the Birthday Book posted to the government website at page 165 bears the signature of Donald Trump.

In great detail, the article accurately describes the letter as to both form and content.  It's simply true.  In fact, the article goes further containing all of the President's denials, and saying, as I noted earlier, it isn't clear how the letter with Trump's signature was prepared, end quote.

In short, the article is the essence of fair and accurate reporting, which is far more than is required under defamation law and the important First Amendment principles that underlie that body of law.

I, respectfully, suggest that the Court need go no further to dismiss this case as numerous courts have done in far less compelling circumstances, including the Markle v Markle decisions we've cited to you from the Middle District of Florida in 2024, quoting Mason v New Yorker Magazine, 401 U.S. 496.

Indeed, Your Honor, to put the absurdity of this case in perspective, if the Wall Street Journal had published the very same article about the letter after the letter was made public on the House Committee website, then the Supreme Court's decision in Cox Broadcasting versus Cohn 420 U.S. 469, 1975, would unequivocally bar the President's claims here.

As the Supreme Court explained in Cox, in establishing

an absolute privilege for reporting on public records, quote, the freedom of the press to publish information in public records appears to be of critical importance to our type of government, end quote, and that's at page 495.

That the Wall Street Journal first published the accurate article and then the House Committee published the letter confirming its accuracy requires, we respectfully suggest, the same result.  This case should be dismissed.

Your Honor, the complaint is defective on its face for additional fundamental reasons.  The statement in the article about the letter states that the Trump letter, like other letters in the Birthday Book is quote, unquote, bawdy.

Bawdy in this day and age is not defamatory, full stop.

As in the decision in Douglas Hustler Magazine, 769 F.2d 1120 from the Seventh Circuit, and a slew of cases cited at pages nine and ten of our motion to dismiss made clear.

Notably, in Douglas the Seventh Circuit observed at pages 1135 to 1137, that in this day and age bawdy in the terms of bawdy comments, bawdy jokes and suggestive nude photos do not give rise to viable defamation claims.

The conclusion that the use of the word bawdy in this context is not defamatory is especially cogent given the bawdy press comments and admissions by President Trump over many years.  For example, the Court may take judicial notice of the taped conversation that came out in 2016, in which President

Trump talks about grabbing women's genitalia that he made those, quote-unquote, locker-room comments.  For this reason too, dismissal is well warranted.

The Defamation Per Quod claim is also fatally flawed for two additional reasons.  Nothing in the complaint alleges additional facts to make the statements defamatory, nor could it.

Indeed, Your Honor, plaintiff had ample opportunity to amend his complaint when the House Committee published the Birthday Book.  And then again, when defendants filed this motion to dismiss the Court had given plaintiffs 21 days after we filed our motion to amend.  The President didn't amend at any of those times.

In any event, the complaint cannot be saved as a matter of law.  The Eleventh Circuit decision in Parekh, P-A-R-E-K-H, versus CBS, 820 F. Appendix 827, Eleventh Circuit, 2020, is decisive here.  The Court of Appeals affirmed a decision dismissing a defamation complaint because reporting someone's friendship with a person who commits a crime is not defamatory as a matter of law.

In fact, in Parekh, the plaintiff had lived with the criminal during the commission of the crimes and here in contrast the article stated that President Trump's admitted friendship with Epstein ended before Epstein's crimes became public.

Second, the President has not alleged specific, quote, special damages, as is required for a Defamation Per Quod claim.  Generalized claims about reputation do not satisfy the standard as the cases at page 12 of our motion to dismiss made clear.

So, we urge the Court to dismiss the complaint on both falsity and defamation grounds, and unless the Court has any further questions for me on those two issues, I would ask Ms. Bolger to argue the malice standard.

THE COURT:  Okay.  Thank you.

MR. LEVANDER:  Thank you.

MS. BOLGER:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. BOLGER:  I'm shorter than Mr. Levander.

The plaintiff's complaint must also be dismissed on the additional ground that he did not and will never be able to allege that each of the defendants acted with actual malice in publishing the article.  To do so, President Trump was required to allege that each defendant published the article with a subjective awareness of probable falsity.  That is, he had to allege facts that support a reasonable inference that each of the defendants, in fact, entertained serious doubts about the truth of the article, not should have, actually did entertain serious doubts, and he has failed to do so.

First, President Trump was required to plead and then

prove actual malice as to each defendant, and that's because in New York Times versus Sullivan, the United States Supreme Court said there could be no finding of actual malice, unless the allegations were brought home, in the words of the Court, to the actual publisher and speaker of the defamatory meaning.

Here, President Trump hasn't even made an effort to do that. All of the allegations in the complaint are alleged against the defendants collectively. That's just insufficient, you know, questions asked.

But even if you could set that aside, Your Honor, the allegations of actual malice are still insufficient because they're conclusory. In fact, Your Honor, if you take a look at paragraphs 51, 53, 63 and 66 of the complaint, you will see that all that President Trump has alleged are boilerplate recitations of the standard. Those are exactly the type of allegations that the Eleventh Circuit rejected in the Turner versus Wells case, in the Reed versus Chamblee case, in the Jacoby case and the Michael case, and they're exactly the same type of allegations that the Second Circuit rejected in the Biro case when it said, pleading actual malice, buzz words, is simply not enough to nudge a case into discovery. So, the conclusory allegations also damn plaintiff's complaint.

In the opposition, President Trump tries to flesh out those allegations by sort of adding four new arguments to why he claims that there is actual malice here.

First, President Trump argues that because he denied to the Journal before publication that the article was real, the Journal perforce published the article with actual malice but denials without more do not support allegations of actual malice.  That's the Brimelow case in the Second Circuit, Your Honor, Harte-Hanks in the United States Supreme Court, and the Reed versus Chamblee case that was just decided in June in the Eleventh Circuit.

But more than that here, Your Honor, the Journal published President Trump's complete full-throated denial. They devoted three paragraphs to President Trump's denial. That undercuts any inference of actual malice.

As the Eleventh Circuit held in the Jacoby case, "Including information that gives readers sufficient information to weigh for themselves the likelihood of an article's veracity tends to undermine client claims of actual malice."

That's Jacoby.  It's 2021 WL 585 -- 5858569 at star 5.

President Trump additionally tries to allege that the defendants should have investigated and talked to other people who could have verified his denials.  That allegation is conclusory.  Of course, he doesn't say who those people are. That's why this pleading is different than the pleadings that were found to be, to get past the motion to dismiss standard in Dershowitz and Klayman versus Judicial Watch, which was cited

by the plaintiff.

In both of those cases, the plaintiffs pointed to a specific piece of evidence in the prop -- in the possession of the defendant that contradicted the article.  Right?

So they pointed to a specific piece of information that they claimed the defendants failed to investigate.  There is no such allegation here, and indeed there couldn't be.  And in any event, Your Honor, in the Eleventh Circuit failure to investigate on its own is not evidence of actual malice.  That's Levan versus Capital Cities, 190 F.3d 1231.

Next the President suggests that the defendants acted with personal animus and ill will.  That allegation is, again, conclusory, and in any event, the Ninth Circuit said, "Ill will, improper motive, or personal animosity plays no role in determining actual malice."

That's Dunn versus the Airline Pilot Associations, 193 F.3d 119.

Finally, President Trump says, well, put it all together and the sum of the inferences are enough to plead actual malice, but that is almost exactly, Your Honor, the argument that the Eleventh Circuit just rejected in Reed versus Chamblee.  In the Reed case, the plaintiff alleged actual malice was established because of denials, personal animosity and a failure to investigate, exactly what we have here, but the Eleventh Circuit rejected that and said that's not enough,

all of your allegations are conclusory.

The same thing happened in the Brimelow case, where the Second Circuit held that there was no combination of allegations that could plausibly infer actual malice.

And very significantly here, Your Honor, there will never be enough allegations for the plaintiff ever to allege actual malice, and that's because, as the Eleventh Circuit said in the Reed case, quote, "The required awareness of likely falsehood is absent when the publisher's claims are reasonably supported by numerous prior reports."

That's Reed versus Chamblee, 2025, WL 1874638, at star 3.  It was just decided in July, Your Honor.

Here, the article is consistent with the significant number of prior reports about President Trump's friendship with Epstein in 2003 and his reputation for making bawdy statements about women.  In fact, plaintiff's relationship with Epstein is discussed in great detail in the article itself.  That's Exhibit 1 to my declaration, Your Honor.  It's Docket 35-2, and the most relevant portion I think is in page seven.

On page seven, the article talks about when President Trump and Mr. Epstein were friends in 2002, and it talks about the eventual end of their friendship, but it also quotes this. It says, "A 2002 New York magazine profile of Epstein quoted Trump."

Quote, "I've known Jeff for 15 years.  Terrific guy,"

Trump said.  "He's a lot of fun to be with, and has even said that he likes beautiful women as much as I do, and many of them are on the younger side.  No doubt about it, Jeffrey enjoys his social life."

Now, President Trump has never denied that that quote was accurate, and the Journal's reporting about plaintiff's reputation is also confirmed by the articles that were attached to my declaration and that Mr. Levander just discussed when talking about judicial notice.

The point here, Your Honor, is here, as in Reed, the allegedly defamatory statement is supported by the unchallenged reporting in the article and other preexisting reporting.

Given these facts, the Journal had every reason to believe the article was true and President Trump will never be able to establish that defendants published a knowingly false article.  Most fundamentally, Your Honor, there can be no animosity because there is no falsity.

A letter that looks and says exactly what the article says it does was released by Congress to the American public in response to a subpoena from the Epstein estate.  Your Honor, that document, as released by Congress is identical, not just the letter itself, but the book itself.  The release by Congress establishes that it had a leather binding and lists the name of the people who've contributed to the book, all of which are consistent with what was in the article.

So, there is no falsity and, perforce, there can't be knowing falsity.

Really importantly, Your Honor, the points of the actual malice standard is to give the press a breathing space to speak freely on matters of public interest justice, and for that reason this case cries out for early dismissal.  This is a case where the journalists' publication was subsequently proven true by a release by Congress.  If there is no -- if there is any hint of actual malice here, it would make it almost impossible to prevail on one of these cases.  Right?

It's not just that there is no evidence of knowing falsity, it's that there was actual evidence of truth that was subsequently released.  There will never be actual malice here, and that's particularly the case because the publication is consistent with what we know about the President's larger reputation.

THE COURT:  So, Counts 1 and 2 talk about different things and Count 1, which is the defamation per se count, it specifically references -- it refers to paragraph 24, and the recitation from the article of certain things.

It seems to me -- and the plaintiff's counsel can talk to me about it -- part of the claims are about the defendants' published -- well, defendants' article referenced a book and a letter that didn't exist, that's part of it.

But then for Count 2 it specifically refers to

statements that it says are implicitly defamatory.  So -- which don't deal specifically with whether or not the book and the letter within the book existed.

It talks about -- and it says, A, Jeffrey Epstein's friends sent him bawdy letters for a 50th birthday album.  One was from Donald Trump, etcetera, A through D here.

So, it's not really just whether or not a letter was -- whether or not the Birthday Book letter existed, some other things too.  I'm just trying to -- I'd like to have you comment on how I should consider them -- should I consider them the same or should I consider them separately?

MS. BOLGER:  For defamatory meaning purposes, Your Honor, in Florida there is defamation per se and there is indemnity defamation per quod.  There is no implicitly defamatory.  I think, to the extent the plaintiff is hinting at a defamation -- potentially by a defamation by implication claim, but, Your Honor, a defamation by implication claim is a very specific thing.  A defamation by implication claim, according to a case called Jews For Jesus versus Rapp, has to be plead based on truthful facts that create a false implication, and the plaintiff also has to plead that the defendant intended the defamatory implication.  So, the plaintiff hasn't come anywhere near pleading a defamation by implication claim.

So, we're in the box by defamation per quod and

defamation per se.  That's the only place we can be under Florida law.

So, the answer from an actual malice point of view, I think Mr. Levander did a nice job of explaining the truth and the defamatory meaning aspect of both of those.

One, we know that the President of the United States was friendly with Jeffrey Epstein in 2002 and 2003.  We know that the President of the United States ended his relationship with Jeffrey Epstein in 2008.  We know that because it's in the article.  Right?  They disclosed it.

And the bawdiness is something that we also have come to understand from President Trump when he discusses locker-room talk.  That was what Mr. Levander was talking to you about, substantial truth.

In terms of defamatory meaning, Mr. Levander mentioned the Parekh case and suggested that this isn't defamatory because it's not defamatory to be friends with someone who later turned out to be a criminal, and it's not defamatory to send a bawdy note to your friend.

But from the actual malice point of view, Your Honor, the analysis is the same depending on if it's Count 1 or Count 2.

What the plaintiff has to show is that there was knowing falsification, not just that something is false but that the Journal reporters who put it together knowingly

falsified that information.

THE COURT:  Okay.

MS. BOLGER:  They will never -- President Trump will never be able to show that as to any of those alleged defamatory meanings.  Right?

He will never be able to show that the Journal knowingly falsely said that Mr. Epstein and the President were once friends because we know that's true.

He will never be able to show that it is defamatory and knowingly false to say the President sent a bawdy letter because we know the President engages in locker-room talk.

And he will never be able to show that the publication of the letter, itself, was knowingly false because, well, one, we now have the letter.  And, two, there is no allegations of the kind of falsification that would be necessary and satisfy the Reed versus Chamblee story.

So, for the actual malice argument, Your Honor, there is no knowing falsification of any kind across any allegation in the complaint.

THE COURT:  Finally, before I turn to the plaintiff, plaintiff's counsel, the application of Florida or New York law, are you -- go ahead.

MS. BOLGER:  Your Honor, the application of Florida versus New York law is something that we believe New York law should apply.  I think Mr. Levander may be more prepared to

answer that one than I am, so I'll let him do that if that's okay, Your Honor.

THE COURT:  Okay.  Sure.

MS. BOLGER:  Great.  Thanks so much.

MR. LEVANDER:  Judge, do you want to hear from me first on that point?

THE COURT:  Yes, please.

MR. LEVANDER:  Very simply, we don't think it matters in this case because on the salient issues that are before the Court in terms of falsity, defamation, actual malice, all of those are the same under Florida or New York law and the Supreme Court's rulings under the First Amendment.

We do think New York law would apply because the publication is centered in New York and the publication occurred there.  We cited cases that would suggest that but our real view is that you don't have to decide that issue in this case.

THE COURT:  Because the substance of both states' laws are the same.

MR. LEVANDER:  Yes, Your Honor.

THE COURT:  Thank you.

All right.  For President Trump.

MR. BRITO:  Thank you, Your Honor.

May it please the Court.

Your Honor, in the context of this case as well as in

the context of the arguments that we're here before this Court on, words matter and context matters, as Your Honor has found in previous instances and as we have cited to the Court.

The arguments that have been framed to the Court this morning underscore why we believe that the defendants' actions have been in violation of Florida law, specifically the argument that has been raised to the Court this morning and in the briefing is that the complaint states that the letter does not exist.

Let's look at what the complaint actually says, Your Honor, and that it talks about the fact that the letter, authentic letter does not exist.  And that is repeatedly stated in the complaint, which is something the defendants seek to gloss over and lead this Court to the conclusion that the allegations are that there is no such letter.

The fact is, as the complaint makes at least three references that I was able to find as I was listening to defendants' counsel, when on page two of the complaint the very words of the complaint state, "no authentic letter or drawing exists."

Paragraph 22 of the complaint -- I'm sorry, paragraph 13 of the complaint talks about the fact that the intended article was false in claiming that the President Trump authored the purported letter, which he did not, again, going to the authenticity of a document.

Paragraph 22, last sentence, that is because the supposed letter is a fake and the defendants knew it when they chose to deliberately defame the President.

Paragraph 27 of the complaint, similarly, states, "Murdoch and Thomson authorized the publication of the Article after President Trump put both of them on notice that the letter was fake and nonexistent."

President Trump's own statement in the article is that the letter is a fake, so the argument that the defendant is advancing in its filings, as well as what it argued to the Court with respect to the non-existence of the letter, that being the basis of the complaint, is absolutely belied by the allegations of the specific complaint.

The question is, is that document which is contained in the book that the defendants reported about, is that a genuine letter signed by the President, yes or no.  Not whether or not the piece of paper exists, but did somebody falsify the President's signature, did someone lift the signature from another document and put it onto this document.

All of those questions with respect to authenticity of this document, which lends me into where I think Your Honor wanted me to start, which is in relation to the request for judicial notice and why it is that the points that the defendants are taking with respect to asking the Court to take judicial notice are not well taken.

So, I wanted to lead with that but I'd like to back up and go in the order that Your Honor has requested.

THE COURT:  Yeah, I mean, that's where -- that's where I am giving a lot of thought to this issue.

It's one thing -- so, the article discussed some very specific things about this letter, the letter at issue and ultimately the description matched what was produced pursuant to the House subpoena.  That's what they're saying, that it matched, so it's the same.

I mean, can't two things be the same, like that the President says, right, this letter is fake, I didn't do it, I didn't sign it, you know, I have nothing to do with that; but, yet, it couldn't very well still be the same letter that the Wall Street Journal journalists reviewed.

MR. BRITO:  It could be the same, yes.

THE COURT:  Because there is every indicia that it is the same letter.  I mean, the quote -- I mean, the language that they quoted, they're saying what was produced pursuant to the House subpoena is exactly the same.

So, I guess what I'm getting at is I get that the President is saying, I had nothing to do with this letter.  I didn't write it.  I didn't sign it.  But that doesn't -- why does that necessarily mean that the letter produced to the House subpoena isn't what the journalists reviewed when writing the letter?

MR. BRITO:  Because you don't get into necessarily examining the defamation based upon whether or not that's the document that the journalists reviewed.  It's the attribution by the journalists on at least three occasions on the article stating as fact that this was a document authored and signed by the President, and they stated -- I heard the argument where there was the attempt to water it down, but that's ineffective for purposes of what transpired here, especially on a motion to dismiss when the very title of the article, Your Honor, the very title of the article, which is what is intended to grab the attention of the readers, "Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album.  One Was From Donald Trump."

They're stating that as a statement of fact.  So, then we go to the first sentence of the article.  "It was Jeffrey Epstein's 50th birthday, and Ghislaine Maxwell was preparing a special gift to mark the occasion.  She turned to Epstein's family and friends.  One of them was Donald Trump."

In addition to that, they further make reference in the article -- they make reference to the Trump letter.  I wanted to make sure I didn't misstate the specific words that were utilized.

I'm sorry, and I did, and I apologize.  They refer to it as, "the Trump page."

So, we have at least three instances, but, primarily,

the lead two statements in this article which directly attribute the letter to President Trump when President Trump had specifically told the defendants in advance of this article being published, this is a fake.  I did not author, sign, and deliver this letter.  There is nothing in the article that would establish -- and I apologize if I'm advancing too far down in the series of arguments, but I want to be responsive to Your Honor's question.

There is nothing in the article that establishes the journalistic efforts that were made to verify the statement that is made in this article on at least three occasions that attributes, as a matter of fact, that this is a letter that President Trump authored, signed, and delivered.

To the contrary, if we look at the specific words that are utilized in the article, there is a conversation that the authors engage in, if you will, that discusses the fact that these are certain documents reviewed by the Department of Justice.  And in addition to that they take the position very clearly that the Department of Justice would not comment on the article and the FBI refused to comment on the article.

So, if they are not speaking directly with the entity that's in possession of this document, and they're relying upon unverified sources of information, we can get into the case law, which the Court has in our opposition brief that that is not sufficient for purposes of evading the actual malice

standard, which we believe clearly applies here, that we have met the actual malice standards.

I'd like to shift back, if I may, Your Honor, because --

THE COURT:  Before we do that.  Because there is one thing I just have to make sure I'm clear about and I'm back to this incorporated by reference.

So, as far as -- well, let's kind of deal basically with the judicial notice stuff.  I mean, there is a lot of stuff that they're requesting, and I know from your pleadings you're objecting to them, and kind of the wholesale admission of articles and things like that, you know, I don't know that that is appropriate for me to take judicial notice of that.

But the letter at issue, whether it's by judicial notice because it was produced in a House subpoena or if it's just incorporated by reference, it seems to me that perhaps that is something that I should consider at the motion to dismiss stage.

The complaint itself, the complaint, the President's allegations, I mean, they're -- it cites specific language that the Wall Street Journal says in the article was in this letter at issue.

So, if in turn -- even though the President is saying in the complaint that it didn't exist, I mean, if the language is the same, why -- apart from whether or not he actually

authored it, why wouldn't I consider it?

The complaint's allegations, that language is the same that's in the purported letter.

MR. BRITO:  The issue to answer Your Honor as precisely as I can is because the authenticity of this very letter is the subject of the defamation claim.  It's the attribution of the letter to the President that's the source, and really the nugget, of this defamation lawsuit is the fact -- not that the letter exists or doesn't exist.

I know that the defendants want to shift the focus in that direction, but that's not what the complaint says.  The complaint talks about the fact that this is a fake letter. This was not authored by the President.

To the extent that the Court seeks to look at the letter for purposes of rendering a determination on a motion to dismiss, I'll get into that, and that's what I was going to shift my focus to go back to where you wanted me to get to at the outset, but, again, I want to answer Your Honor's question.

The Court need not examine it because of something that was readily admitted by defense counsel this morning at the very outset of his argument, which the authenticity of that letter is in question.  The plaintiff questions the authenticity.  That undermines the argument that the defendants are advancing to the Court that the Court can take judicial notice because one of the two elements in order for judicial

notice to be appropriate is that the document not be subject to a reasonable challenge or authentication issue, which, clearly, the plaintiff is.

The defendant acknowledges as much that it is an issue in dispute between the parties as to whether or not that is an authentic document. The request for judicial notice that is being sought from Your Honor is Your Honor to review it and accept it as a true document for the purposes of analyzing the balance of the arguments raised in the defendants' motion to dismiss.

Because at the end of the day, if the Court takes the position that there is a document -- at this point in time, we can get through the elements as to how we would go through the authentication process, which clearly we can't do at this stage of the motion to dismiss by way of case law and Florida Statutes and otherwise. That would not be appropriate to resolve as to whether or not that's the President's signature, whether he actually authored it, all those components which I will get to with regard to authentication, at its core we cite to Rule 201 which sets forth -- of the Federal Rules of Evidence, pardon me, Your Honor, which sets forth the two basic standards the defendants need to meet in order for the Court to consider any of these documents through judicial notice.

One, that the document is generally known within the trial court's territorial jurisdiction; and two, whether the

document can be accurately or readily determined by sources whose accuracy cannot readily be questioned.

The fact that the document came from Congress is not the function -- is not the functional equivalent of a governmental document as the defendants argue, because the document was obtained pursuant to a subpoena by a third party non-governmental entity, i.e., the Estate of Jeffrey Epstein.

Simply because someone produced documents in response to a subpoena does not automatically authenticate or verify the information that they received from a third-party recipient, irrespective of whether or not the document was posted on a governmental website. Typically, the governmental document exception to the judicial notice that the defendant is relying upon are documents generated by the government to establish certain unquestionable issues or unquestionable facts.

Here, this is simply acknowledging that somebody responded to a subpoena issued by Congress, nothing more.

THE COURT: In the defendants' arguments a moment ago, one of the attorneys, I don't recall which one, expressed some surprise that the President didn't amend his complaint after the letter was produced pursuant to the House subpoena.

Is amendment warranted here, at least for Count 1, based on its production?

I mean, because ultimately, whether we get -- I mean, even if we get past the motion to dismiss, the introduction of

that document is not -- it's going to come at some point.

Are we spending a lot of time on this ultimately to end up in a certain place?

MR. BRITO:  I don't think that we're engaging in a judicial exercise.  I do think that at the motion to dismiss stage this document and its authentication and verification is going to be something that has to occur at a later time after discovery by virtue of an examination of the witnesses who have direct knowledge about this document.

To answer Your Honor's question, if there was an amendment to the pleadings, it may very well be not because of the disclosure of what Congress released in those documents but rather subsequent statements by, for example, Ghislaine Maxwell with respect to this particular letter.

I do not want to fall outside of the four corners and argue that to the Court, but since the filing of the complaint, she has discussed this letter, but that's a conversation for another time and, again, I'm taking a very firm position that the defendants are traveling outside the four corners.  I don't want to be held responsible for doing the same by bringing that up but in respect to Your Honor's question about an amendment, it wouldn't be because now a document has been released or a book has been released that contains the document that the defendants utilized for purposes of their article.

It doesn't change the analysis.  The defendants cannot

establish and did not establish, more importantly, at the time that they wrote this article, that it was the President who authored and signed that letter.  They cannot do it.  They did not do it.  They had only one piece of information with respect to whether or not somebody did or did not -- whether the President did or did not sign it, and that was the President's vehement denial that the letter was not inauthentic, that he did not sign it, and the defendants ignored that piece of information and went ahead and published the statements.  It's not so much the letter.  It's the statements attributing the letter to President Trump.

Your Honor, I handled President Trump's case before this court in front of Judge Altonaga with respect to the ABC and George Stephanopoulos matter, and the conversation was somewhat similar in that it rested on the utilization of specific words to determine whether or not a defamation claim may survive a motion to dismiss or not.

The argument there was whether or not rape was the functional equipment of sexual abuse or sexual assault, and the defendants' statements were not sexual abuse or sexual assault, which is what was the subject of the trial in New York, but rather that President Trump was found liable for rape, an untrue statement as a matter of fact and law.

The motion to dismiss was denied the case moved forward.

In this instance we're not very far off from that same analysis in that the defendants here did not state this letter appears to be drafted by President Trump, this letter appears to have his signature.  No.  They state as a matter of fact -- yes, I appreciate the fact that defendants are going to come before you and argue but wait a minute, Judge, later in the bottom the article we try to soften that punch and say, well, we are not certain as to how the letter -- the signature of the letter was crafted or its origination.

That's fine.  You can try to take that position in front of this Court, but the law clearly finds that if the lead -- the gist of the article, which is the title, the first sentence and then a repetitive statement later on that directly attributes the letter to President Trump, that's defamation.  That's an intentional utilization of words by these defendants who, like us, Your Honor, their business is in the industry of words and being precise with what they report.

There is no flexibility that they are seeking that they are entitled to with respect to attribution of a letter.  If they get something kind of right, I understand, or kind of wrong.  This is one or the other.  Either you know it's the President's letter or you don't know it's the President's letter.  And if you don't know, you better make sure that you report that you are uncertain about it.

They didn't do that.  They were very definitive that

the President signed, authored, and delivered this letter on multiple occasions, an absolutely untrue statement of facts. So that's really the core of what we continue to press not only in the complaint but in our response to the motion to dismiss.

That's the core issue, and I don't want the Court to be led by the defendants' argument in a different direction because I'm representing to you that's what the case is about. That's what the complaint states is that this letter is inauthentic.

THE COURT:  So, what significance is there, if any, to the fact that the article mentioned the President's denial of his involvement of that letter?

MR. BRITO:  I appreciate Your Honor asking me that question.  I would invite the Court -- I know you probably have more times than you want to in terms of reading the article, but I would invite the Court to read it again.  And if the Court looks at the cadence of the statements in the article, and when the article gets to the point where they list the President's denial, the immediate statement right after is intended to disparage or water down that dispute because it talks about the fact that the President will sue.

And it's designed to say, the President has done this in the past.  The President has sued media outlets.  We don't really take this statement to be at face value or give it much credence, and then the letter goes on immediately after that

and starts to talk about sex trafficking, about child -- you know, the issues that Mr. Epstein was charged with.

They embed that statement in the article at a very precise portion of the letter that's designed to minimize its impact. It's not sufficient that they state the President's denial when the article itself, the gist of the article, is a false statement.

The fact that the President had the opportunity to say it was a fake, he said it from day one and continues to say it to this point. But the statement that's untrue, the heinous nature of the crimes that Mr. Epstein was charged with and the allusion to the President having some involvement not with a bawdy letter, not with comments about women, not about any -- it's directly tying the President to these specific sexual crimes that are of the most heinous nature.

I just can't fathom a more harmful association to make with an individual than to engage that person with sexual trafficking of children, and that's what this article does, irrespective of the fact that they put the President's denial.

The link that exists in this article based upon the statements made at the beginning and throughout that link the President and this letter, and when we get into the specific portions of the letter that the defendants published that are specific to what they were trying to establish by establishing this link that talks about, you know, this secret that they

enjoy, and the relationship that the two enjoy, that the President never wrote.

They could have elected to write this article drastically different and accomplish what they were seeking to accomplish which would attract attention to their publication, but they went well beyond what the law permits.  They made a direct attribution to the President.  They put in this article without verified sources -- or this letter without verified sources that then has some language in there that once you looked at in the context of the entire article that then talks about Mr. Epstein's crimes is absolutely unlawful.  It's defamatory in its nature either on a per se or a per quod basis, Your Honor.

THE COURT:  Is the harm to the President merely reputation or is it something else?

MR. BRITO:  It will become something else.  I'm going to be, obviously, very transparent with the Court.  The lawsuit was filed within days of the article being published.  So, the damages that had manifested itself as to that point were reputational in nature.

The expectation is that those damages are not limited to reputational in nature and have bled into other components that we expect to be able to or we request the opportunity to engage in discovery to flush out.

THE COURT:  But you concede, though, the complaint

doesn't specifically speak to any damages.

MR. BRITO: What the complaint speaks to, Your Honor, specifically, and I -- it does address some damages, albeit, I recognize they're limited. And, again, it's just a function of when the lawsuit was filed. It talks about the reputational injury. That's on paragraph 42, Your Honor.

I do recognize the timing of the lawsuit, as I mentioned to the Court, but I did want to answer Your Honor's allegation in the complaint with respect to the damages.

THE COURT: Would you agree, though, that the allegations in 42 regarding damages are conclusory?

I mean, it says, "All of the above-referenced articles, post, and false statements have resulted in overwhelming financial and reputational damages to President Trump expected to be in the billions of dollars due to the direct and implicit inflammatory statements paraded throughout the article."

This doesn't really give any specifics.

MR. BRITO: I -- the words on the page say what they say. I agree with you, Your Honor.

The case of Show Plus Promotions versus Valley National Bancorp, which is a 2024 case out of the Southern District found that allegations of lost profits or loss of reputation was sufficient to survive dismissal. Likewise, Yergey, Y-E-R-G-E-Y, versus Brinker Florida, out of the Middle District of Florida, stated that the plaintiff need only allege the

types of special damages he or she seeks, such as loss, support and services in order to put the defendant on notice on the.

THE COURT:  I'm sorry, what was the first case you said?

MR. BRITO:  Show Plus Promotions versus Valley National Bancorp, 2024, WL 3745213.

THE COURT:  All right.  So, the President is the President.  Right?

So, I mean, how do I consider the fact that he is a public official as opposed to a private citizen in analyzing these claims?

MR. BRITO:  The main distinction is the argument that you heard from defense counsel with respect to the actual malice standard.  That's the answer to Your Honor's question is to the President being a public official relevant to these claims as it pertains to the defamation count for defamation per se.

I want to talk a little bit about the contention because I think it's somewhat wedded to what Your Honor asked me about, the defendants' contention that the President is libel proof based upon if Your Honor were to review any of these numerous articles, which one of -- I know I kept promising I was going to go back to the beginning but I never did with respect to addressing the judicial notice.

The judicial notice issue, aside from the arguments

that I raised to the Court before with respect to the standards, is not well taken simply because in that 300 and some odd page request for judicial notice, there is no specific description by the defendants as to what portions of any of these documents they're asking the Court to take notice of. And because a lot of them are articles that were written about the President, whether the statements in those articles were true or not is not really the basis for judicial notice, but the reason why the defendants are asking the Court to do that is for purposes of propping up their libel proof argument as it pertains to the President.

The problem with that argument is that the case law makes it abundantly clear that in order for the Court to make a determination as to the party being libel proof, it has to be based upon -- the specific allegations in the complaint have to mirror what the defendants are asking the Court to review.

None of the documents in the request for judicial notice that the defendants are asking the Court to review, pertain to child sex trafficking.  They don't pertain to any sort of underage sexual activity.  It doesn't have anything to do with the letter in question.

The letter in question talks specifically about Mr. Epstein's criminal charges and Ms. Maxwell's involvement in that criminal or series of criminal acts.

None of the articles talk about that.  They talk about

other things that are designed to cast aspersions directed at the President with respect to other matters.

That does not make the President libel proof.  The President has never been accused of what this article tries to accuse him of with respect to sex trafficking.  That's not something that is in any of the information that they've asked the Court to consider, and that's another basis as to why the request for judicial notice should be denied in large extent, if not in total.

THE COURT:  Focusing on not judicial notice but just the substance, the allegations regarding actual malice, can you kind of walk me through those?

MR. BRITO:  Yes, Your Honor.

THE COURT:  And why -- of course, and why you believe them to be sufficient.

MR. BRITO:  Very well, Your Honor.  Your Honor, in Dershowitz versus CNN, which, again, came out of the Southern District of Florida in 2021.  The Court defined actual malice in the examination that the Court is to employ as, "Facts giving rise to a reasonable inference that the defendant published the story knowing it was false or with reckless disregard for whether it was false or not."

Here, we're primarily focused on the later part of that statement.  It's the reckless disregard of whether what they were publishing was false or not.

Here, what we've alleged in the complaint is that the defendants were, in fact, acting with reckless disregard as to the authenticity of the letter and the subsequent statements made by the defendants about its creation.

Quote, again, from the Dershowitz matter, "A court typically will infer actual malice from objective facts.  Those objective facts can be drawn from the actual article, which is the basis of this dispute."

In Hunt versus Liberty Lobby out of the Eleventh Circuit, Your Honor, actual malice exists based on, quote, the sum total of the inferences of actual malice, closed quote, that may be properly drawn.

From a separate matter in the Devin Nunes case, which we cited to in papers, "Reliance on anonymous or unreliable sources without further investigation may support an inference of actual malice."  That's 643 F.Supp.3d, at 419.

As I communicated to the Court just a little while ago, based upon the words of the article, no sources were ever contacted other than the President as to whether or not he authored the letter, and the President denied it.

The Justice Department declined.  The FBI declined, and in a more recent decision out of the Middle District of Florida, Judge Barber in the TMTG versus Washington Post, and that's 2025, WL 1615443, which we believe to be instructive, given the fact that the Court, Judge Barber, denied the motion

to dismiss that was filed by the Washington Post because in that case the article did not point to a witness statement or a written confirmation of the basis of an article written by the Washington Post.

The complaint alleged that this fee agreement, which was the subject of the article, which the plaintiff in that case, TMTG, claimed to be defamatory and false, the complaint said, this agreement never existed.  The Post wrote about this fee agreement that simply didn't exist, and the Post's statements attesting to in the article that there was a fee agreement, it existed, the Court found that was an issue to be resolved at the summary judgment stage where the Court said, quote, the complaint sufficiency is determined by the allegations, not the statements in a response brief filed by the defendants challenging as to whether or not there was accuracy or inaccuracy with respect to the reporting.

Quote, the Court will need to review the documents and consider the testimony of witnesses at the summary judgment stage.

So, here, like in the TMTG matter, the malice question, we believe, is premature to be resolved now given the fact that there is outstanding factual circumstances surrounding the authentication issue that we keep talking about and what steps the defendants took to determine the legitimacy and authenticity of the letter, which based upon the words of the

article and what we've alleged in the complaint, they took none.

They did not -- they did not go to sources, reliable sources. They simply acknowledged that the attempts that they made to talk to somebody fell on deaf ears. They were rejected on two fronts, and the one person that did speak to them told them that this letter is a fake. There was no verifiable source of information that the defendants have, not as to the letter, as to the authenticity and the authorship of the letter.

Nobody will be able to tell them, because it didn't happen, that the President wrote this letter. Nobody told them at the time that they wrote this article that the President wrote and signed this letter. The information that they had was only from one voice, that it was not written and authored and signed by the President. And, yet, despite that they went ahead and not only just wrote the article, but attributed the letter to President Trump.

That's the real issue here, Judge.

They continue to gloss that over and they want to make it seem as if the allegations of the complaint as I started to talk to you about at the beginning of this argument is that the complaint says that the letter doesn't exist. That's not what it says. It says that a genuine letter does not exist, an authentic letter does not exist. There's a difference.

That's why I keep harping on that, and because the article ignores that issue, the article ignores verification of the authenticity and, yet, at the same time attributes it as a matter of fact to the President, that's defamatory.  And that is sufficient for the purposes of sustaining actual malice at this stage where we would ask the Court to deny the motion to dismiss based as to the actual malice standard based on the allegations of the complaint and the article that was written by the defendants.

THE COURT:  Do the defamation per se claims fall if the letter exists and is considered as part of the complaint?

MR. BRITO:  No.

THE COURT:  Is it because you are challenging the, not just -- well, again, there is the issue about whether or not the letter exists.  The complaint denies that it exists, but you're also saying now -- but it seems to be that it's more than that.  It's whether or not -- it's also about whether or not President Trump was involved in authoring the letter.

MR. BRITO:  Let me back up because I want to make sure that I'm clear on that.

THE COURT:  Okay.

MR. BRITO:  The complaint is not based upon whether or not the letter exists.

THE COURT:  Well, the complaint, Counsel, the language of the complaint, that's what I see over and over again, you're

challenging whether or not it exists.  I mean, I understand you're also saying that the President didn't -- I am going to have to go back to the language in the complaint.

MR. BRITO:  If I can direct the Court's attention --

THE COURT:  I'm sorry, the complaint specifically says on page two that it is a nonexistent letter.

MR. BRITO:  And if Your Honor continues on to the last sentence of that same paragraph --

THE COURT:  Okay.  I don't understand.  What is it you're trying to direct me to?

MR. BRITO:  The reason for those failures is because no authentic letter or drawing exists.  I'm harping on the word "authentic" in that sentence.

THE COURT:  Okay.

MR. BRITO:  And then I'm also directing the Court's attention to paragraph 22, if I may.  The last sentence of that allegation says, "That is because the supposed letter is a fake and the defendants knew it when they chose to deliberately defame President Trump."

We -- in those two instances as well as in paragraph 27 where we talk about the letter being fake and nonexistent, that deals, Your Honor, with the authenticity, a genuine letter not existing.  It's a fake.

By reference of paragraph 22 that I just read to you, Your Honor, where we talk about the supposed letter, we take

the position very clearly that it's a fake document.  It's not something that was authored by the President.

So, reeling back to where you originally were directing me or asking me a question about, would the defamation per se claim fall simply because a letter out there exists?  No, because it rests not with the existence of the piece of paper.  It rests with the authenticity of that document.  The document is not genuine.  The document is not legitimate.

The letter that was relied upon for purposes of this article was not legitimate; yet, the defendants published it as if the President signed it and delivered it.

THE COURT:  Well, what if they're just wrong?

If the letter actually exists, even if the President had nothing to do with it, if they relied on a letter, this letter purporting to be what they say in the article, I mean, how do you show actual malice then?

MR. BRITO:  State that you read a document that you believed to be the President's or that it appears to have.  Again, Judge, words in context matter.

Here, as I keep going back to because I think it's what makes, at least in my perspective, far more clear than what the defendants are trying to argue is that the defendants specifically said that this was President Trump's letter.

THE COURT:  Well, as cited in the complaint, in paragraph 24, the article says, a letter bearing Trump's name,

and the future president's signature.

I mean, I get it.  There is at least --

MR. BRITO:  Are there competing statements that are inconsistent with one another?  I think that's probably the defendants' argument is that there are statements in there.

But, Judge, once again, what's the title?

What's the first sentence of the article?

What you just read from our complaint are neither of the two.  The first -- the title of the argument -- of the article, pardon me, "Jeffrey Epstein's Friends Send Him Bawdy Letters for 50th Birthday Album.  One Was From Donald Trump."

Not one appeared to be, not one looked like it had his signature, one was from Donald Trump.  It could not be any clearer to somebody who is viewing this, especially online and is going to click on that post -- by the way, the argument raised by the defendants that this was just a meaningless letter between friends, this made the front page of the Wall Street Journal.

This is not some innocuous, insignificant reporting.  This was intentional, and the way to grab the viewer is to put this statement in not only the title but the very first sentence of the article that says, "One of them was Donald Trump."  That's a statement of fact, Your Honor.

That's not a mixed opinion.  That's not something that is watered down for purposes of trying to have one foot in each

camp to make sure that your bases were covered.  That's two of the first two statements in the article are definitive statements of fact, which were false.

THE COURT:  So, we're running out of time.  I have another hearing, but I'm going to let you get in some thoughts without me pestering you with questions, but I do have one more question, though.

With regard to the defendants, specifically regarding actual malice, it seems to me that, you know, the defendants are really grouped together and that the complaint doesn't really distinguish their actions enough.  I mean, the defendants' -- it's a part of their motion, of course.

I mean, I'm going to let you comment on that.  I just don't see how the defendants are sufficiently distinguished.

Would you like to talk about that for a moment?

MR. BRITO:  Yes, Your Honor.

So, the distinction that is made -- obviously, the defendants, the corporate defendants are the publishers of the medium, and --

THE COURT:  How did each one know, each defendant know that, you know, these were false statements?

MR. BRITO:  For example, Mr. Murdoch and Mr. Thomson were specifically contacted by the President and his team with regard to the defamatory nature of the statement before the article was published.  There was that high-level communication

that existed to inform the real decision makers, and just by way of allegation, Mr. Murdoch, as the Court may or may not be aware, is the majority owner of News Corp, the defendant, and Mr. Thomson is the CEO of News Corp.  So, you have Dow Jones.  You have News Corp.  They're responsible for the publication.

Mr. Murdoch and Mr. Thomson are communicated to directly before the article is written by the President and his staff, and then you have the remaining two defendants who are the two writers or authors of the article, and they're the ones that are the ones that make the definitive statements with respect to attribution of the letter by the President.

So, the distinction that the defendants are asking us to make at this time as to the actual malice issue on a person-by-person or party-by-party basis is not well taken because of just the identification of who these individuals are and the allegations in the complaint as to what they knew at the time that the article was published.

Each of them was on notice that the only source of verifiable information with respect to the authenticity of this letter was the President, and he put them on notice that this article was defamatory because the letter was not genuine.

So, the argument, while I understand counsel's argument about trying to make the distinction between who is responsible for what, I think that that's more a function of the damages component than it is a pleading requirement.

All of the defendants were involved in the bankruptcy and dissemination of the article containing the false information that each of them, as identified in the complaint, were on notice of was false and defamatory.

THE COURT:  In defense counsel's argument, she cited paragraphs 51, 53, 63 and 66 as the paragraphs that allege actual malice, and it refers to the general term defendants. Isn't there -- are there other paragraphs in the complaint that specifically describe how each defendant knowingly participated in publishing this article based on false information?

MR. BRITO:  Paragraphs 26 and 27, Your Honor, and then you also have paragraph 12 as it relates to Defendant Palazzolo, if I pronounced that correctly.

THE COURT:  So, you're arguing that President Trump, just the fact that President Trump told Mr. Murdoch and Mr. Thomson that the letter was fake and nonexistent, that that is enough to satisfy the actual malice prong.

MR. BRITO:  From a perspective of a reckless disregard of the truth, yes, Your Honor, because the only verifiable source of information and the article itself is Docket Entry 35-2 talks about the fact that there is no other verifiable source of information as to the authenticity issue.  Again, that's the core, so, yes.

One argument, Your Honor, that I'd like to bring up is, there was an argument that was advanced before you with regard

to the defamation per quod claim and how that's somewhat distinct from a defamation by implication.  And I don't know how versed Your Honor is on it, but I'll presume just by purposes of my argument that you're not, with due respect.

In Jews For Jesus, the case that counsel cited to, defamation by implication is the functional equivalent in Florida of a defamation per quod claim.  So, if you look at the elements of a defamation per quod, it's -- and they argue this in their motion, which I was surprised to hear that there was a distinction that there was being made between a per quod claim and an implication claim is the fact that defamation by implication is a recognized species of defamation that is subsumed within the tort of defamation.  That's the Florida Supreme Court in Jews For Jesus.

The elements, if you examine defamation by implication are almost identical, if not verbatim, to defamation per quod, in that the allegations have to be either statements that are true or likely to be true that by implication of the association of that information is defamatory in nature.

So, as Your Honor noted in the argument earlier when defense counsel was up here, the allegations for the per quod claim were a little different than what we alleged in the per se claim and there is a reason for that is because we do believe that both counts stand alone.  But I did want to address the argument that I heard earlier this morning that

somehow we have not and we are not entitled to look at this as an implication -- defamation by implication claim because that's somehow different than a per quod claim, which I don't believe it is under existing Florida law.

THE COURT:  Okay.  I asked you a brief question earlier about -- I asked you one or two questions about damages.

For Count 1, the defamation per se claim, you don't have to allege damages but you do for the defamation per quod. Right?

MR. BRITO:  I would agree.

THE COURT:  Okay.  Anything else briefly you want to add?

MR. BRITO:  I think with the last word that you said, given that words matter and you said briefly, no, Your Honor. I think I've said quite a bit today.

If you have any other further questions, I'm happy to answer them.  Either now or if anything arises.

I know we have eaten up a lot of your time.  I appreciate it, Your Honor.  Thank you.

THE COURT:  All right.  Anything else in rebuttal?

MR. LEVANDER:  Yes, Your Honor, if I might.

The motion has to be defended here based on what's on the complaint, not what Mr. Brito has imagined or said or -- you know, we have to stick to what's in the pleading.

And, as Your Honor pointed out, in the opening

paragraph and a separate paragraph on page two, the claim was, the letter is non-existent.

Other portions of the complaint suggest maybe anything was not authentic but the complaint alleged it was non-existent.

Mr. Brito, in my view, has now withdrawn that complaint that is non-existent, and therefore, what is on the Committee's website is, in fact, judicially noticeable by the Court.

Now, in Turner v. Wells and a host of other cases that you cite in Turner v. Wells, the point is clear.  They can't just pick and choose a little statement here and one over there and then say, oh, you can ignore the rest the article and, therefore, it's defamatory.

And if we look -- he read to you, Your Honor, the headline.  He failed to read the last letter in the headline. The headline has two statements, and then it has two statements under that.  And the statement under that that he didn't read to you is, quote, "In the headline, the President says the letter is a fake thing."  That he seemed to glide over.

And he has glided over the fact that there are three different paragraphs setting forth the denials of the President, and he glided over the fact that it says that in the article, quote, "It isn't clear how the letter bearing Trump's signature was prepared."

When you take the article as a whole, as you are

required to do, as Your Honor explained repeatedly in Turner v. Wells, as a whole it is substantially true.

And there is -- Your Honor suggested, well, maybe we shouldn't get to that yet or maybe down the road we can figure that out, but in defamation cases, unlike other cases, there is a constitutional imperative underlying the defamation law to protect organizations that publish stories and, therefore, there is an imperative where there is nothing on the face of the complaint or on the face of the article that's defamatory or false to dismiss it, and we urge the Court to do that.

Now, he read twice that the article says that they went to the FBI and the DOJ for further comments.  That's further evidence of their good faith.  They're trying to see if there is anything that would support or not support what the article says.  And what they're relying on is a letter that we now see on the official website.

I don't know why going to the FBI and the DOJ somehow supports his claim.  To the contrary, it shows good faith, and that's even more than the standard of actual malice.

By the way, he sort of said something about Ms. Maxwell.  According to the papers, Ms. Maxwell has said she doesn't recall, so I don't know how that helps him.

Importantly, importantly, this article, as I said before, could have been written exactly as it's written, and if it was written that way after the letter was on the website,

Cox v. Cohn says, dead in the water.  There is no claim.

How can it be possible that there is a viable claim when you have an accurate non-defamatory article that is supported and demonstrated to be accurate by an official website posting if we could have reported on that after the posting occurred?

I won't spend a lot of time on the ABC case.  It's obviously distinguishable.  There the reporter said several times that the President had been convicted of rape or found to have committed rape and under New York law rape and sexual assault are different.  And so there is -- it's a completely unrelated and inapplicable case.

He says repeatedly in his argument to you that the article connects President Trump to the bad deeds of Mr. Epstein.  We all agree Mr. Epstein was a bad guy, but show me a single sentence in that article that connects the President to the bad deeds of Mr. Epstein.

To the contrary, to the contrary, it shows that he separated out from Mr. Epstein before Mr. Epstein was ever charged.  Not once, but twice in the article it says that.

And, Parekh versus CBS, the Eleventh Circuit decision, is controlling here.

There, the person who was bringing the defamation action lived with and was married to the criminal.  And, yet, no defamation by saying he's associated with the criminal.

Here, we put the time barrier in, and it can't be defamatory as a matter of law under Parekh.

I think Your Honor's astute questioning demonstrate that he has conceded that the complaint does not allege special damages.  It is only reputational, which is not special damages, and there are a bunch of cases on page 12 that say that, of our opposition.

Also, Corsi versus News Max, 519 F.Supp.3d 1110, in the Southern District of Florida, 2021.

On per quod versus defamation by implication, actually under Florida law those are quite different things, as Jews For Jesus makes clear.  In per quod, you have to have a false statement which draws special damages.

By implication is a truthful statement but the way it's portrayed is false.  So, there is an distinction there, and they've only alleged per quod in their complaint.

I think I have hit all the points I wanted to hit, Your Honor.  Give me one second.  I just wanted to reiterate, once again, the point that the article says it isn't clear how the letter with Trump's signature was prepared.

That answers all the claims, puts it in perspective, is fair and accurate, and under the law we've cited to you, including the Cox case, including the basic principles of First Amendment law that underscore defamation law, this case should be dismissed on multiple grounds.

I think my colleague would like to have one minute to respond on the malice, Your Honor, if that's okay.

THE COURT:  I'm sorry, respond on what?

MR. LEVANDER:  On the malice issue.

MS. BOLGER:  I promise to be quick.

Mr. Brito's whole argument was predicated on some idea that the reckless disregard standard is somehow different or more objective.  That's wrong.

The reckless disregard standard is a subjective standard that looks to whether there was knowing falsification. So, Mr. Brito's sense that you could satisfy the reckless disregard standard more easily is wrong.

The decision of the Supreme Court in St. Amant versus Thompson, 390 U.S. 727, defines what reckless disregard is and it's a subjective standard.

Mr. Brito's argument seemed to be that they had no other sources, so there has to be actual malice.  That's obviously incorrect, Your Honor.  If you read the article, they talk to book binders, the other people who submitted pages to the Birthday Book.  They sought comment from the FBI, from the DOJ and from the President, and other sources that are listed. And, indeed, they had the page and the book itself as described in the article.

So, I wanted to mention this idea there was no other work done other than just calling up the President is

inaccurate and is reflected in the article itself.

Fundamentally, the article does not say that President Trump authored the letter.  Mr. Brito conceded that it tells two points of view.  It says -- the article says the headline which Mr. Brito focuses on and then it has the two other lines that say how the letter came to be is unclear.  That makes it impossible for Mr. Brito to be able to establish actual malice because the article, on its face, says that it doesn't know whether the letter -- how the letter was prepared.  Right?

If the journalists are disclosing that they do not know how the letter is prepared, and if the journalists are disclosing that the President has denied it, it makes it impossible ever to establish actual malice because they are holding out the article as saying we don't know how this happened and the President denied it.

That is what the cases that talk about the purpose of a denial and why a denial is so important.

So, when you ask Mr. Brito what effect the denial has -- what the effect of the denial is is to undercut the possibility that the President will ever be able to prove actual malice.

Mr. Brito said that the dismissal on actual malice grounds would be premature.  The Michael case, the Reed case and Jacobi case are Eleventh Circuit cases affirming dismissal on actual malice grounds at the 12(b)(6) stage.  Courts do do

this.

I actually agree with Mr. Brito that you should read the Truth Social case. I think it's actually quite helpful here. In the Truth Social case, the plaintiff filed an original complaint and the defendants moved to dismiss it. The Court, in granting that motion to dismiss, said to the plaintiff, hey, you should go back and allege that a certain agreement doesn't exist. If you put that allegation in, and you can do it in good faith, then you can have actual malice here.

Well, the plaintiff here could never do that. The document exists. Right?

If you read TMTG for exactly what it says, the plaintiff can never do what the Court asked the plaintiff in the TMTG case to do. The Court asked the plaintiff in that case to do a better job saying what was false.

The plaintiff here can't say the letter is false because it exists in the world. So, I think you should -- the TMTG case I think is helpful to me.

Finally, Your Honor, you asked Mr. Brito about the collective pleading of the defendants, and he told you, well, if Mr. Murdoch and Mr. Thomson knew, that means everyone knows. That's exactly what the New York Times versus Sullivan decision says is not actual malice. In particular, the New York Times versus Sullivan decision says that the allegations have to be

brought home to the people in the news organization who did the publishing.

So, the plaintiffs would have to connect Mr. Murdoch to Mr. Thomson to News Corporation, to Dow Jones, the individual journalists, and there would have to be a slew of allegations about how each individual defendant knew this information.

It is specifically prohibited by New York Times versus Sullivan to make the kinds of allegations that Mr. Brito is saying satisfy the actual malice standard, and with that, Your Honor, I will sit down.

Thank you, Your Honor.

THE COURT: You may sit down.

MR. BRITO: May I have one minute, Your Honor?

Will you indulge me?

THE COURT: What is the issue?

MR. BRITO: It's very brief, Your Honor.

THE COURT: Tell me, what is it about?

MR. BRITO: Just the contention that -- one thing I didn't cite to the Florida Statute with regard to the signature verification when we were talking about judicial notice. I just wanted to put that on the record. That's Florida Statute 92.38, that that would create an issue of fact.

THE COURT: I'm sorry.

MR. BRITO: Sorry for speaking so quickly.

THE COURT: You can go ahead and approach the podium.

MR. BRITO:  Thank you, Your Honor.  I will be brief.

When we talked about the issue as to whether or not the document is authentic or not, we talk about whether or not the signature on the document is authentic in and of itself, Florida Statute 92.38 discusses signature verification.  I won't belabor it.  I just wanted to put it on the record that that's something we relied upon in our papers.

The second thing is, I failed to mention in the article, and this goes directly to the argument we just heard from counsel, the article says, "The letter with Trump's signature."

So, if the article was written in a way where the author says, we don't know how this signature or this document was constructed; yet, at the same time based upon that lack of knowledge, have the gall, if you will, to state that this is a letter with Trump's signature lends itself to actual malice based upon a totality of the circumstances and a reckless disregard for the truth.

These two issues raise plain issues of fact for the Court to grant -- I'm sorry, to deny the motion to dismiss, and then finally, the last argument or one of the arguments I heard from counsel was that there was no connection in the article or in the letter between the President and Mr. Epstein.

In there, in the article, the attribution of this letter, it specifically states that President Trump and

Mr. Epstein, quote, have certain things in common.

And it also discusses, quote, unquote, this wonderful secret that they share.

That is exactly in dispute with what I heard counsel state that there is no connection in the article or in the reference to this letter which they attribute to the President as having any sort of relationship with Mr. Epstein and the crimes he committed.

Based upon that, the President, Your Honor, has been subjected to, as the law states, hatred, disgust, ridicule, contempt, or disgrace, and as a result of that these statements are defamatory as a matter of law.

I appreciate Your Honor's indulgence.

THE COURT:  Well, since you are here --

MR. BRITO:  Yes.

THE COURT:  -- again, one of the arguments I think they made earlier and then again on the rebuttal was about the timing, that had the Wall Street Journal published the exact same article after the return on the House subpoena, this case wouldn't be actionable.  Is that accurate?

MR. BRITO:  No, because at the end of the day, whether the -- we still don't know who is the person who authored the letter.  It's, again, it's the shifting of the focus to a piece of paper.  That's not the issue.  The issue is who created and signed that piece of paper.

The defendants make definitive statements on -- now it's four occasions in the article.  I only said three before.  It's four statements, that they definitively state without any basis whatsoever that the President is the one that signed it.

THE COURT:  But you couldn't then argue though, if the timing were different, that the article didn't exist.

MR. BRITO:  I would still be arguing that a genuine authentic article -- I'm sorry, genuine authentic letter does not exist.  I would still be making that contention.

THE COURT:  Well, the definition being what does it mean to be genuine or authentic or fake.

MR. BRITO:  That's what it's about, Judge.  Whether it's genuine or fake is at its core, whether it was created, signed, and delivered by the President, which our complaint states absolutely, positively, it was not.

THE COURT:  Last thing today.  I don't have time to hear anything else.

As far as the case posture, I mean, it's going to take me a little while to issue an order, but as far as having an operative scheduling order, is it appropriate at this time?

Do I need to lift the stay on discovery?

MR. BRITO:  I think out of fairness to my colleagues on the other side, I think it's a conversation that we probably need to have now that you have invited that conversation, or at least I am interpreting the invitation and get back to it.

I suspect that we are going to be diametrically opposed in our belief in response to your question.  So it may be something that the parties have to submit some sort of a joint statement, but that's well in advance of me communicating with my colleagues and before I speak to my client.

So, I think maybe we can respond in some sort of a joint statement to the Court addressing that question, and to the extent the Court wants to bring us back in, I welcome that, but I think that may be the better course.

THE COURT:  Okay.

MR. LEVANDER:  On that issue, Your Honor -- I wanted to have five seconds on something else, but on that issue there is a stipulation so ordered by the Court that was agreed to by Mr. Brito that stayed discovery until the motion to dismiss was decided.

THE COURT:  Okay.  Then it will be stayed until I issue an order.

All right.  Out of time.  Thank you.

MR. BRITO:  Thank you, Your Honor.

COURT SECURITY OFFICER:  All rise.

(Proceedings were concluded at 11:55 a.m.)

C E R T I F I C A T E


        I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.




December 12, 2025        /s/Patricia Diaz
DATE                     PATRICIA DIAZ, FCRR, RPR, FPR
                         Official Court Reporter
                         United States District Court
                         400 North Miami Avenue, 11th Floor
                         Miami, Florida 33128
                         (305) 523-5178

## /

**/s/Patricia** [1] - 73:9

## 1

**1** [7] - 1:8, 23:18, 25:17, 25:18, 27:21, 38:22, 60:7
**10020** [1] - 2:3
**10036** [1] - 2:6
**107** [2] - 6:8, 6:17
**1095** [1] - 2:6
**10:00** [1] - 1:6
**1110** [1] - 64:8
**1120** [1] - 17:15
**1135** [1] - 17:18
**1137** [1] - 17:18
**11674441** [1] - 6:3
**119** [1] - 22:17
**11:53** [1] - 72:21
**11:55** [1] - 1:6
**11th** [2] - 2:11, 73:11
**12** [5] - 13:3, 19:4, 58:12, 64:6, 73:9
**12(b)(6** [1] - 66:25
**1231** [1] - 22:10
**1251** [1] - 2:2
**1292** [2] - 6:8, 6:18
**13** [1] - 30:22
**1365** [1] - 15:22
**1367** [1] - 15:11
**1400** [1] - 1:24
**15** [1] - 23:25
**1615443** [1] - 49:24
**165** [5] - 5:11, 7:20, 8:17, 12:15, 16:2
**17th** [2] - 4:9, 14:3
**1874638** [1] - 23:11
**190** [1] - 22:10
**193** [1] - 22:16
**1975** [1] - 16:23
**198** [1] - 15:10

## 2

**2** [4] - 9:2, 25:17, 25:25, 27:22
**20** [1] - 5:19
**2002** [3] - 23:21, 23:23, 27:7
**2003** [2] - 23:15, 27:7
**2008** [1] - 27:9
**201** [1] - 37:20
**2011** [1] - 6:3
**2016** [1] - 17:25
**2020** [2] - 10:14, 18:16
**2021** [3] - 21:18, 48:18, 64:9

**2024** [4] - 6:18, 16:17, 45:21, 46:6
**2025** [6] - 1:5, 4:9, 14:3, 23:11, 49:24, 73:9
**21** [1] - 18:11
**2121** [1] - 1:20
**21st** [1] - 2:3
**22** [5] - 5:5, 30:21, 31:1, 53:16, 53:24
**24** [2] - 25:19, 54:25
**25-CV-23232** [1] - 3:3
**25-CV-23232-DPG** [1] - 1:2
**26** [1] - 58:11
**27** [4] - 5:5, 31:4, 53:20, 58:11

## 3

**3** [1] - 23:12
**30** [1] - 4:25
**300** [1] - 47:2
**305** [2] - 2:12, 73:12
**33128** [2] - 2:12, 73:12
**33134** [1] - 1:21
**33301** [1] - 1:25
**35-2** [2] - 23:18, 58:21
**3745213** [1] - 46:6
**390** [1] - 65:14

## 4

**4** [2] - 5:12, 9:18
**400** [2] - 2:11, 73:11
**401** [1] - 16:17
**419** [1] - 49:16
**42** [2] - 45:6, 45:11
**420** [1] - 16:23
**450** [1] - 1:24
**469** [1] - 16:23
**495** [1] - 17:4
**496** [1] - 16:18

## 5

**5** [3] - 5:13, 9:2, 21:18
**50th** [4] - 26:5, 33:12, 33:16, 55:11
**51** [2] - 20:13, 58:6
**519** [1] - 64:8
**523-5178** [2] - 2:12, 73:12
**53** [2] - 20:13, 58:6
**585** [1] - 21:18
**5858569** [1] - 21:18

**590** [1] - 9:17

## 6

**6** [2] - 4:24, 13:3
**63** [2] - 20:13, 58:6
**636** [1] - 9:17
**643** [1] - 49:16
**646** [1] - 10:8
**650** [1] - 1:20
**66** [2] - 20:13, 58:6

## 7

**727** [1] - 65:14
**762** [1] - 10:9
**769** [1] - 17:14

## 8

**820** [1] - 18:16
**827** [1] - 18:16

## 9

**9** [1] - 1:5
**92.38** [2] - 68:22, 69:5

## A

**A&E** [1] - 10:8
**a.m** [2] - 1:6, 72:21
**ABC** [2] - 40:13, 63:7
**able** [11] - 19:16, 24:15, 28:4, 28:6, 28:9, 28:12, 30:17, 44:23, 51:11, 66:7, 66:20
**above-entitled** [1] - 73:5
**above-referenced** [1] - 45:12
**absent** [1] - 23:9
**absolute** [1] - 17:1
**absolutely** [4] - 31:12, 42:2, 44:11, 71:15
**absurdity** [1] - 16:19
**abundantly** [1] - 47:13
**abuse** [2] - 40:19, 40:20
**accept** [2] - 6:4, 37:8
**accomplish** [2] - 44:4, 44:5
**accord** [1] - 15:9
**according** [2] - 26:19, 62:21
**accuracy** [3] - 17:7,

38:2, 50:16
**accurate** [12] - 4:12, 12:19, 14:6, 15:24, 16:10, 17:6, 24:6, 63:3, 63:4, 64:22, 70:20, 73:4
**accurately** [2] - 16:3, 38:1
**accuse** [1] - 48:5
**accused** [1] - 48:4
**acknowledged** [1] - 51:4
**acknowledges** [1] - 37:4
**acknowledging** [1] - 38:16
**acted** [2] - 19:17, 22:11
**acting** [1] - 49:2
**Action** [1] - 5:21
**action** [1] - 63:24
**actionable** [1] - 70:20
**actions** [2] - 30:5, 56:11
**activity** [1] - 47:20
**acts** [1] - 47:24
**actual** [54] - 13:14, 19:17, 20:1, 20:3, 20:5, 20:11, 20:20, 20:25, 21:3, 21:4, 21:12, 21:16, 22:9, 22:15, 22:20, 22:22, 23:4, 23:7, 25:4, 25:9, 25:12, 25:13, 27:3, 27:20, 28:17, 29:10, 34:25, 35:2, 46:13, 48:11, 48:18, 49:6, 49:7, 49:10, 49:11, 49:16, 52:5, 52:7, 54:16, 56:9, 57:13, 58:7, 58:17, 62:19, 65:17, 66:7, 66:13, 66:21, 66:22, 66:25, 67:9, 67:24, 68:9, 69:16
**add** [1] - 60:12
**adding** [1] - 20:24
**addition** [2] - 33:19, 34:18
**additional** [4] - 17:10, 18:5, 18:6, 19:16
**additionally** [1] - 21:19
**address** [4] - 4:19, 7:21, 45:3, 59:25
**addressing** [2] - 46:24, 72:7
**admission** [1] -

35:11
**admissions** [1] - 17:23
**admitted** [2] - 18:23, 36:20
**advance** [2] - 34:3, 72:4
**advanced** [1] - 58:25
**advancing** [3] - 31:10, 34:6, 36:24
**affirmed** [2] - 15:4, 18:17
**affirming** [1] - 66:24
**age** [2] - 17:13, 17:18
**agency** [1] - 9:4
**ago** [2] - 38:18, 49:17
**agree** [6] - 3:24, 45:10, 45:19, 60:10, 63:15, 67:2
**agreed** [1] - 72:13
**agreement** [5] - 50:5, 50:8, 50:9, 50:11, 67:8
**ahead** [4] - 28:22, 40:9, 51:17, 68:25
**Airline** [1] - 22:16
**albeit** [1] - 45:3
**Album** [2] - 33:12, 55:11
**album** [1] - 26:5
**ALEJANDRO** [1] - 1:18
**Alejandro** [1] - 3:7
**allegation** [9] - 11:24, 21:21, 22:7, 22:12, 28:18, 45:9, 53:17, 57:2, 67:8
**allegations** [30] - 6:5, 20:4, 20:7, 20:11, 20:16, 20:19, 20:22, 20:24, 21:4, 23:1, 23:4, 23:6, 28:14, 30:15, 31:13, 35:20, 36:2, 45:11, 45:22, 47:15, 48:11, 50:14, 51:21, 52:8, 57:16, 59:17, 59:21, 67:25, 68:5, 68:8
**allege** [10] - 19:17, 19:19, 19:21, 21:19, 23:6, 45:25, 58:6, 60:8, 64:4, 67:7
**alleged** [13] - 4:16, 12:7, 19:1, 20:7, 20:14, 22:22, 28:4, 49:1, 50:5, 51:1, 59:22, 61:4, 64:16
**allegedly** [2] - 15:23, 24:11

**alleges** [2] - 5:3, 18:5
**alleging** [1] - 7:6
**allusion** [1] - 43:12
**almost** [3] - 22:20, 25:9, 59:16
**alone** [1] - 59:24
**ALSO** [1] - 2:1
**Altonaga** [1] - 40:13
**Amant** [1] - 65:13
**amend** [4] - 18:9, 18:12, 38:20
**amendment** [3] - 38:22, 39:11, 39:21
**Amendment** [3] - 16:11, 29:12, 64:24
**American** [1] - 24:19
**Americas** [2] - 2:2, 2:6
**ample** [1] - 18:8
**analysis** [3] - 27:21, 39:25, 41:2
**analyzing** [2] - 37:8, 46:10
**Andrew** [2] - 3:13, 4:1
**ANDREW** [1] - 2:4
**animosity** [3] - 22:14, 22:23, 24:17
**animus** [1] - 22:12
**anonymous** [1] - 49:14
**answer** [8] - 27:3, 29:1, 36:4, 36:18, 39:10, 45:8, 46:14, 60:17
**answered** [1] - 7:10
**answers** [1] - 64:21
**apart** [1] - 35:25
**apologize** [2] - 33:23, 34:6
**Appeals** [1] - 18:17
**appearances** [1] - 3:5
**APPEARANCES** [1] - 1:16
**appeared** [1] - 55:12
**Appendix** [1] - 18:16
**applicable** [1] - 10:22
**application** [4] - 7:2, 15:12, 28:21, 28:23
**applied** [1] - 6:21
**applies** [1] - 35:1
**apply** [2] - 28:25, 29:13
**appreciate** [4] - 41:5, 42:13, 60:19, 70:13
**approach** [1] - 68:25
**appropriate** [5] - 9:1, 35:13, 37:1, 37:16,

71:20
**argue** [12] - 3:25, 4:23, 12:10, 12:13, 19:9, 38:5, 39:16, 41:6, 54:22, 59:8, 71:5
**argued** [1] - 31:10
**argues** [4] - 9:23, 10:2, 13:6, 21:1
**arguing** [3] - 8:19, 58:14, 71:7
**argument** [31] - 4:21, 10:4, 22:21, 28:17, 30:7, 31:9, 33:6, 36:21, 36:23, 40:18, 42:6, 46:12, 47:10, 47:12, 51:22, 55:5, 55:9, 55:15, 57:22, 58:5, 58:24, 58:25, 59:4, 59:20, 59:25, 63:13, 65:6, 65:16, 69:9, 69:21
**arguments** [9] - 20:24, 30:1, 30:4, 34:7, 37:9, 38:18, 46:25, 69:21, 70:16
**arises** [1] - 60:17
**arrest** [5] - 6:10, 6:13, 6:14, 7:5, 7:7
**article** [132] - 4:9, 4:11, 8:19, 8:22, 10:4, 10:15, 12:15, 13:4, 13:12, 14:4, 14:9, 14:17, 14:22, 15:1, 15:14, 15:18, 16:3, 16:5, 16:9, 16:21, 17:6, 17:10, 18:23, 19:18, 19:19, 19:23, 21:2, 21:3, 22:4, 23:13, 23:17, 23:20, 24:12, 24:14, 24:16, 24:18, 24:25, 25:20, 25:23, 27:10, 30:23, 31:8, 32:5, 33:4, 33:9, 33:10, 33:15, 33:20, 34:1, 34:3, 34:5, 34:9, 34:11, 34:15, 34:20, 35:21, 39:24, 40:2, 41:7, 41:12, 42:11, 42:15, 42:17, 42:18, 43:3, 43:6, 43:18, 43:20, 44:3, 44:7, 44:10, 44:18, 45:16, 48:4, 49:7, 49:18, 50:2, 50:3, 50:6, 50:10, 51:1, 51:13, 51:17, 52:2, 52:8, 54:10, 54:15, 54:25, 55:7, 55:10, 55:22, 56:2, 56:25, 57:7,

57:9, 57:17, 57:21, 58:2, 58:10, 58:20, 61:12, 61:23, 61:25, 62:9, 62:11, 62:14, 62:23, 63:3, 63:14, 63:16, 63:20, 64:19, 65:18, 65:23, 66:1, 66:2, 66:4, 66:8, 66:14, 69:9, 69:10, 69:12, 69:22, 69:24, 70:5, 70:19, 71:2, 71:6, 71:8
**Article** [1] - 31:5
**article's** [1] - 21:16
**articles** [9] - 9:19, 13:17, 24:7, 35:12, 45:12, 46:22, 47:6, 47:7, 47:25
**aside** [2] - 20:10, 46:25
**aspect** [1] - 27:5
**aspersions** [1] - 48:1
**assault** [3] - 40:19, 40:20, 63:11
**asserted** [2] - 5:22, 13:17
**associated** [1] - 63:25
**Association** [1] - 9:16
**association** [2] - 43:16, 59:19
**Associations** [1] - 22:16
**assuming** [1] - 8:5
**astute** [1] - 64:3
**Atlanta** [3] - 6:7, 6:17, 8:3
**attached** [2] - 6:23, 24:7
**attempt** [1] - 33:7
**attempts** [1] - 51:4
**attention** [4] - 33:11, 44:5, 53:4, 53:16
**attesting** [1] - 50:10
**attorneys** [1] - 38:19
**attract** [1] - 44:5
**attribute** [2] - 34:2, 70:6
**attributed** [1] - 51:17
**attributes** [3] - 34:12, 41:14, 52:3
**attributing** [1] - 40:10
**attribution** [6] - 33:3, 36:6, 41:19, 44:7, 57:11, 69:24
**authentic** [12] - 30:12, 30:19, 37:6, 51:25, 53:12, 53:13,

61:4, 69:3, 69:4, 71:8, 71:11
**authenticate** [1] - 38:9
**authentication** [5] - 37:2, 37:14, 37:19, 39:6, 50:23
**authenticity** [14] - 8:6, 30:25, 31:20, 36:5, 36:21, 36:23, 49:3, 50:25, 51:9, 52:3, 53:22, 54:7, 57:19, 58:22
**author** [2] - 34:4, 69:13
**authored** [13] - 30:23, 33:5, 34:13, 36:1, 36:13, 37:18, 40:3, 42:1, 49:20, 51:15, 54:2, 66:3, 70:22
**authoring** [1] - 52:18
**authorized** [1] - 31:5
**authors** [2] - 34:16, 57:9
**authorship** [1] - 51:9
**automatically** [1] - 38:9
**Avenue** [4] - 2:2, 2:6, 2:11, 73:11
**aware** [2] - 4:8, 57:3
**awareness** [2] - 19:20, 23:8

---

## B

**bad** [3] - 63:14, 63:15, 63:17
**balance** [1] - 37:9
**Bancorp** [2] - 45:21, 46:6
**bankruptcy** [1] - 58:1
**bar** [1] - 16:24
**Barber** [2] - 49:23, 49:25
**barrier** [1] - 64:1
**based** [17] - 26:20, 33:2, 38:23, 43:20, 46:21, 47:15, 49:10, 49:18, 50:25, 52:7, 52:22, 58:10, 60:22, 69:14, 69:17, 70:9
**bases** [1] - 56:1
**basic** [2] - 37:21, 64:23
**basis** [8] - 31:12, 44:13, 47:8, 48:7, 49:8, 50:3, 57:14, 71:4

**bawdiness** [1] - 27:11
**bawdy** [13] - 13:5, 17:12, 17:13, 17:18, 17:19, 17:21, 17:22, 23:15, 26:5, 27:19, 28:10, 43:13
**Bawdy** [2] - 33:12, 55:10
**bearing** [6] - 4:13, 5:11, 14:5, 14:18, 54:25, 61:23
**bears** [1] - 16:2
**beautiful** [1] - 24:2
**became** [1] - 18:24
**become** [1] - 44:16
**becomes** [1] - 11:17
**BEFORE** [1] - 1:14
**beginning** [4] - 8:11, 43:21, 46:23, 51:22
**behalf** [1] - 3:9
**belabor** [1] - 69:6
**belied** [1] - 31:12
**belief** [1] - 72:2
**better** [3] - 41:23, 67:16, 72:9
**between** [5] - 37:5, 55:17, 57:23, 59:10, 69:23
**beyond** [1] - 44:6
**billions** [1] - 45:15
**binders** [1] - 65:19
**binding** [1] - 24:23
**Biro** [1] - 20:20
**Birthday** [19] - 4:10, 5:4, 5:7, 5:10, 5:12, 5:19, 7:18, 9:21, 9:24, 12:16, 14:13, 16:1, 17:12, 18:10, 26:8, 33:12, 55:11, 65:20
**birthday** [2] - 26:5, 33:16
**bit** [2] - 46:18, 60:15
**bled** [1] - 44:22
**body** [4] - 6:9, 8:4, 8:7, 16:12
**body-worn** [2] - 8:4, 8:7
**boilerplate** [1] - 20:14
**BOLGER** [8] - 2:1, 19:12, 19:14, 26:12, 28:3, 28:23, 29:4, 65:5
**Bolger** [3] - 3:14, 4:22, 19:9
**bona** [1] - 13:18
**Book** [17] - 4:10, 5:4, 5:7, 5:10, 5:12, 5:19, 7:18, 9:21, 9:24,

12:16, 14:13, 16:1, 17:12, 18:10, 26:8, 65:20

**book** [16] - 4:11, 5:23, 9:3, 9:4, 10:24, 11:20, 12:3, 24:22, 24:24, 25:23, 26:2, 26:3, 31:15, 39:23, 65:19, 65:22

**bottom** [1] - 41:7

**Boulevard** [2] - 1:20, 1:24

**box** [1] - 26:25

**breathing** [1] - 25:4

**brief** [7] - 13:9, 15:3, 34:24, 50:14, 60:5, 68:16, 69:1

**briefing** [1] - 30:8

**briefly** [2] - 60:11, 60:14

**Brimelow** [2] - 21:5, 23:2

**bring** [2] - 58:24, 72:8

**bringing** [2] - 39:20, 63:23

**brings** [1] - 4:15

**Brinker** [1] - 45:24

**BRITO** [42] - 1:18, 1:19, 3:7, 29:23, 32:15, 33:1, 36:4, 39:4, 42:13, 44:16, 45:2, 45:18, 46:5, 46:12, 48:13, 48:16, 52:12, 52:19, 52:22, 53:4, 53:7, 53:11, 53:15, 54:17, 55:3, 56:16, 56:22, 58:11, 58:18, 60:10, 60:13, 68:13, 68:16, 68:18, 68:24, 69:1, 70:15, 70:21, 71:7, 71:12, 71:22, 72:19

**Brito** [12] - 3:7, 60:23, 61:6, 66:3, 66:5, 66:7, 66:18, 66:22, 67:2, 67:20, 68:8, 72:14

**Brito's** [3] - 65:6, 65:11, 65:16

**Broadcasting** [1] - 16:23

**brought** [2] - 20:4, 68:1

**bunch** [2] - 11:6, 64:6

**business** [1] - 41:16

**Bustos** [1] - 10:8

**buzz** [1] - 20:20

**BY** [1] - 2:8

## C

**cadence** [1] - 42:17

**cam** [1] - 6:9

**camera** [2] - 8:4, 8:7

**camp** [1] - 56:1

**campaign** [1] - 13:20

**cannot** [7] - 8:15, 13:7, 13:18, 18:14, 38:2, 39:25, 40:3

**Capital** [1] - 22:10

**case** [59] - 3:3, 4:8, 6:1, 6:16, 6:22, 7:3, 11:11, 15:13, 15:24, 16:14, 16:19, 17:8, 20:17, 20:18, 20:20, 20:21, 21:5, 21:7, 21:13, 22:22, 23:2, 23:8, 25:6, 25:7, 25:14, 26:19, 27:16, 29:9, 29:17, 29:25, 34:23, 37:15, 40:12, 40:24, 42:7, 45:20, 45:21, 46:3, 47:12, 49:13, 50:2, 50:7, 59:5, 63:7, 63:12, 64:23, 64:24, 66:23, 66:24, 67:3, 67:4, 67:15, 67:16, 67:19, 70:19, 71:18

**CASE** [1] - 1:2

**cases** [13] - 9:6, 9:15, 17:15, 19:4, 22:2, 25:10, 29:15, 61:9, 62:5, 64:6, 66:16, 66:24

**cast** [1] - 48:1

**cautionary** [2] - 14:20, 15:9

**CBS** [2] - 18:16, 63:21

**centered** [1] - 29:14

**central** [1] - 6:13

**CEO** [1] - 57:4

**certain** [10] - 7:6, 11:8, 11:22, 25:20, 34:17, 38:15, 39:3, 41:8, 67:7, 70:1

**certify** [1] - 73:3

**challenge** [1] - 37:2

**challenging** [3] - 50:15, 52:13, 53:1

**Chamblee** [5] - 20:17, 21:7, 22:22, 23:11, 28:16

**change** [1] - 39:25

**charged** [6] - 10:16, 10:18, 14:14, 43:2, 43:11, 63:20

**charges** [2] - 14:16, 47:23

**child** [2] - 43:1, 47:19

**children** [1] - 43:18

**choose** [1] - 61:11

**chose** [2] - 31:3, 53:18

**Circuit** [25] - 6:8, 6:12, 6:18, 9:14, 10:9, 14:24, 15:5, 17:15, 17:17, 18:15, 18:16, 20:16, 20:19, 21:5, 21:8, 21:13, 22:8, 22:13, 22:21, 22:25, 23:3, 23:7, 49:10, 63:21, 66:24

**circumstances** [3] - 16:15, 50:22, 69:17

**cite** [4] - 6:16, 37:19, 61:10, 68:19

**cited** [10] - 16:16, 17:15, 21:25, 29:15, 30:3, 49:14, 54:24, 58:5, 59:5, 64:22

**cites** [2] - 6:24, 35:20

**Cities** [1] - 22:10

**citing** [1] - 14:23

**citizen** [1] - 46:10

**City** [3] - 6:7, 6:17, 8:3

**claim** [27] - 5:23, 7:5, 10:7, 14:25, 15:17, 18:4, 19:3, 26:17, 26:18, 26:24, 36:6, 40:16, 54:5, 59:1, 59:7, 59:10, 59:11, 59:22, 59:23, 60:2, 60:3, 60:7, 61:1, 62:18, 63:1, 63:2

**claimed** [2] - 22:6, 50:7

**claiming** [1] - 30:23

**claims** [15] - 4:17, 5:25, 6:13, 9:10, 16:24, 17:20, 19:3, 20:25, 21:16, 23:9, 25:22, 46:11, 46:16, 52:10, 64:21

**clear** [12] - 14:17, 16:7, 17:16, 19:5, 35:6, 47:13, 52:20, 54:21, 61:10, 61:23, 64:12, 64:19

**clearer** [1] - 55:14

**clearly** [6] - 34:19, 35:1, 37:2, 37:14, 41:11, 54:1

**click** [1] - 55:15

**client** [3] - 3:15, 21:16, 72:5

**closed** [1] - 49:11

**CNN** [1] - 48:17

**cogent** [1] - 17:22

**Cohn** [2] - 16:23, 63:1

**colleague** [2] - 4:22, 65:1

**colleagues** [4] - 3:8, 3:13, 71:22, 72:5

**collective** [1] - 67:21

**collectively** [1] - 20:8

**combination** [1] - 23:3

**comment** [5] - 26:9, 34:19, 34:20, 56:13, 65:20

**comments** [5] - 17:19, 17:23, 18:2, 43:13, 62:12

**commission** [1] - 18:22

**commits** [1] - 18:19

**committed** [2] - 63:10, 70:8

**Committee** [8] - 5:7, 5:17, 5:24, 7:22, 8:17, 16:22, 17:6, 18:9

**committee** [6] - 7:14, 7:17, 7:19, 8:13, 10:1

**Committee's** [1] - 61:7

**common** [1] - 70:1

**communicated** [2] - 49:17, 57:6

**communicating** [1] - 72:4

**communication** [1] - 56:25

**COMPANY** [1] - 1:7

**compelling** [1] - 16:15

**competing** [1] - 55:3

**complaint** [79] - 5:3, 5:6, 5:15, 5:18, 6:6, 6:11, 6:23, 7:6, 8:4, 9:20, 9:22, 11:5, 11:25, 17:9, 18:5, 18:9, 18:14, 18:18, 19:6, 19:15, 20:7, 20:13, 20:22, 28:19, 30:8, 30:10, 30:13, 30:16, 30:18, 30:19, 30:21, 30:22, 31:4, 31:12, 31:13, 35:19, 35:24, 36:11, 36:12, 38:20, 39:16, 42:4, 42:8, 44:25, 45:2, 45:9, 47:15, 49:1, 50:5, 50:7, 50:13, 51:1, 51:21, 51:23, 52:8, 52:11, 52:15, 52:22, 52:24, 52:25, 53:3, 53:5, 54:24, 55:8, 56:10, 57:16, 58:3, 58:8, 60:23, 61:3, 61:4, 61:6, 62:9, 64:4, 64:16, 67:5, 71:14

**complaint's** [1] - 36:2

**complete** [3] - 10:13, 10:19, 21:10

**completely** [2] - 12:12, 63:11

**component** [1] - 57:25

**components** [2] - 37:18, 44:22

**concede** [1] - 44:25

**conceded** [2] - 64:4, 66:3

**concedes** [2] - 13:10, 15:2

**concern** [1] - 6:20

**concerns** [1] - 4:8

**concluded** [1] - 72:21

**conclusion** [2] - 17:21, 30:14

**conclusory** [7] - 6:4, 20:12, 20:22, 21:22, 22:13, 23:1, 45:11

**conduct** [1] - 13:5

**confirmation** [1] - 50:3

**confirmed** [1] - 24:7

**confirming** [1] - 17:7

**Congress** [7] - 24:19, 24:21, 24:23, 25:8, 38:3, 38:17, 39:12

**Congressional** [2] - 9:8, 9:19

**connect** [1] - 68:3

**connection** [2] - 69:22, 70:5

**connects** [2] - 63:14, 63:16

**consider** [17] - 5:9, 5:14, 6:25, 7:8, 11:3, 13:7, 14:25, 15:8, 26:10, 26:11, 35:17, 36:1, 37:23, 46:9, 48:7, 50:18

**considered** [4] - 6:9, 6:15, 7:20, 52:11

**considering** [4] - 3:23, 11:3, 12:5, 13:14

**consistent** [3] -

23:13, 24:25, 25:15

**constitutional** [1] - 62:6

**constructed** [1] - 69:14

**construe** [1] - 15:6

**contacted** [2] - 49:19, 56:23

**contained** [1] - 31:14

**containing** [2] - 16:5, 58:2

**contains** [1] - 39:23

**contempt** [1] - 70:11

**content** [6] - 4:13, 12:14, 12:18, 13:7, 14:4, 16:4

**contention** [4] - 46:18, 46:20, 68:18, 71:9

**context** [10] - 14:25, 15:1, 15:8, 15:15, 17:22, 29:25, 30:1, 30:2, 44:10, 54:19

**contextual** [1] - 14:12

**Conti** [1] - 3:15

**continue** [4] - 13:24, 13:25, 42:3, 51:20

**continues** [2] - 43:9, 53:7

**contract** [2] - 6:23, 6:24

**contradicted** [2] - 6:5, 22:4

**contrary** [5] - 12:17, 34:14, 62:18, 63:18

**contrast** [1] - 18:23

**contributed** [1] - 24:24

**controlling** [3] - 6:1, 14:24, 63:22

**controversy** [1] - 14:12

**conversation** [6] - 17:25, 34:15, 39:17, 40:14, 71:23, 71:24

**convicted** [2] - 10:18, 63:9

**copy** [1] - 5:7

**Coral** [1] - 1:21

**core** [5] - 37:19, 42:3, 42:5, 58:23, 71:13

**corners** [3] - 11:4, 39:15, 39:19

**Corp** [4] - 3:8, 57:3, 57:4, 57:5

**CORP** [1] - 1:19

**corporate** [1] - 56:18

**Corporation** [1] -

68:4

**corporation** [2] - 1:8, 1:9

**CORPORATION** [1] - 1:9

**correctly** [1] - 58:13

**Corsi** [1] - 64:8

**Counsel** [1] - 52:24

**counsel** [11] - 3:5, 25:21, 28:21, 30:18, 36:20, 46:13, 59:5, 59:21, 69:10, 69:22, 70:4

**counsel's** [2] - 57:22, 58:5

**Count** [6] - 25:18, 25:25, 27:21, 27:22, 38:22, 60:7

**count** [2] - 25:18, 46:16

**counts** [1] - 59:24

**Counts** [1] - 25:17

**course** [6] - 5:6, 15:25, 21:22, 48:14, 56:12, 72:9

**Court** [89] - 2:10, 2:10, 3:1, 4:7, 4:8, 5:9, 5:14, 6:2, 6:4, 6:24, 7:5, 7:8, 7:23, 9:14, 9:18, 9:23, 10:18, 10:23, 13:2, 13:6, 13:12, 13:15, 14:24, 14:25, 15:5, 15:19, 16:13, 16:25, 17:24, 18:11, 18:17, 19:6, 19:7, 20:2, 20:4, 21:6, 29:10, 29:24, 30:1, 30:3, 30:4, 30:7, 30:14, 31:11, 31:24, 34:24, 36:14, 36:19, 36:24, 37:11, 37:22, 39:16, 41:11, 42:5, 42:14, 42:16, 42:17, 44:17, 45:8, 47:1, 47:5, 47:9, 47:13, 47:16, 47:18, 48:7, 48:18, 48:19, 49:17, 49:25, 50:11, 50:12, 50:17, 52:6, 57:2, 59:14, 61:8, 62:10, 65:13, 67:6, 67:14, 67:15, 69:20, 72:7, 72:8, 72:13, 73:10, 73:11

**court** [5] - 6:9, 6:15, 10:15, 40:13, 49:5

**COURT** [67] - 1:1, 3:2, 3:10, 3:17, 4:2, 4:5, 5:1, 6:16, 6:19, 8:1, 8:10, 8:18, 8:24,

11:1, 12:24, 13:25, 19:10, 19:13, 25:17, 28:2, 28:20, 29:3, 29:7, 29:18, 29:21, 32:3, 32:16, 35:5, 38:18, 42:10, 44:14, 44:25, 45:10, 46:3, 46:7, 48:10, 48:14, 52:10, 52:13, 52:21, 52:24, 53:5, 53:9, 53:14, 54:12, 54:24, 56:4, 56:20, 58:5, 58:14, 60:5, 60:11, 60:20, 65:3, 68:12, 68:15, 68:17, 68:23, 68:25, 70:14, 70:16, 71:5, 71:10, 71:16, 72:10, 72:16, 72:20

**Court's** [7] - 4:20, 4:24, 5:13, 16:22, 29:12, 53:4, 53:15

**court's** [1] - 37:25

**COURTROOM** [1] - 3:3

**courts** [3] - 13:10, 16:14, 66:25

**covered** [1] - 56:1

**Covid** [1] - 9:19

**Cox** [4] - 16:23, 16:25, 63:1, 64:23

**crafted** [1] - 41:9

**create** [2] - 26:20, 68:22

**created** [3] - 14:14, 70:24, 71:13

**creation** [1] - 49:4

**credence** [1] - 42:25

**cries** [1] - 25:6

**crime** [1] - 18:19

**crimes** [6] - 18:22, 18:24, 43:11, 43:15, 44:11, 70:8

**criminal** [7] - 18:22, 27:18, 47:23, 47:24, 63:24, 63:25

**criminally** [1] - 10:16

**critical** [1] - 17:3

## D

**d/b/a** [1] - 1:8

**damages** [16] - 4:16, 19:2, 44:19, 44:21, 45:1, 45:3, 45:9, 45:11, 45:14, 46:1, 57:24, 60:6, 60:8, 64:5, 64:6, 64:13

**damn** [1] - 20:22

**DARRIN** [1] - 1:14

**DATE** [1] - 73:10

**DAVIS** [1] - 2:2

**Davis** [1] - 3:14

**days** [2] - 18:11, 44:18

**de** [1] - 1:20

**dead** [1] - 63:1

**deaf** [1] - 51:5

**deal** [2] - 26:2, 35:8

**deals** [1] - 53:22

**debates** [1] - 7:19

**December** [2] - 1:5, 73:9

**Dechert** [1] - 3:13

**DECHERT** [1] - 2:5

**decide** [1] - 29:16

**decided** [3] - 21:7, 23:12, 72:15

**decision** [10] - 16:23, 17:14, 18:15, 18:17, 49:22, 57:1, 63:21, 65:13, 67:23, 67:25

**decisions** [1] - 16:16

**decisive** [1] - 18:17

**declaration** [2] - 23:18, 24:8

**declined** [2] - 49:21

**deeds** [2] - 63:14, 63:17

**defamation** [49] - 4:15, 10:7, 13:14, 14:25, 15:15, 15:17, 16:11, 17:20, 18:18, 19:7, 25:18, 26:13, 26:14, 26:16, 26:17, 26:18, 26:23, 26:25, 27:1, 29:10, 33:2, 36:6, 36:8, 40:16, 41:14, 46:16, 52:10, 54:4, 59:1, 59:2, 59:6, 59:7, 59:8, 59:11, 59:12, 59:13, 59:15, 59:16, 60:2, 60:7, 60:8, 62:5, 62:6, 63:23, 63:25, 64:10, 64:24

**Defamation** [2] - 18:4, 19:2

**defamatory** [32] - 10:11, 10:17, 15:23, 17:13, 17:22, 18:6, 18:19, 20:5, 24:11, 26:1, 26:12, 26:15, 26:22, 27:5, 27:15, 27:16, 27:17, 27:18, 28:5, 28:9, 44:12, 50:7, 52:4, 56:24, 57:21, 58:4, 59:19, 61:13, 62:9, 63:3, 64:2, 70:12

**defame** [2] - 31:3,

53:19

**defeats** [1] - 10:7

**defective** [1] - 17:9

**defendant** [15] - 7:4, 10:10, 19:19, 20:1, 22:4, 26:22, 31:9, 37:4, 38:13, 46:2, 48:20, 56:20, 57:3, 58:9, 68:6

**Defendant** [1] - 58:12

**defendants** [56] - 1:12, 5:9, 8:21, 13:2, 18:10, 19:17, 19:22, 20:8, 21:20, 22:6, 22:11, 24:15, 30:13, 31:2, 31:15, 31:24, 34:3, 36:10, 36:23, 37:22, 38:5, 39:19, 39:24, 39:25, 40:8, 41:2, 41:5, 41:15, 43:23, 47:4, 47:9, 47:16, 47:18, 49:2, 49:4, 50:15, 50:24, 51:8, 52:9, 53:18, 54:10, 54:22, 55:16, 56:8, 56:9, 56:14, 56:18, 57:8, 57:12, 58:1, 58:7, 67:5, 67:21, 71:1

**DEFENDANTS** [2] - 1:22, 2:1

**defendants'** [12] - 3:19, 25:22, 25:23, 30:5, 30:18, 37:9, 38:18, 40:20, 42:6, 46:20, 55:5, 56:12

**defended** [1] - 60:22

**defense** [7] - 10:13, 10:20, 14:12, 36:20, 46:13, 58:5, 59:21

**defined** [1] - 48:18

**defines** [1] - 65:14

**definition** [1] - 71:10

**definitive** [4] - 41:25, 56:2, 57:10, 71:1

**definitively** [1] - 71:3

**degree** [1] - 6:20

**Delaware** [2] - 1:8, 1:9

**deliberately** [2] - 31:3, 53:18

**deliver** [1] - 34:5

**delivered** [4] - 34:13, 42:1, 54:11, 71:14

**demonstrate** [1] - 64:3

**demonstrated** [1] - 63:4

**denial** [12] - 14:10,

21:10, 21:11, 40:7, 42:11, 42:19, 43:6, 43:19, 66:17, 66:18, 66:19

**denials** [6] - 9:21, 16:6, 21:4, 21:21, 22:23, 61:21

**denied** [8] - 21:1, 24:5, 40:24, 48:8, 49:20, 49:25, 66:12, 66:15

**denies** [1] - 52:15

**deny** [2] - 52:6, 69:20

**Department** [3] - 34:17, 34:19, 49:21

**DEPUTY** [1] - 3:3

**Dershowitz** [3] - 21:25, 48:17, 49:5

**describe** [1] - 58:9

**described** [2] - 12:14, 65:22

**describes** [3] - 4:11, 14:4, 16:3

**description** [4] - 4:12, 12:17, 32:7, 47:4

**designed** [3] - 42:22, 43:4, 48:1

**despite** [2] - 9:6, 51:16

**detail** [4] - 12:14, 14:6, 16:3, 23:17

**detailed** [3] - 4:12, 12:17, 14:20

**determination** [3] - 11:4, 36:15, 47:14

**determine** [2] - 40:16, 50:24

**determined** [2] - 38:1, 50:13

**determining** [1] - 22:15

**Devin** [1] - 49:13

**devoted** [1] - 21:11

**diametrically** [1] - 72:1

**DIAZ** [2] - 2:9, 73:10

**Diaz** [1] - 73:9

**dictates** [1] - 3:22

**difference** [1] - 51:25

**different** [12] - 9:11, 21:23, 25:17, 42:6, 44:4, 59:22, 60:3, 61:21, 63:11, 64:11, 65:7, 71:6

**direct** [5] - 39:9, 44:7, 45:15, 53:4, 53:10

**directed** [1] - 48:1

**directing** [2] - 53:15, 54:3

**direction** [2] - 36:11, 42:6

**directly** [6] - 34:1, 34:21, 41:13, 43:14, 57:7, 69:9

**disclosed** [1] - 27:10

**disclosing** [2] - 66:10, 66:12

**disclosure** [1] - 39:12

**disclosures** [1] - 14:21

**discovered** [2] - 10:13, 10:19

**discovery** [5] - 20:21, 39:8, 44:24, 71:21, 72:14

**discuss** [1] - 4:17

**discussed** [4] - 23:17, 24:8, 32:5, 39:17

**discusses** [4] - 27:12, 34:16, 69:5, 70:2

**disgrace** [1] - 70:11

**disgust** [1] - 70:10

**dismiss** [31] - 3:19, 4:22, 6:10, 11:7, 12:5, 13:8, 13:24, 14:1, 16:14, 17:16, 18:11, 19:4, 19:6, 21:24, 33:9, 35:18, 36:16, 37:10, 37:15, 38:25, 39:5, 40:17, 40:24, 42:4, 50:1, 52:7, 62:10, 67:5, 67:6, 69:20, 72:14

**dismissal** [6] - 15:13, 18:3, 25:6, 45:23, 66:22, 66:24

**dismissed** [4] - 15:25, 17:8, 19:15, 64:25

**dismissing** [1] - 18:18

**disparage** [1] - 42:20

**dispute** [15] - 7:14, 7:21, 8:6, 8:12, 8:14, 8:15, 11:19, 12:2, 12:3, 13:18, 37:5, 42:20, 49:8, 70:4

**disregard** [9] - 48:22, 48:24, 49:2, 58:18, 65:7, 65:9, 65:12, 65:14, 69:18

**dissemination** [1] - 58:2

**distinct** [1] - 59:2

**distinction** [6] - 46:12, 56:17, 57:12, 57:23, 59:10, 64:15

**distinguish** [1] - 56:11

**distinguishable** [1] - 63:8

**distinguished** [1] - 56:14

**DISTRICT** [3] - 1:1, 1:1, 1:15

**District** [8] - 2:10, 16:16, 45:21, 45:24, 48:18, 49:22, 64:9, 73:11

**district** [2] - 6:9, 6:14

**DIVISION** [1] - 1:2

**Docket** [2] - 23:18, 58:20

**doctor** [2] - 10:16, 10:18

**doctrine** [1] - 6:21

**document** [35] - 8:20, 24:21, 30:25, 31:14, 31:19, 31:21, 33:3, 33:5, 34:22, 37:1, 37:6, 37:8, 37:12, 37:24, 38:1, 38:3, 38:5, 38:6, 38:11, 38:12, 39:1, 39:6, 39:9, 39:22, 39:23, 54:1, 54:7, 54:8, 54:17, 67:12, 69:3, 69:4, 69:13

**documents** [19] - 6:5, 7:17, 7:22, 8:15, 8:16, 9:4, 9:7, 9:10, 9:11, 11:10, 11:11, 34:17, 37:23, 38:8, 38:14, 39:12, 47:5, 47:17, 50:17

**DOJ** [3] - 62:12, 62:17, 65:21

**dollars** [1] - 45:15

**DONALD** [1] - 1:4

**Donald** [10] - 4:14, 12:22, 14:5, 16:2, 26:6, 33:13, 33:18, 55:11, 55:13, 55:22

**done** [3] - 16:14, 42:22, 65:25

**doubt** [1] - 24:3

**doubts** [2] - 19:22, 19:24

**Douglas** [2] - 17:14, 17:17

**DOW** [1] - 1:7

**Dow** [3] - 3:15, 57:4, 68:4

**down** [8] - 13:23,

33:7, 34:7, 42:20, 55:25, 62:4, 68:10, 68:12

**drafted** [1] - 41:3

**drastically** [1] - 44:4

**drawing** [2] - 30:19, 53:12

**drawn** [2] - 49:7, 49:12

**draws** [1] - 64:13

**due** [2] - 45:15, 59:4

**Dunn** [1] - 22:16

**during** [1] - 18:22

**E**

**early** [1] - 25:6

**ears** [1] - 51:5

**ease** [1] - 5:13

**easily** [1] - 65:12

**East** [1] - 1:24

**eaten** [1] - 60:18

**Edison** [1] - 3:12

**EDISON** [1] - 1:23

**effect** [2] - 66:18, 66:19

**effort** [1] - 20:6

**efforts** [1] - 34:10

**either** [3] - 41:21, 44:12, 59:17

**Either** [1] - 60:17

**elected** [1] - 44:3

**elements** [4] - 36:25, 37:13, 59:8, 59:15

**Eleventh** [18] - 6:8, 6:12, 6:18, 9:14, 14:24, 15:5, 18:15, 18:16, 20:16, 21:8, 21:13, 22:8, 22:21, 22:25, 23:7, 49:9, 63:21, 66:24

**embed** [1] - 43:3

**emerges** [1] - 10:7

**emphasized** [2] - 10:19, 14:23

**employ** [1] - 48:19

**end** [8] - 14:8, 14:18, 16:7, 17:4, 23:22, 37:11, 39:2, 70:21

**ended** [2] - 18:24, 27:8

**engage** [3] - 34:16, 43:17, 44:24

**engages** [1] - 28:11

**engaging** [1] - 39:4

**ENGEL** [1] - 2:5

**Engel** [1] - 3:13

**enjoy** [2] - 44:1

**enjoys** [1] - 24:3

**entertain** [1] - 19:23

**entertained** [1] - 19:22

**entire** [2] - 15:1, 44:10

**entitled** [4] - 5:20, 41:19, 60:1, 73:5

**entity** [2] - 34:21, 38:7

**Entry** [1] - 58:20

**Epstein** [34] - 4:10, 5:3, 5:7, 5:8, 5:10, 7:14, 7:18, 8:13, 8:14, 11:21, 13:5, 14:13, 14:14, 14:15, 18:24, 23:15, 23:16, 23:21, 23:23, 24:20, 27:7, 27:9, 28:7, 38:7, 43:2, 43:11, 63:15, 63:17, 63:19, 69:23, 70:1, 70:7

**Epstein's** [8] - 18:24, 26:4, 33:11, 33:16, 33:17, 44:11, 47:23, 55:10

**equipment** [1] - 40:19

**equivalent** [2] - 38:4, 59:6

**Eric** [1] - 3:12

**ERIC** [1] - 1:23

**error** [1] - 10:17

**especially** [3] - 17:22, 33:8, 55:14

**ESQ** [8] - 1:18, 1:18, 1:19, 1:22, 1:23, 2:1, 2:4, 2:5

**essence** [1] - 16:9

**establish** [9] - 15:18, 24:15, 34:6, 38:14, 40:1, 43:24, 66:7, 66:13

**established** [1] - 22:23

**establishes** [2] - 24:23, 34:9

**establishing** [2] - 16:25, 43:24

**Estate** [1] - 38:7

**estate** [7] - 5:8, 7:14, 7:18, 8:13, 8:14, 9:12, 24:20

**etcetera** [1] - 26:6

**evading** [1] - 34:25

**event** [3] - 18:14, 22:8, 22:13

**eventual** [1] - 23:22

**Evidence** [1] - 37:21

**evidence** [5] - 22:3, 22:9, 25:11, 25:12, 62:13

**exact** [3] - 12:22, 15:16, 70:18

**exactly** [11] - 13:12, 20:15, 20:18, 22:20, 22:24, 24:18, 32:19, 62:24, 67:13, 67:23, 70:4

**examination** [2] - 39:8, 48:19

**examine** [2] - 36:19, 59:15

**examining** [2] - 15:6, 33:2

**example** [4] - 10:8, 17:24, 39:13, 56:22

**exception** [1] - 38:13

**exercise** [1] - 39:5

**Exhibit** [4] - 5:12, 5:13, 13:3, 23:18

**exhibits** [3] - 5:14, 9:2, 13:19

**exist** [19] - 5:23, 7:1, 7:10, 9:22, 9:23, 11:16, 12:1, 25:24, 30:9, 30:12, 35:24, 36:9, 50:9, 51:23, 51:24, 51:25, 67:8, 71:6, 71:9

**existed** [6] - 9:21, 26:3, 26:8, 50:8, 50:11, 57:1

**existence** [2] - 31:11, 54:6

**existent** [3] - 61:2, 61:5, 61:7

**existing** [2] - 53:23, 60:4

**exists** [16] - 15:20, 30:20, 31:17, 36:9, 43:20, 49:10, 52:11, 52:15, 52:23, 53:1, 53:12, 54:5, 54:13, 67:12, 67:18

**expect** [1] - 44:23

**expectation** [1] - 44:21

**expected** [1] - 45:14

**explained** [7] - 6:12, 10:9, 12:11, 15:5, 15:15, 16:25, 62:1

**explaining** [1] - 27:4

**Express** [1] - 9:15

**expressed** [1] - 38:19

**expressly** [1] - 14:9

**extent** [5] - 11:14, 26:15, 36:14, 48:8, 72:8

**F**

**F.2d** [1] - 17:15

**F.3d** [3] - 10:8, 22:10, 22:17

**F.4th** [2] - 6:8, 6:17

**F.Supp.3d** [4] - 9:17, 15:11, 49:16, 64:8

**face** [6] - 12:13, 17:9, 42:24, 62:8, 62:9, 66:8

**fact** [42] - 9:25, 10:24, 11:15, 12:13, 13:11, 16:5, 18:21, 19:22, 20:12, 23:16, 30:11, 30:16, 30:22, 33:5, 33:14, 34:12, 34:16, 36:8, 36:12, 38:3, 40:23, 41:4, 41:5, 42:11, 42:21, 43:8, 43:19, 46:9, 49:2, 49:25, 50:21, 52:4, 55:23, 56:3, 58:15, 58:21, 59:11, 61:8, 61:20, 61:22, 68:22, 69:19

**factor** [1] - 11:2

**facts** [8] - 18:6, 19:21, 24:13, 26:20, 38:15, 42:2, 49:6, 49:7

**Facts** [1] - 48:19

**factual** [2] - 12:9, 50:22

**factually** [1] - 10:5

**failed** [4] - 19:24, 22:6, 61:15, 69:8

**failure** [2] - 22:8, 22:24

**failures** [1] - 53:11

**fair** [3] - 8:9, 16:9, 64:22

**fairness** [1] - 71:22

**faith** [3] - 62:13, 62:18, 67:9

**fake** [18] - 5:5, 14:8, 31:2, 31:7, 31:9, 32:11, 34:4, 36:12, 43:9, 51:7, 53:17, 53:21, 53:23, 54:1, 58:16, 61:19, 71:11, 71:13

**fall** [3] - 39:15, 52:10, 54:5

**falling** [1] - 14:15

**falling-out** [1] - 14:15

**false** [25] - 15:14, 15:21, 24:15, 26:20, 27:24, 28:10, 28:13, 30:23, 43:7, 45:13, 48:21, 48:22, 48:25, 50:7, 56:3, 56:21, 58:2, 58:4, 58:10, 62:10, 64:12, 64:15, 67:16, 67:17

**falsehood** [1] - 23:9

**falsely** [1] - 28:7

**falsification** [4] - 27:24, 28:15, 28:18, 65:10

**falsified** [1] - 28:1

**falsify** [1] - 31:17

**falsity** [9] - 15:15, 15:19, 19:7, 19:20, 24:17, 25:1, 25:2, 25:12, 29:10

**family** [1] - 33:18

**famous** [1] - 4:12

**far** [8] - 16:10, 16:15, 34:6, 35:8, 41:1, 54:21, 71:18, 71:19

**fatally** [1] - 18:4

**fathom** [1] - 43:16

**FBI** [5] - 34:20, 49:21, 62:12, 62:17, 65:20

**FCRR** [2] - 2:9, 73:10

**FDIC** [1] - 9:9

**Federal** [1] - 37:20

**fee** [3] - 50:5, 50:9, 50:10

**fell** [2] - 5:23, 51:5

**few** [1] - 15:1

**fides** [1] - 13:18

**figure** [1] - 62:4

**filed** [8] - 14:16, 18:10, 18:12, 44:18, 45:5, 50:1, 50:14, 67:4

**filing** [1] - 39:16

**filings** [1] - 31:10

**finally** [4] - 22:18, 28:20, 67:20, 69:21

**financial** [1] - 45:14

**fine** [2] - 4:2, 41:10

**firm** [2] - 3:12, 39:18

**First** [3] - 16:11, 29:12, 64:23

**first** [16] - 3:22, 4:3, 4:18, 5:18, 14:14, 17:5, 19:25, 21:1, 29:5, 33:15, 41:12, 46:3, 55:7, 55:9, 55:21, 56:2

**five** [2] - 15:3, 72:12

**flawed** [1] - 18:4

**flesh** [1] - 20:23

**flexibility** [1] - 41:18

**Floor** [3] - 2:3, 2:11, 73:11

**FLORIDA** [1] - 1:1

**Florida** [25] - 1:4, 1:21, 1:25, 2:12, 16:17, 26:13, 27:2, 28:21, 28:23, 29:11, 30:6, 37:15, 45:24, 45:25, 48:18, 49:23, 59:7, 59:13, 60:4, 64:9, 64:11, 68:19, 68:21, 69:5, 73:12

**flush** [1] - 44:24

**focus** [3] - 36:10, 36:17, 70:23

**focused** [1] - 48:23

**focuses** [1] - 66:5

**focusing** [1] - 48:10

**foot** [1] - 55:25

**footage** [1] - 6:10

**footnote** [1] - 6:3

**FOR** [3] - 1:18, 1:22, 2:1

**foregoing** [1] - 73:3

**form** [1] - 16:4

**format** [3] - 4:13, 12:14, 14:5

**Fort** [1] - 1:25

**forth** [3] - 37:20, 37:21, 61:21

**fortiori** [1] - 10:22

**forward** [1] - 40:25

**four** [6] - 11:4, 20:24, 39:15, 39:19, 71:2, 71:3

**FPR** [2] - 2:9, 73:10

**framed** [1] - 30:4

**frankly** [1] - 12:9

**fraud** [2] - 10:16, 10:18

**free** [1] - 10:12

**freedom** [1] - 17:2

**freely** [1] - 25:5

**friend** [1] - 27:19

**friendly** [2] - 11:21, 27:7

**Friends** [2] - 33:11, 55:10

**friends** [6] - 23:21, 26:5, 27:17, 28:8, 33:18, 55:17

**friendship** [4] - 18:19, 18:24, 23:14, 23:22

**front** [4] - 8:5, 40:13, 41:11, 55:17

**fronts** [1] - 51:6

**full** [2] - 17:13, 21:10

**full-throated** [1] - 21:10

**fun** [1] - 24:1

**function** [3] - 38:4, 45:4, 57:24

**functional** [3] - 38:4, 40:19, 59:6

**fundamental** [1] - 17:10

**fundamentally** [2] - 24:16, 66:2

**future** [1] - 55:1

**G**

**Gables** [1] - 1:21

**Gal** [1] - 9:17

**gall** [1] - 69:15

**Garcia** [1] - 3:8

**GARCIA** [1] - 1:18

**GAYLES** [1] - 1:14

**general** [1] - 58:7

**generalized** [1] - 19:3

**generally** [1] - 37:24

**generated** [1] - 38:14

**genitalia** [1] - 18:1

**genuine** [9] - 31:15, 51:24, 53:22, 54:8, 57:21, 71:7, 71:8, 71:11, 71:13

**George** [2] - 3:11, 40:14

**GEORGE** [1] - 1:22

**Georgia** [1] - 9:16

**Ghislaine** [2] - 33:16, 39:13

**gift** [1] - 33:17

**gist** [3] - 15:23, 41:12, 43:6

**given** [6] - 17:22, 18:11, 24:13, 49:25, 50:21, 60:14

**glide** [1] - 61:19

**glided** [2] - 61:20, 61:22

**gloss** [2] - 30:14, 51:20

**government** [11] - 5:16, 7:13, 9:4, 9:7, 9:9, 9:12, 9:18, 11:9, 16:1, 17:4, 38:14

**governmental** [4] - 38:5, 38:7, 38:12

**grab** [2] - 33:10, 55:20

**grabbing** [1] - 18:1

**grant** [1] - 69:20

**granting** [1] - 67:6

**great** [3] - 16:3, 23:17, 29:4

**ground** [1] - 19:16

**grounds** [4] - 19:7,

64:25, 66:23, 66:25
**grouped** [1] - 56:10
**guess** [2] - 6:20, 32:20
**Gunster** [1] - 3:12
**GUNSTER** [1] - 1:23
**guy** [2] - 23:25, 63:15

## H

**hair** [1] - 12:23
**handled** [1] - 40:12
**Hanks** [1] - 21:6
**happy** [1] - 60:16
**harm** [1] - 44:14
**harmful** [1] - 43:16
**harping** [2] - 52:1, 53:12
**Harte** [1] - 21:6
**Harte-Hanks** [1] - 21:6
**hatred** [1] - 70:10
**headline** [6] - 14:6, 61:15, 61:16, 61:18, 66:4
**hear** [3] - 29:5, 59:9, 71:17
**heard** [6] - 33:6, 46:13, 59:25, 69:9, 69:21, 70:4
**HEARING** [1] - 1:14
**hearing** [2] - 3:18, 56:5
**heart** [1] - 6:19
**heinous** [2] - 43:10, 43:15
**held** [8] - 6:2, 6:8, 9:15, 10:15, 15:19, 21:13, 23:3, 39:20
**helpful** [2] - 67:3, 67:19
**helps** [1] - 62:22
**hereby** [1] - 73:3
**high** [1] - 56:25
**high-level** [1] - 56:25
**hint** [1] - 25:9
**hinting** [1] - 26:15
**hit** [2] - 64:17
**hold** [1] - 11:1
**holding** [2] - 10:22, 66:14
**home** [2] - 20:4, 68:1
**Honor** [95] - 3:7, 3:11, 4:1, 4:6, 5:18, 7:4, 8:9, 10:25, 12:1, 12:9, 13:1, 13:22, 14:2, 14:23, 15:5, 15:14, 15:15, 16:19, 17:9, 18:8, 19:12,

20:10, 20:12, 21:6, 21:9, 22:8, 22:20, 23:5, 23:12, 23:18, 24:10, 24:16, 24:20, 25:3, 26:13, 26:17, 27:20, 28:17, 28:23, 29:2, 29:20, 29:23, 29:25, 30:2, 30:11, 31:21, 32:2, 33:9, 35:3, 36:4, 37:7, 37:21, 40:12, 41:16, 42:13, 44:13, 45:2, 45:6, 45:19, 46:19, 46:21, 48:13, 48:16, 49:10, 53:7, 53:22, 53:25, 55:23, 56:16, 58:11, 58:19, 58:24, 59:3, 59:20, 60:14, 60:19, 60:21, 60:25, 61:14, 62:1, 62:3, 64:18, 65:2, 65:18, 67:20, 68:10, 68:11, 68:13, 68:16, 69:1, 70:9, 72:11, 72:19
**Honor's** [8] - 34:8, 36:18, 39:10, 39:21, 45:8, 46:14, 64:3, 70:13
**HONORABLE** [1] - 1:14
**host** [1] - 61:9
**house** [2] - 7:13, 11:12
**House** [20] - 5:6, 5:16, 5:24, 7:22, 8:16, 9:2, 9:8, 9:13, 11:14, 12:3, 16:22, 17:6, 18:9, 32:8, 32:19, 32:24, 35:15, 38:21, 70:19
**Hunt** [1] - 49:9
**Hustler** [1] - 17:14

## I

**i.e** [1] - 38:7
**Ian** [1] - 3:8
**IAN** [1] - 1:19
**idea** [2] - 65:6, 65:24
**identical** [2] - 24:21, 59:16
**identification** [1] - 57:15
**identified** [1] - 58:3
**ignore** [1] - 61:12
**ignored** [1] - 40:8
**ignores** [2] - 52:2
**ill** [1] - 22:12
**III** [1] - 22:13
**imagined** [1] - 60:23

**immediate** [1] - 42:19
**immediately** [1] - 42:25
**impact** [1] - 43:5
**imperative** [2] - 62:6, 62:8
**imperfect** [1] - 10:21
**implication** [16] - 26:16, 26:17, 26:18, 26:21, 26:22, 26:24, 59:2, 59:6, 59:11, 59:12, 59:15, 59:18, 60:2, 64:10, 64:14
**implicit** [1] - 45:15
**implicitly** [2] - 26:1, 26:14
**importance** [1] - 17:3
**important** [2] - 16:11, 66:17
**importantly** [4] - 25:3, 40:1, 62:23
**impossible** [3] - 25:10, 66:7, 66:13
**improper** [1] - 22:14
**inaccuracy** [1] - 50:16
**inaccurate** [1] - 66:1
**inapplicable** [1] - 63:12
**inauthentic** [2] - 40:7, 42:9
**Inc** [1] - 10:14
**INC** [1] - 1:7
**include** [1] - 14:22
**including** [10] - 4:12, 7:17, 8:17, 9:7, 12:18, 13:19, 14:13, 16:15, 64:23
**Including** [1] - 21:14
**inconsistent** [1] - 55:4
**incorporate** [1] - 7:24
**incorporated** [5] - 5:15, 6:13, 11:5, 35:7, 35:16
**incorporating** [1] - 7:7
**incorporation** [5] - 5:25, 6:20, 6:25, 8:2, 9:1
**incorrect** [1] - 65:18
**Indeed** [1] - 18:8
**indeed** [6] - 9:17, 10:14, 15:2, 16:19, 22:7, 65:22
**indemnity** [1] - 26:14
**indicia** [1] - 32:16

**individual** [8] - 1:4, 1:9, 1:10, 1:10, 1:11, 43:17, 68:4, 68:6
**individuals** [1] - 57:15
**indulge** [1] - 68:14
**indulgence** [1] - 70:13
**industry** [1] - 41:16
**ineffective** [1] - 33:7
**infer** [2] - 23:4, 49:6
**inference** [4] - 19:21, 21:12, 48:20, 49:15
**inferences** [2] - 22:19, 49:11
**inflammatory** [1] - 45:16
**inform** [1] - 57:1
**information** [20] - 4:17, 17:2, 21:14, 21:15, 22:5, 28:1, 34:23, 38:10, 40:4, 40:9, 48:6, 51:8, 51:14, 57:19, 58:3, 58:10, 58:20, 58:22, 59:19, 68:6
**inherently** [1] - 11:9
**injury** [1] - 45:6
**innocuous** [1] - 55:19
**insignificant** [1] - 55:19
**instance** [1] - 41:1
**instances** [3] - 30:3, 33:25, 53:20
**instructive** [1] - 49:24
**insufficient** [2] - 20:8, 20:11
**intended** [4] - 26:22, 30:22, 33:10, 42:20
**intentional** [2] - 41:15, 55:20
**interest** [1] - 25:5
**interpreting** [1] - 71:25
**introduction** [1] - 38:25
**investigate** [3] - 22:6, 22:9, 22:24
**investigated** [1] - 21:20
**investigation** [1] - 49:15
**invitation** [1] - 71:25
**invite** [2] - 42:14, 42:16
**invited** [1] - 71:24
**involved** [2] - 52:18, 58:1

**involvement** [3] - 42:12, 43:12, 47:23
**irrelevant** [2] - 10:5, 12:12
**irrespective** [2] - 38:11, 43:19
**issue** [33] - 8:3, 10:6, 10:24, 12:7, 12:9, 12:10, 29:16, 32:4, 32:6, 35:14, 35:22, 36:4, 37:2, 37:4, 42:5, 46:25, 50:11, 50:23, 51:19, 52:2, 52:14, 57:13, 58:22, 65:4, 68:15, 68:22, 69:2, 70:24, 71:19, 72:11, 72:12, 72:16
**issued** [2] - 8:13, 38:17
**issues** [7] - 13:14, 19:8, 29:9, 38:15, 43:2, 69:19
**itself** [12] - 23:17, 24:22, 28:13, 35:19, 43:6, 44:19, 58:20, 65:22, 66:1, 69:4, 69:16

## J

**Jacobi** [1] - 66:24
**Jacoby** [3] - 20:18, 21:13, 21:18
**JALAINE** [1] - 1:18
**Jalaine** [1] - 3:8
**Jason** [1] - 3:15
**Jeff** [1] - 23:25
**Jeffrey** [10] - 11:21, 13:5, 24:3, 26:4, 27:7, 27:9, 33:11, 33:15, 38:7, 55:10
**Jesus** [4] - 26:19, 59:5, 59:14, 64:12
**Jews** [4] - 26:19, 59:5, 59:14, 64:11
**job** [2] - 27:4, 67:16
**Johnson** [4] - 6:7, 6:17, 7:3, 8:3
**joint** [2] - 72:3, 72:7
**jokes** [1] - 17:19
**Jones** [3] - 3:16, 57:4, 68:4
**JONES** [1] - 1:7
**JOSEPH** [1] - 1:11
**Journal** [18] - 4:9, 5:4, 10:3, 12:15, 14:4, 14:21, 16:20, 17:5, 21:2, 21:3, 21:9, 24:13, 27:25, 28:6, 32:14, 35:21, 55:18,

70:18
**JOURNAL** [1] - 1:8
**Journal's** [1] - 24:6
**journalistic** [1] - 34:10
**journalists** [7] - 32:14, 32:24, 33:3, 33:4, 66:10, 66:11, 68:5
**journalists'** [1] - 25:7
**JUDGE** [1] - 1:15
**Judge** [10] - 10:15, 29:5, 40:13, 41:6, 49:23, 49:25, 51:19, 54:19, 55:6, 71:12
**judgment** [2] - 50:12, 50:18
**judicial** [40] - 3:20, 3:22, 4:19, 5:2, 7:12, 7:24, 8:25, 9:6, 9:14, 9:18, 9:24, 10:23, 11:6, 11:12, 11:13, 13:2, 13:11, 13:15, 13:23, 17:24, 24:9, 31:23, 31:25, 35:9, 35:13, 35:14, 36:24, 36:25, 37:6, 37:23, 38:13, 39:5, 46:24, 46:25, 47:3, 47:8, 47:17, 48:8, 48:10, 68:20
**Judicial** [1] - 21:25
**judicially** [1] - 61:8
**July** [3] - 4:9, 14:3, 23:12
**June** [1] - 21:7
**jurisdiction** [1] - 37:25
**justice** [1] - 25:5
**Justice** [3] - 34:18, 34:19, 49:21

## K

**Kate** [2] - 3:14, 4:22
**KATHERINE** [1] - 2:1
**keep** [3] - 50:23, 52:1, 54:20
**KEITH** [1] - 1:9
**kept** [1] - 46:22
**KHADEEJA** [1] - 1:10
**kind** [9] - 3:22, 8:10, 28:15, 28:18, 35:8, 35:11, 41:20, 48:12
**kinds** [2] - 9:7, 68:8
**Klayman** [1] - 21:25
**knowing** [6] - 25:2, 25:11, 27:24, 28:18, 48:21, 65:10

**knowingly** [6] - 24:15, 27:25, 28:7, 28:10, 28:13, 58:9
**knowledge** [2] - 39:9, 69:15
**known** [2] - 23:25, 37:24
**knows** [1] - 67:22

## L

**lack** [1] - 69:14
**language** [7] - 32:17, 35:20, 35:24, 36:2, 44:9, 52:24, 53:3
**large** [1] - 48:8
**larger** [1] - 25:15
**Las** [1] - 1:24
**last** [8] - 6:8, 31:1, 53:7, 53:16, 60:13, 61:15, 69:21, 71:16
**Latino** [1] - 9:16
**Lauderdale** [1] - 1:25
**law** [30] - 3:12, 12:12, 15:2, 16:11, 16:12, 18:15, 18:20, 27:2, 28:22, 28:24, 29:11, 29:13, 30:6, 34:24, 37:15, 40:23, 41:11, 44:6, 47:12, 60:4, 62:6, 63:10, 64:2, 64:11, 64:22, 64:24, 70:10, 70:12
**laws** [1] - 29:18
**lawsuit** [5] - 4:15, 36:8, 44:17, 45:5, 45:7
**layout** [1] - 12:18
**lead** [4] - 30:14, 32:1, 34:1, 41:12
**least** [8] - 30:16, 33:4, 33:25, 34:11, 38:22, 54:21, 55:2, 71:25
**leather** [1] - 24:23
**leave** [2] - 4:20, 4:24
**led** [1] - 42:6
**legal** [1] - 10:6
**legally** [1] - 10:4
**legions** [1] - 9:6
**legitimacy** [1] - 50:24
**legitimate** [2] - 54:8, 54:10
**LeMieux** [2] - 1:22, 3:12
**LEMIEUX** [1] - 3:11
**lends** [2] - 31:21, 69:16
**Leon** [1] - 1:20

**less** [1] - 16:15
**letter** [151] - 4:13, 5:3, 5:10, 5:19, 5:22, 7:10, 7:20, 9:22, 9:24, 10:3, 11:20, 11:25, 12:4, 12:7, 12:10, 12:13, 12:19, 12:21, 14:5, 14:7, 14:10, 14:18, 16:4, 16:7, 16:21, 17:7, 17:11, 24:18, 24:22, 25:24, 26:3, 26:7, 26:8, 28:10, 28:13, 28:14, 30:8, 30:11, 30:12, 30:15, 30:19, 30:24, 31:2, 31:7, 31:9, 31:11, 31:16, 32:6, 32:11, 32:13, 32:17, 32:21, 32:23, 32:25, 33:20, 34:2, 34:5, 34:12, 35:14, 35:21, 36:3, 36:5, 36:7, 36:9, 36:12, 36:15, 36:22, 38:21, 39:14, 39:17, 40:3, 40:7, 40:10, 40:11, 41:2, 41:3, 41:8, 41:9, 41:14, 41:19, 41:22, 41:23, 42:1, 42:8, 42:12, 42:25, 43:4, 43:13, 43:22, 43:23, 44:8, 47:21, 47:22, 49:3, 49:20, 50:25, 51:7, 51:9, 51:10, 51:12, 51:14, 51:18, 51:23, 51:24, 51:25, 52:11, 52:15, 52:18, 52:23, 53:6, 53:12, 53:17, 53:21, 53:22, 53:25, 54:5, 54:9, 54:13, 54:14, 54:15, 54:23, 54:25, 55:17, 57:11, 57:20, 57:21, 58:16, 61:2, 61:15, 61:19, 61:23, 62:15, 62:25, 64:20, 66:3, 66:6, 66:9, 66:11, 67:17, 69:10, 69:16, 69:23, 69:25, 70:6, 70:23, 71:8
**Letters** [2] - 33:12, 55:11
**letters** [4] - 4:11, 16:1, 17:12, 26:5
**Levan** [1] - 22:10
**LEVANDER** [21] - 2:4, 4:1, 4:4, 4:6, 5:2, 6:17, 7:3, 8:9, 8:12, 8:23, 8:25, 11:19, 13:1, 14:2, 19:11,

29:5, 29:8, 29:20, 60:21, 65:4, 72:11
**Levander** [8] - 3:13, 4:1, 19:14, 24:8, 27:4, 27:13, 27:15, 28:25
**level** [1] - 56:25
**liability** [1] - 10:12
**liable** [1] - 40:22
**libel** [4] - 46:21, 47:10, 47:14, 48:3
**Liberty** [1] - 49:9
**life** [1] - 24:4
**lift** [2] - 31:18, 71:21
**likelihood** [1] - 21:15
**likely** [2] - 23:8, 59:18
**likewise** [1] - 45:23
**limited** [2] - 44:21, 45:4
**limits** [1] - 11:10
**lines** [1] - 66:5
**link** [3] - 43:20, 43:21, 43:25
**list** [1] - 42:18
**listed** [1] - 65:21
**listening** [1] - 30:17
**lists** [1] - 24:23
**lived** [2] - 18:21, 63:24
**LLP** [2] - 2:2, 2:5
**Lobby** [1] - 49:9
**local** [1] - 9:9
**locker** [3] - 18:2, 27:13, 28:11
**locker-room** [3] - 18:2, 27:13, 28:11
**look** [7] - 20:12, 30:10, 34:14, 36:14, 59:7, 60:1, 61:14
**looked** [2] - 44:10, 55:12
**looks** [3] - 24:18, 42:17, 65:10
**loss** [2] - 45:22, 46:1
**lost** [1] - 45:22

## M

**Magazine** [2] - 16:17, 17:14
**magazine** [1] - 23:23
**main** [1] - 46:12
**majority** [1] - 57:3
**makers** [1] - 57:1
**malice** [55] - 13:15, 19:9, 19:17, 20:1, 20:3, 20:11, 20:20, 20:25, 21:3, 21:5, 21:12, 21:17, 22:9, 22:15, 22:20, 22:23,

23:4, 23:7, 25:4, 25:9, 25:13, 27:3, 27:20, 28:17, 29:10, 34:25, 35:2, 46:14, 48:11, 48:18, 49:6, 49:10, 49:11, 49:16, 50:20, 52:5, 52:7, 54:16, 56:9, 57:13, 58:7, 58:17, 62:19, 65:2, 65:4, 65:17, 66:7, 66:13, 66:21, 66:22, 66:25, 67:9, 67:24, 68:9, 69:16
**mandates** [1] - 15:13
**manifested** [1] - 44:19
**Mansiana** [1] - 6:2
**mark** [1] - 33:17
**Markle** [2] - 16:15, 16:16
**married** [1] - 63:24
**Martyr** [1] - 10:14
**Mason** [1] - 16:17
**match** [1] - 8:19
**matched** [2] - 32:7, 32:9
**materially** [1] - 15:21
**materials** [1] - 13:7
**matter** [21] - 10:10, 12:12, 13:17, 18:14, 18:20, 30:2, 34:12, 40:14, 40:23, 41:4, 49:5, 49:13, 50:20, 52:4, 54:19, 60:14, 64:2, 70:12, 73:5
**matters** [4] - 25:5, 29:8, 30:2, 48:2
**Max** [1] - 64:8
**Maxwell** [4] - 33:16, 39:13, 62:21
**Maxwell's** [1] - 47:23
**mean** [23] - 6:19, 11:2, 11:8, 11:11, 32:3, 32:10, 32:17, 32:23, 35:9, 35:20, 35:24, 38:24, 45:12, 46:9, 53:1, 54:15, 55:2, 56:11, 56:13, 71:11, 71:18
**meaning** [4] - 20:5, 26:12, 27:5, 27:15
**meaningless** [1] - 55:16
**meanings** [1] - 28:5
**means** [1] - 67:22
**media** [1] - 42:23
**medium** [1] - 56:19
**meet** [1] - 37:22
**mention** [2] - 65:24, 69:8

**mentioned** [5] - 6:11, 8:4, 27:15, 42:11, 45:8
**merely** [2] - 15:7, 44:14
**meritless** [1] - 4:18
**met** [1] - 35:2
**MIAMI** [1] - 1:2
**Miami** [5] - 1:4, 2:11, 2:12, 73:11, 73:12
**Michael** [2] - 20:18, 66:23
**Middle** [3] - 16:16, 45:24, 49:22
**might** [3] - 6:22, 12:7, 60:21
**mimicking** [1] - 12:23
**minimize** [1] - 43:4
**minute** [3] - 41:6, 65:1, 68:13
**minutes** [1] - 4:25
**mirror** [1] - 47:16
**misstate** [1] - 33:21
**mixed** [1] - 55:24
**moment** [2] - 38:18, 56:15
**moreover** [1] - 14:6
**morning** [13] - 3:7, 3:9, 3:10, 3:11, 3:17, 4:6, 4:17, 19:12, 19:13, 30:5, 30:7, 36:20, 59:25
**most** [3] - 23:19, 24:16, 43:15
**motion** [36] - 3:19, 3:21, 4:3, 4:19, 4:22, 5:2, 6:10, 11:7, 12:5, 13:8, 13:23, 13:24, 13:25, 17:16, 18:11, 18:12, 19:4, 21:24, 33:8, 35:17, 36:15, 37:9, 37:15, 38:25, 39:5, 40:17, 40:24, 42:4, 49:25, 52:6, 56:12, 59:9, 60:22, 67:6, 69:20, 72:14
**MOTION** [1] - 1:14
**motions** [1] - 3:19
**motive** [1] - 22:14
**moved** [2] - 40:24, 67:5
**moving** [1] - 8:2
**MR** [61] - 3:7, 3:11, 4:1, 4:4, 4:6, 5:2, 6:17, 7:3, 8:9, 8:12, 8:23, 8:25, 11:19, 13:1, 14:2, 19:11, 29:5, 29:8, 29:20, 29:23, 32:15, 33:1,

36:4, 39:4, 42:13, 44:16, 45:2, 45:18, 46:5, 46:12, 48:13, 48:16, 52:12, 52:19, 52:22, 53:4, 53:7, 53:11, 53:15, 54:17, 55:3, 56:16, 56:22, 58:11, 58:18, 60:10, 60:13, 60:21, 65:4, 68:13, 68:16, 68:18, 68:24, 69:1, 70:15, 70:21, 71:7, 71:12, 71:22, 72:11, 72:19
**MS** [7] - 19:12, 19:14, 26:12, 28:3, 28:23, 29:4, 65:5
**multiple** [3] - 11:25, 42:2, 64:25
**Murdoch** [8] - 3:4, 31:5, 56:22, 57:2, 57:6, 58:15, 67:22, 68:3
**MURDOCH** [1] - 1:9
**murky** [1] - 7:2
**must** [7] - 13:10, 14:25, 15:6, 15:8, 15:17, 15:24, 19:15

**N**

**name** [2] - 24:24, 54:25
**National** [2] - 45:20, 46:5
**Nature** [1] - 5:20
**nature** [7] - 43:11, 43:15, 44:12, 44:20, 44:22, 56:24, 59:19
**near** [1] - 26:23
**necessarily** [2] - 32:23, 33:1
**necessary** [1] - 28:15
**need** [7] - 16:13, 36:19, 37:22, 45:25, 50:17, 71:21, 71:24
**Networks** [1] - 10:8
**never** [16] - 19:16, 23:6, 24:5, 24:14, 25:13, 28:3, 28:4, 28:6, 28:9, 28:12, 44:2, 46:23, 48:4, 50:8, 67:11, 67:14
**New** [18] - 2:3, 2:6, 16:17, 20:2, 23:23, 28:21, 28:24, 29:11, 29:13, 29:14, 40:21, 63:10, 67:23, 67:24, 68:7
**new** [1] - 20:24

**news** [2] - 10:20, 68:1
**News** [5] - 57:3, 57:4, 57:5, 64:8, 68:4
**NEWS** [1] - 1:8
**newspaper** [1] - 13:11
**next** [1] - 22:11
**nice** [1] - 27:4
**nine** [2] - 6:3, 17:16
**Ninth** [1] - 22:13
**NO** [1] - 1:2
**nobody** [2] - 51:11, 51:12
**non** [6] - 31:11, 38:7, 61:2, 61:5, 61:7, 63:3
**non-defamatory** [1] - 63:3
**non-existence** [1] - 31:11
**non-existent** [3] - 61:2, 61:5, 61:7
**non-governmental** [1] - 38:7
**none** [3] - 47:17, 47:25, 51:2
**nonetheless** [2] - 6:12, 13:6
**nonexistent** [5] - 5:5, 31:7, 53:6, 53:21, 58:16
**North** [2] - 2:11, 73:11
**notable** [1] - 9:20
**Notably** [1] - 15:4
**notably** [1] - 17:17
**note** [2] - 9:17, 27:19
**noted** [2] - 16:6, 59:20
**nothing** [9] - 15:14, 18:5, 32:12, 32:21, 34:5, 34:9, 38:17, 54:14, 62:8
**notice** [47] - 3:20, 3:22, 4:19, 5:3, 7:12, 7:24, 8:25, 9:6, 9:14, 9:18, 9:24, 10:23, 11:6, 11:12, 11:13, 11:15, 12:1, 13:3, 13:11, 13:15, 13:23, 17:24, 24:9, 31:6, 31:23, 31:25, 35:9, 35:13, 35:15, 36:25, 37:1, 37:6, 37:23, 38:13, 46:2, 46:24, 46:25, 47:3, 47:5, 47:8, 47:18, 48:8, 48:10, 57:18, 57:20, 58:4, 68:20
**noticeable** [1] - 61:8

**nude** [1] - 17:19
**nudge** [1] - 20:21
**nugget** [1] - 36:8
**number** [1] - 23:14
**numerous** [5] - 4:18, 9:19, 16:14, 23:10, 46:22
**Nunes** [1] - 49:13

**O**

**objecting** [1] - 35:11
**objective** [3] - 49:6, 49:7, 65:8
**observed** [1] - 17:17
**obtained** [1] - 38:6
**obviously** [6] - 11:2, 11:4, 44:17, 56:17, 63:8, 65:18
**occasion** [1] - 33:17
**occasions** [4] - 33:4, 34:11, 42:2, 71:2
**occur** [1] - 39:7
**occurred** [2] - 29:15, 63:6
**Ocean** [1] - 6:2
**odd** [1] - 47:3
**OF** [1] - 1:1
**offering** [5] - 11:20, 11:22, 11:24, 12:6, 13:16
**OFFICER** [1] - 72:20
**officer's** [1] - 6:9
**official** [13] - 2:10, 5:16, 7:12, 7:23, 8:16, 9:5, 9:25, 12:4, 13:20, 46:10, 46:15, 62:16, 63:4
**Official** [1] - 73:10
**officially** [1] - 9:12
**Olas** [1] - 1:24
**once** [5] - 28:8, 44:9, 55:6, 63:20, 64:18
**One** [3] - 33:12, 55:11, 55:22
**one** [40] - 4:21, 4:23, 10:3, 11:11, 15:25, 25:10, 26:5, 27:6, 28:13, 29:1, 32:5, 33:18, 35:5, 36:25, 37:24, 38:19, 40:4, 41:21, 43:9, 46:22, 51:6, 51:15, 55:4, 55:12, 55:13, 55:25, 56:6, 56:20, 58:24, 60:6, 61:11, 64:18, 65:1, 68:13, 68:18, 69:21, 70:16, 71:4
**ones** [2] - 57:9, 57:10

**online** [1] - 55:14
**opening** [2] - 5:20, 60:25
**operative** [1] - 71:20
**opinion** [2] - 10:14, 55:24
**opportunity** [3] - 18:8, 43:8, 44:23
**opposed** [2] - 46:10, 72:1
**opposition** [5] - 13:9, 15:3, 20:23, 34:24, 64:7
**Order** [1] - 3:1
**order** [9] - 15:17, 32:2, 36:25, 37:22, 46:2, 47:13, 71:19, 71:20, 72:17
**ordered** [1] - 72:13
**organization** [1] - 68:1
**organizations** [1] - 62:7
**original** [2] - 9:21, 67:5
**originally** [1] - 54:3
**origination** [1] - 41:9
**otherwise** [1] - 37:16
**outlets** [1] - 42:23
**outset** [2] - 36:18, 36:21
**outside** [2] - 39:15, 39:19
**outstanding** [1] - 50:22
**Oversight** [3] - 5:6, 5:16, 5:24
**overwhelming** [1] - 45:13
**own** [2] - 22:9, 31:8
**owner** [1] - 57:3

**P**

**P.A** [1] - 1:23
**p.m** [1] - 1:6
**page** [24] - 5:11, 5:12, 7:20, 8:17, 9:3, 10:24, 12:15, 13:9, 15:2, 15:22, 16:2, 17:4, 19:4, 23:19, 23:20, 30:18, 33:24, 45:18, 47:3, 53:6, 55:17, 61:1, 64:6, 65:22
**Pages** [1] - 1:8
**pages** [4] - 6:3, 17:16, 17:18, 65:19
**Palazzolo** [1] - 58:13
**PALAZZOLO** [1] -

1:11
**paper** [4] - 31:17, 54:6, 70:24, 70:25
**papers** [5] - 7:15, 7:19, 49:14, 62:21, 69:7
**paraded** [1] - 45:16
**paragraph** [16] - 5:5, 5:20, 25:19, 30:21, 31:1, 31:4, 45:6, 53:8, 53:16, 53:20, 53:24, 54:25, 58:12, 61:1
**paragraphs** [11] - 5:20, 11:25, 14:9, 14:11, 20:13, 21:11, 58:6, 58:8, 58:11, 61:21
**paraphrase** [1] - 8:18
**pardon** [2] - 37:21, 55:10
**Parekh** [5] - 18:15, 18:21, 27:16, 63:21, 64:2
**PAREKH** [1] - 18:15
**part** [6] - 11:20, 25:22, 25:24, 48:23, 52:11, 56:12
**participated** [1] - 58:9
**particular** [3] - 15:7, 39:14, 67:24
**particularly** [1] - 25:14
**parties** [3] - 6:22, 37:5, 72:3
**party** [5] - 38:6, 38:10, 47:14, 57:14
**party-by-party** [1] - 57:14
**passages** [1] - 6:24
**past** [3] - 21:24, 38:25, 42:23
**PATRICIA** [2] - 2:9, 73:10
**pending** [1] - 3:18
**people** [6] - 4:12, 21:20, 21:22, 24:24, 65:19, 68:1
**Per** [2] - 18:4, 19:2
**per** [23] - 25:18, 26:13, 26:14, 26:25, 27:1, 44:12, 46:17, 52:10, 54:4, 59:1, 59:7, 59:8, 59:10, 59:16, 59:21, 59:22, 60:3, 60:7, 60:8, 64:10, 64:12, 64:16
**perfection** [1] - 15:16

**perforce** [2] - 21:3, 25:1
**perhaps** [2] - 3:21, 35:16
**period** [1] - 11:22
**permits** [1] - 44:6
**permitted** [1] - 7:8
**person** [8] - 15:10, 18:19, 43:17, 51:6, 57:14, 63:23, 70:22
**person-by-person** [1] - 57:14
**personal** [3] - 22:12, 22:14, 22:23
**perspective** [4] - 16:20, 54:21, 58:18, 64:21
**pertain** [2] - 47:19
**pertains** [2] - 46:16, 47:11
**pestering** [1] - 56:6
**petitioner** [1] - 8:6
**photos** [1] - 17:19
**phrase** [1] - 15:7
**phrases** [1] - 15:1
**physical** [1] - 12:18
**pick** [1] - 61:11
**pictures** [1] - 13:19
**piece** [8] - 22:3, 22:5, 31:17, 40:4, 40:8, 54:6, 70:23, 70:25
**Pilot** [1] - 22:16
**place** [2] - 27:1, 39:3
**plain** [1] - 69:19
**Plaintiff** [1] - 1:5
**plaintiff** [29] - 3:9, 6:13, 7:1, 7:10, 8:6, 8:8, 10:16, 12:20, 18:8, 18:21, 22:1, 22:22, 23:6, 26:15, 26:21, 26:23, 27:23, 28:20, 36:22, 37:3, 45:25, 50:6, 67:4, 67:7, 67:11, 67:14, 67:15, 67:17
**PLAINTIFF** [1] - 1:18
**plaintiff's** [6] - 19:15, 20:22, 23:16, 24:6, 25:21, 28:21
**plaintiffs** [4] - 3:6, 18:11, 22:2, 68:3
**plaintiffs'** [2] - 6:10, 7:15
**plausibly** [1] - 23:4
**plays** [1] - 22:14
**plead** [4] - 19:25, 22:19, 26:20, 26:21
**pleading** [6] - 20:20, 21:23, 26:23, 57:25, 60:24, 67:21

**pleadings** [4] - 8:18, 21:23, 35:10, 39:11
**PLLC** [1] - 1:19
**Plus** [2] - 45:20, 46:5
**podium** [1] - 68:25
**point** [18] - 4:23, 5:18, 7:3, 7:12, 8:23, 12:19, 24:10, 27:3, 27:20, 29:6, 37:12, 39:1, 42:18, 43:10, 44:19, 50:2, 61:10, 64:19
**pointed** [3] - 22:2, 22:5, 60:25
**points** [5] - 4:23, 25:3, 31:23, 64:17, 66:4
**police** [1] - 6:9
**Ponce** [1] - 1:20
**portion** [2] - 23:19, 43:4
**portions** [3] - 43:23, 47:4, 61:3
**portrayed** [1] - 64:15
**position** [5] - 34:18, 37:12, 39:18, 41:10, 54:1
**positively** [1] - 71:15
**possession** [2] - 22:3, 34:22
**possibility** [1] - 66:20
**possible** [1] - 63:2
**post** [2] - 45:13, 55:15
**Post** [4] - 49:23, 50:1, 50:4, 50:8
**Post's** [1] - 50:9
**posted** [6] - 5:16, 7:17, 7:22, 8:16, 16:1, 38:11
**posting** [2] - 63:5, 63:6
**posture** [1] - 71:18
**potentially** [1] - 26:16
**precedent** [1] - 14:24
**precise** [2] - 41:17, 43:4
**precisely** [2] - 12:19, 36:4
**predicated** [1] - 65:6
**preexisting** [1] - 24:12
**premature** [2] - 50:21, 66:23
**prepared** [7] - 14:18, 16:7, 28:25, 61:24, 64:20, 66:9, 66:11
**preparing** [1] - 33:16

**President** [126] - 4:15, 5:11, 5:22, 5:25, 8:11, 9:10, 9:23, 11:21, 13:4, 13:6, 13:10, 13:20, 14:3, 14:7, 14:11, 14:15, 15:2, 15:17, 17:23, 17:25, 18:12, 18:23, 19:1, 19:18, 19:25, 20:6, 20:14, 20:23, 21:1, 21:10, 21:11, 21:19, 22:11, 22:18, 23:14, 23:20, 24:5, 24:14, 27:6, 27:8, 27:12, 28:3, 28:7, 28:10, 28:11, 29:22, 30:23, 31:3, 31:6, 31:8, 31:16, 32:11, 32:21, 33:6, 34:2, 34:13, 35:23, 36:7, 36:13, 38:20, 40:2, 40:6, 40:11, 40:12, 40:22, 41:3, 41:14, 42:1, 42:21, 42:22, 42:23, 43:8, 43:12, 43:14, 43:22, 44:2, 44:7, 44:14, 45:14, 46:7, 46:8, 46:15, 46:20, 47:7, 47:11, 48:2, 48:3, 48:4, 49:19, 49:20, 51:12, 51:13, 51:16, 51:18, 52:4, 52:18, 53:2, 53:19, 54:2, 54:11, 54:13, 54:23, 56:23, 57:7, 57:11, 57:20, 58:14, 58:15, 61:18, 61:22, 63:9, 63:14, 63:17, 65:21, 65:25, 66:2, 66:12, 66:15, 66:20, 69:23, 69:25, 70:6, 70:9, 71:4, 71:14
**president** [1] - 13:18
**PRESIDENT** [1] - 1:4
**president's** [2] - 13:5, 55:1
**President's** [15] - 14:10, 16:6, 16:24, 25:15, 31:18, 35:19, 37:17, 40:6, 41:22, 42:11, 42:19, 43:5, 43:19, 54:18
**press** [5] - 9:3, 17:2, 17:23, 25:4, 42:3
**presume** [1] - 59:3
**prevail** [1] - 25:10
**previous** [1] - 30:3
**previously** [1] - 13:3
**primarily** [2] - 33:25,

48:23
**principle** [1] - 6:1
**principles** [3] - 15:12, 16:11, 64:23
**private** [1] - 46:10
**privilege** [1] - 17:1
**probable** [1] - 19:20
**problem** [1] - 47:12
**problematic** [1] - 11:18
**proceeding** [1] - 4:2
**Proceedings** [1] - 72:21
**proceedings** [1] - 73:4
**process** [1] - 37:14
**produced** [14] - 7:18, 7:23, 8:14, 8:21, 9:11, 10:1, 11:11, 11:14, 32:7, 32:18, 32:23, 35:15, 38:8, 38:21
**production** [1] - 38:23
**products** [1] - 9:3
**profile** [1] - 23:23
**profits** [1] - 45:22
**prohibited** [1] - 68:7
**promise** [1] - 65:5
**promising** [1] - 46:23
**Promotions** [2] - 45:20, 46:5
**prong** [1] - 58:17
**pronounced** [1] - 58:13
**proof** [6] - 10:2, 12:6, 46:21, 47:10, 47:14, 48:3
**prop** [1] - 22:3
**properly** [4] - 6:9, 6:15, 10:23, 49:12
**proposition** [1] - 11:8
**propping** [1] - 47:10
**protect** [1] - 62:7
**prove** [4] - 11:21, 13:7, 20:1, 66:20
**proven** [1] - 25:7
**provide** [1] - 14:11
**pubic** [1] - 12:23
**public** [8] - 16:22, 17:1, 17:2, 18:25, 24:19, 25:5, 46:10, 46:15
**publication** [12] - 4:16, 15:8, 15:20, 21:2, 25:7, 25:14, 28:12, 29:14, 31:5, 44:5, 57:5
**publications** [1] -

13:8

**publish** [2] - 17:2, 62:7

**published** [29] - 5:24, 9:4, 9:13, 10:3, 10:17, 12:3, 12:15, 13:4, 13:11, 13:16, 15:9, 16:20, 17:5, 17:6, 18:9, 19:19, 21:3, 21:10, 24:15, 25:23, 34:4, 40:9, 43:23, 44:18, 48:21, 54:10, 56:25, 57:17, 70:18

**publisher** [1] - 20:5

**publisher's** [1] - 23:9

**publishers** [1] - 56:18

**publishing** [6] - 10:15, 15:10, 19:18, 48:25, 58:10, 68:2

**punch** [1] - 41:7

**purported** [2] - 30:24, 36:3

**purporting** [1] - 54:15

**purpose** [1] - 66:16

**purposes** [12] - 12:4, 26:12, 33:8, 34:25, 36:15, 37:8, 39:24, 47:10, 52:5, 54:9, 55:25, 59:4

**pursuant** [6] - 7:23, 11:14, 32:7, 32:18, 38:6, 38:21

**pursue** [1] - 15:17

**put** [15] - 10:1, 16:19, 22:18, 27:25, 31:6, 31:19, 43:19, 44:7, 46:2, 55:20, 57:20, 64:1, 67:8, 68:21, 69:6

**puts** [1] - 64:21

### Q

**questioned** [1] - 38:2

**questioning** [1] - 64:3

**questions** [7] - 19:8, 20:9, 31:20, 36:22, 56:6, 60:6, 60:16

**quick** [1] - 65:5

**quickly** [1] - 68:24

**quite** [3] - 60:15, 64:11, 67:3

**Quod** [2] - 18:4, 19:2

**quod** [14] - 26:14, 26:25, 44:12, 59:1, 59:7, 59:8, 59:10,

59:16, 59:21, 60:3, 60:8, 64:10, 64:12, 64:16

**quote** [29] - 6:4, 10:9, 13:11, 14:7, 14:8, 14:9, 14:17, 14:19, 15:5, 15:20, 16:8, 17:1, 17:4, 17:12, 18:2, 19:1, 23:8, 23:25, 24:5, 32:17, 49:5, 49:10, 49:11, 50:13, 50:17, 61:18, 61:23, 70:1, 70:2

**quote-unquote** [1] - 18:2

**quoted** [2] - 23:23, 32:18

**quotes** [3] - 12:18, 14:7, 23:22

**quoting** [1] - 16:17

### R

**raise** [1] - 69:19

**raised** [4] - 30:7, 37:9, 47:1, 55:16

**rape** [5] - 40:18, 40:22, 63:9, 63:10

**Rapp** [1] - 26:19

**rather** [3] - 10:2, 39:13, 40:22

**read** [11] - 42:16, 53:24, 54:17, 55:8, 61:14, 61:15, 61:17, 62:11, 65:18, 67:2, 67:13

**readers** [2] - 21:14, 33:11

**readily** [3] - 36:20, 38:1, 38:2

**reading** [1] - 42:15

**real** [4] - 21:2, 29:16, 51:19, 57:1

**really** [10] - 12:20, 25:3, 26:7, 36:7, 42:3, 42:24, 45:17, 47:8, 56:10, 56:11

**reason** [6] - 18:2, 24:13, 25:6, 47:9, 53:11, 59:23

**reasonable** [3] - 19:21, 37:2, 48:20

**reasonably** [1] - 23:9

**reasons** [3] - 4:18, 17:10, 18:5

**rebut** [1] - 11:24

**rebuttal** [3] - 4:25, 60:20, 70:17

**received** [1] - 38:10

**recent** [1] - 49:22

**recently** [1] - 6:7

**recipient** [1] - 38:10

**recitation** [1] - 25:20

**recitations** [1] - 20:15

**reckless** [9] - 48:21, 48:24, 49:2, 58:18, 65:7, 65:9, 65:11, 65:14, 69:17

**recognize** [2] - 45:4, 45:7

**recognized** [1] - 59:12

**record** [3] - 7:13, 68:21, 69:6

**recording** [2] - 6:11, 6:14

**recordings** [1] - 13:19

**records** [3] - 5:16, 17:1, 17:3

**recover** [1] - 4:16

**Reed** [9] - 20:17, 21:7, 22:21, 22:22, 23:8, 23:11, 24:10, 28:16, 66:23

**reeling** [1] - 54:3

**refer** [1] - 33:23

**reference** [18] - 5:15, 6:1, 6:14, 6:21, 6:25, 7:6, 7:7, 7:25, 8:2, 8:8, 9:1, 11:5, 33:19, 33:20, 35:7, 35:16, 53:24, 70:6

**referenced** [3] - 6:5, 25:23, 45:12

**references** [3] - 5:19, 25:19, 30:17

**refers** [3] - 25:19, 25:25, 58:7

**reflected** [1] - 66:1

**refused** [1] - 34:20

**regard** [6] - 5:2, 37:19, 56:8, 56:24, 58:25, 68:19

**regarding** [6] - 4:9, 9:19, 14:12, 45:11, 48:11, 56:8

**reiterate** [1] - 64:18

**rejected** [5] - 20:16, 20:19, 22:21, 22:25, 51:5

**relates** [2] - 14:3, 58:12

**relation** [1] - 31:22

**relationship** [6] - 13:4, 14:13, 23:16, 27:8, 44:1, 70:7

**release** [3] - 9:3,

24:22, 25:8

**released** [7] - 5:7, 24:19, 24:21, 25:13, 39:12, 39:22, 39:23

**relevant** [2] - 23:19, 46:15

**reliable** [2] - 11:9, 51:3

**Reliance** [1] - 49:14

**relied** [3] - 54:9, 54:14, 69:7

**relying** [3] - 34:22, 38:13, 62:15

**remaining** [1] - 57:8

**rendering** [1] - 36:15

**repeatedly** [4] - 9:15, 30:12, 62:1, 63:13

**repetitive** [1] - 41:13

**report** [3] - 10:20, 41:17, 41:24

**REPORTED** [1] - 2:8

**reported** [3] - 5:4, 31:15, 63:5

**reporter** [1] - 63:8

**Reporter** [2] - 2:10, 73:10

**reporters** [4] - 7:20, 10:4, 12:11, 27:25

**reporting** [9] - 10:21, 16:10, 17:1, 18:18, 24:6, 24:12, 50:16, 55:19

**reports** [3] - 9:19, 23:10, 23:14

**representing** [1] - 42:7

**reprinted** [1] - 5:13

**reputation** [6] - 19:3, 23:15, 24:7, 25:16, 44:15, 45:22

**reputational** [5] - 44:20, 44:22, 45:5, 45:14, 64:5

**request** [8] - 3:19, 13:2, 31:22, 37:6, 44:23, 47:3, 47:17, 48:8

**requested** [1] - 32:2

**requesting** [1] - 35:10

**require** [1] - 15:16

**required** [8] - 6:4, 14:21, 16:10, 19:2, 19:18, 19:25, 23:8, 62:1

**requirement** [1] - 57:25

**requires** [1] - 17:7

**reserve** [1] - 4:24

**Residences** [1] - 6:3

**resolve** [1] - 37:17

**resolved** [2] - 50:12, 50:21

**respect** [18] - 31:11, 31:20, 31:24, 39:14, 39:21, 40:4, 40:13, 41:19, 45:9, 46:13, 46:24, 47:1, 48:2, 48:5, 50:16, 57:11, 57:19, 59:4

**respectfully** [2] - 16:13, 17:7

**respond** [3] - 65:2, 65:3, 72:6

**responded** [1] - 38:17

**response** [6] - 7:16, 24:20, 38:8, 42:4, 50:14, 72:2

**responsible** [3] - 39:20, 57:5, 57:23

**responsive** [1] - 34:7

**rest** [1] - 61:12

**rested** [1] - 40:15

**rests** [2] - 54:6, 54:7

**result** [2] - 17:8, 70:11

**resulted** [1] - 45:13

**return** [1] - 70:19

**review** [5] - 37:7, 46:21, 47:16, 47:18, 50:17

**reviewed** [6] - 8:21, 10:3, 32:14, 32:24, 33:3, 34:17

**ridicule** [1] - 70:10

**rise** [3] - 17:20, 48:20, 72:20

**road** [1] - 62:4

**ROBERT** [1] - 1:10

**role** [1] - 22:14

**room** [3] - 18:2, 27:13, 28:11

**routinely** [1] - 13:10

**RPR** [2] - 2:9, 73:10

**Rule** [1] - 37:20

**Rules** [1] - 37:20

**rulings** [1] - 29:12

**running** [1] - 56:4

**RUPERT** [1] - 1:9

### S

**SAFDAR** [1] - 1:10

**salient** [1] - 29:9

**satisfactory** [1] - 12:5

**satisfy** [5] - 19:3, 28:15, 58:17, 65:11, 68:9

**saved** [1] - 18:14
**scheduling** [1] - 71:20
**se** [9] - 25:18, 26:13, 27:1, 44:12, 46:17, 52:10, 54:4, 59:23, 60:7
**seated** [1] - 3:2
**SEC** [2] - 9:8, 9:15
**Second** [3] - 20:19, 21:5, 23:3
**second** [7] - 7:12, 7:21, 11:1, 12:21, 19:1, 64:18, 69:8
**seconds** [1] - 72:12
**secret** [4] - 11:23, 43:25, 70:3
**SECURITY** [1] - 72:20
**see** [5] - 20:13, 52:25, 56:14, 62:13, 62:15
**seek** [1] - 30:13
**seeking** [2] - 41:18, 44:4
**seeks** [2] - 36:14, 46:1
**seem** [1] - 51:21
**send** [1] - 27:19
**Send** [1] - 55:10
**sense** [1] - 65:11
**Sent** [1] - 33:11
**sent** [2] - 26:5, 28:10
**sentence** [10] - 15:7, 31:1, 33:15, 41:13, 53:8, 53:13, 53:16, 55:7, 55:22, 63:16
**separate** [2] - 49:13, 61:1
**separated** [1] - 63:19
**separately** [1] - 26:11
**series** [2] - 34:7, 47:24
**serious** [2] - 19:22, 19:24
**services** [1] - 46:2
**set** [1] - 20:10
**sets** [2] - 37:20, 37:21
**setting** [1] - 61:21
**settled** [2] - 10:6, 15:12
**seven** [2] - 23:19, 23:20
**Seventh** [2] - 17:15, 17:17
**several** [2] - 14:11, 63:8
**sex** [3] - 43:1, 47:19,

48:5
**sexual** [8] - 40:19, 40:20, 43:14, 43:17, 47:20, 63:10
**shape** [1] - 12:21
**share** [2] - 4:21, 70:3
**shift** [4] - 9:20, 35:3, 36:10, 36:17
**shifting** [1] - 70:23
**short** [1] - 16:9
**shorter** [1] - 19:14
**Show** [2] - 45:20, 46:5
**show** [7] - 27:23, 28:4, 28:6, 28:9, 28:12, 54:16, 63:15
**shows** [2] - 62:18, 63:18
**side** [2] - 24:3, 71:23
**sign** [5] - 32:12, 32:22, 34:4, 40:6, 40:8
**signature** [22] - 4:13, 5:11, 12:22, 14:5, 14:18, 16:2, 16:7, 31:18, 37:17, 41:4, 41:8, 55:1, 55:13, 61:24, 64:20, 68:19, 69:4, 69:5, 69:11, 69:13, 69:16
**signed** [11] - 31:16, 33:5, 34:13, 40:3, 42:1, 51:14, 51:16, 54:11, 70:25, 71:4, 71:14
**significance** [1] - 42:10
**significant** [1] - 23:13
**significantly** [1] - 23:5
**similar** [1] - 40:15
**similarly** [1] - 31:4
**simply** [9] - 16:4, 20:21, 29:8, 38:8, 38:16, 47:2, 50:9, 51:4, 54:5
**single** [1] - 63:16
**sit** [2] - 68:10, 68:12
**situation** [1] - 7:11
**six** [1] - 6:3
**slew** [2] - 17:15, 68:5
**Smith** [1] - 10:15
**Social** [2] - 67:3, 67:4
**social** [1] - 24:4
**soften** [1] - 41:7
**someone** [3] - 27:17, 31:18, 38:8
**somewhat** [3] -

40:15, 46:19, 59:1
**sorry** [10] - 6:16, 30:21, 33:23, 46:3, 53:5, 65:3, 68:23, 68:24, 69:20, 71:8
**sort** [6] - 20:24, 47:20, 62:20, 70:7, 72:3, 72:6
**sought** [2] - 37:7, 65:20
**source** [5] - 36:7, 51:8, 57:18, 58:20, 58:22
**sources** [10] - 34:23, 38:1, 44:8, 44:9, 49:15, 49:18, 51:3, 51:4, 65:17, 65:21
**SOUTHERN** [1] - 1:1
**Southern** [3] - 45:21, 48:17, 64:9
**space** [1] - 25:4
**speaker** [1] - 20:5
**speaking** [2] - 34:21, 68:24
**speaks** [1] - 45:2
**special** [6] - 19:2, 33:17, 46:1, 64:4, 64:5, 64:13
**species** [1] - 59:12
**specific** [15] - 19:1, 22:3, 22:5, 26:18, 31:13, 32:6, 33:21, 34:14, 35:20, 40:16, 43:14, 43:22, 43:24, 47:3, 47:15
**specifically** [17] - 5:10, 9:2, 25:19, 25:25, 26:2, 30:6, 34:3, 45:1, 45:3, 47:22, 53:5, 54:23, 56:8, 56:23, 58:9, 68:7, 69:25
**specifics** [1] - 45:17
**spend** [1] - 63:7
**spending** [1] - 39:2
**squiggly** [1] - 12:22
**St** [1] - 65:13
**staff** [1] - 57:8
**stage** [8] - 11:7, 35:18, 37:14, 39:6, 50:12, 50:19, 52:6, 66:25
**stand** [1] - 59:24
**standard** [15] - 19:4, 19:9, 20:15, 21:24, 25:4, 35:1, 46:14, 52:7, 62:19, 65:7, 65:9, 65:10, 65:12, 65:15, 68:9
**standards** [3] - 35:2,

37:22, 47:2
**star** [2] - 21:18, 23:11
**start** [1] - 31:22
**started** [1] - 51:21
**starting** [2] - 3:5, 5:20
**starts** [1] - 43:1
**state** [10] - 3:5, 9:9, 30:19, 41:2, 41:4, 43:5, 54:17, 69:15, 70:5, 71:3
**statement** [29] - 10:11, 15:6, 15:9, 15:10, 15:23, 17:10, 24:11, 31:8, 33:14, 34:10, 40:23, 41:13, 42:2, 42:19, 42:24, 43:3, 43:7, 43:10, 48:24, 50:2, 55:21, 55:23, 56:24, 61:11, 61:17, 64:13, 64:14, 72:4, 72:7
**statements** [31] - 13:16, 13:20, 14:20, 18:6, 23:15, 26:1, 34:1, 39:13, 40:9, 40:10, 40:20, 42:17, 43:21, 45:13, 45:16, 47:7, 49:3, 50:10, 50:14, 55:3, 55:5, 56:2, 56:3, 56:21, 57:10, 59:17, 61:16, 70:11, 71:1, 71:3
**STATES** [2] - 1:1, 1:15
**states** [8] - 14:17, 17:11, 30:8, 31:4, 42:8, 69:25, 70:10, 71:15
**States** [6] - 2:10, 20:2, 21:6, 27:6, 27:8, 73:11
**states'** [1] - 29:18
**stating** [2] - 33:5, 33:14
**Statute** [3] - 68:19, 68:21, 69:5
**Statutes** [1] - 37:16
**stay** [1] - 71:21
**stayed** [2] - 72:14, 72:16
**STENOGRAPHICA LLY** [1] - 2:8
**step** [1] - 13:23
**Stephanopoulos** [1] - 40:14
**steps** [1] - 50:23
**Steven** [1] - 3:13
**STEVEN** [1] - 2:5

**STEWART** [1] - 1:23
**stick** [1] - 60:24
**still** [5] - 20:11, 32:13, 70:22, 71:7, 71:9
**stipulation** [1] - 72:13
**stop** [1] - 17:13
**stories** [1] - 62:7
**story** [2] - 28:16, 48:21
**straight** [1] - 12:13
**Street** [12] - 4:9, 5:4, 10:3, 12:15, 14:4, 14:21, 16:20, 17:5, 32:14, 35:21, 55:18, 70:18
**STREET** [1] - 1:8
**stronger** [1] - 7:9
**stuff** [2] - 35:9, 35:10
**sub** [1] - 14:6
**subject** [4] - 36:6, 37:1, 40:21, 50:6
**subjected** [1] - 70:10
**subjective** [3] - 19:20, 65:9, 65:15
**submit** [1] - 72:3
**submitted** [1] - 65:19
**subpoena** [18] - 7:16, 7:23, 8:13, 9:2, 9:12, 11:12, 11:14, 12:2, 24:20, 32:8, 32:19, 32:24, 35:15, 38:6, 38:9, 38:17, 38:21, 70:19
**subpoenaed** [2] - 5:8, 7:14
**subsequent** [2] - 39:13, 49:3
**subsequently** [3] - 5:6, 25:7, 25:13
**substance** [4] - 11:17, 11:23, 29:18, 48:11
**substantial** [1] - 27:14
**substantially** [5] - 10:20, 15:18, 15:20, 15:24, 62:2
**subsumed** [1] - 59:13
**sue** [1] - 42:21
**sued** [1] - 42:23
**sufficiency** [1] - 50:13
**sufficient** [7] - 9:13, 21:14, 34:25, 43:5, 45:23, 48:15, 52:5
**sufficiently** [1] - 56:14

13

**suggest** [4] - 16:13, 17:8, 29:15, 61:3
**suggested** [2] - 27:16, 62:3
**suggesting** [1] - 12:20
**suggestive** [1] - 17:19
**suggests** [1] - 22:11
**Suite** [2] - 1:20, 1:24
**Sullivan** [4] - 20:2, 67:23, 67:25, 68:8
**sum** [2] - 22:19, 49:11
**summary** [2] - 50:12, 50:18
**support** [6] - 19:21, 21:4, 46:1, 49:15, 62:14
**supported** [3] - 23:10, 24:11, 63:4
**supports** [1] - 62:18
**supposed** [3] - 31:2, 53:17, 53:25
**Supreme** [8] - 14:24, 16:22, 16:25, 20:2, 21:6, 29:12, 59:14, 65:13
**surprise** [1] - 38:20
**surprised** [1] - 59:9
**surrounding** [1] - 50:22
**survive** [2] - 40:17, 45:23
**suspect** [1] - 72:1
**sustaining** [1] - 52:5

**T**

**talks** [13] - 18:1, 23:20, 23:21, 26:4, 30:11, 30:22, 36:12, 42:21, 43:25, 44:10, 45:5, 47:22, 58:21
**tape** [3] - 7:6, 7:7, 13:19
**taped** [1] - 17:25
**team** [1] - 56:23
**Techna** [1] - 10:14
**technically** [1] - 15:21
**Television** [1] - 10:8
**ten** [1] - 17:16
**tends** [1] - 21:16
**Tenth** [1] - 10:9
**term** [1] - 58:7
**terms** [5] - 15:10, 17:18, 27:15, 29:10, 42:15
**terrific** [1] - 23:25

**territorial** [1] - 37:25
**testimony** [1] - 50:18
**THE** [68] - 1:8, 1:14, 1:18, 1:22, 3:2, 3:10, 3:17, 4:2, 5:1, 6:16, 6:19, 8:1, 8:10, 8:18, 8:24, 11:1, 12:24, 13:25, 19:10, 19:13, 25:17, 28:2, 28:20, 29:3, 29:7, 29:18, 29:21, 32:3, 32:16, 35:5, 38:18, 42:10, 44:14, 44:25, 45:10, 46:3, 46:7, 48:10, 48:14, 52:10, 52:13, 52:21, 52:24, 53:5, 53:9, 53:14, 54:12, 54:24, 56:4, 56:20, 58:5, 58:14, 60:5, 60:11, 60:20, 65:3, 68:12, 68:15, 68:17, 68:23, 68:25, 70:14, 70:16, 71:5, 71:10, 71:16, 72:10, 72:16
**themselves** [1] - 21:15
**theory** [1] - 6:25
**therefore** [4] - 6:14, 61:7, 61:13, 62:7
**they've** [2] - 48:6, 64:16
**third** [2] - 38:6, 38:10
**third-party** [1] - 38:10
**Thompson** [1] - 65:14
**Thomson** [7] - 31:5, 56:22, 57:4, 57:6, 58:16, 67:22, 68:4
**THOMSON** [1] - 1:10
**thorough** [1] - 12:19
**thoughts** [1] - 56:5
**three** [9] - 4:23, 14:9, 21:11, 30:16, 33:4, 33:25, 34:11, 61:20, 71:2
**throated** [1] - 21:10
**throughout** [2] - 43:21, 45:16
**ties** [1] - 8:25
**timing** [3] - 45:7, 70:18, 71:6
**title** [6] - 33:9, 33:10, 41:12, 55:6, 55:9, 55:21
**TMTG** [6] - 49:23, 50:7, 50:20, 67:13, 67:15, 67:19
**today** [3] - 4:18, 60:15, 71:16

**together** [3] - 22:19, 27:25, 56:10
**took** [3] - 9:18, 50:24, 51:1
**tort** [1] - 59:13
**total** [2] - 48:9, 49:11
**totality** [2] - 15:6, 69:17
**totally** [1] - 9:1
**trafficking** [4] - 43:1, 43:18, 47:19, 48:5
**transcription** [1] - 73:4
**transparent** [1] - 44:17
**transpired** [1] - 33:8
**traveling** [1] - 39:19
**TREMAINE** [1] - 2:2
**trial** [2] - 37:25, 40:21
**tries** [3] - 20:23, 21:19, 48:4
**true** [14] - 6:4, 10:12, 10:20, 13:8, 15:18, 16:4, 24:14, 25:8, 28:8, 37:8, 47:8, 59:18, 62:2
**TRUMP** [1] - 1:4
**Trump** [62] - 3:3, 4:14, 4:15, 5:22, 8:11, 9:10, 9:23, 11:21, 12:22, 13:6, 13:20, 14:3, 14:7, 14:15, 15:2, 15:17, 16:2, 17:11, 17:23, 18:1, 19:18, 19:25, 20:6, 20:14, 20:23, 21:1, 21:19, 22:18, 23:21, 23:24, 24:1, 24:5, 24:14, 26:6, 27:12, 28:3, 29:22, 30:23, 31:6, 33:13, 33:18, 33:20, 33:24, 34:2, 34:13, 40:11, 40:22, 41:3, 41:14, 45:14, 51:18, 52:18, 53:19, 55:11, 55:13, 55:23, 58:14, 58:15, 63:14, 66:3, 69:25
**Trump's** [19] - 5:11, 5:25, 13:4, 14:5, 14:11, 14:18, 16:7, 18:23, 21:10, 21:11, 23:14, 31:8, 40:12, 54:23, 54:25, 61:23, 64:20, 69:10, 69:16
**Truth** [2] - 67:3, 67:4
**truth** [14] - 10:7, 10:10, 10:12, 10:19, 11:2, 13:17, 15:16,

19:23, 25:12, 27:4, 27:14, 58:19, 69:18
**truthful** [3] - 4:16, 26:20, 64:14
**try** [2] - 41:7, 41:10
**trying** [8] - 11:3, 26:9, 43:24, 53:10, 54:22, 55:25, 57:23, 62:13
**turn** [2] - 28:20, 35:23
**turned** [2] - 27:18, 33:17
**Turner** [8] - 14:23, 15:4, 15:16, 15:19, 20:16, 61:9, 61:10, 62:1
**turns** [1] - 10:12
**twice** [2] - 62:11, 63:20
**two** [28] - 4:20, 4:23, 13:9, 18:5, 19:8, 28:14, 30:18, 32:10, 34:1, 36:25, 37:21, 37:25, 44:1, 51:6, 53:6, 53:20, 55:9, 56:1, 56:2, 57:8, 57:9, 60:6, 61:1, 61:16, 66:4, 66:5, 69:19
**tying** [1] - 43:14
**type** [3] - 17:3, 20:15, 20:19
**types** [1] - 46:1
**typical** [1] - 6:22
**typically** [2] - 38:12, 49:6

**U**

**U.S** [3] - 16:17, 16:23, 65:14
**ultimately** [4] - 6:24, 32:7, 38:24, 39:2
**uncertain** [1] - 41:24
**unchallenged** [1] - 24:11
**unclear** [1] - 66:6
**under** [13] - 6:25, 9:12, 16:10, 27:1, 29:11, 29:12, 60:4, 61:17, 63:10, 64:2, 64:11, 64:22
**underage** [1] - 47:20
**undercut** [1] - 66:19
**undercuts** [1] - 21:12
**underlie** [1] - 16:12
**underlying** [1] - 62:6
**undermine** [1] - 21:16

**undermines** [1] - 36:23
**underscore** [2] - 30:5, 64:24
**underscores** [1] - 10:23
**undisputed** [2] - 7:13, 7:16
**unequivocally** [1] - 16:24
**unique** [2] - 12:19, 14:4
**united** [1] - 2:10
**UNITED** [2] - 1:1, 1:15
**United** [5] - 20:2, 21:6, 27:6, 27:8, 73:11
**Universal** [1] - 9:15
**unlawful** [1] - 44:11
**unless** [3] - 13:22, 19:7, 20:3
**unlike** [1] - 62:5
**unquestionable** [2] - 38:15
**unquestionably** [1] - 13:15
**unquote** [3] - 17:12, 18:2, 70:2
**unrelated** [1] - 63:12
**unreliable** [1] - 49:14
**untenable** [1] - 10:5
**untrue** [3] - 40:23, 42:2, 43:10
**unverified** [1] - 34:23
**up** [10] - 3:21, 32:1, 39:3, 39:21, 47:10, 52:19, 58:24, 59:21, 60:18, 65:25
**urge** [2] - 19:6, 62:10
**utilization** [2] - 40:15, 41:15
**utilized** [3] - 33:22, 34:15, 39:24

**V**

**Valley** [2] - 45:20, 46:5
**Vallina** [1] - 6:2
**value** [1] - 42:24
**various** [1] - 4:11
**vehement** [1] - 40:7
**veracity** [1] - 21:16
**verbatim** [2] - 12:18, 59:16
**verifiable** [4] - 51:7, 57:19, 58:19, 58:21
**verification** [4] - 39:6, 52:2, 68:20,

69:5
**verified** [3] - 21:21, 44:8
**verify** [2] - 34:10, 38:9
**versed** [1] - 59:3
**versus** [35] - 3:4, 6:2, 6:7, 6:17, 8:3, 9:15, 10:8, 10:14, 16:23, 18:16, 20:2, 20:17, 21:7, 21:25, 22:10, 22:16, 22:21, 23:11, 26:19, 28:16, 28:24, 45:20, 45:24, 46:5, 48:17, 49:9, 49:23, 63:21, 64:8, 64:10, 65:13, 67:23, 67:25, 68:7
**viable** [2] - 17:20, 63:2
**view** [5] - 27:3, 27:20, 29:16, 61:6, 66:4
**viewer** [1] - 55:20
**viewing** [1] - 55:14
**violation** [1] - 30:6
**virtue** [1] - 39:8
**voice** [1] - 51:15
**voluntary** [1] - 14:20
**voters** [1] - 9:16
**vs** [1] - 1:6

## W

**wait** [1] - 41:6
**walk** [1] - 48:12
**wall** [1] - 10:24
**Wall** [12] - 4:9, 5:4, 10:3, 12:15, 14:4, 14:21, 16:20, 17:5, 32:14, 35:21, 55:17, 70:18
**WALL** [1] - 1:8
**wants** [1] - 72:8
**warranted** [2] - 18:3, 38:22
**Washington** [3] - 49:23, 50:1, 50:4
**Watch** [1] - 21:25
**water** [3] - 33:7, 42:20, 63:1
**watered** [1] - 55:25
**ways** [1] - 7:9
**wayside** [1] - 5:23
**website** [20] - 5:17, 7:17, 7:22, 8:16, 9:5, 9:8, 9:9, 9:13, 9:25, 10:2, 12:4, 13:21, 16:2, 16:22, 38:12, 61:8, 62:16, 62:25,

63:5
**websites** [4] - 9:7, 9:8, 9:9, 9:18
**wedded** [1] - 46:19
**weigh** [1] - 21:15
**weight** [1] - 15:9
**welcome** [1] - 72:8
**well-settled** [1] - 15:12
**Wells** [8] - 14:23, 15:4, 15:16, 15:19, 20:17, 61:9, 61:10, 62:2
**whatsoever** [1] - 71:4
**White** [1] - 9:8
**who've** [1] - 24:24
**whole** [4] - 15:24, 61:25, 62:2, 65:6
**wholesale** [1] - 35:11
**withdrawn** [1] - 61:6
**witness** [1] - 50:2
**witnesses** [2] - 39:8, 50:18
**WL** [5] - 6:3, 21:18, 23:11, 46:6, 49:24
**woman** [1] - 12:21
**women** [3] - 23:16, 24:2, 43:13
**women's** [1] - 18:1
**wonderful** [1] - 70:2
**word** [3] - 17:21, 53:12, 60:13
**wording** [1] - 12:22
**words** [16] - 8:19, 15:7, 20:4, 20:20, 30:2, 30:19, 33:21, 34:14, 40:16, 41:15, 41:17, 45:18, 49:18, 50:25, 54:19, 60:14
**world** [2] - 12:21, 67:18
**worn** [2] - 8:4, 8:7
**Worndale** [1] - 9:17
**Wright** [1] - 3:14
**WRIGHT** [1] - 2:2
**write** [2] - 32:22, 44:3
**writers** [1] - 57:9
**writing** [2] - 8:21, 32:24
**written** [10] - 47:6, 50:3, 51:15, 52:8, 57:7, 62:24, 62:25, 69:12
**wrote** [9] - 10:4, 14:10, 40:2, 44:2, 50:8, 51:12, 51:13, 51:14, 51:17

## Y

**year** [1] - 6:8
**years** [3] - 14:14, 17:24, 23:25
**Yergey** [1] - 45:23
**YERGEY** [1] - 45:24
**YOAKLEY** [1] - 1:23
**York** [17] - 2:3, 2:6, 20:2, 23:23, 28:21, 28:24, 29:11, 29:13, 29:14, 40:21, 63:10, 67:23, 67:24, 68:7
**Yorker** [1] - 16:17
**younger** [1] - 24:3