UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-23232-GAYLES

PRESIDENT DONALD J. TRUMP,

      Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a
THE WALL STREET JOURNAL, NEWS
CORPORATION, KEITH RUPERT
MURDOCH, ROBERT THOMSON,
KHADEEJA SAFDAR, and JOSEPH
PALAZZOLO,

      Defendants.

_____/

**ORDER**

THIS CAUSE came before the Court on Defendants' Motion to Dismiss the Complaint (the "Motion to Dismiss"), [ECF No. 35], and Request for Judicial Notice (the "Motion for Judicial Notice"), [ECF No. 38], (together, the "Motions"). The Court has reviewed the Motions and the record, heard argument by counsel at the hearing on December 9, 2025, and is otherwise fully advised. For the following reasons, the Motions are each granted in part and denied in part.

In this action, President Donald J. Trump has sued Dow Jones & Company, Inc. d/b/a the Wall Street Journal ("Dow Jones"), News Corporation, Keith Rupert Murdoch ("Murdoch"), Robert Thomson ("Thomson"), and journalists Khadeeja Safdar ("Safdar") and Joseph Palazzolo ("Palazzolo") (collectively, the "Defendants") for defamation based on an article in the *Wall Street Journal* ("WSJ") linking President Trump to convicted sex offender Jeffrey Epstein ("Epstein").[1]

---

[1] News Corporation wholly owns Dow Jones, which publishes the WSJ. Murdoch is a director and majority owner of News Corporation and Thomson is the CEO. Safdar and Palazzo are journalists for the WSJ and wrote the Article.

The lawsuit raises many questions of fact and law about the publication's account of events, journalistic integrity, and the First Amendment's protection of "sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). However, most of those questions are for another day. Today, the Court resolves the pending Motions in accordance with procedural and evidentiary rules and the well-established *Twombly-Iqbal* plausibility standard.

## I.     BACKGROUND

### A.     The Article

On January 15, 2025, Palazzolo emailed White House Press Secretary Karoline Leavitt advising her that Dow Jones intended to publish an article (the "Article") about a letter that President Trump purportedly sent to Epstein (the "Letter"). [ECF No. 1 ¶ 12]. President Trump, through counsel, denied writing the Letter and warned Dow Jones not to publish the story.[2] *Id.* ¶ 13. Two days later, the WSJ online edition published the Article. [ECF No. 35-2].[3]

The title of the Article—"Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One was from Donald Trump"—is in bold print, with a subtitle below reading "[t]he leather-bound book was compiled by Ghislaine Maxwell. The president says the letter 'is a fake thing.'" *Id.* Leading with a picture of President Trump with Epstein, the Article states the following, in pertinent part:

> It was Jeffrey Esptein's 50th birthday, and Ghislaine Maxwell was preparing a special gift to mark the occasion. She turned to Esptein's family and friends. One of them was Donald Trump.

> Maxwell collected letters from Trump and dozens of Epstein's other associates for a 2003 birthday album, according to documents reviewed by The Wall Street Journal.

---

[2] President Trump also denied writing the Letter in an interview before publication. *See* [ECF No. 35-2].
[3] The WSJ ran the Article on the front page of its print edition on January 18, 2026. [ECF No. 1 ¶ 31].

Pages from the leather-bound album—assembled before Epstein was first arrested in 2006—are among the documents examined by Justice Department officials who investigated Epstein and Maxwell years ago, according to people who have reviewed the pages. It's unclear if any of the pages are part of the Trump Administration's recent review.

. . .

The letter bearing Trump's name, which was reviewed by the Journal, is bawdy—like others in the album. It contains several lines of typewritten text framed by the outline of a naked woman, which appears to be hand-drawn with a heavy marker. A pair of small arcs denotes the woman's breasts, and the future president's signature is a squiggly "Donald" below her waist, mimicking pubic hair.

The letter concludes: "Happy Birthday—and may every day be another wonderful secret."

In an interview with the Journal on Tuesday evening, Trump denied writing the letter or drawing the picture. "This is not me. This is a fake thing. It's a fake Wall Street Journal story," he said.

"I never wrote a picture in my life. I don't draw pictures of women," he said. "It's not my language. It's not my words."

He told the Journal he was preparing to file a lawsuit if it published an article. "I'm gonna sue The Wall Street Journal just like I sued everyone else," he said.

. . .

Justice Department officials didn't respond to requests for comment or address questions about whether the Trump page and other pages of the birthday album were part of the agency's recent documents review. The FBI declined to comment.

. . .

It isn't clear how the letter with Trump's signature was prepared. Inside the outline of the naked woman was a typewritten note styled as an imaginary conversation between Trump and Epstein, written in the third person.

[Description of Conversation]

When he turned 50, Epstein was already wealthy . . . and was socializing with Trump, Clinton and other powerful people. . . .

. . .

Epstein and Trump spent time together in the 1990s and early 2000s and were photographed at social events, including with Maxwell and Melania Trump. . . .

> Trump, along with others including Clinton, also appeared several times on flight logs for Epstein's private jet.
>
> A 2002 New York magazine profile of Epstein quoted Trump. "I've known Jeff for 15 years. Terrific guy," Trump said. "He's a lot of fun to be with. It is even said that he likes beautiful women as much as I do, and many of them are on the younger side. No doubt about it—Jeffrey enjoys his social life."
>
> Both men said that they subsequently had a falling-out. Trump has said their friendship ended before Epstein pleaded guilty to procuring a minor for prostitution in 2008, served time in a Florida jail and registered as a sex offender.
>
> . . .
>
> Epstein's associations with Trump and many powerful people have been well documented.

[ECF No. 35-2]. The Article was widely distributed and republished. [ECF No. 1 ¶¶ 30-40].

### B.      The Complaint

On July 18, 2025, President Trump filed this action against Defendants, alleging that the Letter is "fake" and that Defendants concocted the story to defame him.[4] [ECF No. 1]. The Complaint sets forth claims for defamation *per se* (Count I) and defamation *per quod* (Count II) and alleges that the following statements from the Article are *per se* defamatory:

> The letter bearing Trump's name, which was reviewed by the Journal, is bawdy— like others in the album. It contains several lines of typewritten text framed by the outline of a naked woman, which appears to be hand-drawn with a heavy marker. A pair of small arcs denotes the woman's breasts, and the future president's signature is a squiggly "Donald" below her waist, mimicking pubic hair. *Id.* ¶ 24a.
>
> It isn't clear how the letter with Trump's signature was prepared. Inside the outline of the naked woman was a typewritten note styled as an imaginary conversation between Trump and Epstein, written in the third person. *Id.* ¶ 24b.
>
> Voice Over: There must be more to life than having everything, the note began. Donald: Yes, there is, but I won't tell you what it is. Jeffrey: Nor will I, since I also

---

[4] The Complaint alleges that "no authentic letter or drawing exists," "the supposed letter is a fake," and "the letter was fake and nonexistent." [ECF No. 1 at 2, ¶¶ 22, 27]. In Response to the Motion to Dismiss, [ECF No. 46], and at the hearing, President Trump's counsel only argued that the Letter was not written by President Trump and is not authentic.

know what it is. Donald: We have certain things in common, Jeffrey. Jeffrey: Yes, we do, come to think of it. Donald: Enigmas never age, have you noticed that? Jeffrey: As a matter of fact, it was clear to me the last time I saw you. Donald: A pal is a wonderful thing. Happy Birthday — and may every day be another wonderful secret. *Id.* ¶ 24c.

The Complaint also contends that the following statements from the Article are implicitly defamatory:

> Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump. *Id.* ¶25a.

> It was Jeffrey Epstein's 50th birthday, and Ghislaine Maxwell was preparing a special gift to mark the occasion. She turned to Epstein's family and friends. One of them was Donald Trump." *Id.* ¶ 25b.

> The album had poems, photos and greetings from businesspeople, academics, Epstein's former girlfriends and childhood pals, according to the documents reviewed by the Journal and people familiar with them. *Id.* ¶25c.

> When he turned 50, Epstein was already wealthy from managing Wexner's fortune and was socializing with Trump, Clinton and other powerful people. He often entertained at his Manhattan townhouse, Palm Beach, Fla., home and private Caribbean island. *Id.* ¶ 25d.

Finally, the Complaint alleges, without detail, that Defendants knew or should have known that the allegedly defamatory statements were false, *Id.*¶¶ 47–48, 51, 63, 59, 60, and that the Article caused President Trump to suffer financial and reputational damages, *Id.* ¶ 42.

### C.    The House Subpoena and Records Release

On August 25, 2025, after President Trump filed this action, the Committee on Oversight and Government Reform of the United States House of Representatives (the "Committee") subpoenaed the Epstein Estate[5] for documents (the "Subpoena"). [ECF No. 35-3]. The Subpoena included a request to produce all letters in the album Ghislaine Maxwell compiled for Epstein's fiftieth birthday (the "Birthday Book"). The Epstein Estate complied with the Subpoena; and on

---

[5] Epstein died on August 10, 2019.

September 8, 2025, the Committee released the produced documents on its official webpage via a press release (the "Press Release").[6] [ECF No. 35-4]. The production included a copy of the Birthday Book. [ECF No. 35-3]. The Birthday Book includes a page matching the Article's description of the Letter (the "Produced Letter"). [ECF No. 35-6].

### D.      The Motions

On September 22, 2025, Defendants moved to dismiss the Complaint for failure to state a claim, [ECF No. 35]; and on September 23, 2025, Defendants asked the Court to take judicial notice of eleven documents, including the Subpoena, Press Release, Birthday Book, Produced Letter, articles about President Trump, and campaign statements by President Trump. [ECF No. 38]. The Court heard argument on the Motions on December 9, 2025.

## II.      LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, a complaint that merely presents "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* (internal quotation omitted). When

---

[6] The Press Release includes links to the Subpoena and documents produced by the Epstein Estate. [ECF No. 35-4].

reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.   DISCUSSION

Defendants move to dismiss, arguing that President Trump fails to state his defamation claims because: (1) the Article is true; (2) the Article is not defamatory; (3) he has not pled that Defendants published the Article with "actual malice"; and (4) he failed to allege special damages for his defamation *per quod* claim. Before the Court can address these arguments, it must determine which documents outside the Complaint, if any, it can consider at this stage of the litigation.

### A.   Request for Incorporation by Reference and Judicial Notice

In reviewing a 12(b)(6) motion, the Court is largely limited to the allegations in the Complaint and the attached exhibits. *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). However, under the incorporation-by-reference doctrine, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). Additionally, in limited circumstances, the Court may take judicial notice of certain types of facts pursuant to Federal Rule of Evidence 201. Defendants ask the Court to incorporate by reference the Article, Birthday Book, and Produced Letter. They also request that the Court take judicial notice of those documents, news articles about President Trump, and campaign statements by President Trump.

#### 1.   Incorporation By Reference

"[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is (1) central

7

to the plaintiff's claim; and (2) undisputed." *Horsely v. Feldt¸* 304 F.3d 1125, 1134 (11th Cir. 2002). "Undisputed in this context means that the authenticity of the document is not challenged." *Id.* (internal quotation omitted). Notably, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document provided it meets the centrality requirement imposed in *Horsely*." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Here, the Article is incorporated by reference into the Complaint. President Trump details the Article's contents in the Complaint, it is central to his defamation claims, and he does not dispute its authenticity. But the Birthday Book and Produced Letter are different. Though central to the claims in the Complaint,[7] President Trump disputes their authenticity. The Court cannot make a factual finding, at this time, that the documents produced by the Epstein Estate are the same documents referenced in the Article. Moreover, President Trump disputes that he wrote or signed the Produced Letter. Based on these factual disputes, the Court denies Defendants' request to incorporate by reference the Birthday Book and Produced Letter.

### 2.     Judicial Notice

Defendants also ask the Court to take judicial notice of the Press Release, Subpoena, Birthday Book, Produced Letter, news articles about President Trump, and campaign statements by President Trump. Federal Rule of Evidence 201 permits courts to take judicial notice of an adjudicative fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Eleventh Circuit has

---

[7] The Birthday Book and Produced Letter's very existence bears on whether the Article is true and, even if it is false, whether Defendants acted with actual malice.

cautioned "that the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc). This is because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Id.* Courts generally take judicial notice of the following kinds of facts: "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Id.* "Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). As a result, "indisputability is a prerequisite" to judicial notice. *Id.*

Defendants group their requests into two categories: (1) governmental sources and news articles and (2) campaign statements.

### i.        Governmental Sources

Defendants argue that the Court must take judicial notice of the Press Release, Subpoena, Birthday Book, and the page matching the Letter because a government agency published them. The Court agrees that the Press Release and Subpoena were (1) published by the Committee, (2) cannot be disputed in terms of accuracy, and (3) are the types of documents the Court would judicially notice.[8] However, the documents produced in response to the Subpoena (and found via a link in the Press Release) are not. While the produced documents certainly appear identical to the album and Letter referenced in the Article, the Court cannot, simply by taking judicial notice, find that they are the same, particularly where President Trump disputes their accuracy. This is a

---

[8] While the Press Release and Subpoena may be relevant at summary judgment, at this stage of the litigation, without the Birthday Book and Produced Letter, they do not impact the Court's ruling on whether President Trump has adequately alleged his defamation claims.

factual dispute that the Court cannot resolve at this stage of the litigation. *See Harris v. Public Broad. Service*, 662 F. Supp. 3d 1327, 1335-36 (N.D. Ga. 2023) (holding that even if the court could take judicial notice of certain facts, it could not interpret those facts to resolve the parties' factual disputes).

### ii.        News Articles and Campaign Statements

Defendants also ask the Court to take judicial notice of several news articles about President Trump and campaign statements that they contend establish President Trump's public reputation as Epstein's friend and user of bawdy language. This request is improper. "[C]ourts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *see also Cofield v. Alabama Public Ser'v Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991) (holding "[t]hat a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed.R.Evid. 201(b)(2)). Defendants essentially ask the Court to take judicial notice of these documents to establish that the Article could not have damaged President Trump's reputation. This is beyond the kind of adjudicative fact that the Court can take judicial notice. Accordingly, except for the Subpoena and Press Release, Defendants' request for judicial notice is denied.

### B.        Defamation

To state a claim for defamation under Florida law,[9] a plaintiff must allege five elements: "(1)

---

[9] Although the parties disagree over whether Florida or New York law governs this action, they agree that, for purposes of the Motion to Dismiss, Florida and New York defamation law are the same. As the Court sits in diversity in Florida, it applies Florida choice-of-law rules. *See In re January 2021 Short Squeeze Trading Litigation*, 76 F.4th 1335, 1346 (11th Cir. 2023). "And under Florida choice-of-law rules, a court need not resolve a choice-of-law dispute if there is a false conflict, such that the different laws point to the same outcome under the facts of the case." *Id.* (internal quotation

publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). "[D]efamation claims can be proven in either of the following ways: (1) defamation *per quod*, which 'requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[,]' or (2) defamation *per se*, which 'does not require any additional explanation in order to prove the defamatory nature of the statement.'" *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. Aug. 30, 2021) (quoting *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013)).[10] "Because defamation *per quod* requires additional explanation of the words used to show they have a defamatory meaning, . . . the plaintiff must allege and prove special damages." *Block v. Matesic*, 789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025) (internal quotation omitted).

Defendants argue that President Trump fails to adequately allege (1) that the statements in the Article are false or defamatory, (2) actual malice, or (3) special damages for his defamation

---

omitted). Because the outcome of the Motion to Dismiss is the same under Florida and New York law, the Court declines to resolve the parties' choice-of-law dispute at this time.

[10] Florida also recognizes "defamation by implication[,] a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). Defamation by implication "applies in circumstances where literally true statements are conveyed in such a way as to create a false impression[.]" *Id.* at 1108. Under this theory, the defendant may be held responsible for a defamatory implication if the defendant "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Id.* at 1106 (citation and internal quotation marks omitted). Here, the Complaint only sets forth claims for defamation *per se* (Count I) and defamation *per quod* (Count II). At the hearing, President Trump's counsel argued that defamation *per quod* and defamation by implication are the same. However, district courts in Florida and New York have distinguished between the two claims. *See Block v. Matesic*, No. 21-61032, 2023 WL 8527670, at *2 (S.D. Fla. Dec. 8, 2023) (discussing "three strains of defamation . . . *per se*, *per quod*, and by implication); *Flynn v. Cable News Network, Inc.*, No. 8:22-cv-343, 2023 WL 5985196, at *6 (M.D. Fla. Mar. 17, 2023) (distinguishing between defamation *per se*, defamation *per quod*, and defamation by implication); *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 145-46 (S.D.N.Y. 2022) (discussing defamation *per se*, defamation *per quod*, and defamation by implication as separate claims). Still, even if the claims are interchangeable, both require President Trump to plead actual malice which, as detailed below, he does not. *See Reed v. Chamblee*, No. 3:22-cv-1059, 2023 WL 6292578, at * 9 (M.D. Fla. Sep. 27, 2023) ("All three types of defamation also require a plaintiff to plead and prove actual malice if he is a public figure.").

*per quod* claim.

### 1. Truth and Whether the Statements are Defamatory

Defendants ask the Court to make a factual determination that the statements in the Article are true and a legal determination that they are not defamatory.[11] Because the Court finds that the Complaint fails to adequately allege actual malice, it declines to address these issues at this juncture. Moreover, whether President Trump was the author of the Letter or Epstein's friend are questions of fact that cannot be determined at this stage of the litigation.

### 2. Actual Malice

To prove a defamation claim, public figure plaintiffs must show that "the defendant made the alleged defamatory statements with 'actual malice.'" *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).[12] As the Eleventh Circuit has instructed, a public figure plaintiff must plead actual malice in accordance with the *Twombly/Iqbal* plausibility standard:

> In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending expensive yet groundless litigation. Indeed, the actual malice standard was designed to allow publishers the "breathing space" needed to ensure robust reporting on public figures and events. Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict that breathing space in exactly the manner the actual malice standard was intended to prevent. The costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether.

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *see also St. Amant v. Thompson*, 390 U.S. 727, 732 (1986) (holding that "to insure the ascertainment and publication of the truth

---

[11] "Whether a statement is reasonably capable of a defamatory interpretation is a question of law for the Court to determine prior to the jury's evaluation of whether the statement was in fact understood as defamatory" unless "a publication is susceptible of two reasonable interpretations, one of which is defamatory" – which then becomes an issue "of fact for the jury." *Mac Isaac*, 557 F. Supp. 3d at 1257 n.5 (internal quotations and citations omitted).

[12] "[W]hether an individual is a public figure—and thus subject to the actual malice analysis—is a question of law for the court to decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). Here, there is no dispute that President Trump is a public figure.

about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones."). Therefore, "to plead actual malice, [President Trump] must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) (internal quotation omitted). "This is a subjective test, focusing on whether the defendant 'actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'" *Id.* (quoting *Michel*, 816 F.3d at 702-03).

In some circumstances, actual malice can be inferred "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call[,] . . . [or] when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation[, or] where there are obvious reasons to doubt the veracity of the informant or accuracy of his reports." *St. Amant*, 390 U.S. at 732. However, "[a]ctual malice requires more than a departure from reasonable journalistic standards . . . [t]hus, a failure to investigate, standing on its own, does not indicate [its] presence . . . ." *Michel*, 816 F.3d at 703.

Here, the Complaint falls short of pleading actual malice. President Trump's primary allegations relating to malice are that Defendants "knew or should have known" the statements in the Article were false," [ECF NO. 1 ¶¶ 47, 59], and published the Article:

> maliciously, with knowledge of the falsity of the statement, and/or with reckless disregard of their truth or falsity [and]

> with actual malice, oppression, and fraud in that they were aware of the falsity of the publication and, thus, made said publications in bad faith, out of disdain and ill-will directed towards Plaintiff without any regard for the truth.

*Id.* ¶¶ 48, 51, 60, 63. These "formulaic recitations of the 'actual malice' element" are insufficient to state a claim. *See Reed v. Chamblee*, No. 24-10058, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025) (finding the plaintiff's conclusory assertions that the defendant acted with actual malice insufficient). President Trump also fails to allege how each Defendant acted with actual malice. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013) (holding that a plaintiff must "plead, and then prove, that each defendant acted with actual malice.").

The Complaint also alleges that President Trump told Defendants that the Letter was a fake before they ran the Article. President Trump argues that this allegation shows that Defendants acted with serious doubts about the truth of their reporting and, therefore, with actual malice. The Court disagrees. To establish actual malice, "a plaintiff must show the defendant deliberately avoided investigating the veracity of the statement in order to evade learning the truth." *Reed*, 2025 WL 1874638, at *3. The Complaint comes nowhere close to this standard. Quite the opposite. The Article explains that, before running the story, Defendants contacted President Trump, Justice Department officials, and the FBI for comment. President Trump responded with his denial, the Justice Department did not respond at all, and the FBI declined to comment. In short, the Complaint and Article confirm that Defendants attempted to investigate. The Article also states that the WSJ reviewed the Letter. [ECF No. 35-2].[13] Accordingly, President Trump's conclusory allegation that Defendants had contradictory evidence and failed to investigate is rebutted by the Article and is insufficient to establish actual malice. *See Michel*, 816 F.3d at 704 (holding that plaintiff did not adequately allege malice where record "indicate[d] that the reporters conducted some outreach and engaged in due diligence").[14]

---

[13] The Complaint alleges that the Article does not explain, among other things, whether Defendants have seen the letter. [ECF No. 1 ¶ 22]. This allegation is directly belied by the Article. *See* [ECF No. 35-2] ("The letter bearing Trump's name, ***which was reviewed by the Journal***, is bawdy—like others in the album.") (emphasis added).

[14] President Trump argues that *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989), supports his position that Defendants' purported failure to investigate is enough to support an inference of actual

The Article also informed readers that President Trump decried the Letter as a fake and denied writing it. By "allowing readers to decide for themselves what to conclude from the [Article], any allegation of actual malice [is] less plausible." *Turner*, 879 F.3d at 1274. *See also Michel*, 816 F.3d at 703 (holding that "reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice.").

Finally, President Trump's allegation that Defendants acted with ill-will is insufficient to plead actual malice. Aside from being conclusory and without factual support, "ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice." *Veritas v. Cable News Network*, 121 F.4th 1267, 1283 (11th Cir. 2024) (quoting *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999)).

Because President Trump has not plausibly alleged that Defendants published the Article with actual malice, both Counts must be dismissed. However, "[a] dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice[,] and the plaintiff should have the opportunity to amend his complaint." *Michel*, 816 F.3d at 706. *But see Reed*, 2025 WL 1874638, at *3 (dismissing defamation claim with prejudice where plaintiff "had two opportunities to plausibly allege claims for defamation in his lengthy complaints but has failed both times to sufficiently allege any Defendant acted with actual malice."). Because President Trump has only made one attempt to state his claims, the Court dismisses the Complaint without prejudice.

---

malice. However, in *Harte-Hanks*, the Supreme Court expressly stated that "[a]lthough failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category. *Id.* (citing *St. Amant*, 390 U.S. at 731). Here, President Trump has not alleged any facts, beyond conclusory allegations, that support an inference that Defendants purposefully avoided the truth.

### 3.      Special Damages

Even if President Trump had adequately alleged actual malice, his defamation *per quod*

claim must be dismissed without prejudice for failure to allege special damages. *See Block*, 789 F.

Supp. 3d at 1155. "Special damages are actual, out of pocket losses which must be proven by

specific evidence as to the time, cause, and amount, and their chief characteristic is a realized or

liquidated loss." *Id.* (citation and quotation marks omitted). Here, the Complaint is devoid of any

allegations regarding special damages.

### C.      Attorneys' Fees and Costs

Defendants request attorneys' fees and costs arguing that President Trump's lawsuit lacks

merit and that he only brought it because they exercised their right to free speech on a public issue.

Florida's Anti-SLAPP Statute[15] prohibits a person from filing a lawsuit "against another person or

entity without merit and primarily because such person or entity has exercised the constitutional

right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3). The statute awards

the prevailing party attorneys' fees and costs incurred in defending such a meritless lawsuit. *Id.* §

768.295(4).

Because the Complaint is dismissed without prejudice and with leave to amend, the Court

denies Defendants' request for fees and costs without prejudice and with leave to renew.

*See Barbuto v. Miami Herald Media Co.*, No. 21-cv-20608, 2021 WL 4244870, at * 4 (S.D. Fla.

Sept. 17, 2021) (denying without prejudice the defendant's request for fees and costs under Flor-

ida's Anti-SLAPP statute following dismissal of a plaintiff's complaint without prejudice because

---

[15] SLAPP stands for "Strategic Lawsuits Against Public Participation." Fla. Stat. § 768.295. New York's anti-SLAPP law similarly provides that "[a] defendant in an action involving public petition and participation" may "recover damages, including costs and attorneys' fees from any person who commenced or continued such action" if the case "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law § 70-a.

"the Court ha[d] not addressed the merits of [the p]laintiff's claims nor ha[d] the Court made the finding that [the p]laintiff's lawsuit as a whole [was] without merit.").

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants' Request for Judicial Notice, [ECF No. 38], is **GRANTED IN PART AND DENIED IN PART**. The Court incorporates by reference the Article and takes judicial notice of the Subpoena and Press Release. All other requests for incorporation by reference and judicial notice are denied.

2.    Defendants' Motion to Dismiss the Complaint, [ECF No. 35], is **GRANTED IN PART**. The Complaint, [ECF No. 1], is **DISMISSED WITHOUT PREJUDICE**. President Trump shall file an Amended Complaint on or before April 27, 2026.

3.    Defendants' request for attorneys' fees and costs is **DENIED WITHOUT PREJUDICE** and with leave to renew.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of April, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

17