**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No.: 1:25-CV-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

      Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE WALL STREET JOURNAL, a Delaware corporation, NEWS CORPORATION, a Delaware corporation, KEITH RUPERT MURDOCH, an individual, ROBERT THOMSON, an individual, KHADEEJA SAFDAR, an individual, and JOSEPH PALAZZOLO, an individual,

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendants Dow Jones & Co. ("Dow Jones"), News Corporation ("News Corp."), Keith Rupert Murdoch, Robert Thomson, Khadeeja Safdar, and Joseph Palazzolo (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the First Amended Complaint ("FAC") with prejudice and seek recovery of reasonable attorneys' fees and costs under the anti-SLAPP statute, *see* Fla. Stat. § 768.295; N.Y. Civil Rights Law §§ 70-a, 76-a.

## **INTRODUCTION**

This baseless defamation action arises from the publication of an article (the "Article") by *The Wall Street Journal* (the "*Journal*") discussing a book of letters compiled for Jeffrey Epstein's 50th birthday in 2003 (the "Birthday Book"). The Article reported that one of those letters contained a typewritten note and a sketch of a naked woman, and bore the name of President Donald J. Trump ("Plaintiff"). One day after the *Journal* published the Article, Plaintiff filed the instant lawsuit, alleging the Article defamed him.

On April 13, 2026,[1] this Court granted Defendants' motion to dismiss, finding the complaint came "nowhere close" to pleading actual malice—an essential element of a defamation claim. As the Court recognized, while Plaintiff alleged that the *Journal* failed to investigate before publishing, the Article itself established that the *Journal* not only investigated but also "informed readers that President Trump decried the Letter as a fake and denied writing it." Order at 15. The Court granted Plaintiff leave to replead.

After a brief interlude in which Plaintiff unsuccessfully asked this Court for permission to take pre-amendment discovery of Defendants—a request that betrayed his inability to plead actual malice—Plaintiff has now filed the FAC, once again bringing claims of defamation *per se* and defamation *per quod* stemming from the Article. But the FAC does not remedy any of the defects

---

[1] The Court later amended the order to correct scrivener's errors. *See* Dkt. 65 at 1 (the "Order").

identified in the Court's dismissal order. In fact, it compounds them.

The FAC—just like the prior complaint—should be dismissed for three reasons. *First*, Plaintiff still fails to plausibly plead that Defendants published the Article with actual malice. The FAC's new allegations re-package Plaintiff's earlier argument—rejected by this Court—that the *Journal* did not investigate before publishing. But failure to investigate is not actual malice. And Plaintiff's allegations are contradicted by the Article, which reveals the *Journal did* investigate. Plaintiff also now claims the Article contains "glaring omissions" that demonstrate actual malice. But much of the "omitted" information is, in fact, included in the Article. And even if these omissions existed, none would plausibly plead Defendants believed the Article to be false. *Second*, the Article does not have a defamatory meaning. Even if the Article had reported that Plaintiff personally crafted the letter to Epstein—and it does not—there is nothing defamatory about a person sending a bawdy note to a friend. *Third*, the Article was proven true when Congress released a letter identical to the one described in the Article, which the FAC now directly incorporates by reference. *See* FAC ¶¶ 62, 71.

As the Eleventh Circuit has explained, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings*, 816 F.3d 686, 702, 704 (11th Cir. 2016). Plaintiff has now had every opportunity to plead a defamation claim against Defendants. His case remains groundless. This action should be dismissed once and for all, and Defendants should be awarded their attorneys' fees and costs under the anti-SLAPP statute.

**STATEMENT OF FACTS**

## I.      THE PARTIES

Plaintiff President Trump is the President of the United States. FAC ¶ 1.

Defendant Dow Jones publishes the *Journal*. *Id.* ¶ 2. Defendants Safdar and Palazzolo are *Journal* reporters. *Id.* ¶¶ 6-7. Defendant News Corp., of which Defendant Murdoch is the Chairman Emeritus and Defendant Thomson is Chief Executive Officer, owns Dow Jones. *Id.* ¶¶ 3-5.

## II.     THE ARTICLE

On July 17, 2025, the *Journal* published the Article written by Safdar and Palazzolo, titled: "Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump." *See* Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 1.[2] The sub-headline of the Article notes, "The president says the letter 'is a fake thing.'" *Id.* at 1.

The Article reports on the Birthday Book, gifted to Epstein in 2003, which contained letters from his family and friends, including one letter described as "bearing Trump's name," that was "bawdy—like others in the album." *Id.* at 3. While the Article reports that "it isn't clear how the letter with Trump's signature was prepared," it states that the letter contains "several lines of typewritten text framed by the outline of a naked woman, which appears to be hand-drawn with a heavy marker. A pair of small arcs denotes the woman's breasts[.]" *Id.* at 3-4. The letter's text reflects a fictitious conversation between Plaintiff and Epstein, and the signature of a "squiggly 'Donald'" appears below the text "mimicking pubic hair." *Id.* at 3. The Article explains the Birthday Book "was put together by a New York City bookbinder, Herbert Weitz, according to people who were involved in the process." *Id.* at 4. It notes Weitz died in 2020 but listed Epstein as a client on his website in 2003 (at the time the Birthday Book was gifted to Epstein). *Id.*

The Article then reports on Plaintiff's well-documented relationship with Epstein and the fact that it coincided with the Birthday Book. At the time the Birthday Book was compiled, Epstein

---

[2] The Court may consider the Article because it is incorporated by reference into the FAC. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

was "socializing with Trump," and they were "photographed at social events" in the 1990s and early 2000s. *Id.* at 6. In 2002, Plaintiff told *New York* magazine he had known Epstein for "15 years," Epstein was a "terrific guy," and "[i]t is even said that he likes beautiful women as much as I do, and many of them are on the younger side." *Id.* But the Article explains Plaintiff later stated he had a falling out with Epstein, he "banned Epstein from his Mar-a-Lago club" before Epstein's 2008 guilty plea, and, as of 2019, he had not spoken with Epstein in 15 years. *Id.*

The Article also details the *Journal's* investigation for the story. The *Journal* sought comment from Plaintiff before the Article's publication, *see* FAC ¶ 12, and then waited two days before publishing. The Article devotes three paragraphs to his response. It quotes Plaintiff as saying, "This is not me. This is a fake thing. It's a fake Wall Street Journal story. . . . I never wrote a picture in my life. I don't draw pictures of women. . . . It's not my language. It's not my words." Article at 3. It reports that Plaintiff threatened, "I'm gonna sue The Wall Street Journal just like I sued everyone else." *Id*. The *Journal* contacted Justice Department officials, who did not respond to requests for comment, and the FBI, which declined to comment. *Id.* at 6. The *Journal* attempted to contact Ghislaine Maxwell, who collected letters for the Birthday Book, but she "didn't respond to a letter requesting an interview sent to her in prison." *Id.* at 4. The *Journal* also contacted Maxwell's attorney, who responded, Maxwell "is focused on her case before the Supreme Court of the United States." *Id.* at 6. And the *Journal* contacted other individuals who appeared in the Birthday Book, including Leslie Wexner and Alan Dershowitz, who said, "It's been a long time, and I don't recall the content of what I may have written." *Id.* at 4.

### III.    CONGRESS RELEASES THE BIRTHDAY BOOK

Approximately one month after Plaintiff filed this lawsuit, on August 25, 2025, the Oversight Committee of the U.S. House of Representatives subpoenaed the Epstein estate for

documents, including the Birthday Book. *See* Bolger Decl. Ex. 2. On September 8, 2025, after the

Epstein estate responded to the subpoena, the Committee released the response on its official

webpage. Bolger Decl. Ex. 3. Among the released documents was a copy of the Birthday Book—

a 238-page book entitled, "The First Fifty Years," which contains letters to Epstein. Bolger Decl.

Ex. 4.[3] The Book's table of contents lists "Donald J. Trump" in the "Friends" category. *See id.* at

HOUSE_OVERSIGHT_000003. It also contains a page featuring a doodle of a naked woman, a

typewritten imaginary conversation, and Plaintiff's signature—just as the Article reports. *Id.* at

HOUSE_OVERSIGHT_000165; *see also* Bolger Decl. Ex. 5.

## IV.     THE SEPTEMBER 8 ARTICLE

The same day Congress released the Birthday Book, the *Journal* published an article, titled:

"A Visual Breakdown of the Trump Birthday Letter to Epstein," which is referenced in the FAC

but is not challenged as defamatory. Bolger Decl. Ex. 6 (the "Sept. 8 Article").[4] The Sept. 8 Article

compares the signature and typeface, drawing style, third-person point of view, and diction in the

letter released by Congress with Plaintiff's prior communications. As in the initial Article, the

Sept. 8 Article includes Plaintiff's insistence that the letter is "a fake thing." *Id.* at 1.

## V.      THIS LAWSUIT

On July 18, 2025, Plaintiff filed this lawsuit. Dkt. 1. After the Court dismissed the initial

---

[3] On Defendants' prior motion to dismiss, the Court took judicial notice of the Congressional press release and subpoena but not of the Birthday Book or the letter because Plaintiff would not agree to their authenticity. Now, however, the FAC clearly incorporates by reference the Birthday Book and the letter *as released by Congress*. *See* FAC ¶ 62 (referring to the "day that the alleged letter was made public by Congress"); *id.* ¶ 71 (noting that Defendants did not publish the purported letter "until after Congress published it"); *Day*, 400 F.3d at 1276. For purposes of this Motion, the Court need not make the factual finding that these are the same documents reviewed by Defendants prior to publishing the Article (although common sense dictates they are). Instead, the Court may properly consider the referenced documents for the fact that they exist, the way they look, and that Congress made them public.

[4] The Sept. 8 Article is also incorporated by reference. *Day*, 400 F.3d at 1276.

complaint for failure to plead actual malice, *see* Order, Plaintiff filed the FAC, bringing one count

of defamation *per se* based on statements describing the alleged contents of the letter, *see* FAC ¶¶

38, 92, and one count of defamation *per quod* seemingly based on the Article's suggestion that he

and Epstein were friends, *see id.* ¶¶ 39, 107.

## ARGUMENT

This Court held once that Plaintiff failed to state a defamation claim against Defendants.

The FAC only bolsters the conclusion that he can never do so.

When ruling on a 12(b)(6) motion, the Court accepts all factual allegations in the complaint

as true but need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements

of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a defamation claim, a

plaintiff must plead: (1) publication; (2) a false and defamatory statement of fact; (3) fault

amounting to knowledge of falsity or reckless disregard for the truth (i.e., actual malice); and (4)

damages. *See Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1105-06 (Fla. 2008); *Dillon v. City of N.Y.*,

261 A.D.2d 34, 38 (N.Y. App. Div. 1999).[5] Because defamation lawsuits chill First Amendment

rights, early dismissal is favored. *See Michel*, 816 F.3d at 704. Courts in this District thus routinely

dismiss defamation claims on the pleadings. *See, e.g.*, *Trump v. Cable News Network*, 684 F. Supp.

3d 1269, 1276-77 (S.D. Fla. 2023), *aff'd*, 2025 WL 3213203 (11th Cir. Nov. 18, 2025); *Bongino

v. The Daily Beast*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020); *Turner v. Wells*, 198 F. Supp. 3d

1355, 1380-81 (S.D. Fla. 2016) (Gayles, J.), *aff'd*, 879 F.3d 1254 (11th Cir. 2018).

Here, the FAC should be dismissed for any of three reasons: (1) there is still no plausible

allegation of actual malice; (2) the Article is not defamatory; and (3) the Article is true.

---

[5] As Defendants previously explained, New York law should apply here. *See* Dkt. 35 at 6 n.3. But, for purposes of this Motion, Florida and New York law "are the same." Order at 11 n.10.

6

## I.      PLAINTIFF AGAIN FAILS TO PLEAD ACTUAL MALICE

In order to plead actual malice, Plaintiff, as a public figure, Order at 12 n.12, must establish by "convincing clarity" that Defendants published the challenged statements with "knowledge that [they] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also* N.Y. Civ. Rights Law § 76-a(1)(a)(2*)*; *Jews for Jesus*, 997 So. 2d at 1106. A showing of actual malice thus requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" or "acted with a 'high degree of awareness of probable falsity.'" *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Masson v. New Yorker Mag.*, 501 U.S. 496, 510 (1991).

In his latest attempt to plead actual malice, President Trump recycles allegations already rejected by this Court, makes claims contradicted by the Article itself, and again lumps the various Defendants together rather than pleading actual malice as to each. Because the FAC falls woefully short of the President's burden, his case should be dismissed again—this time with prejudice.

### A.      Failure to Investigate Does Not Establish Actual Malice, and the Article Rebuts Allegations of Failure to Investigate

Notwithstanding the Court's dismissal order, Plaintiff again alleges that Defendants acted with actual malice because they "failed to engage in even the most basic investigative efforts before publishing the Article." FAC ¶ 26. As this Court already recognized, however, "failure to investigate . . . does not indicate" actual malice. Order at 13 (quoting *Michel*, 816 F.3d at 703); *Satanic Temple v. Newsweek Digital*, 2026 WL 1502095, at *9 (2d Cir. May 28, 2026) (same). Rather, there "*must* be some showing that [Defendants] purposefully avoided further investigation with the intent to avoid the truth." *Jacoby v. Cable News Network*, 537 F. Supp. 3d 1303, 1311 (M.D. Fla. 2021) (emphasis added), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021). Here, far from avoiding the truth, the Article makes clear that Defendants *did* investigate. *See* Order at 14.

7

As this Court held:

> The Article explains that, before running the story, Defendants contacted President Trump, Justice Department officials, and the FBI for comment. President Trump responded with his denial, the Justice Department did not respond at all, and the FBI declined to comment. . . . Accordingly, President Trump's conclusory allegation that Defendants . . . failed to investigate is rebutted by the Article and is insufficient to establish actual malice. *Id.* at 14-15.

Rather than address this Court's earlier holding, Plaintiff claims that Defendants should have, but did not, reach out to (1) Maxwell, supposedly the only living person (other than him) who could verify the Article's details, or (2) Weitz, the bookbinder. FAC ¶¶ 27-28. Initially, "allegations that the Defendants failed to fully investigate their statements by intentionally choosing not to speak with any witness who could have refuted the defamatory statements" do not plead actual malice. *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025).

In any event, Plaintiff's allegations are belied by the Article itself. Plaintiff alleges that Defendants either interviewed Maxwell and "intentionally failed" to report her comment or failed to reach out to her at all. FAC ¶ 32. But the Article makes clear that the *Journal did* reach out to Maxwell, and she "didn't respond to a letter requesting an interview." Article at 6. The *Journal* then went a step further, also contacting her attorney, who provided an on-the-record comment that Maxwell is "focused on her case before the Supreme Court of the United States.'" *Id.* As to Weitz, who the FAC concedes is dead, FAC ¶ 30, the Article details the *Journal*'s efforts to confirm that he, in fact, bound the Birthday Book. The Article notes that the *Journal* spoke to "people who were involved in the [binding] process," who confirmed Weitz put the Book together. Article at 4. The *Journal* then further confirmed that Weitz "listed Epstein as a client on his website in 2003," corroborating the sources' claims. *Id.* The *Journal* also contacted individuals named in the Birthday Book, including Leslie Wexner and Alan Dershowitz. *Id.* In short, the *Journal* did the very things Plaintiff wanted it to do. This is not merely "basic investigative effort[]," FAC ¶

26; it is the kind of thorough reporting that the Eleventh Circuit has held cannot amount to actual malice. *See Michel*, 816 F.3d at 704 ("The article indicates that the reporters spoke with, consulted, or otherwise reached out to [numerous sources]. The complaint fails to explain why none of that qualified as 'real outreach.'"). Plaintiff's allegations about the *Journal*'s investigation thus fail to plead actual malice.[6]

### B. Defendants' Purported "Omissions" Do Not Establish Actual Malice

Plaintiff next attempts to manufacture actual malice by claiming the Article contains "glaring omissions." FAC ¶¶ 52-53. First, several of these "omissions" are not omissions at all. For example, the FAC claims that Defendants did not document the "steps . . . [they] took to verify" the letter. FAC ¶¶ 53(f)-(h). But, as explained above, the Article details the *Journal*'s investigative work. Article at 3-4. Further, while the FAC claims Defendants did not explain "[h]ow the [letter's] voice over was confirmed to be in the third person," FAC ¶ 53(e), this too is incorrect. The Article states the *Journal* reviewed the letter prior to publication. Article at 3; Order at 14 n.14.

Likewise, the FAC claims the Article failed to include "any denial from President Trump as to whether he *signed* the letter." FAC ¶ 59 (emphasis added); *see also id.* ¶¶ 57, 61. This claim too is false. As this Court recognized, the Article "informed readers that President Trump decried the Letter as a fake and denied writing it." Order at 15. Indeed, the Article dedicated three paragraphs to Plaintiff's denial, including his insistence that the letter was a "fake thing" and his categorical disavowal of involvement, stating: "[t]his is not me." Article at 3. In other words, the

---

[6] Plaintiff misrepresents Maxwell's testimony, given at a proffer hearing *after* the Article was published (incorporated by reference at FAC ¶ 33), by alleging Maxwell testified she could not recall whether Plaintiff submitted a letter for the Birthday Book. But Plaintiff conveniently omits that Maxwell's testimony *confirmed* the existence of the Birthday Book, her involvement in its compilation, and that she and Epstein asked individuals to contribute to the Book—all of which corroborates the Article. *See* Bolger Decl. Ex. 7 at 177:3-179:2 While Maxwell testified she did not recall a letter from Plaintiff in the Book, she also testified she could not remember *any* names of individuals who contributed to the Book. *Id.* at 178:14-21.

*Journal* included Plaintiff's emphatic and comprehensive denial, and any reasonable reader would understand the gist of his position that every element of the letter was fake. *See* Order at 15 ("By 'allowing readers to decide for themselves what to conclude from the [Article], . . . any allegation of actual malice [is] less plausible.'") (quoting *Turner*, 879 F.3d at 1274)); *see also Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 384 (1977) ("[O]mission of relatively minor details in an otherwise basically accurate account is not actionable. This is largely a matter of editorial judgment in which the courts, and juries, have no proper function."); *Tah v. Global Witness Pub'g, Inc.*, 413 F. Supp. 3d 1, 14 (D.D.C. 2019) ("The emptiness of a denial as evidence is particularly apt here because not only did Plaintiffs' denial fail to contest the facts that are in the Report, the Report also included excerpts from Plaintiff's denials and called out the additional facts on which Plaintiffs' denials relied.").

Moreover, even if accurate and material (and they are not), the alleged omissions listed in the FAC neither undercut the Article's truth nor indicate Defendants' knowing falsification. *See Turner*, 879 F.3d at 1273-74; *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013) (favorably citing case rejecting that "omission is evidence of actual malice" because "[o]bviously the author of an article will have to choose which facts to include and which to omit"), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015); *Clark v. E! Ent. Television, LLC*, 2018 WL 1470372, at *4 n.5 (M.D. Tenn. Mar. 26, 2018) ("The Court is tasked with determining whether Plaintiff provided clear and convincing evidence that Defendant acted with actual malice. Beyond that, it is not the Court's task to provide editorial judgment on any omissions that Defendant may have made to the Program."). Were it otherwise, a libel plaintiff could *always* manufacture actual malice simply by reciting a list of every piece of information purportedly omitted from an article. Such a result would undermine the First Amendment's protections.

**C.       The September 8 Article Reinforces Defendants' Lack of Actual Malice**

Plaintiff next claims that the Sept. 8 Article somehow demonstrates Defendants' actual malice by "attempt[ing] to whitewash their journalistic shortcomings." FAC ¶ 62. But, to the extent the Article states that Plaintiff personally wrote or signed the letter—and it does not—the Sept. 8 Article reinforces the Article's truth: it demonstrates how the letter's signature, typeface, drawing, tone, and phrasing are all similar to Plaintiff's past statements. *See* Bolger Decl. Ex. 6 at 2-9.

In addition, the FAC significantly misrepresents the Sept. 8 Article. Specifically, the FAC claims the signature in the Birthday Book "could not be more different" than a signature on a drawing Plaintiff made, which appears in the Sept. 8 Article. FAC ¶¶ 65-66. But the *Journal* never claimed the two signatures compared in the FAC are similar. Instead, the Sept. 8 Article compares the signature in the Birthday Book (which only includes Plaintiff's first name) with Plaintiff's signature in other letters (which likewise only include his first name):



*Id.* at 2-6. Plaintiff tellingly does not dispute *that* resemblance (because he cannot).[7] The image of

---

[7] Plaintiff also contends that because the Sept. 8 Article included an image of the letter, Defendants must not have had the letter "in their possession when they published the Article." FAC ¶¶ 71-72. But, as this Court previously held, the Article states that the *Journal* "reviewed" the letter before publication and described its contents in detail (which exactly match the contents of the letter released by Congress). Whether the *Journal* had the letter in its possession is irrelevant.

Plaintiff's full signature contained in the FAC appears in an *entirely separate* section of the Sept. 8 Article, which shows drawings made by the President. *See* Sept. 8 Article at 6-7. In short, the Sept. 8 Article negates—rather than supports—an actual malice finding.

### D.        Plaintiff Fails to Bring Home His Allegations of Actual Malice

Finally, to survive a motion to dismiss, Plaintiff was required to, but did not, bring home his allegations of actual malice to each Defendant. *See* Order at 14 (quoting *Biro*, 963 F. Supp. 2d at 276)). To do so, he was required to connect each Defendant individually to the "specific [A]rticle in question." *Donald J. Trump for President v. CNN Broad.*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga. 2020) (dismissing claim where plaintiff failed to bring home actual malice allegations to several CNN staffers). But Plaintiff did not do so, repeatedly using the phrase "Defendants Safdar, Palazzolo, Dow Jones, and News Corp." *See, e.g.*, FAC ¶¶ 61, 63, 65. Such co-mingling of these Defendants is insufficient to plead actual malice as to each. For example, the only particularized allegation Plaintiff makes about News Corp.—that it is Dow Jones's ultimate parent company, *see* FAC ¶ 3—fails to plead actual malice as a matter of law. *See Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512, 513-14 (1st Dep't 2023) ("The inference that Fox Corporation, merely by virtue of its ownership of Fox News and its profits, actively took part in the procurement, composition, and publication of the challenged statements, does not alone suffice to allege defamation claims against a parent company based on conduct by its wholly owned subsidiary"). Similarly, Plaintiff's only allegation concerning Thomson is that he is the CEO of News Corp., and, as a result of this position, the Article was published "at [his] direction." FAC ¶¶ 5, 50. But this conclusory claim falls far short of "connect[ing]" Thomson (or his state of mind) to the "specific [A]rticle in question." *Trump*, 500 F. at 1357 n.4. As to Murdoch, in addition to Plaintiff's bare allegation about Murdoch's position in News Corp., FAC ¶ 4, Plaintiff claims that prior to the Article's publication, he called Murdoch and denied any involvement in the letter, to which Murdoch

12

purportedly responded, "I will handle it." *Id.* ¶¶ 16-17. Plaintiff claims he himself "interpreted [this] as meaning Murdoch believed [him] and the [A]rticle would not be published." *Id.* ¶ 17. But while this pleads *Plaintiff's* own subjective state of mind, it says nothing about Murdoch's. Nothing about that purported exchange demonstrates that Murdoch "in fact entertained serious doubts as to the truth" of the reporting, *St. Amant*, 390 U.S. at 731. Nor does this exchange indicate that Murdoch was responsible for the Article. Plaintiff has failed to plead that Murdoch, specifically, acted with actual malice in connection with the Article, as he was required to do.

Just as with his first attempt, Plaintiff once again comes "nowhere close" to pleading actual malice. Order at 14. His defamation claims should be dismissed with prejudice once and for all.

## II.    THE ARTICLE IS NOT DEFAMATORY

Even if Plaintiff had plausibly pled actual malice—and he has not—the Court should still dismiss the FAC on the independent ground that the Article lacks a defamatory meaning. A statement is defamatory when it "tends to harm the reputation of another by lowering him or her in the estimation of the community or more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews for Jesus*, 997 So. 2d at 1108-09. "Whether the statement . . . is susceptible to defamatory interpretation is a question of law for the Court." *Turner*, 198 F. Supp. 3d at 1365. "This inquiry turns on the 'gist' of the alleged defamatory statement and the context in which that statement was made," *Bongino*, 477 F. Supp. 3d at 1317, including "the temper of the times" and "the current of contemporary public opinion," *Yonaty v. Mincolla*, 97 A.D.3d 141, 143 (N.Y. App. Div. 2012). In making this determination, the Court looks to the words of the allegedly defamatory statements rather than the plaintiff's characterization. *See, e.g.*, *Martinez v. Netflix, Inc.*, 2023 WL 2630337, at *4 (S.D. Fla. Feb. 23, 2023) (dismissing complaint that "significantly mischaracterize[s]" the challenged film). Where a plaintiff fails to plead the existence of a defamatory meaning, dismissal is appropriate.

*See Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) ("Where the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'"). And while the Court declined to make this determination on the initial motion because it was unnecessary to do so, there is no question it can do so here. *Id.*

### A.     The Article Is Not Defamatory *Per Se*

Statements are defamatory *per se* when, "considered alone without innuendo," they do not require any "additional explanation in order to prove the defamatory nature of the statement." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258-59 (S.D. Fla. 2021). Plaintiff's defamation *per se* claim is premised on the allegation that the Article "falsely pass[es] off **as fact** that President Trump, in 2003, wrote, drew, and signed this letter," *see* FAC at 2 (emphasis in original). This mischaracterizes the Article, which never makes this allegedly defamatory assertion. Rather, the Article says the letter "bear[s] Trump's name" *and* that "[i]t isn't clear how the letter with Trump's signature was prepared." Article at 3-4. It does not assert as a matter of fact that he personally signed the letter or drew the image. And the Article fully airs Plaintiff's denial. It does not have either the defamatory meaning or factual assertion that Plaintiff ascribes to it.

But even if it did, it is not defamatory *per se*. There is nothing inherently defamatory about sending a bawdy letter to a friend. *See, e.g.*, *Oleniak v. Slaton*, 2014 WL 2151944, at *12-13 (N.Y. Sup. Ct. May 21, 2014) (not defamatory to describe plaintiff as a "player" with "an old shoe box . . . full of pictures . . . of various women"); *Morrow v. Wiley*, 73 A.D.2d 859, 859 (N.Y. App. Div. 1980) (not defamatory to state plaintiff "often had men visitors to her apartment when her parents weren't home"); *Cassini v. Advance Publ'ns*, 41 Misc. 3d 1202(A), at *3 (N.Y. Sup. Ct. Mar. 14, 2013) (not defamatory to state plaintiff threw parties for men who were "looking for action"), *aff'd*, 125 A.D.3d 467 (N.Y. App. Div. 2015). Courts regularly recognize that statements linking

14

individuals to prurient matters, without more, are not defamatory. *See, e.g.*, *Ava v. NYP Holdings*, 64 A.D.3d 407, 414 (N.Y. App. Div. 2009) (stating that plaintiff had "masturbatory fantasy" of "being with multiple men and then multiple women" not defamatory *per se*); *Herman v. CBS Corp.*, 2001 BL 1477, at *2-3, 30 Media L. Rep. 1029 (N.Y. Sup. Ct. May 23, 2001) (statement about using Viagra not defamatory *per se*); *Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 227 (E.D. Va. 1990) (statement that unmarried plaintiffs were "live-in lovers" not defamatory because "in the context of today's social mores, [it] cannot be said to [suggest] behavior involving moral depravity or deviation"). For this reason, even if the Article had asserted that Plaintiff authored the letter or drew the picture, it still would not be defamatory *per se.*

### B.      The Article Is Not Defamatory *Per Quod*

Plaintiff next attempts to assert a defamation *per quod* claim based on various statements suggesting that he was Epstein's friend. *See* FAC ¶ 39. Statements are defamatory *per quod* when they "require[] an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[.]" *Mac Isaac*, 557 F. Supp. 3d at 1259; *see also Ava*, 64 A.D.3d at 412. "Innuendo" in this context means "facts extrinsic to those published." *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 633 (Fla. 5th DCA 1983). Thus, to state a claim, "the plaintiff must specifically allege the facts and innuendo which make the words defamatory." *See Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996).

Plaintiff fails to plead defamation *per quod* for two reasons. *First*, he does not specifically plead extrinsic facts that would make the challenged statements defamatory. If it is the fact that Epstein was charged with and convicted of sex crimes *years after* the Birthday Book was gifted to him—and Plaintiff does not plead it is—it is not defamatory as a matter of law to state that an individual was friends with someone who was later convicted of a crime. *Parekh v. CBS Corp.*,

820 F. App'x 827, 830 (11th Cir. 2020) (stating plaintiff's ex-girlfriend orchestrated a scam not defamatory of plaintiff). In *Holleran v. Plymouth Board of Education*, 2023 WL 8062131 (Conn. Sup. Ct. Nov. 17, 2023), the court rejected a principal's claim that she was defamed by a social media post that discussed her friendship with a teacher accused of sexual misconduct. The court explained, "[b]eing friends with someone who may be guilty of criminal activity is not, of and in itself, defamatory." *Id.* at *6; *see also Jones v. Taibbi*, 400 Mass. 786, 793 (1987) ("The description of someone as a friend (or even relative) of a criminal ordinarily is not in itself defamatory.").[8]

This Court should reach the same conclusion here. Indeed, the Article itself emphasizes that the Birthday Book was created *before* Epstein was first arrested. *See* Article at 3 (the Birthday Book was "assembled before Epstein was first arrested in 2006"). And the Article includes Plaintiff's statement that his friendship with Epstein ended before Epstein pled guilty to the charges. *See id.* at 6. Accordingly, statements that Plaintiff and Epstein were, at one time, friends cannot be defamatory *per quod*.

*Second,* the FAC still does not adequately plead special damages—*i.e.*, "actual economic damage[s]," *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013), including a "realized or liquidated loss," *Daniels v. HSN*, 2020 WL 533927, at *6 (M.D. Fla. Feb. 3, 2020)—which are an integral element of a defamation *per quod* claim. *See Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022) ("New York law is unambiguous that [pleading

---

[8] To the extent President Trump claims the challenged statements are false because they indicate he was friends with Epstein, *see* FAC ¶ 37, this could not cause any more damage to President Trump's reputation than the unchallenged portions of the Article. The Article reports that in an October 2002 article—just three months before the Birthday Book was gifted to Epstein— President Trump described Epstein, who he had known for "15 years," as a "terrific guy" and "a lot of fun to be with," who "likes beautiful women as much as I do, and "many of them are on the younger side." Article at 6. Indeed, the FAC acknowledges that Trump and Epstein socialized in the early 2000s. *See* FAC ¶ 47. The Article also makes clear that President Trump's friendship with Epstein ended years before Epstein was charged with sex crimes. Article at 6.

special damages] is an unbending requirement of defamation *per quod* claims."). In particular, "[a]llegations of special damages must be pled in more than 'a conclusory manner.'" *See Flynn v. Cable News Network, Inc.*, 2023 WL 5985193, at *5 (M.D. Fla. Feb. 22, 2023).

But here, despite this Court's prior dismissal of the defamation per *quod* claim for failure to plead special damages, the FAC again contains conclusory allegations. Plaintiff alleges his special damages "include, but are not limited to lost profits, out of pocket losses, and realized losses in the form of reputational harm." FAC ¶ 120. "Reputational harm" is an archetypal "general damage[]," not a "special damage[]." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) ("Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount[.]"). And Plaintiff's bare assertion that he suffered "lost profits" and "out of pocket losses," devoid of any factual enhancements, is too conclusory to plead special damages. *See Flynn*, 2023 WL 5985193, at *5 (granting dismissal when plaintiff pled she suffered "insult, pain, embarrassment, humiliation, emotional suffering, injury to her reputation, lost future earnings, and diminished earning capacity, cost and other out-of-pocket expenses"). For this reason, too, his defamation *per quod* claim must be dismissed.

### C.      Plaintiff Cannot Salvage His Claim Through Defamation By Implication

Perhaps recognizing that the challenged statements are not, in fact, defamatory, Plaintiff alleges that both categories of statements are actionable because they falsely "*impute* that he was close friends with Epstein, that he and Epstein shared secrets with each other, and that Plaintiff was complicit in Epstein's sex trafficking crimes." FAC ¶¶ 99, 113 (emphasis added). But the Article *never* makes these assertions: It reports on the existence of the letter bearing Plaintiff's name, does not state that Plaintiff personally crafted or signed it, and certainly does not state that he knew about, let alone was complicit in, Epstein's crimes.

Further, relying on an "imputation" from the Article means that Plaintiff is making a

17

defamation by implication claim, *not* a claim of defamation *per se* or *per quod*. As this Court recognized, defamation by implication is a separate "species of defamation" that applies when "'literally true statements are conveyed in such a way as to create a false impression.'" Order at 11 n.10 (quoting *Jews for Jesus*, 997 So. 2d at 1106). But, here, Plaintiff vigorously maintains that all of the challenged statements are false. *See* FAC ¶¶ 93, 108. This dooms any (unpled) defamation by implication claim.[9] *See Jacoby*, 537 F. Supp. 3d at 1313 ("The Court cannot accept as true Plaintiff's allegation in Count I that this statement is false, while also accepting as true Plaintiff's allegation in Count II that this same statement is true."); *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) ("The Complaint pleads only that [defendant's] accusations were false—not that they were true and gave a false implication—which requires dismissal."); *Plain Bay Sales v. Gallagher*, 2020 WL 1042218, at *3 (S.D. Fla. Mar. 2, 2020) (dismissing defamation-by-implication claim because rather than pleading true facts, "[plaintiff] has alleged the exact opposite: that the allegedly defamatory statements are false."). The FAC should be dismissed.

## III.   THE ARTICLE IS TRUE

Last, now that the letter is incorporated by reference into the FAC, this Court can dismiss the action because the Article is true. "[F]alsity is an element of a defamation claim." *Tannerite Sports v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). But a statement need not be literally true for the defendant to prevail. Instead, a plaintiff must allege facts that, if proven, "would establish that the defendant's statements were not substantially true." *Id.* "Substantial truth" means the "substance or gist" of the statement "conveys essentially the same meaning that the truth would have conveyed." *Jews for Jesus*, 997 So. 2d at 1107-08; *Tannerite*, 864 F.3d at 242 ("[A] statement is substantially true if the statement would not have a different effect on the mind

---

[9] Plaintiff has also not satisfied the New York defamation by implication standard. *See Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014).

of the reader from that which the pleaded truth would have produced."). When a plaintiff cannot establish falsity, it is proper for the court to grant upfront dismissal. *See Marder v. TEGNA*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (dismissing statements because plaintiff "cannot seek damages for something that was ultimately true"); *Cabello-Rondón v. Dow Jones & Co.*, 2017 WL 3531551, at *4-5 (S.D.N.Y. Aug. 16, 2017) (granting Rule 12(b)(6) motion), *aff'd*, 720 F. App'x 87 (2d Cir. 2018). Here, the Article is true because the description of the letter "bearing Trump's name" in the Article is an entirely accurate description of the letter as it appears in the Birthday Book produced by the Epstein estate and released by the House Oversight Committee, *see* Bolger Decl. Exs. 4-5, and referenced in the FAC, *see* FAC ¶¶ 62, 71.

## IV.    DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

Defendants renew their request to recover their attorneys' fees and costs under either Florida's or New York's anti-SLAPP law. Florida's statute authorizes such a remedy where, as here, a person has filed a lawsuit (a) that is "without merit" and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). "Free speech in connection with a public issue" includes "any written or oral statement that is protected under applicable law" and "is made in or in connection with a . . . news report, or other similar work." *Id.* § 768.295(2)(a). New York's anti-SLAPP law likewise provides that "[a] defendant in an action involving public petition and participation" may "recover damages, including costs and attorneys' fees from any person who commenced or continued such action" if the case "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law §70-a(1). An action "involving public petition and participation" is a claim based upon "any communication in . . . a public forum in connection with an issue of public interest." N.Y. Civil Rights Law § 76-a(1)(a)(1). And "public interest" is "construed broadly" to

19

mean "any subject other than a purely private matter." *Id.* §76-a(1)(d). Under both statutory regimes, damages are mandatory. *See Bongino v. Daily Beast Co.*, 2021 WL 4316099, at *1 (S.D. Fla. Sept. 23, 2021); *Reeves v. Assoc. Newspapers Ltd.*, 232 A.D.3d 10, 12 (N.Y. App. Div. 2024).

This Court should, therefore, award fees here. This lawsuit is "without merit" under Florida's anti-SLAPP law, *see Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit" under anti-SLAPP law), and "lacks a substantial basis in law" under New York's law, *see Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184 (S.D.N.Y. 2024) ("Logically, a complaint [failing] to state a claim is, a fortiori, 'without a substantial basis in fact and law.'"). In addition, the Article unquestionably involves a matter of public interest—*i.e.*, Plaintiff's past ties to Epstein—and was made in connection with a "news report" or in a "public forum," *see Reeves*, 232 A.D.3d at 19 ("news media website" is "quintessential public forum"). A mandatory award of the attorneys' fees and costs incurred in defending this meritless litigation is well warranted.

**CONCLUSION**

"At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. '[T]he freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole.'" *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) (citing *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U. S. 485, 503-04 (1984)). This lawsuit, brought by the President of the United States, subverts this principle. Plaintiff has now had a full and fair opportunity to plead a defamation claim against Defendants and has twice not done so. The Court should dismiss the FAC with prejudice and grant Defendants their fees and costs in defending against this meritless action.

Dated: June 10, 2026

By: */s/ George S. LeMieux*

**GUNSTER, YOAKLEY & STEWART, P.A.**
George S. LeMieux (Florida Bar No. 16403)
Eric C. Edison (Florida Bar No. 010379)
Timothy J. McGinn (Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger*
Amanda B. Levine*
Meenakshi Krishnan*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

**DECHERT LLP**
Andrew J. Levander*
Steven A. Engel*
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com

**pro hac vice*

*Counsel for Defendants*

21