# EXHIBIT 2

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To*  The Estate of Jeffrey Epstein
C/O Darren Indyke and Richard Kahn, Co-Executors
_____

You are hereby commanded to be and appear before the

Committee on Oversight and Government Reform
_____

_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑  **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2157 Rayburn House Office Building
>
> Date: September 8, 2025                    Time: 12:00 p.m.

☐  **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                    Time: _____

☐  **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                    Time: _____

*To* any authorized staff member or the U.S. Marshals Service _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 25        day of August                    , 2025 .

*Chairman or Authorized Member*

Attest: *Michelle Renshuttle*

*Clerk*

## Schedule to Subpoena

In accordance with the attached schedule instructions, you, Mr. Darren Indyke and Mr. Richard Kahn, in your capacity as co-executors of the estate of Mr. Jeffrey Epstein, are required to produce the following documents and communications that are in your possession, custody, or control in unredacted form:

1. All entries contained within the reported leather-bound book compiled by Ms. Ghislaine Maxwell for Mr. Jeffrey Epstein's 50th birthday.

2. The last will and testament of Mr. Jeffrey Epstein immediately preceding August 8, 2019.

3. All Non-Disclosure Agreements, or similar documents, executed by Mr. Jeffrey Epstein or his agent(s) with any individual or entity between January 1, 1990 and August 10, 2019.

4. The September 24, 2007 non-prosecution agreement between the U.S. Attorney's Office for the Southern District of Florida and Mr. Jeffrey Epstein.

5. All documents and communications relating or referring to the September 24, 2007 non-prosecution agreement between the U.S. Attorney's Office for the Southern District of Florida and Mr. Jeffrey Epstein

6. Any document or record that could be reasonably construed to be a potential list of clients involved in sex, sex acts, or sex trafficking facilitated by Mr. Jeffrey Epstein.

7. All documents and communications related or referring to Mr. Jeffrey Epstein's missed phone call logs or missed visitor logs from January 1, 1990 through August 19, 2019.

8. All entries from Mr. Jeffrey Epstein's address/contact books, one reportedly referred to as a "Black Book," from January 1, 1990 through August 10, 2019.

9. All flight logs of arrival and/or departure for all aircraft, including helicopters, owned, rented, leased, operated, or used by Mr. Jeffrey Epstein from January 1, 1990 through August 10, 2019.

10. Documents sufficient to show all bank accounts with corresponding account numbers opened by or associated with Mr. Jeffrey Epstein from January 1, 1990 through August 10, 2019.

11. All documents and communications documenting, describing, or depicting Mr. Jeffrey Epstein's financial transactions or holdings, including but not limited to ledgers of cash payments, digital payments, or cryptocurrency, from January 1, 1990 through August 10, 2019.

12. Mr. Jeffrey Epstein's calendars, in whatever format currently in the custody of the Estate, from January 1, 1990 through August 10, 2019.

13. All documents and communications, including but not limited to manuals or instruction booklets, regarding or referring to the maintenance, management of properties, or services performed at properties owned, rented, operated, or used by Mr. Jeffrey Epstein from January 1, 1990 through August 10, 2019, including but not limited to:

   a. 9 E. 71st St.
      New York, New York

   b. 358 El Brillo Way
      Palm Beach, Florida

   c. 49 Zoro Ranch Rd.
      Stanly, New Mexico

   d. 22 Avenue Foch
      Paris, France

   e. 5025 East Dublin Granville Rd.
      New Albany, Ohio

   f. 7558 King George Drive
      New Albany, Ohio

   g. Great St. James Island
      U.S. Virgin Islands

   h. Little St. James Island
      U.S. Virgin Islands

14. All video, including security and CCTV, or still photography taken at any property owned, rented, operated, or used by Mr. Jeffrey Epstein from January 1, 1990 through August 10, 2019, including but not limited to:

   a. 9 E. 71st St.
      New York, New York

   b. 358 El Brillo Way
      Palm Beach, Florida

   c. 49 Zoro Ranch Rd.
      Stanly, New Mexico

   d. 22 Avenue Foch

Paris, France

e.  5025 East Dublin Granville Rd.
New Albany, Ohio

f.  7558 King George Drive
New Albany, Ohio

g.  Great St. James Island
U.S. Virgin Islands

h.  Little St. James Island
U.S. Virgin Islands

15. All documents and communications to or from and/or referring or relating to the following individuals:

a.  Numbers (1) through (92) defined by *Guiffre v. Maxwell*, No. 15-cv-07433-RWS, Plaintiff, Virginia Guiffre's Fourth Revised Disclosure Pursuant to Fed. R. Civ. P. 26 (S.D.N.Y. Jan. 5, 2024); and

b.  All Presidents and Vice Presidents of the United States not otherwise listed in Request 10(a) from January 1, 1990 through August 10, 2019.

16. All documents and communications referring or relating to the following entities:

a.  C.O.U.Q. Foundation;

b.  NES LLC;

c.  New York Strategy Group;

d.  JEGE LLC;

e.  JEGE Inc.;

f.  LSJ LLC.

## Schedule Instructions

1. In complying with this subpoena, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You should also produce documents that you have a legal right to obtain, that you have a right to copy or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization or individual denoted in this subpoena has been, or is also known by any other name than that herein denoted, the subpoena shall be read also to include that alternative identification.

3. The Committee's preference is to receive documents in electronic form in lieu of paper productions.

4. Documents produced in electronic format should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

    (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

    (b) Document numbers in the load file should match document Bates numbers and TIF file names.

    (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7. Documents produced in response to this subpoena shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8. When you produce documents, you should identify the paragraph in the Committee's schedule to which the documents respond.

9. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

10. If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the subpoena cannot be made in full by September 8, 2025 at 12:00 noon, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided no later than September 2, 2025 at 12:00 noon.

12. In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the basis for withholding the document; (b) the type of document; (c) the general subject matter; (d) the date, author, and addressee; and (e) the relationship of the author and addressee to each other.

13. In complying with the subpoena, be apprised that the U.S. House of Representatives and the Committee do not recognize: any purported non-disclosure privileges associated with the common law including, but not limited to, the deliberative process privilege, the attorney-client privilege, and attorney work product protections; any purported privileges or protections from disclosure under the Freedom of Information Act; or any purported contractual privileges, such as non-disclosure agreements.

14. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

15. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, you are required to produce all documents which would be responsive as if the date or other descriptive detail were correct.

16. This subpoena is continuing in nature and applies to any newly discovered information. Any responsive record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

17. All documents shall be Bates-stamped sequentially and produced sequentially.

18. Two sets of documents shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2105 of the Rayburn House Office Building.

19. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Schedule Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email (desktop or mobile device), text message, instant message, MMS or SMS message, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuteral genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.