**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>DOW JONES & COMPANY, INC. d/b/a THE WALL STREET JOURNAL, a Delaware corporation, NEWS CORPORATION, a Delaware corporation, KEITH RUPERT MURDOCH, an individual, ROBERT THOMSON, an individual, KHADEEJA SAFDAR, an individual, and JOSEPH PALAZZOLO, an individual,<br><br>  Defendants. | Case No.: 1:25-cv-23232-DPG |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED**
<u>**COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**</u>

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump"), by and through his undersigned counsel, files this Response In Opposition to Defendants'[1] Motion to Dismiss First Amended Complaint ("FAC") With Incorporated Memorandum of Law ("Motion to Dismiss") [D.E. 68]. In support, Plaintiff states as follows:

## INTRODUCTION

In a July 17, 2025 *Wall Street Journal* article (the "Article"), Defendants falsely, maliciously, and defamatorily claimed to the world that President Trump personally authored, drew, and signed a sexually themed birthday letter to the disgraced Jeffrey Epstein ("Epstein"), including a hand-drawn nude woman, his signature scrawled below her waist, and the valediction "may every day be another wonderful secret." FAC ¶¶ 20–23, 38. President Trump wrote no such letter. He drew no such drawing. He signed nothing pertaining to the alleged letter. The letter is a fake, and Defendants published it anyway. The Article made false, malicious, and defamatory statements from its opening lines. It told readers that Ghislaine Maxwell ("Maxwell") "turned to" Epstein's "family and friends," that "[o]ne of them was Donald Trump," and that "Maxwell collected letters from Trump" for Epstein's birthday album—statements that affirmatively, and wrongly, identified President Trump as the author and sender of the letter, not merely as the subject of an allegation. Article at 1–2.

This case is about that fake letter and the singular issue of whether President Trump was its author, not whether some piece of paper exists. This Court has already held that "whether President Trump was the author of the Letter" presents a "question[] of fact that cannot be determined at this stage." [D.E. 59 at 12]. Because that single fact—authorship—is genuinely

---

[1] The term "Defendants" refers collectively to Defendants Dow Jones & Company, Inc. d/b/a The Wall Street Journal, News Corporation, Keith Rupert Murdoch, Robert Thomson, Khadeeja Safdar, and Joseph Palazzolo.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

disputed, the Article cannot be declared "substantially true."

Authorship is not merely something Defendants cannot prove — it is something they never even attempted to prove. They never identified the source of the letter, authenticated the signature, or explained how they attributed the typewritten text to President Trump. FAC ¶ 53. Before publication, they were told repeatedly and through multiple channels that the accusation was false: by the White House Press Secretary, by President Trump's counsel in a written cease-and-desist letter to which no Defendant responded, and by President Trump directly to Defendant Murdoch and Defendant Thomson. FAC ¶¶ 12–17. Defendants also had no corroboration from Maxwell, the very person the Article credits with assembling the book. FAC ¶¶ 33–35. Further, and vitally, they had their own published admission — buried after the accusation — that "[i]t isn't clear how the letter with Trump's signature was prepared." FAC ¶¶ 37, 58. A publisher that concedes that it does not know how a document was made cannot brand its subject as the author of such a document. That is not editorial judgment. It is reckless disregard for the truth, pleaded in detail and as to each Defendant.

The injury speaks for itself. Falsely casting a sitting President as the author of an intimate, secret-laden letter to a sex trafficker — placed in an album assembled by Maxwell, herself convicted in Epstein's trafficking scheme, and published amid intense national scrutiny of Epstein's actions and connections — subjects him to precisely the hatred, ridicule, contempt, and disgrace that defines defamation *per se* and *per quod*. FAC ¶¶ 23, 38, 99. The FAC pleads both, and pleads the special damages — lost profits and other out-of-pocket losses from the Article's worldwide circulation — that the *per quod* claim requires. FAC ¶¶ 119–120.

Defendants' Motion wrongly asks this Court to do what Rule 12(b)(6) forbids: to credit their version of contested facts — authorship, authenticity, verification, falsity — and resolve each

2

against the Plaintiff. Rule 12(b)(6) permits none of that, and, in actuality, requires that all contested facts be resolved in Plaintiff's favor. The FAC states a claim, and the Motion to Dismiss, along with its request for fees, should be denied.

**MEMORANDUM OF LAW**

**I.      Legal Standard**

On a motion to dismiss, the Court accepts the FAC's well-pleaded allegations as true and draws all reasonable inferences in President Trump's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim survives if its factual allegations "raise a reasonable expectation that discovery will reveal evidence" of the elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Actual malice is subject to that same plausibility standard, and the Eleventh Circuit has cautioned that while the bar is meaningful, it is "by no means insurmountable" at the pleading stage. *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020). A plaintiff need only "allege facts sufficient to give rise to a reasonable inference" that the statements were published with knowledge of falsity or reckless disregard for the truth. *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018). Because the inquiry is subjective, it is ordinarily proved by circumstantial evidence. *Project Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) ("[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of each case.").

**II.     The Court Cannot Find the Article "True" on the Pleadings.**

Under the substantial-truth doctrine, a statement is actionable unless its "gist" or "sting" is true. *Trump v. American Broadcasting Cos.*, 742 F. Supp. 3d 1168, 1179 (S.D. Fla. 2024). A statement is false if it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced," *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999), and where a publication is "susceptible of two reasonable interpretations, one of

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

which is defamatory," substantial truth is a question for the jury. *Trump v. ABC*, 742 F. Supp. 3d at 1180; *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014).

The dispositive fact—whether President Trump authored, signed, or sent the letter (he did not)—is squarely disputed. The FAC alleges he did not. FAC ¶¶ 42–49. This Court has already so held, ruling that "whether President Trump was the author of the Letter" is a "question[] of fact that cannot be determined at this stage." [D.E. 59 at 12]. That holding controls. The dispute is not whether a letter exists; it is whether President Trump wrote and signed *this* letter (he did not)—a letter that has never been authenticated.

Defendants' argument that the Article was somehow "proven true" when Congress released an allegedly identical letter rests entirely on matters outside the four corners of the FAC— the birthday book purportedly produced to the House Oversight Committee. That argument, therefore, fails. Nor may the Court take judicial notice of the released birthday book to find the Article true. Judicial notice reaches only facts "not subject to reasonable dispute," Fed. R. Evid. 201(b), and the letter's authenticity—whether it is genuine (it is not) and whether President Trump signed it (he did not)—is the very fact in dispute. FAC ¶¶ 42–43, 49. A court cannot judicially notice the truth of a document whose authenticity is challenged, and a complaint's reference to released materials does not convert their contested contents into established fact. Defendants' own authority proves the point: in *Markle v. Markle*, the court applied the substantial-truth doctrine only because the plaintiff *agreed* to the request. 2024 WL 1075339, at *12 (M.D. Fla. Mar. 12, 2024). President Trump does not agree to any such judicial notice. Further, Defendants concede the limits of what the Court may do, asking it to consider the materials only "for the fact that they exist, the way they look, and that Congress made them public," and acknowledging that "the Court need not make the factual finding that these are the same documents." [D.E. 68 at 5 n.3]. Having conceded that the

4

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Court cannot find authorship or authenticity, Defendants cannot win dismissal on the theory that authorship has been proven, which it has not been.

The released materials would not establish truth in any event. That a letter "bearing Trump's name" was purportedly among documents produced by the Epstein estate does not authenticate it or show that President Trump wrote, signed, or sent it, which he did not do. In reality, vitally, Defendants' reliance on a document released long after publication confirms that they did not possess or review the letter before they published the false, malicious, and defamatory Article. The dispositive question remains whether the letter is fake—and if it is, the Article's statements "would certainly have a different effect on the mind of the reader" and are susceptible to a defamatory meaning, therefore making truth a jury question. *Trump v. ABC*, 742 F. Supp. 3d at 1180; *see also Pep Boys v. New World Commc'ns of Tampa, Inc.*, 711 So. 2d 1325, 1328 (Fla. 2d DCA 1998); *Kieffer v. Atheists of Florida, Inc.*, 269 So. 3d 656, 660 (Fla. 2d DCA 2019).

**III.     The FAC Plausibly Alleges Actual Malice.**

Actual malice means publishing a statement "with knowledge that [it was] false or with reckless disregard of whether [it was] false or not." *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964); *Turner v. Wells,* 879 F.3d 1254, 1273 (11th Cir. 2018). Reckless disregard exists where the publisher "entertained serious doubts as to the truth of [the] publication" or had "obvious reasons to doubt" its accuracy. *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968). The FAC plausibly pleads that state of mind by Defendants through facts that, taken as true, show Defendants published a serious accusation while knowing they lacked any reliable basis for it. The Motion avoids that inference only by wrongly rewriting the FAC and asking the Court to improperly draw inferences against Plaintiff.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

A.     **Defendants could not verify the accusation and avoided the inquiry that would have exposed its falsity.**

Defendants did not merely lack confirmation. Before publication, they received direct and repeated notice, through several distinct channels. On July 15, 2025, Palazzolo emailed White House Press Secretary Karoline Leavitt, advising that Defendants intended to publish an article focused on a purported birthday letter from President Trump to Epstein. FAC ¶ 12. Shortly after receiving that email, Leavitt called Palazzolo to tell him directly that the premise of the intended article was false. FAC ¶ 13. That same afternoon, President Trump's counsel emailed Palazzolo, warning that the intended article was false, malicious, and defamatory because it claimed President Trump authored the purported letter—which he did not—and demanding that Defendants cease and desist from publishing it. FAC ¶ 14. No Defendant responded. FAC ¶ 15. President Trump also spoke with Murdoch and Thomson that same day, told him that the Article's premise was categorically false, and stated that he had neither signed nor sent any such letter. Murdoch responded, "I will handle it." FAC ¶¶ 16–17.

Defendants published anyway. They falsely told readers that the letter was President Trump's, without corroboration from Maxwell, any authentication of the signature, or any basis for attributing the typewritten text to him. FAC ¶¶ 33–35, 53. Faced with a direct denial and no confirming source, Defendants could have reported that authorship was unverified, or refrained from publishing the allegation as fact. They did neither. That choice plainly evidences reckless disregard for the truth, which is actual malice.

The nonexistent "investigation" invoked by the Motion does not cure that defect, because it never addressed the dispositive issue. The Article describes attempted contacts with Maxwell, others who appeared in it, and federal agencies. Article at 4, 6. None of that verified the specific, false fact that President Trump personally authored and signed the letter, which he did not do. The

6

Maxwell outreach confirms the problem: by Defendants' own account, the Wall Street Journal sent Maxwell a letter requesting an interview, and "she didn't respond." Article at 6; [D.E. 68 at 9]. A non-response is not corroboration. Importantly, when Maxwell did speak under penalty of perjury, she had no recollection of President Trump submitting any letter. FAC ¶¶ 33–35, 55–56. Whether Defendants learned that fact and omitted it, or avoided pressing Maxwell on that point, the inference is the same: they steered around the one source, other than President Trump, most likely to disprove the accusation, and then falsely published the accusation as fact. That is purposeful avoidance of the truth—conduct the Supreme Court placed "in a different category" from a mere failure to investigate, *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 692 (1989), as this Court recognized in its prior order. [D.E. 59 at 15 n. 15].

Defendants' own cases reinforce this distinction. In *Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016), the Eleventh Circuit rejected a finding of actual malice where the reporters "conducted some outreach and engaged in due diligence," and the available sources *supported* the story. *Id.* at 704. This case is the opposite. President Trump denied authorship and Maxwell could not confirm it. *Reed v. Chamblee,* 2025 WL 1874638 (11th Cir. July 8, 2025), draws the same line, requiring allegations that the defendant "deliberately avoided investigating the veracity of the statement in order to evade learning the truth." *Id.* at *3. That is exactly what the FAC pleads. Those cases do not protect a publisher that states an accusation as fact when the only sources capable of verifying it do not do so, and they either categorically deny it or do not support it.

Defendants' reliance on an attached Department of Justice transcript fails for the same reason. [D.E. 68 at 9 n.6]. The transcript is outside the FAC, offered for its truth, and cannot displace Plaintiff's well-pleaded allegations. *Iqbal*, 556 U.S. at 678. In any event, it confirms the FAC's point: Maxwell stated that she coordinated the Birthday Book and solicited contributions,

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

but she could not recall any contributor by name and specifically had "no" recollection of a submission from President Trump. That does not establish authorship. It establishes that the one source capable of confirming the accusation could not.

### B. Defendants asserted as fact what they admittedly could not verify.

The Article contains a direct contradiction at its core. Defendants wrongly told readers, as fact, that President Trump authored, drew, and signed the letter, and that the letter "contains President Trump's authentic signature." FAC ¶¶ 20–22, 38, 59.  Those are false, malicious, and defamatory statements. Only later, buried in the Article, did they admit that "[i]t isn't clear how the letter with Trump's signature was prepared." FAC ¶ 58. That admission did not cure the accusation; it highlighted the defamatory nature of the statements. The headline had already falsely told readers that one of Epstein's birthday letters "was from Donald Trump," and the body reinforced that attribution throughout. The Article's lede made the same false assertion in the affirmative. It told readers that, in preparing Epstein's birthday gift, Maxwell "turned to" Epstein's "family and friends" and that "[o]ne of them was Donald Trump," and that "Maxwell collected letters from Trump" for the 2003 birthday album. Article at 1–2. Those are affirmative statements of fact—not hedged attributions to a document "bearing Trump's name"—and this Court has already incorporated the Article, including its lede, into the pleadings. [D.E. 59 at 7]. Defendants, thus, falsely, maliciously, and defamatorily stated as established fact from the Article's opening lines, that President Trump contributed a letter, even as they later conceded they did not know how the letter bearing his signature was prepared. Defendants, thus, did not know how the document bearing President Trump's alleged signature was created, yet still presented his authorship and signature as an established fact. Their own account supplies the "obvious reasons to doubt" from which reckless disregard may be inferred. *St. Amant*, 390 U.S. at 732.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Binding precedent confirms the point. In *Rebozo v. Washington Post Co.*, 637 F.2d 375, 382 (5th Cir. 1981), the former Fifth Circuit[2] held that a publisher's decision to resolve its own uncertainty about a charge "in favor of the most potentially damaging" conclusion, and to publish that conclusion as fact, supports a finding of actual malice. That is what the FAC alleges here. Defendants had uncertainty where it mattered most—whether President Trump authored and signed the letter (he did not)—and resolved that uncertainty against him by publishing the false accusation as a verified fact.

Defendants' appeal to editorial judgment—that authors necessarily "choose which facts to include and which to omit" [D.E. 68 at 10], does not save them. Editorial discretion does not permit a publisher to omit facts so as to make an unverified accusation appear established. A journalist may choose what to cover. He may not present a central accusation as confirmed while burying the very uncertainty that undercuts it.

Defendants' omissions cases are inapposite. *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369 (1977), was decided on summary judgment "after extensive pretrial discovery," and involved the omission of "relatively minor details in an otherwise basically accurate account." *Id.* at 384. *Clark v. E! Entertainment Television, LLC*, 2018 WL 1470372 (M.D. Tenn. Mar. 26, 2018), applied the "clear and convincing evidence" standard, which governs summary judgment and trial, not Rule 12(b)(6). And *Biro v. Conde Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013), relied on post-record omissions language. None permits dismissal where, as pleaded here, Defendants omitted the very facts showing that their central accusation was disputed, unverified, and unsupported.

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting former Fifth Circuit precedent as binding)

9

**C.    The Article's treatment of President Trump's denial does not defeat actual malice.**

Defendants cannot defeat actual malice by pointing to a denial they immediately neutralized. The Motion treats the inclusion of "a denial" as dispositive, [D.E. 68 at 10], but the law is otherwise. In *Connaughton v. Harte-Hanks Commc'ns, Inc.*, 842 F.2d 825, 827 (6th Cir. 1988), aff'd, 491 U.S. 657 (1989), the Sixth Circuit held that publication of a denial "is not dispositive" of actual malice. The Supreme Court affirmed, recognizing that actual malice may be shown where a publisher has obvious reasons to doubt its charge and purposefully avoids the truth. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).

That is what the FAC pleads here. Before publication, Defendants had President Trump's categorical denial through the White House Press Secretary, a written cease-and-desist from his counsel that went unanswered, a direct call to Murdoch, and a conversation with Thomson. FAC ¶¶ 12–17. The denial Defendants acknowledged was not the one President Trump made: they omitted his denial that he signed the letter at all. FAC ¶ 59. They had no corroboration from Maxwell. They admitted uncertainty about how the signed letter was prepared. And they identified no source, authentication, or verification establishing that President Trump authored or signed the letter, which he did not do. Yet the Article still told readers that the letter was from President Trump. The relevant question is not whether the Article mentioned the denial, but whether Defendants had obvious reasons to doubt the accusation and published it as true anyway. They did.

**D.    The September 8 Article reinforces the inference of actual malice.**

The September 8 "Visual Breakdown" article does not show careful reporting; it does just the opposite. It exposes the missing verification. By Defendants' own account, every item in the September 8 article was purportedly available to Defendants on July 17, when they published the

10

Article. FAC ¶ 69. Yet, they waited nearly two months to assemble and publish that material, and did so only after Congress released a letter (which has never been proven to be authentic). FAC ¶¶ 62, 70. A publisher that had verified its accusation before publishing would have no reason to wait until after the public release of a different document to offer support for it. The reasonable inference is that Defendants published first, and tried to justify the false accusation later. Although actual malice is measured at publication, *Harte-Hanks*, 491 U.S. at 688, later conduct may illuminate the state of mind that existed then, *id.*, and a scramble to corroborate after the fact is evidence that the accusation was unsupported when made.

### E.      The FAC pleads actual malice as to each Defendant.

The FAC connects the requisite state of mind to each Defendant individually. The reporter-Defendants, Safdar and Palazzolo, wrote the Defamatory Statements and personally possessed the facts of avoidance and unverified authorship set forth above. FAC ¶¶ 18–22, 32, 52–56. Palazzolo, in particular, received direct, pre-publication notice that the accusation was false. He was told as much by the White House Press Secretary, who telephoned him after he emailed her about the intended article, and by President Trump's counsel, who emailed him a cease-and-desist warning that the article was false and defamatory—a warning no Defendant answered. FAC ¶¶ 12–15. Because they acted within the scope of their employment, these Defendants' malice is imputed to the corporate publishers, Dow Jones and News Corp. FAC ¶ 73. Murdoch and Thomson directed the publication: the FAC alleges Dow Jones and News Corp published "at the direction of Murdoch and Thomson," FAC ¶ 50, and that Murdoch—who owned and controlled both corporate Defendants—allowed the Article to run after being told, just as Thomson was, that the letter was fake, FAC ¶¶ 74–75. These are not generic group pleadings; each Defendant is tied to the Article by a specific role.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Defendants' grievance that the FAC "co-mingles" them, [D.E. 68 at 12], elevates form over substance. Grouping defendants who share the same role and operative facts is proper, and the FAC fully makes the individualized allegations just described. Defendants' own authority proves the point by contrast: *Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga. 2020), dismissed claims against staffers that the complaint did not connect to the challenged statement. The Murdoch allegations are particularly strong, and Defendants miss it: the malice inference does not turn on President Trump's interpretation of Murdoch's "I will handle it," but on what Murdoch was told—that the subject of the Article had personally and categorically denied authoring and signing the letter. FAC ¶¶ 16, 75. A publisher told directly, by the person he is about to accuse, that the accusation is false, and who runs it anyway, has "obvious reasons to doubt" its truth, especially when no source has provided contrary evidence. *St. Amant*, 390 U.S. at 732. *Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512 (1st Dep't 2023), held only that ownership and profits "alone" cannot show a parent "actively took part" in a publication; the FAC alleges far more—direct notice of falsity and control over the decision to publish.

## IV.     The Article Is Defamatory.

Dismissal is proper only if the Article "could not possibly have a defamatory or harmful effect." *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). That is not this case. At a minimum, the Article is reasonably capable of the defamatory meanings the FAC pleads, and where a statement can bear both a defamatory and non-defamatory meaning, the question belongs to the jury. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1257 n.5 (S.D. Fla. 2021); [D.E. 59 at 12 n.11].

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

A. **The Article is defamatory *per se*.**

A publication is defamatory *per se* if, considered alone and without innuendo, it "tends to subject one to hatred, distrust, ridicule, contempt, or disgrace." *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953). The Article meets that standard. It falsely states that President Trump authored, drew, and signed a sexually themed letter to Jeffrey Epstein. FAC ¶¶ 20–23, 38. That accusation is inherently degrading and plainly defamatory.

Defendants try to deceptively recast the Article as a benign report about a letter "bearing Trump's name." [D.E. 68 at 14–15]. But the Article goes much further. Its headline falsely states that one of Epstein's birthday letters "Was From Donald Trump." Article at 1. The text falsely identifies President Trump among the "family and friends" from whom Maxwell sought letters, wrongly states that she collected letters "from Trump," and describes the disputed letter's sexual drawing, typewritten text, and "squiggly 'Donald'" signature placed below the woman's waist. Article at 2–4. Florida law requires the Court to construe the publication "in its totality, examining not merely a particular phrase or sentence, but all the words used." *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). Read whole, the Article, falsely, maliciously, and defamatorily, tells readers that President Trump authored, drew, and signed the letter. Defendants cannot escape that meaning by extracting "bearing Trump's name" from an Article whose headline, lead, and body falsely present the attribution as fact.

Defendants' thin claim that the letter is a harmless, bawdy note between friends ignores the Article's own framing. The Article falsely attributed to a sitting President a salacious letter to Epstein, a disgraced figure charged with sex trafficking of minors, in a birthday album assembled by Maxwell, who was convicted for participating in Epstein's sex-trafficking scheme, amid public scrutiny over the Epstein files. FAC ¶¶ 23, 38, 99. The content reinforces the impact: a sexualized

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

drawing, a signature below a woman's waist, and an imagined dialogue ending "may every day be another wonderful secret." FAC ¶¶ 23, 38. In that context, the accusation would naturally subject President Trump to hatred, ridicule, contempt, and disgrace. Defendants did not run this Article on the front page of *The Wall Street Journal* because it was a harmless joke.

The cases that Defendants cite do not help them. Those cases, none of which bind this Court, involved far less serious statements: calling someone a "player," saying a woman had male visitors, describing parties for older men, reporting the purchase of alcohol for a date, referencing a sexual fantasy, discussing Viagra use, or describing adults as "live-in lovers." *See, e.g., Oleniak v. Slaton,* 2014 WL 2151944, at *12-13 (N.Y. Sup. Ct. May 21, 2014) (not defamatory to describe plaintiff as a "player" with "an old shoe box . . . full of pictures . . . of various women"); *Morrow v. Wiley,* 73 A.D.2d 859, 859 (N.Y. App. Div. 1980) (not defamatory to state plaintiff "often had men visitors to her apartment when her parents weren't home"); *Cassini v. Advance Publ'ns,* 41 Misc. 3d 1202(A), *3 (N.Y. Sup. Ct. Mar. 14, 2013) (not defamatory to state plaintiff threw parties for wealthy older men who were "looking for action"), *aff'd,* 125 A.D.3d 467 (N.Y. App. Div. 2015); *Lindell v. Mail Media, Inc.*, 575 F. Supp. 3d 479, 487 (S.D.N.Y. 2021) (statements that plaintiff purchased alcohol for his date were not defamatory because "the purchase of alcohol is a legal and ordinary act"); *Ava v. NYP Holdings,* 64 A.D.3d 407, 414 (N.Y. App. Div. 2009) (article stating plaintiff had a "masturbatory fantasy" of "being with multiple men and then multiple women" was not defamatory *per se*); *Herman v. CBS Corp.,* 2001 BL 1477, *2-3, 30 Media L. Rep. 1029 (N.Y. Sup. Ct. May 23, 2001) (statement about using Viagra was not defamatory per se); *see also Freedlander v. Edens Broad, Inc.,* 734 F. Supp. 221, 227 (E.D. Va. 1990) (statement that unmarried plaintiffs were "live-in lovers" was not defamatory). None involved an accusation nearly as degrading and impactful as claiming that the President authored and signed a secret-

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

laden, sexual letter to Epstein, as part of a book assembled by Maxwell, with the Article being published amid intense national attention to Epstein's ties to powerful figures. FAC ¶¶ 23, 38, 99.

Plaintiff has more than adequately pled a claim for defamation *per se,* and the Motion to Dismiss this claim should be denied.

### B.      The Article is also defamatory *per quod*.

The same false attribution is independently actionable as defamation *per quod*. A statement is defamatory *per quod* when its defamatory meaning emerges from the words together with facts known to the reader. *Mac Isaac v. Twitter, Inc.,* 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021). The extrinsic fact is one the world knows, and the FAC pleads: Epstein is the "utterly disgraced" financier whose sex trafficking of minors made him among the most notorious criminals of his era. Against that backdrop, falsely attributing to President Trump an intimate, secret-laden letter to Epstein conveys that the two "shared secrets," were close, and that President Trump was "complicit in Epstein's sex trafficking crimes." FAC ¶¶ 99, 113. That is the precise innuendo the *per quod* doctrine requires a plaintiff to plead, as was done here. *See Carlson v. WPLG/TV-10,* 956 F. Supp. 994, 1006 (S.D. Fla. 1996). The FAC names the extrinsic fact (who Epstein was), identifies the words made defamatory by it (the false attribution of the letter), and states the resulting innuendo (shared secrets, complicity). Nothing more is required at the pleading stage, which means that the Motion to Dismiss must be denied.

Defendants' "friends with a criminal" cases are beside the point, because President Trump does not allege that being Epstein's friend is defamatory. The *per quod* claim is that Defendants fabricated a sexual, secret-laden letter, falsely attributed it to President Trump, and thereby cast him as a participant in—not a bystander to—Epstein's secret world. Each case that Defendants cite involved a true report of association and nothing more. *See Parekh v. CBS Corp.*, 820 F. App'x

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

827 (11th Cir. 2020) (truthfully reporting that the plaintiff's ex-girlfriend orchestrated a scam); *Holleran v. Plymouth Board of Education*, 2023 WL 8062131 (Conn. Super. Ct. Nov. 17, 2023) (a post noting a principal's friendship with an accused teacher); *Jones v. Taibbi*, 400 Mass. 786, 793 (1987) ("[t]he description of someone as a friend… of a criminal"). None involved a fabricated document falsely placing words in the plaintiff's mouth. Reporting a real relationship is not defamatory, but inventing an intimate letter and attributing it to President Trump imputes to him a shared, secret intimacy with a sex trafficker—a sting mere friendship does not carry. That the book predated Epstein's arrest changes nothing. The defamatory sting turns on the false attribution of a letter that, read in light of who Epstein was, falsely conveys that President Trump shared in his secrets. At a minimum, the Article is "susceptible of two reasonable interpretations, one of which is defamatory," so the question belongs to the jury. *Turner*, 879 F.3d at 1269.

     **C.    The FAC adequately pleads special damages.**

The *per quod* claim is supported by adequate allegations of special damages. The FAC alleges that the Defamatory Statements (as that term is defined in paragraph 40 of the FAC) caused President Trump "actual, out of pocket losses," including "lost profits" and "realized losses," from the Article's dissemination to an audience of, at least, tens of millions of people worldwide. FAC ¶¶ 119–120. At the pleading stage, a plaintiff need only allege the nature and cause of his economic loss; he need not prove a dollar figure. *See Show Plus Promotions, LLC v. Valley Nat'l Bancorp.*, 2024 WL 3745213, at *9 (S.D. Fla. May 13, 2024) (allegations of lost profits and lost reputation sufficient to survive dismissal); *Yergey v. Brinker Florida, Inc.*, 2020 WL 10817751, at *2 (M.D. Fla. 2020) (plaintiff need only allege the types of special damages sought).

Defendants demand far more than the law requires at the pleading stage. Their lead authority, *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260 (S.D. Fla. 2004), is

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

completely inapposite, as it was decided on summary judgment after discovery. Its statement that special damages "must be proven by specific evidence as to the time, cause and amount," describes what a plaintiff must ultimately *prove*, not what he must *plead*. *Id.* at 1268. Defendants' reliance on *Flynn v. Cable News Network, Inc.*, 2023 WL 5985193, at *5 (M.D. Fla. Feb. 22, 2023), fares no better. There, dismissal was granted because the plaintiff alleged only generalized emotional and reputational harm. Nor does *Flynn* hold that a defamation plaintiff must plead a ledger of every dollar lost, every expense incurred, or every transaction affected. It simply reflects the unremarkable rule that special damages require some alleged pecuniary injury.

The FAC does exactly that. It alleges economic loss, including lost profits and out-of-pocket losses, and ties those losses to Defendants' challenged statements and resulting business disruption. At this stage, Plaintiff need not prove the precise amount, date, and documentary support for each loss. Those are matters for discovery and proof. The FAC's allegations are sufficient because they identify the nature of the economic harm and the causal mechanism by which Defendants' conduct caused it.

Defendants' remaining theory—that the *per quod* claim is really an unpled "defamation by implication" claim—is backwards. Defamation by implication applies only to "literally true statements" conveyed to create a false impression. *Jews for Jesus*, 997 So. 2d at 1106; [D.E. 59 at 11 n.10]. President Trump pleads the opposite: the statements are false. FAC ¶¶ 93, 108. He therefore brings no implication claim, and the cases that Defendants cite confirm that he pleaded correctly. *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 (M.D. Fla. 2021), *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021), and *Plain Bay Sales, LLC v. Gallagher*, 2020 WL 1042218, at *3 (S.D. Fla. Mar. 2, 2020), each dismissed an implication claim precisely because the plaintiff had alleged the statements were *false* rather than

true-but-misleading. President Trump's claims rest on falsity and are pleaded as *per se* and *per quod*—exactly the claims that those courts said a plaintiff alleging falsity should bring. There is no implication claim to dismiss, and the Motion to Dismiss the *per quod* claim should be denied.

## V.      Defendants Are Not Entitled to Fees.

As a threshold matter, Florida law governs this action. Plaintiff filed this case in Florida, the claims are pled under Florida law, and, as set forth above, Defendants have not established any basis to displace Florida law in favor of New York law. Accordingly, only Florida's anti-SLAPP statute could conceivably apply. But Defendants' fee request fails under either statute.

Florida's anti-SLAPP statute, Fla. Stat. § 768.295, applies only where the action is "without merit," and arises from the defendant's protected exercise of free-speech rights on a public issue. That threshold is not met. Plaintiff has pled a viable defamation claim—identifying the challenged statements, their falsity, publication, fault, and resulting damages—which is neither conclusory nor facially meritless. Because the FAC states a cognizable claim under Florida law, Defendants cannot show that the action is "without merit," and they are not entitled to fees under § 768.295.

Defendants fare no better under New York's anti-SLAPP statute, for two independent reasons. *First*, their request fails on the merits: N.Y. Civil Rights Law § 70-a authorizes fees only where the action lacks a "substantial basis in fact and law," a demanding threshold not satisfied merely because Defendants dispute the truth, meaning, or legal significance of the statements. As shown above, Plaintiff has alleged actionable false statements and resulting harm sufficient to proceed past the pleadings. *Second*, and dispositively, Defendants did not seek fees through the procedural vehicle that § 70-a requires. A court recently confronted—and rejected—an identically postured fee request. In *Morley v. Oliver*, No. 25-CV-2563 (RA), slip op. (S.D.N.Y. June 2, 2026), the defendants "s[ought] attorneys' fees under New York's anti-SLAPP law, New York Civil

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Rights Law § 70-a," by appending the request to their motion to dismiss. The court denied the request without reaching the contested *Erie* question, holding that § 70-a authorizes fees only to a party who "maintain[s] an action, claim, cross claim or counterclaim" for them, and that "simply assert[ing] a request as part of a motion to dismiss" is "insufficient under the statute." *Morley* (quoting N.Y. Civ. Rights Law § 70-a(1)). The court relied on *Chinese Ams. Civ. Rts. Coal., Inc. v. Trump*, 2022 WL 1443387, at *6 (S.D.N.Y. May 6, 2022), and *Lindell v. Mail Media, Inc.*, 575 F. Supp. 3d 479, 489 (S.D.N.Y. 2021), both of which hold the same. Defendants here made the identical error: they appended a fee request to their Motion rather than bringing "an action, claim, cross claim, or counterclaim." Their request must be denied for that reason alone, among others.

Thus, under either statute, the fee request fails. Plaintiff's claims have substantial legal and factual support, and Defendants invoked an improper vehicle for any New York fees. The Court should deny Defendants' request for dismissal and for attorneys' fees.

## VI.     Request For Leave To Amend.

While Plaintiff maintains his position that Defendants' Motion to Dismiss should be denied, in the event the Court is inclined to consider the Complaint to be somehow deficient, which should not be the case, Plaintiff, in the alternative, respectfully requests that the Court grant him leave to amend his Complaint to cure any such deficiencies. "[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988). "In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

should, as the rules require, be freely given." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir. 2006) (internal quotation and citations omitted). None of these reasons are apparent here.

Plaintiff submits that the substance of his amendment, should the Court be inclined to grant Defendants' Motion to Dismiss, would include additional facts to demonstrate why the statements are not substantially true, along with additional facts and innuendo by Defendants to show why the statements are defamatory, and additional evidence of actual malice for each Defendant. Accordingly, Plaintiff's request should be granted.  *See, e.g., Wallis v. Cueto*, 2017 WL 6388914, at *7 (S.D. Fla. Aug. 9, 2017) (granting Plaintiff's request for leave to amend defamation claim following dismissal of claim); *Jetaire Aerospace, LLC v. AerSale, Inc.,* 2024 WL 193518, at *3 (S.D. Fla. Apr. 17, 2024); *Log Creek, LLC v. Kessler,* 717 F. Supp. 2d 1239, 1251 (N.D. Fla. 2010); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (granting plaintiff's motion for leave to amend in a defamation action); *Aflalo v. Weiner*, 2018 WL 3235529, at *5 (S.D. Fla. July 2, 2018) (granting leave to amend in a defamation action); *XTec, Inc. v. Hembree Consulting Services, Inc.*, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014) (dismissing defamation counterclaim with leave to amend).

## VII.    Request for Oral Argument.

Pursuant to S.D. Fla. L. R. 7.1(b)(2), Plaintiff hereby respectfully requests oral argument on the Motion to Dismiss. The Motion raises substantial and fact-intensive questions—whether the First Amended Complaint plausibly alleges actual malice, including purposeful avoidance and the malice of each Defendant, whether the Article is defamatory *per se* and *per quod*, whether substantial truth and the authenticity of the letter can be resolved on the pleadings, and whether Defendants are entitled to fees. Plaintiff submits that argument would aid the Court in resolving

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

these issues. Plaintiff estimates that at least one hour will be required.

## CONCLUSION

**WHEREFORE,** Plaintiff President Donald J. Trump respectfully requests that the Court enter an Order: (a) denying Defendants' Motion to Dismiss, and (b) granting Plaintiff any additional relief that this Court deems just and proper.  Alternatively, in the event that the Court grants any portion of Defendants' Motion to Dismiss, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend his Complaint in order to cure any pleading deficiencies.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated June 24, 2026

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office:  305-614-4071
Fax:  305-440-4385

By: /s/ *Alejandro Brito*
      **ALEJANDRO BRITO**
      Florida Bar No. 098442
      Primary: abrito@britopllc.com
      Secondary: apiriou@britopllc.com
      **IAN MICHAEL CORP**
      Florida Bar No. 1010943
      Primary: icorp@britopllc.com

      *Counsel for Plaintiff*
      *President Donald J. Trump*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on June 24, 2026, through the United States District Court for the Southern District of Florida's CM/ECF electronic filing system upon:

George S. Lemieux, Esq.
Timothy J. McGinn, Esq.
Eric C. Edison, Esq.
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
glemieux@gunster.com
tmcginn@gunster.com
eedison@gunster.com
dpeterson@gunster.com
pholness@gunster.com
mzayas@gunster.com
eservice@gunster.com

Katherine M. Bolger, Esq.
Davis Wright Tremaine, LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020-1104
katebolger@dwt.com
nycdocket@dwt.com

*Counsel for Defendants Dow Jones & Company, Inc.,*
*d/b/a The Wall Street Journal, News Corporation,*
*Keith Rupert Murdoch, Robert Thomson,*
*Khadeeja Safdar, and Joseph Palazzolo*

By: /s/ *Alejandro Brito*

23
**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071