**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 1:25-cv-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

      Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE
WALL STREET JOURNAL, a Delaware
corporation, NEWS CORPORATION, a Delaware
corporation, KEITH RUPERT MURDOCH, an
individual, ROBERT THOMSON, an individual,
KHADEEJA SAFDAR, an individual, and JOSEPH
PALAZZOLO, an individual,

      Defendants.

_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

Faced with an inability to plead even the most basic elements of his libel claim, in his Opposition (the "Opposition" or "Opp.") to Defendants' Motion to Dismiss (the "Motion" or "Mot."),[1] Plaintiff President Donald J. Trump abandons allegations in the FAC, mischaracterizes the case law, recycles allegations this Court already rejected, and attempts to rewrite the Article by falsely claiming that it states that the letter bearing his name in the Birthday Book contains his "authentic signature." Opp. 8. The Article does not say that, and this telling mischaracterization underscores the many ways in which his FAC is fatally flawed. Even with the luxury of amendment, Plaintiff does not—and cannot—plead that Defendants acted with actual malice. In addition, the Article is not defamatory, is substantially true, and Plaintiff has not pled special damages. Plaintiff has now been given ample opportunity to state a defamation claim and has failed to do so. The FAC should be dismissed, this time with prejudice, and Defendants should be awarded the attorneys' fees and costs incurred in defending against this meritless action.

## **ARGUMENT**

### I.   **PLAINTIFF HAS NOT ADEQUATELY PLED ACTUAL MALICE**

In the Motion, Defendants established that Plaintiff's allegations still come "nowhere close" to pleading actual malice. *See* Mot. 13 (quoting Order at 14). In response, Plaintiff makes five unavailing arguments to try to carry his burden. *First*, repeating the same argument this Court previously rejected, Plaintiff argues Defendants acted with actual malice because he informed them that he did not author the Birthday Book letter. Opp. 6. But, as this Court already recognized, the fact that Plaintiff "told Defendants that the Letter was a fake" does not show Defendants "acted with serious doubts about the truth of their reporting." Order at 14; *see also Fradkoff v. Winston*, 2025 WL 1735476, at *8 (S.D.N.Y. June 23, 2025) ("blanket denial" insufficient to plead actual

---

[1] This Reply uses the same abbreviations and capitalizations as in Defendants' Motion.

malice because it fails to "expose [any] errors"). And while Plaintiff now claims his denial came through "several distinct channels," Opp. 6, those "channels"—the White House Press Secretary, Plaintiff's counsel, and Plaintiff—are simply different versions of Plaintiff himself. Nor did Defendants ignore Plaintiff's denial. The Article both summarized Plaintiff's position ("Trump denied writing the letter or drawing the picture") and quoted him extensively ("This is not me. This is a fake thing. It's a fake Wall Street Journal story . . . I never wrote a picture in my life. I don't draw pictures of women. . . . It's not my language. It's not my words."). Order at 14; Article at 3.[2] Plaintiff tries to reshape this argument by claiming Defendants "omitted his denial that he signed the letter." Opp. 10. But the Article fully aired Plaintiff's position that he had *no involvement* with the letter—explaining, among other things, that he called the letter a "fake thing."[3] Ultimately, Plaintiff's real complaint is not that Defendants ignored his denial, but that they did not treat it as dispositive. That is not actual malice.

*Second*, Plaintiff argues that Defendants were required to confirm that he, in fact, personally wrote, drew, and signed the letter to Epstein by speaking with—and getting affirmative proof from—both him and Ghislaine Maxwell. *See* Opp. 6-7. This argument is dead wrong. The actual malice standard does not require a libel defendant to establish the certainty of an Article by investigating in exactly the manner the plaintiff desires. The only question is whether Plaintiff adequately pled facts to show that Defendants subjectively doubted what they published. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992) (there is a "critical difference" between "not

---

[2] Plaintiff claims the Motion "treats the inclusion of 'a denial' as dispositive." Opp. 10. But Defendants argue only, consistent with this Court's prior holding, that the publication of a denial is one factor that undermines actual malice. Order at 14; *see also Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016).

[3] In any event, Plaintiff's denial that he signed the letter is still a bare denial that, "without more," is insufficient to plead actual malice as a matter of law. *Brimelow v. N.Y. Times*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021).

knowing whether something is true and being highly aware that it is probably false"). Plaintiff's belief that Defendants should not have published the Article without what amounts to consent from him and Maxwell does not answer this question. In any event, the Article did not say Plaintiff personally wrote, drew, and signed the letter.

*Third*, and relatedly, Plaintiff claims Defendants acted with actual malice by "steer[ing] around the one source, other than [him], most likely to disprove the accusation"—Ghislaine Maxwell. Opp. 7. Initially, Plaintiff's complaint fails to acknowledge that the Article itself details the *Journal*'s efforts to obtain comment from Maxwell, establishing that Defendants did not "steer around" her. They wrote her a letter asking for an interview, contacted her attorney, and published his statement. Article at 6. This is the opposite of "purposefully avoiding the truth."  Regardless, even "[i]ntentionally choosing not to speak with any witness who could have refuted the allegedly defamatory statements" does not support actual malice. *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025); *see also Margolies v. Rudolph*, 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022) (failure to obtain corroboration is conclusory assertion).

Largely ignoring this, the Opposition instead conjectures that because Maxwell had a proffer session with the DOJ *after* the Article's publication, in which she said that she did not recall Plaintiff submitting a Birthday Book letter, Defendants must have "learned that fact and omitted it or avoided pressing Maxwell on that point." Opp. 7. But actual malice "cannot be demonstrated" by such rank "speculation" with no facts offered in support. *Dfinity Found. v. N.Y. Times*, 702 F. Supp. 3d 167, 175 n.42 (S.D.N.Y. 2023). The fact that Maxwell gave a proffer interview to the DOJ has no bearing on the fact that she declined to engage with the *Journal*.[4]

---

[4]  Maxwell actually told the DOJ that she could not recall *any* contributor to the Birthday Book, not just Plaintiff. Mot. 9 n.6. She also confirmed the Article's description of the Birthday Book and her role in it. *Id*. And, despite Plaintiff's argument, Opp. 7, this Court can review Maxwell's

3

*Fourth*, Plaintiff invents a new, unpleaded theory that a single sentence in the Article—"It isn't clear how the letter with Trump's signature was prepared"—establishes that Defendants had "obvious reason to doubt" the reporting that the letter "contains President Trump's authentic signature." Opp. 9-10. But, critically, the Article *never says* that the signature is Plaintiff's "authentic signature." And even if it had, stating that the *Journal* lacked clarity on how the letter was prepared says nothing about whether Defendants believed the signature was, in fact, Plaintiff's. At most, it tells readers the *Journal* cannot speak to the details of how the letter was assembled but does nothing to undermine the gist of the Article—that a page bearing Plaintiff's name and signature is included in the Birthday Book.

For this reason, the one case Plaintiff cites to support this argument, *Rebozo v. Washington Post*, 637 F.2d 375 (5th Cir. 1981), is easily distinguished. There, the story reported that the plaintiff sold stolen stock. The story was based on an ambiguous deposition transcript, and the reporter had admitted to his editor before publication that he was uncertain whether the plaintiff had, in fact, sold the stock. Nonetheless, the published article asserted as fact that the plaintiff had sold the stock and did not alert readers to the underlying ambiguity. *Id.* at 376-77.

Here, by contrast, the sentence on which Plaintiff focuses—not to mention the Article's extensive quotation of Plaintiff's denials—represents the *Journal*'s efforts to get the story right. Further, where "the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice." *Michel*, 816 F.3d at 703 (informing readers primary source was "not [] unimpeachable" or quoting others calling source

---

full testimony because it is referenced in the Complaint and "when a complaint quotes part of a document . . . the full text is 'incorporated into the [] complaint by reference' and is thus properly considered in deciding a Rule 12 motion." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019).

"liar" and "con man," negated actual malice). Thus, even if the cited sentence contradicted anything in the Article—and it does not—readers had that information available to them (including the President's statement that the letter was a "fake thing") and could use it to assess the Article's veracity. Order at 15.

*Finally*, the Opposition cites the Sept. 8 Article to support Plaintiff's actual malice claim. Opp. 11-12. In so doing, it abandons the FAC's misleading assertion that the Sept. 8 Article showed the signature on the Birthday Book letter differs from Plaintiff's. Mot. 12-13. Plaintiff now contends that because the information in the Sept. 8 Article—showing that the letter's signature, drawing, and language matched Plaintiff's prior statements—was available to Defendants when they published the Article but was not released until later, they must have "scramble[d] to corroborate [the Article] after the fact." Opp. 10-11. There is no basis for such irrelevant and illogical speculation. Defendants' decision to separately publish this information after Congress released the Birthday Book—and after the White House press secretary publicly stated "it's very clear President Trump did not draw this picture, and he did not sign it," *see* Bolger Decl. Ex. 6— reflects an editorial judgment. And Plaintiff's own premise—that the Sept. 8 Article *corroborates* the Article—negates actual malice.[5]

Plaintiff still comes nowhere close to pleading actual malice, and the FAC should be dismissed with prejudice.

---

[5] The Opposition also underscores Plaintiff's failure to "bring home" actual malice to each Defendant. Mot. 12-13. It newly claims that Thomson was told the letter was fake. Opp. 2, 6, 10-11. But "the pleading, not the briefing on a motion to dismiss . . . must state a claim." *Jackman v. 20th Jud. Cir. Ct. Admin.*, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020). In any event, Plaintiff's bare denial—whether to Murdoch, Thomson, or others—did not put any Defendant on notice that the Article was false. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). In reality, the Opposition relies solely on Defendants' corporate structure to impute actual malice to those not directly responsible for the Article, which is insufficient to plead actual malice. Mot. 12.

## II.     THE ARTICLE DOES NOT HAVE A DEFAMATORY MEANING

In the Motion, Defendants demonstrated that the Article was not defamatory *per se* or *per quod*. Mot. at 13-17. In response, Plaintiff appears to backtrack from those portions of the FAC in which he challenged three specific statements as defamatory *per se* and four as defamatory *per quod*. FAC ¶¶ 38-39. Plaintiff now appears to be claiming that the Article as a whole is defamatory (both *per se* and *per quod*) because it "falsely attributed to a sitting President a salacious letter to Epstein, a disgraced figure charged with sex trafficking of minors." Opp. 13; *see also id.* at 15 ("The same false attribution is independently actionable as defamation *per quod*."). Plaintiff's new theory is as unsuccessful as the first.

Most notably, the Article *does not state* that a "sitting President" wrote a salacious note to a sex offender. Rather, it reports that, in 2003—over a decade before Plaintiff became President— a bawdy letter bearing his name and signature appeared in a book of birthday notes to Epstein— then a financier who had not been charged with, let alone convicted of, sex offenses, and whom Plaintiff described as a "terrific guy" who "likes beautiful women as much as I do, and many of them are on the younger side," mere months earlier. Article at 6.[6] Plaintiff simply misstates the Article's contents. And, even if the Article could be read to state that Plaintiff personally "authored, drew, and signed" the letter, Opp. 14, that is not defamatory *per se* or *per quod*.

### A.     The Article Is Not Defamatory *Per Se*

As the Motion explained, courts have long held that statements are not defamatory merely because they are of a sexual nature. Mot. 14-15. Plaintiff insists that the cases Defendants cite— involving claims of masturbatory fantasies, sex parties, extramarital sexual relations, and a man with a "shoebox" full of pictures of women—all concerned "far less serious statements,"

---

[6] Notably, Plaintiff does not challenge this statement in the Article as false or defamatory.

apparently because they do not involve Epstein. Opp. 13. But Plaintiff tellingly cites no supporting authority, nor are Defendants aware of any kind of "Epstein exception" in defamation law. Even if the Article had reported that a friend sent a bawdy birthday note to another friend, it is not defamatory to do so, and Plaintiff's defamation *per se* claim must therefore fail.

### B.      The Article Is Not Defamatory *Per Quod*

In his Opposition, Plaintiff argues that the Article is defamatory *per quod* because Epstein was an "utterly disgraced financier," "among the most notorious criminals of his era." Opp. 16. But as Defendants explained, it is not defamatory to report the uncontested truth that an individual was once friends with a person later convicted of crimes—even sex crimes. *See* Mot. 15-16.

Plaintiff now claims for the first time that he "does not allege that being Epstein's friend is defamatory," *id.* at 15—evidently abandoning his assertion in the FAC that it was "defamatory" for Defendants to claim "without substantiation, that President Trump is a 'friend,' 'pal,' or 'family' of Epstein," FAC ¶ 37. Instead, Plaintiff maintains that the Article is defamatory *per quod* because it "cast[s] him as a participant" in Epstein's crimes. Opp. 15. But once again, Plaintiff's contention is wildly inaccurate: the Article *never suggests*, *much less states*, that Plaintiff knew of—let alone participated in—Epstein's crimes. To the contrary, the Article explicitly states that Plaintiff *ended* his friendship with Epstein *before* Epstein pled guilty to sex offenses. Article at 6.

Instead, Plaintiff claims that the Article "*conveys*" the impression that he was "complicit" with Epstein's crimes, and such "innuendo" allows him to state a defamation *per quod* claim. *Id.* (emphasis added). Plaintiff is wrong as a matter of fact, for the reasons stated above, and as a matter of law. A defamation *per quod* claim, no different than a *per se* claim, must be based on the publication's *actual words*; it simply "requires additional explanation of the *words used* to show that they have a defamatory meaning." *Block v. Matesic*, 789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025) (citation omitted) (emphasis added). In other words, "innuendo" for purposes of a

7

defamation *per quod* claim is not an implication unstated in the Article but rather a reference to "facts extrinsic to those published," which "must be known in order to inflict an injury." *Boyles v. Mid-Florida Television*, 431 So. 2d 627, 633, 635 (Fla. 5th DCA 1983).

The decision in *IBP v. Hady Enterprises*, 267 F. Supp. 2d 1148 (N.D. Fla. 2002), illustrates this point. There, the Court rejected a defamation *per quod* claim that an incorrect halal label implied regulatory violations because the "*words* on the labels *themselves*" were not injurious. *Id.* at 1164. Here too, to state a claim for defamation *per quod*, Plaintiff was required to focus on the Article's actual words—which merely report that a bawdy note bearing Plaintiff's name appeared in the Birthday Book. But instead of doing that, Plaintiff now alleges the Article *implies* Plaintiff must have both known about and participated in Epstein's sex crimes. That is a defamation by implication claim, not a *per quod* claim. And Plaintiff has explicitly disclaimed that he is bringing such a claim. Opp. 17-18. Plaintiff's defamation *per quod* claim therefore fails.

### C.     Plaintiff Fails to Plead Special Damages

As the Motion explained, Plaintiff's defamation *per quod* claim also fails because he did not plead special damages. Mot. 16-17. The Opposition insists that Plaintiff met his pleading burden by alleging "actual, out of pocket losses" including "lost profits" and "realized losses," and he need only "allege the nature and cause of his economic loss," not a "dollar figure." Opp. 16. Plaintiff is wrong. Even without a precise figure, he still must plead "factual enhancement to support [his] conclusory allegations." *Flynn v. CNN*, 2021 WL 5964129, at *5 (S.D.N.Y. 2021); *see also Flynn v. CNN*, 2023 WL 5985196, at *6 (M.D. Fla. Mar. 17, 2023)[7] (plaintiff failed to plausibly allege special damages because the complaint relied on "conclusory allegations"); *Henry*

---

[7] Plaintiff argues that *Flynn* involved only claims of "generalized emotional harm." Opp. 17. That is false. The *Flynn* plaintiff also alleged "lost future earnings," "diminished earning capacity," and "out-of-pocket expenses," 2023 WL 5985196, at *5, just as Plaintiff does here.

*v. Fox News Network*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022) (assertions of "loss of revenue," "loss of economic opportunities" and "loss of reputation" were "conclusory" and "clearly insufficient"). Plaintiff did not do so, and he thus failed to plead special damages.[8]

## III.   PLAINTIFF CANNOT ESTABLISH FALSITY

As Defendants previously explained, the challenged statements are true because a letter bearing Plaintiff's signature containing the exact text identified in the Article was later released by Congress, and Plaintiff incorporated that letter into the FAC. *See* FAC ¶ 38; *compare* Article 4-5, *with* Bolger Decl. Ex. 5. The Opposition's main argument is that the Court cannot judicially notice the letter released by Congress because Plaintiff disputes its authenticity. Opp. 4-5. But Defendants do not rely on the judicial notice doctrine; they rely on incorporation by reference because the Congressionally released letter is specifically referenced by the FAC. Mot. 5 n.3. And, notably, Plaintiff neither contests that the letter attached to Defendants' Motion is an authentic version of the letter Congress released, nor that the letter exists. Opp. 4. Instead, he claims that the only dispute is whether he "wrote and signed *this* letter." *Id*. And while Plaintiff now claims the Article says the letter contains his "authentic signature," *id.* 8, the Article nowhere says that. In sum, it is undisputed that the Birthday Book contains a letter purporting to be from Plaintiff that matches the Article's description. Plaintiff, therefore, cannot establish the Article is materially false.

## IV.   PLAINTIFF SHOULD NOT BE GRANTED FURTHER LEAVE TO AMEND

In a last-ditch effort to salvage his claim, Plaintiff argues that if the Motion is granted, the

---

[8] The two cases Plaintiff cites are not to the contrary. In *Show Plus Promotions v. Valley National Bancorp*, 2024 WL 3745213, at *9 (S.D. Fla. May 13, 2024), the plaintiff identified a specific client purportedly lost due to the defendant's alleged defamation. *Id.* And *Yergey v. Brinker Fla.*, 2020 WL 10817751 (M.D. Fla. Aug. 6, 2020) was not a defamation claim at all but a negligence claim arising from wrongful death. Due to the nature of that claim, pleading a general category of damages (lost support and services) sufficed to put the defendant on notice of the claim. The same cannot be said of Plaintiff's conclusory assertion of "lost profits" here.

Court should also grant him leave to amend a second time to add unspecified "additional facts." Opp. 19-20. The Court should deny that request. When the Court dismissed the initial complaint, it clearly explained that the "conclusory allegation that Defendants had contradictory evidence and failed to investigate is rebutted by the Article and is insufficient to establish actual malice." Order at 14. Plaintiff simply ignored the Court's instruction and repeated these claims in the FAC. If Plaintiff was "unable to cure his Complaint even with all its shortcomings clearly laid out for him," *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1319 (S.D. Fla. 2022), *aff'd in part, vacated in part*, 161 F.4th 671 (11th Cir. 2025), there is no reason to allow him to amend again, *see, e.g.*, *Reed*, 2025 WL 1874638, at *3 (denying leave to replead where plaintiff had "two opportunities to plausibly allege claims for defamation" but "failed both times"); *Harrington v. Veritext*, 2025 WL 1591614, at *23 (S.D. Fla. May 1, 2025) (dismissing with prejudice where plaintiff "already had one chance to amend his complaint and further amendment would be futile"), *report & rec. adopted*, 2025 WL 3282698 (S.D. Fla. Oct. 24, 2025); *Markle v. Markle*, 2024 WL 1075339, at *13 (M.D. Fla. Mar. 12, 2024) (further amendment futile when claims "fared no better on second review").

## V.      DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES

Finally, Defendants are entitled to attorneys' fees under Florida's or New York's anti-SLAPP statute. Plaintiff argues that because he pled a viable defamation claim, this case is not "without merit" and does not "lack[] a substantial basis in fact and law." Opp. 18. Plaintiff thus concedes that, if the Motion is granted, Defendants are entitled to fees to be pursued via the proper procedure under the governing law. *See* Opp. 18-19 (arguing fees under New York anti-SLAPP law must be awarded separately).

## CONCLUSION

For the foregoing reasons—and those in Defendants' Motion—the Court should dismiss the FAC with prejudice and find Defendants are entitled to their attorneys' fees and costs.

10

Dated: July 1, 2026

By: */s/ George S. LeMieux*

**GUNSTER, YOAKLEY & STEWART, P.A.**
George S. LeMieux (Florida Bar No. 16403)
Eric C. Edison (Florida Bar No. 010379)
Timothy J. McGinn (Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger*
Amanda B. Levine*
Meenakshi Krishnan*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

**DECHERT LLP**
Andrew J. Levander*
Steven A. Engel*
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com

**pro hac vice*

*Counsel for Defendants*