**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 1:25-cv-23232-DPG

PRESIDENT DONALD J. TRUMP, an individual,

      Plaintiff,

v.

DOW JONES & COMPANY, INC. d/b/a THE
WALL STREET JOURNAL, a Delaware
corporation, NEWS CORPORATION, a Delaware
corporation, KEITH RUPERT MURDOCH, an
individual, ROBERT THOMSON, an individual,
KHADEEJA SAFDAR, an individual, and JOSEPH
PALAZZOLO, an individual,

      Defendants.
_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**MOTION TO STAY DISCOVERY**

Plaintiff's Opposition ("Stay Mot. Opp.") to Defendants' Motion to Stay ("Stay Mot.")[1] confirms why a discovery stay is warranted here. This Court has already held that Plaintiff's original complaint came "nowhere close" to pleading actual malice, Order at 14, rejected his prior request for premature discovery as "improper," and recognized the First Amendment burdens of forcing publishers into costly discovery before resolving threshold pleading defects, Dkt. 66 ("Discovery Order") at 2-3.

In response, Plaintiff offers no justification for starting discovery while Defendants' Motion to Dismiss the FAC ("Motion to Dismiss") is pending. Instead, he resorts to strawman arguments and misrepresentations. For example, he argues that Defendants "speculat[e]" that Plaintiff "might" pursue Murdoch's deposition first, Stay Mot. Opp. 4, a disingenuous argument given that Plaintiff *informed* Defendants that he intends to "commence" discovery by deposing Murdoch first, *see* Stay Mot. Bolger Decl. Ex. 1. Plaintiff then repeatedly asserts that Defendants seek an "indefinite" discovery stay, *see* Stay Mot. Opp. 4, 6, 11, 13-14, 16, when of course all Defendants seek is a *finite* stay pending resolution of their Motion to Dismiss. And finally, Plaintiff offers no reason why the discovery stay governing the first round of briefing—*one he agreed to*— should not similarly apply here, especially after this Court already once concluded that Plaintiff's defamation claim was inadequately pled. Defendants respectfully request that the Court stay all discovery pending resolution of Defendants' Motion to Dismiss.

## ARGUMENT

### I. DISCOVERY STAYS ARE PARTICULARLY APPROPRIATE IN PUBLIC FIGURE DEFAMATION CASES

As set forth in Defendants' Motion to Stay, this Court has already recognized that, in

---

[1] Unless otherwise noted, this Reply Brief uses the same capitalizations and abbreviations as in Defendants' Stay Motion.

"defamation cases involving a public figure plaintiff," discovery should not occur until the plaintiff has filed a well-pleaded complaint. *See* Stay Mot. 4 (citing Discovery Order at 3). This principle flows from the actual malice standard, which was designed to "allow publishers the 'breathing space' needed to ensure robust reporting on public figures and events." *Id.* (citing Discovery Order at 3 and collecting cases). The Court accordingly recognized that allowing Plaintiff to "conduct discovery on actual malice, where his initial attempt at pleading a defamation claim fell short," would create "exactly the type of 'expensive yet groundless litigation' the Eleventh Circuit has cautioned against." Discovery Order at 3.

Plaintiff's response is full of irrelevancies and bluster. For example, he argues that discovery stays are not automatic. Yet no one disputes that general proposition. Tellingly, though, almost all of Plaintiff's cited cases are non-defamation cases, *see* Stay Mot. Opp. 3-4, that do not implicate the "powerful" speech interests at stake here, *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020) (citation omitted). And the two defamation cases he cites in which courts denied discovery stays, *Markle v. Markle*, 2023 WL 1797171, at *2 (M.D. Fla. Feb. 7, 2023), and *Trump v. British Broad. Corp. ("BBC")*, 2026 WL 403823, at *2 (S.D. Fla. Feb. 12, 2026), are easily distinguished. At the time of the *Markle* decision, the court had not yet decided defendants' initial motion, and, in fact, had also already set a discovery deadline and trial date. *See* Case No. 8:22-cv-00511, Dkt. 49 (M.D. Fla. Aug. 3, 2022). No such deadlines exist here. And in *BBC*, the defendant's motion to dismiss had not been filed, and BBC had not yet received any discovery requests. 2026 WL 403823, at *1-2. The court thus could not conduct a "preliminary peek" at BBC's motion, and BBC's anticipated discovery was entirely "hypothetical." *Id.*

Here, though, Plaintiff agreed to a discovery stay prior to the resolution of the first motion to dismiss, Defendants then prevailed on that motion, and the second Motion to Dismiss is fully

briefed as of this filing. And, far from discovery being "hypothetical," Plaintiff has not only indicated that he intends to start discovery with a deposition of Murdoch, *see* Stay Mot. Bolger Decl. Ex. 1, he previously served both a deposition and document subpoena on Murdoch, and even requested that the Court grant him discovery into actual malice prior to re-filing the amended complaint. All of this previews the expansive nature of the discovery he intends to seek, *see* Dkt. 23-1.

In short, because this defamation case involves a public figure plaintiff who has already once failed to state a claim, a discovery stay is particularly appropriate.

## II.      THE MOTION TO DISMISS WILL LIKELY BE CASE DISPOSITIVE

Next, a stay is appropriate here because Defendants' Motion to Dismiss will likely be case dispositive. This Court has already held that Plaintiff's first attempt to plead his defamation claim came "nowhere close" to alleging the essential element of actual malice. Order at 14. As the Motion to Stay and Motion to Dismiss set forth, Plaintiff does not inch any closer to the mark the second time around. Stay Mot. 5-7; Mot. to Dismiss 7-20. While Defendants respectfully refer the Court to their Reply in Further Support of the Motion to Dismiss for a more detailed rebuttal of each of Plaintiff's merits arguments, even a cursory review of the Oppositions Plaintiff has filed demonstrates that Plaintiff's arguments fail.

*First*, Plaintiff again comes "nowhere close" to pleading actual malice because his actual malice theory is still largely based on his denial of any involvement with the Birthday Book. But as this Court already held, such bare denials fail to plead actual malice as a matter of law. Order at 14. Plaintiff's attempt to bolster this inadequate pleading by asserting that Defendants were required to confirm with him or Maxwell that he personally wrote, drew, and signed the letter before the Article's publication, *see* Mot. to Dismiss Opp. 7, is equally flawed. The actual malice standard does not require a journalist to get permission from a source before publishing. Rather, it

requires the plaintiff to plead facts to show that the defendant subjectively doubted the truth of the challenged article. *See* Mot. to Dismiss Reply 2-3. And Plaintiff's argument that Defendants avoided speaking to Maxwell, *see* Mot. to Dismiss Opp. 7, also fails because the Article shows Defendants sought her (and her attorney's) comments prior to publication and included the response they received from her attorney in the Article, *see* Mot. to Dismiss Reply 3. Similarly, Plaintiff's reliance on testimony Maxwell gave at a proffer interview after the Article's publication to argue that Defendants knew the Article was false, *see* Mot. to Dismiss Opp. at 7-8, is not only speculative, it misstates her testimony: Maxwell did not merely say she could not recall whether Plaintiff contributed to the Birthday Book; she said she could not recall *any* contributor to the Book more than 20 years ago (hardly a denial of the Article's claims), *see* Mot. to Dismiss Reply 3. And, of course, Plaintiff's argument ignores that Maxwell's statements to the DOJ in fact confirmed the Birthday Book's existence and her role in creating it—exactly as the Article reported. *See id*.[2]

Next, Plaintiff relies on a single sentence in the Article that says "it isn't clear how the letter with Trump's signature was prepared" to claim Defendants had "obvious reason to doubt" the reporting that the letter "contains President Trump's authentic signature." Mot. to Dismiss Opp. 8. But Plaintiff's flawed argument turns logic on its head.[3]  The Article does not say the letter "contains President Trump's authentic signature," and the highlighted sentence undermines nothing in the actual Article as published. *See* Mot. to Dismiss Reply 4. And Plaintiff himself

---

[2] In the Opposition to the Motion to Dismiss, Plaintiff abandoned any argument that his alleged "nine omissions" are evidence of actual malice. Opp. 6-12. Oddly, though, he references them in the Opposition to the Motion to Stay. Stay Mot. Opp. 7. In fact, Plaintiff often appears to toggle between different arguments in his two Opposition briefs. To the extent this argument is still cognizable, as set forth in the Motion to Dismiss, not only are most of these omissions not actually omitted, but none is probative of actual malice. *See* Mot. to Dismiss 9-10.

[3] Plaintiff also argues that Defendants admitted they did not see the letter pre-publication.  *See* Stay Mot. Opp. 3. As this Court has already held, this is simply false. *See* Order at 14.

admits that the Sept. 8 Article, which he relied on in the FAC to argue that Defendants had reason to doubt the Article when published, in fact corroborates the Article. *See* Mot. to Dismiss Opp. at 11. It cannot, therefore, be evidence of actual malice. Finally, Plaintiff still fails to "bring home" his actual malice allegations to each Defendant. *See* Mot. to Dismiss Reply 5 n.5.[4]

*Second*, Plaintiff still has not adequately alleged that the Article has a defamatory meaning. Plaintiff's Opposition to the Motion to Stay largely sidesteps the issue, arguing only that the Court cannot resolve defamatory meaning because authorship of the letter and Plaintiff's relationship with Epstein may be factual questions. Stay Mot. Opp. 9. But those issues are distinct from whether the Article is defamatory as a matter of law, which it is not. As the Motion to Dismiss Reply explains, the Article is not defamatory *per se* because even if it reported that a friend sent a bawdy note to another friend, it is not defamatory *per se* to do so. *See* Mot. to Dismiss Reply 6-7. The Article is also not defamatory *per quod* because stating that Plaintiff was friends with Epstein, even if Epstein was ultimately charged with heinous crimes, is not defamatory as a matter of law.

---

[4] Plaintiff's Opposition to the Motion to Stay also includes two other arguments he apparently abandoned in his Motion to Dismiss Opposition. *First*, Plaintiff again asserts that the signature of his first name in the Birthday Book letter looks "materially different" from a signature of his full name shown in the Sept. 8 Article. *See* Stay Mot. Opp. at 7.  But this comparison is misleading and ignores what the Motion to Dismiss already explained: the Sept. 8 Article does not compare those two signatures at all. Instead, it only compares the Birthday Book signature with other signatures of Plaintiff's first name—a resemblance Plaintiff does not and cannot dispute. *See* Mot. to Dismiss at 12-13. *Second*, Plaintiff claims that the Article's statement that Maxwell did not respond to a request for comment appears "several paragraphs after" the challenged statements and that Defendants' "request for an interview" with Maxwell "does not provide any context that would lead the reader  . . . to believe that Defendants sought Maxwell's interview regarding the alleged letter." Stay Mot. Opp. at 7 n.2. Plaintiff's argument is absurd. First, it is wrong on the law, which requires courts to evaluate challenged statements "in [their] totality, examining not merely a particular phrase or sentence, but all the words used in the publication." *Hay v. Indep. Newspapers*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). And second, the argument is wrong on its face—the Article makes clear that Defendants reached out to Maxwell and notes that she did not respond. *See* Article at 6. Even more, Defendants also contacted Maxwell's attorney, who provided a statement that Maxwell was "focused" instead on her Supreme Court case—a statement that was also published in the Article. *Id.*

*See id.* 7-8. Plaintiff now argues that the Article conveys an unstated implication—that he knew about and participated in Epstein's crimes. *See* Mot. to Dismiss Opp. 15. But this claim sounds not in defamation *per quod* but in defamation by implication—a distinct claim that Plaintiff has expressly disclaimed. *See* Mot. to Dismiss Reply 8. And, in any event, Plaintiff's *per quod* claim fails because his generalized claim of "lost profits" lacks the requisite specificity to plead special damages. *See id.* 8-9.

*Third*, Plaintiff failed to plead that the Article is materially false because, as Plaintiff alleges in the FAC, Congress released a copy of the Birthday Book and it contained a letter bearing Plaintiff's signature, precisely as described in the Article. In response, Plaintiff's main argument is that the Court cannot take "judicial notice" of the letter released by Congress because he disputes its authenticity. Mot. to Dismiss Opp. 4. But Defendants do not rely on judicial notice; they rely on incorporation by reference because the Congressionally released letter is expressly relied upon by the FAC. *See* Mot. to Dismiss Reply 9. And Plaintiff has not reasonably disputed the authenticity of that exhibit. In fact, he has conceded that he is not disputing "whether a letter exists." Mot. to Dismiss Opp. 4. Further, the Article never states that the letter in Epstein's Birthday Book contains Plaintiff's "authentic signature." Mot. to Dismiss Reply 9. It reports only that the Birthday Book contains a letter purporting to be from Plaintiff—which is undisputedly true. *Id.*

For these reasons, taking a "preliminary peek" at the arguments in Defendants' Motion to Dismiss reveals that—no different than the initial complaint—the FAC should be dismissed for failure to state a claim.

## III.   PLAINTIFF SHOWS NO PREJUDICE FROM A FINITE STAY

As the Motion explained, Plaintiff will suffer no prejudice from the stay. The clearest evidence of the lack of prejudice is that he previously agreed to such a stay pending resolution of

Defendants' first motion to dismiss. *See* Dkt. 27. The Court's decision to grant that motion to dismiss could hardly have strengthened any legitimate interest of Plaintiff to begin discovery, and Plaintiff points to no change in circumstances to affect the outcome here. Instead, Plaintiff claims he would be prejudiced because Defendants request an "indefinite" stay. Stay Mot. Opp. 4, 6, 11, 13-14, 16. But Defendants simply request a finite stay pending resolution of their Motion to Dismiss.

Further, Plaintiff's cited cases do nothing to support his claimed prejudice. They simply reiterate the general proposition that discovery stays are not the norm in non-defamation cases. And even on that broader point, the cases Plaintiff cites are inapposite because, in each, the court had never evaluated the defendants' motion to dismiss arguments. *See* Stay Mot. Opp. 12-13 (collecting cases). That is a far cry from a case like this one, where this Court has already deemed Plaintiff's pleadings "nowhere close" to plausible.

Otherwise, Plaintiff contends that he will suffer prejudice because "it is his burden to *prove* his claims, and without discovery into Defendants' subjective state of mind, it will be very difficult to do so." Stay Mot. Opp. 13. But this argument, the same one Plaintiff made in his rejected motion for pre-amendment discovery, Dkt. 60 at 6-7, does not show any particularized need to take discovery before a decision on the Motion to Dismiss. And it did not seem to bother Plaintiff when he agreed to a stay during the first round of briefing. In any event, if the Court were to accept Plaintiff's argument, and defamation plaintiffs were entitled to discovery to survive a motion to dismiss, it would entirely eviscerate the actual malice pleading standard.

Accordingly, Plaintiff will suffer no real prejudice if the Court stays discovery pending a ruling on Defendants' Motion to Dismiss.

## IV.    DEFENDANTS WILL BE PREJUDICED WITHOUT THE STAY

Finally, Defendants' Motion to Stay explained that proceeding with discovery now would

impose significant and unnecessary burdens on Defendants and this Court. *See* Stay Mot. 8-10. Plaintiff's response is to dismiss that showing as "speculation"—that Plaintiff "*might* pursue Murdoch's deposition first, that discovery *might* implicate the shield law, and that costs *might* be high." Stay Mot. Opp. 4. But none of this is conjecture. Plaintiff has already requested Murdoch's deposition as his first act of discovery, which would raise apex deposition concerns. *See* Stay Mot. at 8. Plaintiff has also previewed the sweeping discovery he intends to pursue into Defendants' newsgathering methods, including how they "obtained the letter and supposedly verified its contents," as well as into each one of their subjective states of mind. *See* Dkt. 23-1; Dkt. 60 at 2. Not only are these requests extensive, but they will necessarily raise questions about the invocation of privilege under New York's shield law. There is nothing hypothetical about the burden such discovery would impose.[5]

Last, Plaintiff does not even attempt to dispute that a stay would also serve the interests of judicial economy. *See* Stay Mot. 9 (collecting cases). A cursory look at other defamation cases brought by Plaintiff—and litigated by the same counsel—provides a preview of what is likely to come if this case were to proceed to discovery. For example, as previously noted, Plaintiff has refused to produce significant categories of records and even requested a reassignment of the magistrate supervising discovery in his case against the BBC. *See* Stay Mot. 9 n.4. In another case brought by Plaintiff-affiliated media company Trump Media & Technology Group (which operates Truth Social) against *The Washington Post*, the court gave the *Post* "leave to move for sanctions

---

[5] Nor must Defendants submit an affidavit to establish these obvious burdens. The only case Plaintiff cites for that proposition, *Sallah v. Worldwide Clearing*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012), addressed a very different situation in which the court specifically requested the affidavit. That has little to do with the obvious burden a media company faces when subjected to broad discovery into its reporting and editorial processes—a burden that would prove wholly unnecessary if the Court dismisses this action.

in connection with [the plaintiff's] non-compliance" with its discovery orders, and the *Post* has moved for such sanctions. *Trump Media & Tech. Grp. v. WP Co.*, No. 8:23-cv-01535, Dkt. 252 at 2-3 (M.D. Fla. filed June 18, 2026). There is no reason to expend this Court's limited resources overseeing what is likely to be significant, expensive, and contested discovery.

## CONCLUSION

For the foregoing reasons—and those set forth in the Stay Motion—the Court should stay discovery pending resolution of Defendants' Motion to Dismiss.

Dated: July 1, 2026

By: */s/ George S. LeMieux*

**GUNSTER, YOAKLEY & STEWART, P.A.**
George S. LeMieux (Florida Bar No. 16403)
Eric C. Edison (Florida Bar No. 010379)
Timothy J. McGinn (Florida Bar No. 1000377)
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com
tmcginn@gunster.com

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger*
Amanda B. Levine*
Meenakshi Krishnan*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com
meenakshikrishnan@dwt.com

-and-

**DECHERT LLP**
Andrew J. Levander*
Steven A. Engel*
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
andrew.levander@dechert.com
steven.engel@dechert.com
**pro hac vice*

*Counsel for Defendants*

9